## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY, AND RUSK CAPITAL MANAGEMENT, L.L.C., | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION NO. |
| MAROPCO, INC., E. PIERCE MARSHALL, JR., EDWIN K. HUNTER, HUNTER, HUNTER & SONNIER, LLC, AND TROF, INC., | § § § § § § | _____ |
| *Defendants.* | § | |

## INDEX OF DOCUMENTS ATTACHED TO DEFENDANTS' NOTICE OF REMOVAL

| Date Filed | Description | App. |
|---|---|---|
| 09/08/16 | List of Counsel | 0001-0003 |
| 09/08/16 | Harris County District Court Docket Sheet for Cause No. 2015-35950 in the 11th District Court, Harris County, Texas | 0004-0036 |
| 06/22/15 | Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction | 0037-0051 |
| 06/30/15 | Plaintiffs' First Amended Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction | 0052-0108 |
| 07/01/15 | Defendant's Verified Response to Plaintiff Application for Temporary Restraining Order | 0109-0146 |
| 07/02/15 | Temporary Restraining Order | 0147-0150 |
| 07/08/15 | Agreed Order | 0151-0153 |
| 07/10/15 | Return of Service to MarOpCo, Inc. | 0154 |
| 07/23/15 | Appeal Court Memorandum and Opinion | 0155-0156 |
| 08/03/15 | Defendant MarOpCo, Inc.'s Original Answer | 0157-0159 |
| 10/14/15 | Plaintiffs' Second Amended Petition and Request for Permanent Injunction | 0160-0231 |
| 10/27/15 | Defendants Original Counterclaim | 0232-0265 |
| 10/28/15 | Defendant MarOpCo, Inc.'s Answer to Plaintiffs Second Amended Petition and Request for Permanent Injunction | 0266-0270 |

| Date Filed | Description | App. |
|---|---|---|
| 11/04/15 | Order on Motion to Compel | 0271 |
| 11/04/15 | Order on Motion to Quash | 0272 |
| 11/16/15 | Plaintiffs' Original Answer to Defendant's Original Counterclaim | 0273-0277 |
| 11/19/15 | Docket Control/Pretrial Order | 0278-0279 |
| 11/23/15 | Court Scheduling Order and Discovery Control Plan | 0280-0281 |
| 01/12/16 | Plaintiffs' Third Amended Verified Petition and Request for Temporary and permanent Injunction | 0282-0404 |
| 01/19/16 | Amended Protective Order | 0405-0406 |
| 01/19/16 | Order Denying Plaintiffs' Motion for Expedited Discovery | 0407-0408 |
| 01/21/16 | Order Appointing Special Master | 0409-0412 |
| 01/21/16 | Return of Service to Hunter, Hunter & Sonnier, LLC | 0413 |
| 01/29/16 | Order Granting Motion for Substituted Service | 0414-0415 |
| 02/08/16 | Amended Order Appointing Special Master | 0416-0418 |
| 02/15/16 | Defendant Hunter, Hunter & Sonnier, LLC's Special Appearance; Motion To Transfer Venue; Motion To Quash | 0419-0426 |
| 02/22/16 | Original Answer of Defendant E. Pierce Marshall Jr. | 0427-0429 |
| 03/02/16 | Plaintiffs Fourth Amended Verified Petition and Request for Temporary and Permanent Injunction | 0430-1021 |
| 03/14/16 | Order Granting Defendant's Unopposed Motion  To Withdrawal | 1022-1023 |
| 03/28/16 | Order Compelling Production | 1024 |
| 03/31/16 | Order Granting Defendant MarOpCo, Inc.'s Motion to Enforce Court's Order Appointing Special Master | 1025-1027 |
| 04/04/16 | Service of Hunter, Hunter & Sonnier, LLC | 1028-1029 |
| 04/04/16 | Defendant Edwin K. Hunter's Special Appearance; Motion To Transfer Venue; Motion To Quash | 1030-1036 |
| 04/14/16 | Memorandum Opinion | 1037-1038 |
| 05/03/16 | Order Resetting Trial | 1039 |
| 06/10/16 | Order Denying Motion to Find Disputed Emails to be Non-Privilege and to Compel Privilege Log | 1040 |
| 06/14/16 | Defendant's First Amended Counterclaim | 1041-1063 |
| 06/17/16 | Order Denying Motion for Protection | 1064 |
| 06/17/16 | Order Denying Motion to Expedite | 1065 |
| 06/17/16 | Order Granting Defendant MarOpCo, Inc.'s Motion to Compel Document Subpoena of Kainon Consulting and Denying Plaintiffs' Motion for Protection | 1066-1067 |
| 06/17/16 | Order on Plaintiffs' Motion to Compel | 1068-1088 |
| 07/13/16 | Agreed Confidentiality and Protective Order | 1089 |
| 07/18/16 | Plaintiffs' Fifth Amended Verified Petition and Request for Temporary and Permanent Injunction | 1101-1720 |
| 07/28/16 | Order Denying Edwin K. Hunter's and Hunter, Hunter & Sonnier, LLC's Special Appearance | 1721 |
| 07/28/16 | Oder Granting Objection and Motion to Strike Judge Carter Opinion and All Argument Related Thereto | 1722 |

| Date Filed | Description | App. |
|---|---|---|
| 08/04/16 | Order on Defendants Edwin K. Hunter and Hunter, Hunter & Sonnier, LLC's Special Appearances | 1723-1725 |
| 08/04/16 | Order on Objections to Plaintiffs' Evidence in Opposition to Special Appearances | 1726-1729 |
| 08/09/16 | Order Denying Motion to Compel | 1730-1732 |
| 08/09/16 | Order Regarding Plaintiffs' Motion to Compel Un-redacted Documents | 1733 |
| 08/10/16 | E. Pierce Marshall, Jr.'s Special Exceptions | 1734-1747 |
| 08/12/16 | First Amended Answer of Defendant E. Pierce Marshall, Jr. | 1748-1751 |
| 08/12/16 | Plaintiffs' Sixth Amended Verified Petition and Request for Temporary and Permanent Injunction | 1752-2412 |
| 08/12/16 | Defendant Edwin K. Hunter's Original Answer to Plaintiffs' Fifth Amended Petition | 2413-2420 |
| 08/12/16 | Defendant Hunter, Hunter & Sonnier, LLC's Original Answer to Plaintiffs' Fifth Amended Petition | 2421-2428 |
| 08/12/16 | MarOpCo's Answer to Plaintiffs' Fifth Amended Verified Petition and Request for Temporary and Permanent Injunction | 2429-2435 |
| 08/12/16 | Plaintiffs' First Amended Answer to Defendant's Counterclaims | 2436-2443 |
| 08/16/16 | Certificate of Service for Trof, Inc. | 2444 |
| 08/29/16 | Defendant Trof's Verified Special Appearance | 2445-2471 |
| 09/01/16 | Order on discovery deadlines | 2472 |

# UNITED STATES DISTRICT COURT
## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **PRESTON MARSHALL,** | § | |
| **INDIVIDUALLY, AND RUSK CAPITAL** | § | |
| **MANAGEMENT, L.L.C.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **MAROPCO, INC., E. PIERCE** | § | |
| **MARSHALL, JR., EDWIN K. HUNTER,** | § | |
| **HUNTER, HUNTER & SONNIER, LLC,** | § | |
| **AND TROF, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## LIST OF COUNSEL OF RECORD

A.    COUNSEL FOR PLAINTIFFS:

Mark Siurek
Patricia Haylon
WARREN & SIUREK, LLP
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
Telephone: (713) 522-0066
Facsimile:  (713) 522-9977
msiurek@warrensiurek.com
thaylon@warrensiurek.com

Paul J. Dobrowski
Akilah F. Craig
Davis Bradford
DOBROWSKI, LARKIN & JOHNSON LLP
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900
Facsimile:  (713) 659-2908
pjd@doblaw.com
acraig@doblaw.com

dbradford@doblaw.com

Jeffrey W. Chambers
CHAMBERS LAW FIRM
2929 Allen Parkway, Suite 200
Houston, Texas 77019
Telephone: (713) 522-4529
Facsimile:  (713) 583-9684
jeffchambers@chambers-law-group.com

**B.      COUNSEL FOR MAROPCO, INC.:**

John T. Cox III
Christopher J. Akin
Kent Krabill
Russell G. Herman
LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile:  (214) 981-3839
tcox@lynnllp.com
cakin@lynnllp.com
rherman@lynnllp.com
kkrabill@lynnllp.com

Michael Reese Davis
HYMEL DAVIS & PETERSEN, LLC
10602 Coursey Boulevard
Baton Rouge, Louisiana 70816
Telephone: (225) 298-8118
Facsimile:  (225) 298-8119
mdavis@hymeldavis.com

**C.      COUNSEL FOR E. PIERCE MARSHALL, JR.:**

Jeff Golub
David Beck
BECK REDDEN LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile:  (713) 951-3720
jgolub@beckredden.com
dbeck@beckredden.com

**D.     COUNSEL FOR EDWIN K. HUNTER AND HUNTER, HUNTER & SONNIER, LLC:**

L. Bradley Hancock
Christopher David Johnsen
HOLLAND & KNIGHT LLP
1100 Louisiana Street, Suite 4300
Houston, Texas 77002
Telephone: (713) 821-7000
Facsimile:  (713) 821-7001
brad.hancock@hklaw.com
chris.johnsen@hklaw.com

Ashish Mahendru
Darren A. Braun
MAHENDRU, PC
639 Heights Boulevard
Houston, Texas 77007
Telephone: (713) 571-1519
Facsimile:  (713) 651-0776
amahendru@thelitigationgroup.com
dbraun@thelitigationgroup.com

**E.     COUNSEL FOR TROF, INC.:**

R. Paul Yetter
Bryce L. Callahan
Robert K. Ellis
Yetter Coleman LLP
Telephone: (713) 632-8000
Facsimile:  (713) 632-8002
pyetter@yettercoleman.com
bcallahan@yettercoleman.com
rellis@yettercoleman.com

4840-6574-3415, v. 2

---

**LIST OF COUNSEL OF RECORD**                                      **PAGE 3**

Office of Harris County District Clerk - Chris Daniel                                    Page 1 of 33

**HCDistrictclerk.com**      MARSHALL, PRESTON (INDIVIDUALLY) vs.              9/8/2016
                             MAROPCO INC
                             Cause: 201535950      CDI: 7     Court: 011

**DOCUMENTS**

| Number | Document | Post Jdgm | Date | Pgs |
|--------|----------|-----------|------|-----|
| 71792440 | Defendant Trof's Request for Hearing on Special Appearance | | 09/07/2016 | 2 |
| 71757266 | Rule 11 Agreement | | 09/02/2016 | 2 |
| 71727532 | Defendant E. Pierce Marshall, Jr.'s Motion to Quash Deposition of Ace Data Group, LLC | | 09/01/2016 | 3 |
| -> 71727533 | Exhibit A | | 09/01/2016 | 12 |
| 71744050 | ORD SGND GRNTNG EXTENDING DISCOVERY DEADLINE | | 09/01/2016 | 1 |
| 70142654 | Exhibit 1 | | 05/06/2016 | 10 |
| 67771431 | Proposed Order | | 11/05/2015 | 2 |
| 71702667 | Return of Service | | 08/30/2016 | 3 |
| 71668610 | Notice of Oral Hearing | | 08/29/2016 | 3 |
| 71668611 | Defendant Trof's Verified Special Appearance | | 08/29/2016 | 12 |
| -> 71668616 | Declaration Authenticating Exhibits | | 08/29/2016 | 1 |
| -> 71668612 | Exhibit 1 | | 08/29/2016 | 3 |
| -> 71668613 | Exhibit 2 | | 08/29/2016 | 3 |
| -> 71668614 | Exhibit 3 | | 08/29/2016 | 2 |
| -> 71668615 | Exhibit 4 | | 08/29/2016 | 6 |
| -> 71668617 | proposed Order | | 08/29/2016 | 1 |
| 71666474 | Plaintiffs' Motion to Compel and Response to Maropco, Inc.'s Motion for Leave to Conduct Forensic Examination | | 08/26/2016 | 14 |
| -> 71666475 | Exhibit 01 | | 08/26/2016 | 6 |
| -> 71666476 | Exhibit 02 | | 08/26/2016 | 4 |
| -> 71666477 | Exhibit 03 | | 08/26/2016 | 4 |
| -> 71666478 | Exhibit 04 | | 08/26/2016 | 4 |
| -> 71666479 | Exhibit 05 | | 08/26/2016 | 5 |
| -> 71666480 | Exhibit 06 | | 08/26/2016 | 2 |
| -> 71666481 | Exhibit 07 | | 08/26/2016 | 9 |
| -> 71666482 | Exhibit 08 | | 08/26/2016 | 16 |
| -> 71666483 | Exhibit 09 | | 08/26/2016 | 18 |
| -> 71666484 | Exhibit 10 | | 08/26/2016 | 21 |
| -> 71666485 | Exhibit 11 | | 08/26/2016 | 22 |
| -> 71666486 | Exhibit 12 | | 08/26/2016 | 2 |
| -> 71666487 | Exhibit 13 | | 08/26/2016 | 13 |
| -> 71666488 | Exhibit 14 | | 08/26/2016 | 12 |
| -> 71666489 | Proposed Order | | 08/26/2016 | 2 |
| 71617174 | Oral Videotaped Deposition of Preston Marshall July 5, 2016 | | 08/24/2016 | 5 |
| 71589096 | Proposed Order | | 08/23/2016 | 1 |
| -> 71589095 | Filing Letter | | 08/23/2016 | 1 |

Office of Harris County District Clerk - Chris Daniel                                           Page 2 of 33

| | | | |
|---|---|---|---|
| 71597270 | Reporters Certification Oral and Videotaped Deposition of Everett Pierce Marshall | 08/23/2016 | 4 |
| > 71597271 | Changes and Signature | 08/23/2016 | 3 |
| 71597272 | Addendum | 08/23/2016 | 4 |
| 71597273 | Addendum | 08/23/2016 | 3 |
| 71551543 | Secretary of State | 08/19/2016 | 1 |
| 71553189 | Defendants Edwin K. Hunter and Hunter, Hunter & Sonnier, LLC's Joinder in Maropco's Motion to Continue Trial Setting and Extend Certain Pretrial Deadlines | 08/19/2016 | 3 |
| 71555168 | Defendant E. Pierce Marshall, Jr.'s Response to Plaintiffs' Motion to Supplement Expert Reports and Designations | 08/19/2016 | 4 |
| 71555169 | Defendant E. Pierce Marshall, Jr.'s Joinder in MarOpCo, Inc.'s Motion to Continue Trial Setting and Extend Certain Pretrial Deadlines | 08/19/2016 | 5 |
| 71556955 | Defendant Maropco, Inc.'s Response to Plaintiffs' Motion to Supplement Expert Reports and Designation | 08/19/2016 | 5 |
| > 71556956 | Exhibit A | 08/19/2016 | 166 |
| 71566732 | Plaintiffs' Response in Opposition to Maropco, Inc.'s Motion to Continue Trial Setting and Extend Certain Pretrial Deadlines | 08/19/2016 | 8 |
| > 71566733 | Exhibit 1 | 08/19/2016 | 5 |
| > 71566734 | Exhibit 2 | 08/19/2016 | 6 |
| > 71566735 | Exhibit 3 | 08/19/2016 | 2 |
| > 71566736 | Exhibit 4 | 08/19/2016 | 3 |
| > 71566737 | Exhibit 5 | 08/19/2016 | 3 |
| > 71566738 | Exhibit 6 | 08/19/2016 | 2 |
| > 71566740 | Exhibit 7 | 08/19/2016 | 5 |
| > 71566741 | Exhibit 8 | 08/19/2016 | 12 |
| > 71566742 | Exhibit 9 | 08/19/2016 | 2 |
| > 71566743 | Proposed Order Denying Maropco, INCS Motion To Continue Trial Setting And Extend Certain Pretrial Deadlines | 08/19/2016 | 1 |
| 71542715 | Plaintiffs' Designation of Documents to be Included in the Record | 08/18/2016 | 7 |
| 71512558 | Notice of oral Hearing | 08/17/2016 | 2 |
| 71527137 | Plaintiffs' Motion to Compel Discovery from IDZIG, LLC | 08/17/2016 | 7 |
| > 71527138 | Exhibit A | 08/17/2016 | 18 |
| > 71527139 | Exhibit B | 08/17/2016 | 14 |
| > 71527140 | Exhibit C | 08/17/2016 | 3 |
| > 71527141 | Exhibit D | 08/17/2016 | 4 |
| > 71527142 | Exhibit E | 08/17/2016 | 5 |
| > 71527143 | Exhibit F | 08/17/2016 | 2 |
| > 71527144 | Proposed Order | 08/17/2016 | 1 |
| 71527156 | Notice of Oral Hearing | 08/17/2016 | 3 |
| 71500129 | Notice of Hearing | 08/16/2016 | 3 |
| 71506750 | Motion to Compel | 08/16/2016 | 11 |
| > 71506751 | EXHIBIT A | 08/16/2016 | 10 |
| > 71506752 | EXHIBIT B | 08/16/2016 | 10 |
| > 71506753 | EXHIBIT C | 08/16/2016 | 14 |
| > 71506754 | EXHIBIT D | 08/16/2016 | 10 |

**App. 0005**

| | | | |
|---|---|---|---|
| -> 71506755 | EXHIBIT E | 08/16/2016 | 12 |
| -> 71506756 | EXHIBIT F | 08/16/2016 | 26 |
| -> 71506757 | EXHIBIT G | 08/16/2016 | 18 |
| -> 71506758 | EXHIBIT H | 08/16/2016 | 2 |
| -> 71506759 | Proposed Order Granting Motion to Compel | 08/16/2016 | 1 |
| 71458761 | Hill Schwartz Spilker Keller, LLC's Objections to Plaintiffs' Deposition Subpoena to Testify or Produce Document or Things and Motion for Protective Order | 08/12/2016 | 7 |
| -> 71458762 | Exhibit 1 | 08/12/2016 | 9 |
| 71460966 | MarOpCo's Answer to Plaintiffs' Fifth Amended Verified Petition and Request for Temporary and Permanent Injunction | 08/12/2016 | 7 |
| 71466832 | First Amended Answer of Defendant E. Pierce Marshall, Jr. | 08/12/2016 | 4 |
| 71466886 | Letter to Court Reporter | 08/12/2016 | 2 |
| 71468024 | Plaintiffs' First Amended Answer to Defendant's Counterclaims | 08/12/2016 | 8 |
| 71468131 | Defendant Hunter, Hunter & Sonnier, LLC's Original Answer to Plaintiffs' Fifth Amended Petition | 08/12/2016 | 8 |
| 71468160 | Defendant Edwin K. Hunter's Original Answer to Plaintiffs' Fifth Amended Petition | 08/12/2016 | 8 |
| 71468509 | Plaintiffs' Sixth Amended Verified Petition and Request for Temporary and Permanent Injunction | 08/12/2016 | 58 |
| -> 71468510 | Appendix of Exhibits To Plaintiffs Sixth Amended Verified Petition And Request For Temporary And Permanent Injunction | 08/12/2016 | 2 |
| -> 71468511 | Exhibit 01 | 08/12/2016 | 13 |
| -> 71468512 | Exhibit 02 | 08/12/2016 | 6 |
| -> 71468513 | Exhibit 03 | 08/12/2016 | 3 |
| -> 71468514 | Exhibit 04 | 08/12/2016 | 12 |
| -> 71468515 | Exhibit 05 | 08/12/2016 | 16 |
| -> 71468516 | Exhibit 06 | 08/12/2016 | 39 |
| -> 71468517 | Exhibit 07 | 08/12/2016 | 2 |
| -> 71468518 | Exhibit 08 | 08/12/2016 | 5 |
| -> 71468519 | Exhibit 09 | 08/12/2016 | 4 |
| -> 71468520 | Exhibit 10 | 08/12/2016 | 4 |
| -> 71468521 | Exhibit 11 | 08/12/2016 | 5 |
| -> 71468522 | Exhibit 12 | 08/12/2016 | 11 |
| -> 71468523 | Exhibit 13 | 08/12/2016 | 70 |
| -> 71468524 | Exhibit 14 | 08/12/2016 | 1 |
| -> 71468525 | Exhibit 15 | 08/12/2016 | 1 |
| -> 71468526 | Exhibit 16 | 08/12/2016 | 1 |
| -> 71468527 | Exhibit 17 | 08/12/2016 | 1 |
| -> 71468528 | Exhibit 18 | 08/12/2016 | 3 |
| -> 71468529 | Exhibit 19 | 08/12/2016 | 4 |
| -> 71468530 | Exhibit 20 | 08/12/2016 | 1 |
| -> 71468531 | Exhibit 21 | 08/12/2016 | 150 |
| -> 71468532 | Exhibit 22 | 08/12/2016 | 118 |
| -> 71468533 | Exhibit 23 | 08/12/2016 | 1 |
| -> 71468534 | Exhibit 24 | 08/12/2016 | 5 |

| | | | |
|---|---|---|---|
| -> 71468536 | Exhibit 25 | 08/12/2016 | 13 |
| -> 71468537 | Exhibit 26 | 08/12/2016 | 12 |
| -> 71468538 | Exhibit 27 | 08/12/2016 | 10 |
| -> 71468539 | Exhibit 28 | 08/12/2016 | 78 |
| -> 71468540 | Exhibit 29 | 08/12/2016 | 5 |
| 71468606 | Defendant Maropco, Inc.'s Motion to Continue Trial Setting and Extend Certain Pretrial Deadlines | 08/12/2016 | 9 |
| -> 71468607 | Exhibit A | 08/12/2016 | 22 |
| -> 71468608 | Exhibit B | 08/12/2016 | 35 |
| -> 71468609 | Exhibit C | 08/12/2016 | 43 |
| -> 71468610 | Exhibit D | 08/12/2016 | 11 |
| -> 71468611 | Exhibit E | 08/12/2016 | 29 |
| 71469399 | Designation of Clerk's Record | 08/12/2016 | 2 |
| 71450354 | Defendants Edwin K. Hunter and Hunter, Hunter & Sonnier, LLCs Notice of Appeal | 08/11/2016 | 4 |
| 71415603 | E. Pierce Marshall, Jr.s Special Exceptions | 08/10/2016 | 14 |
| -> 71418178 | Notice of Hearing | 08/10/2016 | 2 |
| -> 71415604 | Proposed Order Granting Special Exceptions | 08/10/2016 | 1 |
| 71413826 | Plaintiffs' Motion to Quash Defendant Maropco. Inc.'s Deposition Subpoena of Phil Jones | 08/09/2016 | 5 |
| -> 71413827 | Exhibit 1 | 08/09/2016 | 4 |
| -> 71413828 | Exhibit 2 | 08/09/2016 | 4 |
| -> 71413829 | Proposed Order Granting Motion To Quash Deposition Subpoena of Phillip Jones | 08/09/2016 | 1 |
| 71420135 | ORDER SIGNED DENYING MOTION TO COMPEL PRODUCTION | 08/09/2016 | 3 |
| 71421466 | ORDER SIGNED COMPELLING PRODUCTION IN PART SEE ORDER | 08/09/2016 | 1 |
| 71392621 | Response to Mr. Dobrowskis letter | 08/08/2016 | 3 |
| -> 71392622 | Proposed Order Granting Motion To Compel Production | 08/08/2016 | 1 |
| 71367749 | Defendant/Counter-Plaintiff Maropco, Inc.'s Motion for Leave to Conduct Forensic Examination and Then Delete Files from the Decommissioned Laptop of Former Maropco Employee Robert Kerr | 08/05/2016 | 6 |
| -> 71367750 | Exhibit A | 08/05/2016 | 5 |
| -> 71367751 | Exhibit B | 08/05/2016 | 3 |
| -> 71367752 | Proposed Order | 08/05/2016 | 2 |
| 71372961 | Letter to Judge Miller | 08/05/2016 | 1 |
| -> 71372962 | Proposed Order Denying E. Pierce Marshall, Jr.'s Motion to Compel | 08/05/2016 | 1 |
| -> 71372964 | Proposed Order Granting E. Pierce Marshall, Jr.'s Motion to Compel Production | 08/05/2016 | 2 |
| 71363705 | ORDER SGND DENYING STAY OF PROCEEDINGS | 08/04/2016 | 3 |
| | ORDER SIGNED DENYING FINDINGS OF FACTS/CONCLUSIONS OF LAW | 08/04/2016 | |
| | ORDER SIGNED DENYING SPECIAL APPEARANCE | 08/04/2016 | |
| 71371093 | ORDER SIGNED ALLOWING EVIDENCE IN PART | 08/04/2016 | 4 |
| | ORDER SIGNED STRIKING PLEADING | 08/04/2016 | |
| 71334884 | Civil Process Pick-Up Form | 08/03/2016 | 1 |
| 71309506 | Return of Service | 08/02/2016 | 1 |
| 71309507 | Return of Service | 08/02/2016 | 2 |
| 71321183 | Civil Process Request Form | 08/02/2016 | 2 |
| 71296380 | Filing Letter | 08/01/2016 | 1 |

Office of Harris County District Clerk - Chris Daniel                                      Page 5 of 33

| | | | |
|---|---|---|---|
| -> 71296382 | Proposed Order on Defendants Edwin K. Hunter and Hunter, & Sonier, LLC's Special Appearance | 08/01/2016 | 3 |
| -> 71296381 | Proposed Order on Objections to Plaintiffs' Evidence in Opposition to Special Appearance | 08/01/2016 | 4 |
| 71296677 | Proposed Order Denying Edwin K. Hunter's and Hunter, Hunter & Sonier, LLC's Special Appearance | 08/01/2016 | 1 |
| -> 71296676 | Filing Letter | 08/01/2016 | 1 |
| 71303889 | Letter to Judge Miller | 08/01/2016 | 2 |
| -> 71303890 | Exhibit A | 08/01/2016 | 2 |
| 71304058 | Proposed Order Denying Edwin K. Hunter's and Hunter, Hunter & Sonier, LLC's Special Appearance | 08/01/2016 | 1 |
| -> 71304057 | Letter to Judge Miller | 08/01/2016 | 1 |
| 71310207 | Notice of Oral Hearing | 08/01/2016 | 3 |
| 71290958 | Plaintiffs' Motion to Supplement Expert Reports and Designations | 07/29/2016 | 4 |
| -> 71290959 | Exhibit 1 | 07/29/2016 | 4 |
| -> 71290960 | Exhibit 2 | 07/29/2016 | 4 |
| -> 71290961 | Exhibit 3 | 07/29/2016 | 22 |
| -> 71290962 | Proposed Order | 07/29/2016 | 1 |
| 71267104 | ORDER SIGNED DENYING SPECIAL APPEARANCE | 07/28/2016 | 1 |
| 71267826 | ORDER SIGNED DENYING EVIDENCE | 07/28/2016 | 1 |
| | ORDER SIGNED STRIKING PLEADING | 07/28/2016 | |
| 71315047 | Civil Process Pick-Up Form | 07/28/2016 | 1 |
| 71245217 | Plaintiffs' Response to MarOpCO's Motion to Clarify Court's Order on Plaintiff's Motion to Compel the Production of Documents and Data | 07/27/2016 | 10 |
| -> 71245218 | Exhibit 1 | 07/27/2016 | 6 |
| -> 71245219 | Exhibit 2 | 07/27/2016 | 22 |
| -> 71245220 | Exhibit 3 | 07/27/2016 | 2 |
| -> 71245221 | Exhibit 4 | 07/27/2016 | 7 |
| -> 71245222 | Exhibit 5 | 07/27/2016 | 4 |
| -> 71245223 | Exhibit 5A | 07/27/2016 | 6 |
| -> 71245224 | Exhibit 6 | 07/27/2016 | 3 |
| 71245452 | Reply in Support of Defendant's Edwin K Hunter and Hunter, Hunter & Sonnier, LLC's Special Appearances | 07/27/2016 | 11 |
| -> 71245454 | Exhibit 01 | 07/27/2016 | 35 |
| -> 71245456 | Exhibit 02 | 07/27/2016 | 3 |
| -> 71245458 | Exhibit 03 | 07/27/2016 | 13 |
| -> 71245460 | Exhibit 04 | 07/27/2016 | 14 |
| -> 71245461 | Exhibit 05 | 07/27/2016 | 3 |
| -> 71245463 | Exhibit 06 | 07/27/2016 | 3 |
| -> 71245465 | Exhibit 07 | 07/27/2016 | 26 |
| -> 71245467 | Exhibit 08 | 07/27/2016 | 24 |
| 71245566 | Objection and Motion to Strike Judge Carter Opinion and All Argument Related Thereto | 07/27/2016 | 5 |
| -> 71245567 | Proposed Order | 07/27/2016 | 1 |
| 71245725 | Objection and Motion to Strike Evidence Conained in Plaintiffs' Response in Opposition to Hunter Defendants' Special Appearances | 07/27/2016 | 5 |
| -> 71245726 | Proposed Order | 07/27/2016 | 1 |

**App. 0008**

| | | | |
|---|---|---|---|
| 71227733 | Civil Process Request Form | 07/26/2016 | 3 |
| 71172062 | Filing Letter | 07/21/2016 | 3 |
| -> 71172064 | Exhibit A | 07/21/2016 | 2 |
| 71172317 | Maropco, Inc.'s Motion to Clarify Court's Order on Plaintiffs' Motion to Compel the Production of Document and Data | 07/21/2016 | 11 |
| -> 71172318 | Proposed Order | 07/21/2016 | 75 |
| 71148191 | Letter | 07/20/2016 | 2 |
| 71153849 | Cross-Notice of Oral Hearing | 07/20/2016 | 3 |
| 71153948 | Plaintiffs' Response in Opposition to Edwin K. Hunter's and Hunter, Hunter & Sonnier, LLC's Special Appearance | 07/20/2016 | 22 |
| -> 71153949 | Appendix of Exhibits | 07/20/2016 | 2 |
| -> 71153950 | Exhibit 01 | 07/20/2016 | 25 |
| -> 71153951 | Exhibit 02 | 07/20/2016 | 1 |
| -> 71153952 | Exhibit 03 | 07/20/2016 | 5 |
| -> 71153953 | Exhibit 04 | 07/20/2016 | 7 |
| -> 71153955 | Exhibit 06 | 07/20/2016 | 4 |
| -> 71153956 | Exhibit 07 | 07/20/2016 | 3 |
| -> 71153957 | Exhibit 08 | 07/20/2016 | 1 |
| -> 71153958 | Exhibit 09 | 07/20/2016 | 6 |
| -> 71153959 | Exhibit 10 | 07/20/2016 | 16 |
| -> 71153960 | Exhibit 11 | 07/20/2016 | 4 |
| -> 71153961 | Exhibit 12 | 07/20/2016 | 5 |
| -> 71153962 | Exhibit 13 | 07/20/2016 | 8 |
| -> 71153963 | Exhibit 14 | 07/20/2016 | 3 |
| -> 71153964 | Exhibit 15 | 07/20/2016 | 15 |
| -> 71153965 | Exhibit 16 | 07/20/2016 | 1 |
| -> 71153966 | Exhibit 17 | 07/20/2016 | 4 |
| -> 71153967 | Exhibit 18 | 07/20/2016 | 5 |
| -> 71153968 | Exhibit 19 | 07/20/2016 | 1 |
| -> 71153969 | Exhibit 20 | 07/20/2016 | 1 |
| -> 71153970 | Exhibit 21 | 07/20/2016 | 1 |
| -> 71153971 | Exhibit 22 | 07/20/2016 | 1 |
| -> 71153972 | Exhibit 22A | 07/20/2016 | 1 |
| -> 71153973 | Exhibit 23 | 07/20/2016 | 3 |
| -> 71153974 | Exhibit 24 | 07/20/2016 | 3 |
| -> 71153975 | Exhibit 25 | 07/20/2016 | 1 |
| -> 71153976 | Exhibit 26 | 07/20/2016 | 1 |
| -> 71153977 | Exhibit 27 | 07/20/2016 | 1 |
| -> 71153978 | Exhibit 28 | 07/20/2016 | 2 |
| -> 71153979 | Exhibit 29 | 07/20/2016 | 7 |
| -> 71153980 | Exhibit 30 | 07/20/2016 | 2 |
| -> 71153981 | Exhibit 31 | 07/20/2016 | 2 |
| -> 71153982 | Exhibit 32 | 07/20/2016 | 1 |

| | | | |
|---|---|---|---|
| -> 71153983 | Exhibit 33 | 07/20/2016 | 1 |
| -> 71153984 | Exhibit 34 | 07/20/2016 | 26 |
| -> 71153985 | Exhibit 35 | 07/20/2016 | 7 |
| -> 71153986 | Exhibit 36 | 07/20/2016 | 80 |
| -> 71153954 | Exhibit 5 | 07/20/2016 | 6 |
| -> 71153987 | Proposed Order | 07/20/2016 | 1 |
| 71103142 | Videotaped Deposition of Edwin K Hunter Volume 1 | 07/18/2016 | 3 |
| -> 71103143 | Edwin K. Hunter - Vol. 1 - Errata | 07/18/2016 | 1 |
| 71103144 | Videotaped Deposition of Edwin K Hunter Volume 2 | 07/18/2016 | 3 |
| -> 71103145 | Edwin K. Hunter - Vol. 2 - Errata | 07/18/2016 | 1 |
| 71115940 | Plaintiffs' Fifth Amended Verified Petition and Request for Temporary and Permanent Injunction | 07/18/2016 | 52 |
| -> 71115941 | Appendix of Exhibits | 07/18/2016 | 2 |
| -> 71115942 | Exhibit 01 | 07/18/2016 | 13 |
| -> 71115943 | Exhibit 02 | 07/18/2016 | 6 |
| -> 71115944 | Exhibit 03 | 07/18/2016 | 3 |
| -> 71115946 | Exhibit 05 | 07/18/2016 | 16 |
| -> 71115947 | Exhibit 06 | 07/18/2016 | 39 |
| -> 71115948 | Exhibit 07 | 07/18/2016 | 2 |
| -> 71115949 | Exhibit 08 | 07/18/2016 | 5 |
| -> 71115950 | Exhibit 09 | 07/18/2016 | 4 |
| -> 71115951 | Exhibit 10 | 07/18/2016 | 4 |
| -> 71115952 | Exhibit 11 | 07/18/2016 | 5 |
| -> 71115953 | Exhibit 12 | 07/18/2016 | 11 |
| -> 71115954 | Exhibit 13 | 07/18/2016 | 70 |
| -> 71115955 | Exhibit 14 SUBMITTED IN CAMERA | 07/18/2016 | 1 |
| -> 71115956 | Exhibit 15 | 07/18/2016 | 1 |
| -> 71115957 | Exhibit 16 SUBMITTED IN CAMERA | 07/18/2016 | 1 |
| -> 71115958 | Exhibit 17 SUBMITTED IN CAMERA | 07/18/2016 | 1 |
| -> 71115959 | Exhibit 18 | 07/18/2016 | 3 |
| -> 71115960 | Exhibit 19 | 07/18/2016 | 4 |
| -> 71115961 | Exhibit 20 SUBMITTED IN CAMERA | 07/18/2016 | 1 |
| -> 71115962 | Exhibit 21 | 07/18/2016 | 150 |
| -> 71115963 | Exhibit 22 | 07/18/2016 | 118 |
| -> 71115964 | Exhibit 23 SUBMITTED IN CAMERA | 07/18/2016 | 1 |
| -> 71115965 | Exhibit 24 | 07/18/2016 | 5 |
| -> 71115966 | Exhibit 25 | 07/18/2016 | 78 |
| -> 71115967 | Exhibit 26 | 07/18/2016 | 5 |
| -> 71115945 | Exhibit 4 | 07/18/2016 | 12 |
| 71092366 | Letter to Judge | 07/15/2016 | 1 |
| -> 71092367 | Cover Sheet In Camera | 07/15/2016 | 1 |
| 71055784 | PROTECTIVE ORDER (CIVIL) ORD SGND | 07/13/2016 | 12 |

**App. 0010**

Office of Harris County District Clerk - Chris Daniel                                    Page 8 of 33

| 71035351 | Proposed Agreed Confidentiality and Protective Order | 07/12/2016 | 12 |
| 71036206 | Affidavit of Service of Subpoena Return | 07/12/2016 | 13 |
| 71006377 | Response in Opposition to Plaintiffs' Motion to Compel Unredacted Documents | 07/11/2016 | 6 |
| -> 71006378 | Proposed Order | 07/11/2016 | 1 |
| 71007045 | Plaintiffs' Response to Pierce Marshall, Jr.'s Motion to Compel Production | 07/11/2016 | 8 |
| -> 71007046 | Exhibit 1 | 07/11/2016 | 13 |
| -> 71007047 | Exhibit 2 | 07/11/2016 | 20 |
| -> 71007048 | Exhibit 3 | 07/11/2016 | 31 |
| -> 71007049 | Exhibit 4 | 07/11/2016 | 11 |
| -> 71007050 | Exhibit 5 | 07/11/2016 | 4 |
| -> 71007051 | Exhibit 6 | 07/11/2016 | 3 |
| -> 71007052 | Exhibit 7 | 07/11/2016 | 6 |
| 70971231 | Out of State Subpoena in a Civil Case | 07/07/2016 | 16 |
| 70987259 | Fourth Amended Notice of Hearing | 07/07/2016 | 2 |
| 70987274 | Fourth Amended Notice of Hearing | 07/07/2016 | 2 |
| 70944978 | Notice of Hearing | 07/05/2016 | 2 |
| 70945003 | Motion to Compel Production | 07/05/2016 | 10 |
| -> 70945006 | Exhibit A | 07/05/2016 | 216 |
| -> 70945007 | Exhibit B | 07/05/2016 | 2 |
| -> 70945008 | Exhibit C | 07/05/2016 | 48 |
| -> 70945009 | Exhibit D | 07/05/2016 | 2 |
| -> 70945010 | Exhibit E | 07/05/2016 | 25 |
| -> 70945011 | Exhibit F | 07/05/2016 | 19 |
| -> 70945004 | Proposed Order | 07/05/2016 | 1 |
| 70888658 | MarOpCo's Motion to Compel Preston Marshall to Produce Documents concerning his Information and Operation of Other Entities While Employed by Maropco | 06/29/2016 | 12 |
| -> 70888659 | Exhibit A | 06/29/2016 | 31 |
| 70889114 | Notice of Oral Hearing | 06/29/2016 | 3 |
| 70890129 | Plaintiffs' Motion to Compel Unredacted Documents | 06/29/2016 | 13 |
| -> 70890130 | Exhibit 01 IN CAMERA | 06/29/2016 | 1 |
| -> 70890131 | Exhibit 02 IN CAMERA | 06/29/2016 | 1 |
| -> 70890132 | Exhibit 03 | 06/29/2016 | 6 |
| -> 70890133 | Exhibit 04 | 06/29/2016 | 7 |
| -> 70890134 | Exhibit 05 | 06/29/2016 | 7 |
| -> 70890136 | Exhibit 07 | 06/29/2016 | 5 |
| -> 70890137 | Exhibit 08 | 06/29/2016 | 5 |
| -> 70890138 | Exhibit 09 | 06/29/2016 | 13 |
| -> 70890139 | Exhibit 10 | 06/29/2016 | 2 |
| -> 70890140 | Exhibit 11 | 06/29/2016 | 5 |
| -> 70890141 | Exhibit 12 | 06/29/2016 | 5 |
| -> 70890142 | Exhibit 13 | 06/29/2016 | 17 |
| -> 70890135 | Exhibit 06 | 06/29/2016 | 3 |

**App. 0011**

| | | | |
|---|---|---|---|
| -> 70890143 | Exhibit 14 | 06/29/2016 | 31 |
| -> 70890144 | Proposed Order | 06/29/2016 | 1 |
| 70842236 | MarOpCo's Notice of Rule 11 Agreement Regarding Scheduling of Certain Depositions | 06/27/2016 | 3 |
| -> 70842237 | Exhibit A | 06/27/2016 | 3 |
| -> 70842238 | Exhibit B | 06/27/2016 | 3 |
| -> 70842239 | Exhibit C | 06/27/2016 | 3 |
| 70801607 | Correspondence to Judge Miller | 06/23/2016 | 2 |
| 70804923 | First Amended Notice of Hearing | 06/23/2016 | 3 |
| 70818089 | Amended Notice of Oral Hearing | 06/23/2016 | 3 |
| 70818095 | Plaintiff Preston Marshall's Notice of Intention to Serve Subpoena Duces Tecum and Oral Deposition of Idzig, LLC | 06/23/2016 | 4 |
| -> 70818096 | Exhibit 1 | 06/23/2016 | 12 |
| 70794644 | Letter to Court Re Scheduling Depositions | 06/22/2016 | 2 |
| -> 70794645 | Exhibit A | 06/22/2016 | 5 |
| -> 70794646 | Exhibit B | 06/22/2016 | 3 |
| -> 70794648 | Exhibit D | 06/22/2016 | 5 |
| -> 70794649 | Exhibit E | 06/22/2016 | 2 |
| -> 70794650 | Exhibit F | 06/22/2016 | 2 |
| -> 70794651 | Exhibit G | 06/22/2016 | 3 |
| -> 70794652 | Exhibit H | 06/22/2016 | 13 |
| -> 70794647 | Exhibit C | 06/22/2016 | 3 |
| 70795234 | Response to Plaintiffs Motion for Expedited Special Appearance Hearing and Counter Motion to Compel Preston Marshall's Deposition | 06/22/2016 | 10 |
| -> 70795236 | Exhibit B | 06/22/2016 | 2 |
| -> 70795238 | Exhibit D | 06/22/2016 | 3 |
| -> 70795235 | Exhibit A | 06/22/2016 | 5 |
| -> 70795237 | Exhibit C | 06/22/2016 | 2 |
| -> 70795240 | Notice of Hearing | 06/22/2016 | 3 |
| -> 70795239 | Proposed Order | 06/22/2016 | 1 |
| 70779730 | Motion for Expedited Special Appearance Hearing | 06/21/2016 | 7 |
| -> 70779731 | Exhibit 01 | 06/21/2016 | 1 |
| -> 70779732 | Exhibit 02 | 06/21/2016 | 1 |
| -> 70779733 | Exhibit 03 | 06/21/2016 | 1 |
| -> 70779734 | Exhibit 04 | 06/21/2016 | 1 |
| -> 70779735 | Exhibit 05 | 06/21/2016 | 1 |
| -> 70779736 | Exhibit 06 | 06/21/2016 | 1 |
| -> 70779737 | Exhibit 07 | 06/21/2016 | 7 |
| -> 70779738 | Exhibit 08 | 06/21/2016 | 9 |
| -> 70779739 | Exhibit 09 | 06/21/2016 | 1 |
| -> 70779740 | Exhibit 10 | 06/21/2016 | 3 |
| -> 70779741 | Exhibit 11 | 06/21/2016 | 2 |
| -> 70779742 | Exhibit 12 | 06/21/2016 | 1 |
| -> 70779743 | Exhibit 13 | 06/21/2016 | 2 |

Office of Harris County District Clerk - Chris Daniel

| | | | |
|---|---|---|---|
| -> 70779745 | Notice of Hearing | 06/21/2016 | 3 |
| -> 70779744 | Proposed Order | 06/21/2016 | 1 |
| 70688231 | ORDER DENYING EXPEDITED DISCOVERY SIGNED | 06/17/2016 | 1 |
| 70688330 | ORDER SIGNED COMPELLING PRODUCTION IN PART SEE ORDER | 06/17/2016 | 21 |
| 70690892 | ORD SGN DENYING PROTECTION FROM DISCOVERY REQUEST<br>ORDER SIGNED COMPELLING PRODUCTION | 06/17/2016<br>06/17/2016 | 2 |
| 70690894 | ORD SGN DENYING PROTECTION FROM DISCOVERY REQUEST | 06/17/2016 | 1 |
| 70644772 | Reporter's Certificate Oral Videotaped Deposition of Eyvonne Scurlock April 29, 2016 | 06/15/2016 | 6 |
| 70650045 | Letter To Judge Miller | 06/15/2016 | 1 |
| -> 70650046 | Proposed Order Granting Defendant Maropco, Inc.'s Motion to Compel Document Subpoena of Kainon Consulting D/B/A W.M. Shirley and Denying Plaintiffs' Motion for Protection | 06/15/2016 | 2 |
| 70623005 | Defendant's First Amended Counterclaim | 06/14/2016 | 23 |
| 70630935 | Third Amended Notice of Hearing | 06/14/2016 | 2 |
| 70631023 | Third Amended Notice of Hearing | 06/14/2016 | 2 |
| 70611846 | Proposed Order | 06/13/2016 | 4 |
| -> 70611847 | Exhibit 1 | 06/13/2016 | 4 |
| -> 70611848 | Exhibit 2 | 06/13/2016 | 1 |
| -> 70611849 | Exhibit 3 | 06/13/2016 | 3 |
| -> 70611850 | Exhibit 4 | 06/13/2016 | 9 |
| -> 70611845 | Letter to Court | 06/13/2016 | 2 |
| 70611856 | Letter to Judge Miller | 06/13/2016 | 2 |
| -> 70611857 | Proposed Order | 06/13/2016 | 5 |
| 70611873 | Reporter's Certification Deposition of Sheldon J. Black, C.P.A. | 06/13/2016 | 6 |
| 70597003 | Proposed Order granting defendant maropco, inc.'s motion o compel document subpoena of kainon consulting d/b/a w.m. Shirley and deny plaintiffs' motion for protection | 06/10/2016 | 2 |
| 70597110 | Proposed Order | 06/10/2016 | 1 |
| 70597111 | Proposed Order | 06/10/2016 | 1 |
| 70597133 | Second Amended Notice of Hearing | 06/10/2016 | 2 |
| 70597139 | Second Amended Notice of Hearing | 06/10/2016 | 2 |
| 70611414 | ORDER SIGNED DENYING MOTION TO COMPEL PRODUCTION | 06/10/2016 | 1 |
| 70577259 | Letter to Court re Attorneys' Eyes Only Procedure | 06/09/2016 | 2 |
| 70526603 | Defendant E. Pierce Marshall, Jr.'s Joinder in Maropco, Inc.'s Motion to Find Disputed Emails to be Non-Privilaged | 06/07/2016 | 6 |
| 70538960 | Filing Letter | 06/07/2016 | 1 |
| -> 70538961 | Supplemental Exhibit to Plaintiffs' Response to Maropco's Motion to Expedite | 06/07/2016 | 8 |
| 70538973 | Letter to Court re Scheduling Order and Discovery | 06/07/2016 | 2 |
| -> 70538974 | Exhibit A | 06/07/2016 | 3 |
| -> 70538975 | Exhibit B | 06/07/2016 | 4 |
| -> 70538976 | Exhibit C | 06/07/2016 | 3 |
| 70539000 | Defendant Maropco, Inc's Reply in support of Motion to Find Disputed Emails to be Non-Privileged and to Compel Privilege Log | 06/07/2016 | 13 |
| 70539032 | Plaintiff's Response to MarOpCo's, inc.'s Motion to Compel Document Subpoena Kainon Consulting d/b/a WM Shirley | 06/07/2016 | 7 |
| -> 70539033 | Exhibit 01 | 06/07/2016 | 2 |

**App. 0013**

| | | | |
|---|---|---|---|
| -> 70539034 | Exhibit 02 | 06/07/2016 | 3 |
| -> 70539035 | Exhibit 03 | 06/07/2016 | 3 |
| -> 70539036 | Exhibit 04 | 06/07/2016 | 3 |
| -> 70539037 | Exhibit 05 | 06/07/2016 | 6 |
| -> 70539039 | Exhibit 06 | 06/07/2016 | 11 |
| -> 70539040 | Exhibit 07 | 06/07/2016 | 6 |
| -> 70539041 | Exhibit 08 | 06/07/2016 | 4 |
| -> 70539042 | Exhibit 09 | 06/07/2016 | 7 |
| -> 70539043 | Exhibit 10 | 06/07/2016 | 10 |
| -> 70539044 | Proposed Order | 06/07/2016 | 1 |
| 70494025 | Defendant Maropco, Inc.'s Reply in Support of Motion to Compel Return of Maropco.com Emails Improperly Retained by Preston Marshall | 06/06/2016 | 9 |
| -> 70494026 | Exhibit A | 06/06/2016 | 5 |
| 70505420 | Plaintiffs' Response to Maropco, Inc.'s Motion to Compel Production of Financial and Business Records Against Rusk Capital Management, LLC | 06/06/2016 | 6 |
| -> 70505421 | Exhibit 1 | 06/06/2016 | 2 |
| -> 70505422 | Exhibit 2 | 06/06/2016 | 5 |
| -> 70505423 | Proposed Order | 06/06/2016 | 1 |
| 70505956 | MarOpCo's Response to Plaintiff's Motion to Compel | 06/06/2016 | 20 |
| -> 70505957 | Exhibit A | 06/06/2016 | 4 |
| -> 70505984 | Exhibit AA | 06/06/2016 | 4 |
| -> 70505958 | Exhibit B | 06/06/2016 | 44 |
| -> 70505985 | Exhibit BB | 06/06/2016 | 4 |
| -> 70505959 | Exhibit C | 06/06/2016 | 10 |
| -> 70505986 | Exhibit CC | 06/06/2016 | 13 |
| -> 70505960 | Exhibit D | 06/06/2016 | 3 |
| -> 70505988 | Exhibit DD | 06/06/2016 | 5 |
| -> 70505961 | Exhibit E | 06/06/2016 | 2 |
| -> 70505989 | Exhibit EE | 06/06/2016 | 4 |
| -> 70505962 | Exhibit F | 06/06/2016 | 6 |
| -> 70505990 | Exhibit FF | 06/06/2016 | 4 |
| -> 70505964 | Exhibit G | 06/06/2016 | 8 |
| -> 70505991 | Exhibit GG | 06/06/2016 | 3 |
| -> 70505965 | Exhibit H | 06/06/2016 | 5 |
| -> 70505992 | Exhibit HH | 06/06/2016 | 16 |
| -> 70505966 | Exhibit I | 06/06/2016 | 3 |
| -> 70505993 | Exhibit II | 06/06/2016 | 2 |
| -> 70505967 | Exhibit J | 06/06/2016 | 21 |
| -> 70505994 | Exhibit JJ | 06/06/2016 | 21 |
| -> 70505968 | Exhibit K | 06/06/2016 | 16 |
| -> 70505995 | Exhibit KK | 06/06/2016 | 2 |
| -> 70505969 | Exhibit L | 06/06/2016 | 13 |
| -> 70505970 | Exhibit M | 06/06/2016 | 25 |

| | | | |
|---|---|---|---|
| > 70505971 | Exhibit N | 06/06/2016 | 13 |
| > 70505972 | Exhibit O | 06/06/2016 | 2 |
| > 70505973 | Exhibit P | 06/06/2016 | 5 |
| > 70505974 | Exhibit Q | 06/06/2016 | 10 |
| > 70505975 | Exhibit R | 06/06/2016 | 4 |
| > 70505976 | Exhibit S | 06/06/2016 | 2 |
| > 70505977 | Exhibit T | 06/06/2016 | 5 |
| > 70505978 | Exhibit U | 06/06/2016 | 4 |
| > 70505979 | Exhibit V | 06/06/2016 | 5 |
| > 70505980 | Exhibit W | 06/06/2016 | 3 |
| > 70505981 | Exhibit X | 06/06/2016 | 12 |
| > 70505982 | Exhibit Y | 06/06/2016 | 11 |
| > 70505983 | Exhibit Z | 06/06/2016 | 9 |
| 70506202 | Plaintiffs' Response to MarOpCo, INC's Motion to Find Disputed Emails To Be Non-Privileged and to Compel Privilege Log | 06/06/2016 | 18 |
| > 70506203 | Exhibit 01 | 06/06/2016 | 5 |
| > 70506204 | Exhibit 02 | 06/06/2016 | 4 |
| > 70506205 | Exhibit 03 | 06/06/2016 | 5 |
| > 70506206 | Exhibit 04 | 06/06/2016 | 6 |
| > 70506207 | Exhibit 05 | 06/06/2016 | 3 |
| > 70506208 | Exhibit 06 | 06/06/2016 | 7 |
| > 70506210 | Exhibit 08 | 06/06/2016 | 2 |
| > 70506211 | Exhibit 09 | 06/06/2016 | 12 |
| > 70506212 | Exhibit 10 | 06/06/2016 | 47 |
| > 70506213 | Exhibit 11 | 06/06/2016 | 4 |
| > 70506214 | Exhibit 12 | 06/06/2016 | 8 |
| > 70506215 | Exhibit 13 | 06/06/2016 | 2 |
| > 70506216 | Exhibit 14 | 06/06/2016 | 209 |
| > 70506209 | Exhibited 07 SUBMITTED IN CAMERA | 06/06/2016 | 1 |
| > 70506217 | Proposed Order | 06/06/2016 | 1 |
| 70506373 | Maropco's Reply to Plaintiffs' Response to Maropco's Motion to Expedite Special Master Process by Making Ownership Determinations | 06/06/2016 | 12 |
| > 70506374 | Exhibit A | 06/06/2016 | 4 |
| > 70506375 | Exhibit B | 06/06/2016 | 10 |
| > 70506376 | Exhibit C | 06/06/2016 | 9 |
| > 70506377 | Exhibit D | 06/06/2016 | 44 |
| > 70506378 | Exhibit E | 06/06/2016 | 3 |
| 70514387 | Notice of Appearance | 06/01/2016 | 3 |
| 70515515 | Notice of Oral Hearing | 06/01/2016 | 3 |
| 70515525 | Plaintiffs' Response to Maropco, Inc.'s Motion to Expedite Special Master Process by Making Ownership Determinations, Motion to Strike, and Alternatively, Motion to Enforce and Continue | 06/01/2016 | 19 |
| > 70515526 | Exhibit 01 | 06/01/2016 | 5 |

| | | | |
|---|---|---|---|
| -> 70515527 | Exhibit 02 | 06/01/2016 | 13 |
| -> 70515528 | Exhibit 03 | 06/01/2016 | 26 |
| -> 70515529 | Exhibit 04 | 06/01/2016 | 45 |
| -> 70515530 | Exhibit 05 | 06/01/2016 | 4 |
| -> 70515531 | Exhibit 06 | 06/01/2016 | 1 |
| -> 70515532 | Exhibit 07 | 06/01/2016 | 1 |
| -> 70515533 | Exhibit 08 | 06/01/2016 | 17 |
| -> 70515534 | Exhibit 09 | 06/01/2016 | 46 |
| -> 70515535 | Exhibit 10 | 06/01/2016 | 2 |
| -> 70515536 | Exhibit 11 | 06/01/2016 | 4 |
| -> 70515537 | Exhibit 12 | 06/01/2016 | 3 |
| -> 70515538 | Exhibit 13 | 06/01/2016 | 3 |
| -> 70515539 | Proposed Order | 06/01/2016 | 1 |
| -> 70515540 | Proposed Order | 06/01/2016 | 2 |
| 70518643 | Plaintiffs' Response to Maropco, Inc.'s Motion to Compel Return of Maropco.com Emails | 06/01/2016 | 17 |
| -> 70518648 | Exhibit 03 In Camera | 06/01/2016 | 1 |
| -> 70518650 | Exhibit 04 In Camera | 06/01/2016 | 1 |
| -> 70518652 | Exhibit 05 | 06/01/2016 | 1 |
| -> 70518654 | Exhibit 06 In Camera | 06/01/2016 | 1 |
| -> 70518655 | Exhibit 07 | 06/01/2016 | 1 |
| -> 70518657 | Exhibit 08 | 06/01/2016 | 1 |
| -> 70518658 | Exhibit 09 | 06/01/2016 | 2 |
| -> 70518645 | Exhibit 1 In Camera | 06/01/2016 | 1 |
| -> 70518660 | Exhibit 10 | 06/01/2016 | 12 |
| -> 70518662 | Exhibit 11 In Camera | 06/01/2016 | 1 |
| -> 70518663 | Exhibit 12 In Camera | 06/01/2016 | 1 |
| -> 70518664 | Exhibit 13 | 06/01/2016 | 1 |
| -> 70518665 | Exhibit 14 In Camera | 06/01/2016 | 1 |
| -> 70518666 | Exhibit 15 | 06/01/2016 | 13 |
| -> 70518667 | Exhibit 16 | 06/01/2016 | 9 |
| -> 70518647 | Exhibit 2 In Camera | 06/01/2016 | 1 |
| -> 70518668 | Proposed Order | 06/01/2016 | 1 |
| 70448807 | Reporter's Certification Deposition of Miltown Fry April 22, 2016 | 05/31/2016 | 3 |
| -> 70448808 | Changes and Signature | 05/31/2016 | 2 |
| 70485794 | Defendant Edwin K. Hunters Brief in Support of Special Appearance | 05/31/2016 | 18 |
| -> 70485795 | Exhibit 1 | 05/31/2016 | 3 |
| -> 70485796 | Exhibit 2 | 05/31/2016 | 12 |
| 70485822 | Defendant Hunter, Hunter & Sonier, LLCs Brief in Support of Special Appearance | 05/31/2016 | 19 |
| -> 70485823 | Exhibit 1 | 05/31/2016 | 3 |
| -> 70485824 | Exhibit 2 | 05/31/2016 | 12 |
| 70437418 | Notice of Hearing | 05/27/2016 | 3 |
| 70438795 | Rule 11 Agreement | 05/27/2016 | 1 |

**App. 0016**

Office of Harris County District Clerk - Chris Daniel                                            Page 14 of 33

| | | | |
|---|---|---|---|
| 70438799 | Rule 11 Agreement | 05/27/2016 | 3 |
| 70444945 | Officer's Return | 05/27/2016 | 3 |
| 70418773 | Amended Notice of Hearing on MAROPCO'S Motions | 05/26/2016 | 3 |
| 70418777 | Second Amended Notice of Oral Hearing | 05/26/2016 | 3 |
| 70424669 | Defendant Maropco, Inc's Motion to Compel Document Subpoena as to Kainon, Consulting d/b/a WM Shirley and Deny Plaintiffs' Motion for Protection | 05/26/2016 | 8 |
| -> 70424670 | Exhibit A | 05/26/2016 | 12 |
| -> 70424671 | Exhibit B | 05/26/2016 | 2 |
| -> 70424672 | Exhibit C | 05/26/2016 | 4 |
| -> 70424673 | Exhibit D | 05/26/2016 | 5 |
| -> 70424674 | Exhibit E | 05/26/2016 | 9 |
| -> 70424675 | Exhibit F | 05/26/2016 | 10 |
| 70405738 | Officer's Return | 05/25/2016 | 3 |
| 70414017 | Notice of Hearing on Maropcos Motions | 05/25/2016 | 3 |
| 70414042 | Amended Notice of Oral Hearing | 05/25/2016 | 3 |
| 70353617 | Notice of Oral Hearing | 05/20/2016 | 3 |
| 70353745 | Plaintiffs' Motion to Compel | 05/20/2016 | 48 |
| -> 70353746 | Exhibit 01 | 05/20/2016 | 4 |
| -> 70353747 | Exhibit 02 | 05/20/2016 | 16 |
| -> 70353748 | Exhibit 03 | 05/20/2016 | 13 |
| -> 70353749 | Exhibit 04 | 05/20/2016 | 18 |
| -> 70353750 | Exhibit 05 | 05/20/2016 | 21 |
| -> 70353751 | Exhibit 06 - In Camera | 05/20/2016 | 1 |
| -> 70353752 | Exhibit 07 - In Camera | 05/20/2016 | 1 |
| -> 70353753 | Exhibit 08 - In Camera | 05/20/2016 | 1 |
| -> 70353754 | Exhibit 09 | 05/20/2016 | 6 |
| -> 70402142 | Exhibit 1 | 05/20/2016 | 8 |
| -> 70353755 | Exhibit 10 - In Camera | 05/20/2016 | 1 |
| -> 70353756 | Exhibit 11 - In Camera | 05/20/2016 | 1 |
| -> 70353757 | Exhibit 12 - In Camera | 05/20/2016 | 1 |
| -> 70353758 | Exhibit 13 | 05/20/2016 | 1 |
| -> 70353759 | Exhibit 14 - In Camera | 05/20/2016 | 1 |
| -> 70353760 | Exhibit 15 | 05/20/2016 | 5 |
| -> 70353761 | Exhibit 16 | 05/20/2016 | 12 |
| -> 70353762 | Exhibit 17 | 05/20/2016 | 11 |
| -> 70353763 | Exhibit 18 | 05/20/2016 | 16 |
| -> 70353764 | Exhibit 19 | 05/20/2016 | 4 |
| -> 70353765 | Exhibit 20 | 05/20/2016 | 4 |
| -> 70353766 | Exhibit 21 | 05/20/2016 | 5 |
| -> 70353767 | Exhibit 22 | 05/20/2016 | 11 |
| -> 70353768 | Exhibit 23 | 05/20/2016 | 4 |
| -> 70353769 | Exhibit 24 | 05/20/2016 | 12 |

**App. 0017**

| | | | |
|---|---|---|---|
| -> 70402141 | Exhibit 25 | 05/20/2016 | 101 |
| -> 70353771 | Exhibit 26 | 05/20/2016 | 2 |
| -> 70353772 | Exhibit 27 | 05/20/2016 | 6 |
| -> 70353773 | Exhibit 28 | 05/20/2016 | 6 |
| -> 70353774 | Exhibit 29 | 05/20/2016 | 20 |
| -> 70402143 | Exhibit 3 | 05/20/2016 | 23 |
| -> 70353775 | Exhibit 30 | 05/20/2016 | 26 |
| -> 70353776 | Exhibit 31 | 05/20/2016 | 6 |
| -> 70353777 | Exhibit 32 | 05/20/2016 | 5 |
| -> 70353778 | Exhibit 33 | 05/20/2016 | 4 |
| -> 70353779 | Exhibit 34 - In Camera | 05/20/2016 | 1 |
| -> 70353780 | Exhibit 35 - In Camera | 05/20/2016 | 1 |
| -> 70353781 | Exhibit 36 - IN CAMERA | 05/20/2016 | 1 |
| -> 70353782 | Exhibit 37 - In Camera | 05/20/2016 | 1 |
| -> 70353783 | Exhibit 38 - In Camera | 05/20/2016 | 1 |
| -> 70353784 | Exhibit 39 - In Camera | 05/20/2016 | 1 |
| -> 70402144 | Exhibit 4 | 05/20/2016 | 62 |
| -> 70353785 | Exhibit 40 - In Camera | 05/20/2016 | 1 |
| -> 70353786 | Exhibit 41 | 05/20/2016 | 23 |
| -> 70353787 | Exhibit 42 - In Camera | 05/20/2016 | 1 |
| -> 70353788 | Exhibit 43 - In Camera | 05/20/2016 | 1 |
| -> 70353789 | Exhibit 44 | 05/20/2016 | 26 |
| -> 70353790 | Exhibit 45 - In Camera | 05/20/2016 | 1 |
| -> 70353791 | Exhibit 46 | 05/20/2016 | 21 |
| -> 70353792 | Exhibit 47 | 05/20/2016 | 25 |
| -> 70353793 | Exhibit 48 - In Camera | 05/20/2016 | 1 |
| -> 70353794 | Exhibit 49 - In Camera | 05/20/2016 | 1 |
| -> 70353795 | Exhibit 50 - In Camera | 05/20/2016 | 1 |
| -> 70353796 | Exhibit 51 - In Camera | 05/20/2016 | 1 |
| -> 70353797 | Exhibit 52 - In Camera | 05/20/2016 | 1 |
| -> 70353798 | Exhibit 53 | 05/20/2016 | 80 |
| -> 70353799 | Exhibit 54 | 05/20/2016 | 78 |
| -> 70353800 | Exhibit 55 | 05/20/2016 | 4 |
| -> 70353801 | Exhibit 56 | 05/20/2016 | 10 |
| -> 70353802 | Exhibit 57 | 05/20/2016 | 3 |
| -> 70353803 | Exhibit 58 | 05/20/2016 | 14 |
| -> 70353804 | Exhibit 59 | 05/20/2016 | 5 |
| -> 70353805 | Proposed Order | 05/20/2016 | 14 |
| 70307236 | Amended Notice of Hearing | 05/18/2016 | 3 |
| 70307242 | Notice of Hearing | 05/18/2016 | 3 |
| 70307244 | Defendant Maropco, Inc.'s Motion to Compel Return of Maropco.Com Emails Improperly Retained by Preston Marshall | 05/18/2016 | 7 |

**App. 0018**

| | | | |
|---|---|---|---|
| -> 70307245 | Exhibit A | 05/18/2016 | 12 |
| -> 70307246 | Exhibit B | 05/18/2016 | 4 |
| -> 70307247 | Exhibit C | 05/18/2016 | 10 |
| -> 70307248 | Exhibit D | 05/18/2016 | 6 |
| -> 70307249 | Exhibit E | 05/18/2016 | 8 |
| -> 70307250 | Exhibit F | 05/18/2016 | 8 |
| -> 70307251 | Exhibit G | 05/18/2016 | 13 |
| -> 70307252 | Exhibit H | 05/18/2016 | 2 |
| -> 70307253 | Exhibit I | 05/18/2016 | 47 |
| -> 70307254 | Exhibit J | 05/18/2016 | 3 |
| 70283253 | Notice of Hearing | 05/17/2016 | 3 |
| 70252789 | Rule 203 certification | 05/16/2016 | 1 |
| 70266972 | Defendant Maropco, Inc.'s Motion to Find Disputed Emails to be Non-Privileged and to Compel Privilege Log | 05/16/2016 | 22 |
| -> 70266988 | Exhibit O-1 | 05/16/2016 | 47 |
| -> 70266973 | Exhibit A | 05/16/2016 | 3 |
| -> 70266974 | Exhibit B | 05/16/2016 | 6 |
| -> 70266975 | Exhibit C - Filed in Camera | 05/16/2016 | 1 |
| -> 70266976 | Exhibit D - Filed in Camera | 05/16/2016 | 1 |
| -> 70266977 | Exhibit E - Filed in Camera | 05/16/2016 | 1 |
| -> 70266978 | Exhibit F - Filed in Camera | 05/16/2016 | 1 |
| -> 70266979 | Exhibit G - Filed in Camera | 05/16/2016 | 1 |
| -> 70266980 | Exhibit H - Filed in Camera | 05/16/2016 | 1 |
| -> 70266981 | Exhibit I - Filed in Camera | 05/16/2016 | 1 |
| -> 70266982 | Exhibit J | 05/16/2016 | 24 |
| -> 70266983 | Exhibit K | 05/16/2016 | 4 |
| -> 70266984 | Exhibit L | 05/16/2016 | 2 |
| -> 70266985 | Exhibit M | 05/16/2016 | 8 |
| -> 70266986 | Exhibit N | 05/16/2016 | 12 |
| -> 70266987 | Exhibit O | 05/16/2016 | 3 |
| -> 70266989 | Exhibit P | 05/16/2016 | 13 |
| -> 70266990 | Exhibit Q | 05/16/2016 | 20 |
| -> 70266991 | Exhibit R | 05/16/2016 | 13 |
| -> 70266992 | Proposed Order | 05/16/2016 | 1 |
| 70225903 | Filing Letter Regarding Exhibits | 05/13/2016 | 1 |
| -> 70225904 | Exhibit 21 | 05/13/2016 | 22 |
| -> 70225905 | Exhibit 22 | 05/13/2016 | 13 |
| -> 70225906 | Exhibit 23 | 05/13/2016 | 2 |
| -> 70225907 | Exhibit 24 | 05/13/2016 | 23 |
| -> 70225908 | Exhibit 25 | 05/13/2016 | 23 |
| -> 70225909 | Exhibit 26 | 05/13/2016 | 23 |
| -> 70225910 | Exhibit 27 | 05/13/2016 | 2 |

| 70233698 | Defendants Maropco, Inc. and E. Pierce Marshall, Jr.'s Motion for Protection | 05/13/2016 | 6 |
| > 70233699 | Exhibit 1 | 05/13/2016 | 5 |
| > 70233700 | Exhibit 2 | 05/13/2016 | 4 |
| > 70239211 | Notice of Hearing | 05/13/2016 | 3 |
| 70233752 | Notice of Hearing | 05/13/2016 | 3 |
| 70236485 | Notice of Hearing | 05/13/2016 | 3 |
| 70225920 | Maropco's Motion to Expedite Special Master Process by Making Ownership Determination | 05/12/2016 | 17 |
| > 70225921 | Exhibit 01 | 05/12/2016 | 4 |
| > 70225922 | Exhibit 02 | 05/12/2016 | 2 |
| > 70225923 | Exhibit 03 | 05/12/2016 | 13 |
| > 70225924 | Exhibit 04 | 05/12/2016 | 124 |
| > 70225925 | Exhibit 05 | 05/12/2016 | 2 |
| > 70225926 | Exhibit 06 | 05/12/2016 | 25 |
| > 70225927 | Exhibit 07 | 05/12/2016 | 3 |
| > 70225928 | Exhibit 08 | 05/12/2016 | 11 |
| > 70225929 | Exhibit 09 | 05/12/2016 | 2 |
| > 70225930 | Exhibit 10 | 05/12/2016 | 16 |
| > 70225931 | Exhibit 11 | 05/12/2016 | 3 |
| > 70225932 | Exhibit 12 | 05/12/2016 | 16 |
| > 70225933 | Exhibit 13 | 05/12/2016 | 2 |
| > 70225934 | Exhibit 14 | 05/12/2016 | 21 |
| > 70225935 | Exhibit 15 | 05/12/2016 | 6 |
| > 70225936 | Exhibit 16 | 05/12/2016 | 7 |
| > 70225937 | Exhibit 17 | 05/12/2016 | 7 |
| > 70225938 | Exhibit 18 | 05/12/2016 | 6 |
| > 70225939 | Exhibit 19 | 05/12/2016 | 13 |
| > 70225940 | Exhibit 20 | 05/12/2016 | 5 |
| 70206784 | Defendant Maropco, Inc.'s Motion to Compel Production of Financial and Business Records Against Plaintiff Rusk Capital Management, LLC | 05/11/2016 | 8 |
| > 70206785 | Exhibit A | 05/11/2016 | 16 |
| 70185511 | Amended Notice of Hearing | 05/10/2016 | 2 |
| 70185521 | Amended Notice of Hearing | 05/10/2016 | 2 |
| 70142607 | Defendant Maropco, Inc.'s Reply in Support of Motion to Enforce Special Master Order Based on False Affidavit and Manipulation of Flash Drive | 05/06/2016 | 10 |
| > 70142608 | Exhibit A | 05/06/2016 | 2 |
| > 70142610 | Exhibit B | 05/06/2016 | 3 |
| > 70142611 | Exhibit C | 05/06/2016 | 3 |
| > 70142612 | Exhibit D | 05/06/2016 | 4 |
| > 70142613 | Exhibit E | 05/06/2016 | 3 |
| 70142666 | Proposed Order Granting Pritchard Industries, Inc.'s Motion for Protection | 05/06/2016 | 1 |
| > 70142665 | Filing Letter | 05/06/2016 | 1 |
| 70213534 | Pritchard Industries Inc.'s Objections to Subpoena and Motion for Protection | 05/06/2016 | 7 |

| | | | |
|---|---|---|---|
| -> 70213535 | Proposed order | 05/06/2016 | 1 |
| 70126047 | Plaintiffs' Response to Maropco, Inc.'s Motion to Enforce Special Master Order Based on Preston's False Affidavit and Manipulation of Flash Drive | 05/05/2016 | 20 |
| -> 70126050 | Exhibit 1 | 05/05/2016 | 3 |
| -> 70126061 | Exhibit 10 | 05/05/2016 | 3 |
| -> 70126062 | Exhibit 11 | 05/05/2016 | 1 |
| -> 70126063 | Exhibit 12 | 05/05/2016 | 1 |
| -> 70126064 | Exhibit 13 | 05/05/2016 | 4 |
| -> 70126065 | Exhibit 14 | 05/05/2016 | 4 |
| -> 70126066 | Exhibit 15 | 05/05/2016 | 4 |
| -> 70126067 | Exhibit 16 | 05/05/2016 | 5 |
| -> 70126068 | Exhibit 17 | 05/05/2016 | 208 |
| -> 70126069 | Exhibit 18 | 05/05/2016 | 13 |
| -> 70126051 | Exhibit 2 | 05/05/2016 | 3 |
| -> 70126052 | Exhibit 3 | 05/05/2016 | 7 |
| -> 70126054 | Exhibit 4 | 05/05/2016 | 2 |
| -> 70126056 | Exhibit 5 | 05/05/2016 | 5 |
| -> 70126057 | Exhibit 6 | 05/05/2016 | 28 |
| -> 70126058 | Exhibit 7 | 05/05/2016 | 3 |
| -> 70126059 | Exhibit 8 | 05/05/2016 | 2 |
| -> 70126060 | Exhibit 9 | 05/05/2016 | 3 |
| 70075680 | ORDER RESETTING TRIAL | 05/03/2016 | 5 |
| 70075630 | Deputy Reporter Statement | 05/02/2016 | 1 |
| 70018264 | Notice of Hearing | 04/29/2016 | 3 |
| 70029207 | Proposed Order | 04/29/2016 | 1 |
| 69999936 | Discovery Subpoena | 04/28/2016 | 3 |
| 69988418 | Subpoena Return | 04/27/2016 | 3 |
| 69973742 | Plaintiffs' Verified Motion for Continuance | 04/26/2016 | 4 |
| 69956716 | E. Pierce Marshall Jr's Motion for Protection | 04/25/2016 | 7 |
| -> 69956717 | Exhibit 1 | 04/25/2016 | 20 |
| -> 69956718 | Exhibit 2 | 04/25/2016 | 14 |
| -> 69956719 | Exhibit 3 | 04/25/2016 | 44 |
| -> 69956720 | Exhibit 4 | 04/25/2016 | 13 |
| -> 69956721 | Exhibit 5 | 04/25/2016 | 4 |
| 69898353 | Reporter's Certification Depositon of Milton Roy Fry, P.E. March 31, 2016 | 04/21/2016 | 5 |
| 69898520 | Defendant MarOpCo, Inc.'s Motion to Enforce Special Master Order Based on Preston's False Affidavit and Manipulation of Flash Drive | 04/21/2016 | 12 |
| -> 69898521 | Exhibit A | 04/21/2016 | 4 |
| -> 69898522 | Exhibit B | 04/21/2016 | 3 |
| -> 69898523 | Exhibit C | 04/21/2016 | 5 |
| -> 69898524 | Exhibit D | 04/21/2016 | 2 |
| -> 69898525 | Exhibit E | 04/21/2016 | 2 |
| -> 69898526 | Proposed Order | 04/21/2016 | 2 |

Office of Harris County District Clerk - Chris Daniel                                      Page 19 of 33

| 69901730 | Plaintiffs Demand for Jury Trial | 04/21/2016 | 3 |
| 69903222 | Proposed Order | 04/21/2016 | 2 |
| 69903648 | Notice of Hearing | 04/21/2016 | 3 |
| 69873853 | Discovery Subpoena | 04/20/2016 | 10 |
| 69869379 | Amended Notice of Oral Hearing | 04/19/2016 | 3 |
| 69869397 | Notice of Hearing | 04/19/2016 | 3 |
| 69845383 | Plaintiffs' Joint Reply to Defendants' Responses to Plaintiffs' Motion to Compel and Response to Defendants' Motion to Compel | 04/15/2016 | 6 |
| -> 69845384 | Exhibit 1 | 04/15/2016 | 5 |
| -> 69845385 | Exhibit 2 | 04/15/2016 | 4 |
| -> 69845386 | Exhibit 3 | 04/15/2016 | 2 |
| 69821269 | Amended Discovery Subpoena | 04/14/2016 | 4 |
| 69821642 | Defendant Pierce Marshall Jr's Response to Plaintiffs' Motion to Compel Depositions, and Cross Motion to Compel | 04/14/2016 | 6 |
| -> 69821643 | Exhibit A | 04/14/2016 | 4 |
| -> 69821644 | Exhibit B | 04/14/2016 | 3 |
| -> 69821645 | Exhibit C | 04/14/2016 | 4 |
| -> 69821646 | Exhibit D | 04/14/2016 | 3 |
| 69826983 | Response in Opposition to Plaintiffs' Motion to Compel Depositions | 04/14/2016 | 5 |
| 69827290 | Defendant /Counter-Plaintiff Maropco, Inc.'s Response to Motion to Compel Deposition, and Cross-Motion to Compel Deposition of Preston Marshall | 04/14/2016 | 7 |
| -> 69961048 | Exhibit 1 | 04/14/2016 | 11 |
| -> 69961141 | Exhibit 1 | 04/14/2016 | 14 |
| -> 69961050 | Exhibit 2 | 04/14/2016 | 3 |
| -> 69961142 | Exhibit 2 | 04/14/2016 | 1 |
| -> 69961143 | Exhibit 3 | 04/14/2016 | 2 |
| -> 69961144 | Exhibit 4 | 04/14/2016 | 4 |
| -> 69961145 | Exhibit 5 | 04/14/2016 | 16 |
| -> 69834895 | Exhibit A | 04/14/2016 | 12 |
| -> 69834896 | Exhibit B | 04/14/2016 | 14 |
| -> 69834897 | Exhibit C | 04/14/2016 | 8 |
| -> 69834898 | Exhibit D | 04/14/2016 | 10 |
| -> 69834899 | Exhibit E | 04/14/2016 | 8 |
| -> 69834900 | Exhibit F | 04/14/2016 | 6 |
| -> 69834901 | Exhibit G | 04/14/2016 | 6 |
| -> 69834903 | Exhibit H | 04/14/2016 | 6 |
| -> 69834904 | Exhibit I | 04/14/2016 | 17 |
| -> 69961140 | Exhibit J | 04/14/2016 | 10 |
| -> 69834906 | Exhibit K | 04/14/2016 | 4 |
| 69847332 | First court of appeals (Memorandum Opinion) | 04/14/2016 | 2 |
| 69848407 | Postcards (First Court of Appeals) | 04/14/2016 | 8 |
| 69797837 | Discovery Subpoena Duces Tecum | 04/13/2016 | 5 |
| 69801804 | Discovery Subpoena | 04/13/2016 | 6 |

App. 0022

Office of Harris County District Clerk - Chris Daniel                                   Page 20 of 33

| | | | |
|---|---|---|---|
| 69789892 | Plaintiffs' Motion to Compel Depositions | 04/12/2016 | 7 |
| > 69789894 | Exhibit 02 | 04/12/2016 | 2 |
| > 69789895 | Exhibit 03 | 04/12/2016 | 3 |
| > 69789896 | Exhibit 04 | 04/12/2016 | 1 |
| > 69789897 | Exhibit 05 | 04/12/2016 | 1 |
| > 69789898 | Exhibit 06 | 04/12/2016 | 3 |
| > 69789899 | Exhibit 07 | 04/12/2016 | 2 |
| > 69789900 | Exhibit 08 | 04/12/2016 | 2 |
| > 69789901 | Exhibit 09 | 04/12/2016 | 3 |
| > 69960859 | Exhibit 1 | 04/12/2016 | 11 |
| > 69789902 | Exhibit 10 | 04/12/2016 | 1 |
| > 69789903 | Exhibit 11 | 04/12/2016 | 1 |
| > 69960860 | Exhibit A | 04/12/2016 | 12 |
| > 69960861 | Exhibit B | 04/12/2016 | 4 |
| > 69789905 | Notice of Hearing | 04/12/2016 | 3 |
| > 69789904 | Proposed Order | 04/12/2016 | 1 |
| 69719481 | Discovery Subpoena Duces Tecum | 04/07/2016 | 3 |
| 69719482 | Discovery Subpoena Duces Tecum | 04/07/2016 | 3 |
| 69719483 | Discovery Subpoena Duces Tecum | 04/07/2016 | 3 |
| 69719484 | Discovery Subpoena Duces Tecum | 04/07/2016 | 3 |
| 69719485 | Discovery Subpoena Duces Tecum | 04/07/2016 | 3 |
| 69719486 | Discovery Subpoena Duces Tecum | 04/07/2016 | 3 |
| 69719487 | Discovery Subpoena Duces Tecum | 04/07/2016 | 3 |
| 69719488 | Discovery Subpoena Duces Tecum | 04/07/2016 | 3 |
| 69719489 | Discovery Subpoena Duces Tecum | 04/07/2016 | 3 |
| 69719490 | Discovery Subpoena Duces Tecum | 04/07/2016 | 3 |
| 69731997 | Plaintiffs' Motion to Quash Defendant Maropco, Inc.'s Deposition Subpoena of Phil Jones | 04/07/2016 | 5 |
| > 69731999 | Exhibit 1 | 04/07/2016 | 11 |
| 69732027 | Plaintiffs' Objections and Motion for Protection from Maropco, Inc.'s Subpoena Duces Tecum on DCI Group AZ, LLC | 04/07/2016 | 9 |
| > 69732028 | Exhibit 1 | 04/07/2016 | 14 |
| > 69732029 | Exhibit 2 | 04/07/2016 | 1 |
| > 69732030 | Exhibit 3 | 04/07/2016 | 2 |
| > 69732031 | Exhibit 4 | 04/07/2016 | 4 |
| > 69732032 | Exhibit 5 | 04/07/2016 | 15 |
| > 69732033 | Proposed Order | 04/07/2016 | 1 |
| 69685102 | Return of Service of Subpoena | 04/05/2016 | 11 |
| 69660965 | Defendnat Edwin K Hunter's Special Appearance, Motion to Transfer Venue, and Motion to Quash | 04/04/2016 | 4 |
| > 69660966 | Exhibit 1 | 04/04/2016 | 3 |
| 69662687 | Notice Hearing | 04/04/2016 | 2 |
| 69663994 | Notice of Hearing | 04/04/2016 | 2 |
| 69669190 | Secretary of State Certificate of Service | 04/04/2016 | 1 |

| 69669883 | The Sate of Texas Secretary of State | 04/04/2016 | 1 |
|---|---|---|---|
| 69637186 | Secretary of state | 04/01/2016 | 1 |
| 69632151 | Proposed Order Granting Plaintiffs' Motion to Compel Document | 03/31/2016 | 1 |
| > 69632150 | Filing Letter | 03/31/2016 | 1 |
| 69636687 | Maropco's Objection to Plaintiffs; Proposed Order Submitted to the Court | 03/31/2016 | 5 |
| > 69636688 | Proposed Order | 03/31/2016 | 2 |
| 69637468 | ORDER APPROVING STIPULATION SIGNED | 03/31/2016 | 3 |
| | ORDER SIGNED GRANTING MOTION FOR TURNOVER | 03/31/2016 | |
| 69600205 | Notice of Intention to Take Deposition by Written Questions | 03/30/2016 | 12 |
| 69600206 | Notice of Intention to Take Deposition by Written Questions | 03/30/2016 | 12 |
| 69600207 | Notice of Intention to Take Deposition by Written Questions | 03/30/2016 | 12 |
| 69571305 | Proposed Order Granting Defendant Maropco, Inc.s Motion to Enforce Courts Order Appointing Special Master | 03/28/2016 | 3 |
| > 69571304 | Filing Letter | 03/28/2016 | 1 |
| 69584160 | ORDER SIGNED COMPELLING PRODUCTION | 03/28/2016 | 1 |
| 69708909 | Deputy Reporter Statement | 03/28/2016 | 1 |
| 69556441 | Defendant E. Pierce Marshall Jr.'s Response in Opposition to Plaintiffs' Motion to Compel Production of Documents by HSSK | 03/25/2016 | 3 |
| 69556917 | MarOpCo's Response to Plaintiffs' Motion to Compel Production of Documents Responsive to Deposition on Written Questions to Hill Schwartz Spilker Keller LLC | 03/25/2016 | 13 |
| > 69556919 | Exhibit A | 03/25/2016 | 9 |
| > 69556920 | Exhibit B | 03/25/2016 | 36 |
| > 69556921 | Exhibit C | 03/25/2016 | 3 |
| > 69556922 | Exhibit D | 03/25/2016 | 12 |
| 69557376 | Defendant Maropco Inc's Reply to Plaintiffs' Response Opposing Maropco, Inc's Motion to Enforce Court's Amended Order Appointing Special Master | 03/25/2016 | 6 |
| > 69557377 | Exhibit 1 | 03/25/2016 | 3 |
| 69557715 | Defendant's Maropco, Inc's Reply in Support of Motion to Strike Over Designation | 03/25/2016 | 14 |
| > 69808800 | Appendix in Support of Reply in Support of Motion to Strike Over Designation | 03/25/2016 | 4 |
| > 69808801 | Exhibit A | 03/25/2016 | 7 |
| > 69808802 | Exhibit B | 03/25/2016 | 4 |
| > 69808803 | Exhibit C | 03/25/2016 | 25 |
| > 69808804 | Exhibit D | 03/25/2016 | 11 |
| > 69808805 | Exhibit E | 03/25/2016 | 2 |
| > 69808806 | Exhibit F | 03/25/2016 | 16 |
| > 69808807 | Exhibit G | 03/25/2016 | 3 |
| > 69808808 | Exhibit H | 03/25/2016 | 16 |
| > 69808809 | Exhibit I | 03/25/2016 | 2 |
| > 69808811 | Exhibit J | 03/25/2016 | 21 |
| > 69808812 | Exhibit K | 03/25/2016 | 6 |
| > 69808813 | Exhibit L | 03/25/2016 | 7 |
| > 69808814 | Exhibit M | 03/25/2016 | 7 |
| > 69808815 | Exhibit N | 03/25/2016 | 6 |
| > 69557717 | Exhibit O | 03/25/2016 | 124 |

Office of Harris County District Clerk - Chris Daniel                                    Page 22 of 33

| | | | |
|---|---|---|---|
| 69555398 | Plaintiff's Response in Opposition to MarOpCo's Inc's Motion to Strike Preston Marshall's Alleged over Designation of Items | 03/24/2016 | 15 |
| > 69555399 | Affidavit of Charles Davis Bradford | 03/24/2016 | 1 |
| > 69555400 | Exhibit 01 | 03/24/2016 | 4 |
| > 69555401 | Exhibit 02 | 03/24/2016 | 4 |
| > 69555403 | Exhibit 03 | 03/24/2016 | 2 |
| > 69555405 | Exhibit 04 | 03/24/2016 | 9 |
| > 69555406 | Exhibit 05 | 03/24/2016 | 3 |
| > 69555407 | Exhibit 06 | 03/24/2016 | 26 |
| > 69555408 | Exhibit 07 | 03/24/2016 | 14 |
| > 69555409 | Exhibit 08 | 03/24/2016 | 2 |
| > 69555410 | Exhibit 09 | 03/24/2016 | 2 |
| > 69555411 | Exhibit 10 | 03/24/2016 | 3 |
| > 69555412 | Exhibit 11 | 03/24/2016 | 3 |
| > 69555413 | Exhibit 12 | 03/24/2016 | 3 |
| > 69555414 | Proposed Order | 03/24/2016 | 1 |
| 69555515 | Plaintiff's Response to MarOpCo's Motion to Enforce Court's Amended Order Appointing Special Master | 03/24/2016 | 12 |
| > 69555516 | Exhibit 01 | 03/24/2016 | 5 |
| > 69555517 | Exhibit 02 | 03/24/2016 | 3 |
| > 69555518 | Exhibit 03 | 03/24/2016 | 14 |
| > 69555519 | Exhibit 04 | 03/24/2016 | 4 |
| > 69555520 | Exhibit 05 | 03/24/2016 | 2 |
| > 69555521 | Exhibit 06 | 03/24/2016 | 7 |
| > 69555522 | Proposed Order | 03/24/2016 | 1 |
| 69452739 | Discovery Subpoena | 03/18/2016 | 4 |
| 69451572 | Plaintiffs Motion to Quash Defendant Maropco, Incs Deposition Subpoena of Robert Kerr | 03/17/2016 | 4 |
| 69451573 | Exhibit 1 | 03/17/2016 | 3 |
| 69451574 | Proposed Order | 03/17/2016 | 1 |
| 69451576 | Plaintiffs Motion to Quash Maropco, Inc.s Deposition Subpoena of Sheldon Don Black | 03/17/2016 | 5 |
| > 69451577 | Exhibit 1 | 03/17/2016 | 3 |
| > 69451578 | Proposed Order | 03/17/2016 | 1 |
| 69435073 | Discovery Subpoena | 03/16/2016 | 4 |
| 69414240 | Plaintiffs Objections and Motion for Protective Order Against Maropco, Incs Notice of Intention to Serve Subpoena Duces Tecum on Kainon Consulting d/b/a W.M. Shirley & Associates | 03/15/2016 | 5 |
| > 69414243 | Exhibit 1 | 03/15/2016 | 11 |
| > 69414244 | Exhibit 2 | 03/15/2016 | 3 |
| > 69414246 | Proposed Order | 03/15/2016 | 1 |
| 69431691 | ORDER GRANTING WITHDRAWAL OF ATTORNEY SIGNED | 03/14/2016 | 2 |
| 69367963 | Letter to Judge Miller | 03/11/2016 | 2 |
| > 69367964 | Exhibit 1 | 03/11/2016 | 2 |
| > 69367965 | Proposed Order | 03/11/2016 | 1 |
| 69343445 | Joint Notice of Oral Hearing | 03/10/2016 | 4 |

**App. 0025**

| | | | |
|---|---|---|---|
| 69321453 | Letter from Chris Akin to Judge Miller | 03/09/2016 | 1 |
| > 69321454 | Exhibit A | 03/09/2016 | 3 |
| 69323276 | Discovery Subpoena Duces Tecum | 03/09/2016 | 6 |
| 69324447 | Discovery Subpoena | 03/09/2016 | 4 |
| 69325585 | Notice of Oral Hearing | 03/09/2016 | 3 |
| 69325673 | Plaintiff's Motion to Compel Production of Documents Responsive to Deposition on Written Questions to Hill Schwartz Spilker Keller LLC | 03/09/2016 | 10 |
| > 69325674 | Exhibit 1 | 03/09/2016 | 10 |
| > 69325675 | Exhibit 2 | 03/09/2016 | 2 |
| > 69325676 | Exhibit 3 | 03/09/2016 | 38 |
| > 69325677 | Exhibit 4 | 03/09/2016 | 3 |
| > 69325678 | Exhibit 5 | 03/09/2016 | 4 |
| > 69325679 | Proposed Order | 03/09/2016 | 1 |
| 69327809 | Notice of Hearing | 03/09/2016 | 3 |
| 69327886 | Defendant Maropco Incs Motion to Enforce Courts Order Appointing Special Master | 03/09/2016 | 5 |
| > 69327887 | Exhibit A | 03/09/2016 | 4 |
| > 69327888 | Exhibit B | 03/09/2016 | 4 |
| > 69327889 | Exhibit C | 03/09/2016 | 3 |
| > 69327890 | Exhibit D | 03/09/2016 | 4 |
| 69332673 | Letter Requesting Hearing for Motion | 03/09/2016 | 1 |
| > 69332674 | Exhibit A | 03/09/2016 | 3 |
| 69332792 | Discovery Subpoena Duces Tecum | 03/09/2016 | 6 |
| 69313649 | Defendant/Counter Plaintiff Maropco Incs Motion to Strike Preston Marshalls Over-Designation of Hundreds of Items During Inspection | 03/08/2016 | 9 |
| > 69317320 | Exhibit A | 03/08/2016 | 4 |
| > 69317321 | Exhibit B | 03/08/2016 | 3 |
| > 69317322 | Exhibit C | 03/08/2016 | 9 |
| > 69317323 | Exhibit D | 03/08/2016 | 9 |
| > 69540286 | Exhibit E | 03/08/2016 | 1 |
| > 69540287 | Exhibit F | 03/08/2016 | 1 |
| > 69317325 | Exhibit G | 03/08/2016 | 1 |
| > 69317326 | Exhibit H | 03/08/2016 | 1 |
| > 69317327 | Exhibit I | 03/08/2016 | 1 |
| > 69317328 | Exhibit J | 03/08/2016 | 1 |
| > 69317329 | Exhibit K | 03/08/2016 | 1 |
| > 69313651 | Proposed Order | 03/08/2016 | 2 |
| > 69313741 | Proposed Order | 03/08/2016 | 2 |
| 69305363 | CIVIL PROCESS PICK-UP FORM | 03/03/2016 | 1 |
| 69225812 | Notice of Hearing | 03/02/2016 | 2 |
| 69239051 | Plaintiffs Fourth Amended Verified Petition and Request for Temporary and Permanent Injunction | 03/02/2016 | 48 |
| > 69239052 | Civil Process Request Form | 03/02/2016 | 2 |
| > 69239059 | Exhbit 7 | 03/02/2016 | 5 |

**App. 0026**

| | | | | |
|---|---|---|---|---|
| -> 69239053 | Exhibit 1 | | 03/02/2016 | 6 |
| -> 69239063 | Exhibit 10 | | 03/02/2016 | 1 |
| -> 69239064 | Exhibit 11 | | 03/02/2016 | 11 |
| -> 69239065 | Exhibit 12 | | 03/02/2016 | 1 |
| -> 69239066 | Exhibit 13 | | 03/02/2016 | 1 |
| -> 69239067 | Exhibit 14 | | 03/02/2016 | 1 |
| -> 69239068 | Exhibit 15 | | 03/02/2016 | 3 |
| -> 69239069 | Exhibit 16 | | 03/02/2016 | 4 |
| -> 69239070 | Exhibit 17 | | 03/02/2016 | 1 |
| -> 69239071 | Exhibit 18 | | 03/02/2016 | 150 |
| -> 69239072 | Exhibit 19 | | 03/02/2016 | 118 |
| -> 69239054 | Exhibit 2 | | 03/02/2016 | 12 |
| -> 69239073 | Exhibit 20 | | 03/02/2016 | 1 |
| -> 69239074 | Exhibit 21 | | 03/02/2016 | 5 |
| -> 69239075 | Exhibit 22 | | 03/02/2016 | 78 |
| -> 69239055 | Exhibit 3 | | 03/02/2016 | 16 |
| -> 69239056 | Exhibit 4 | | 03/02/2016 | 39 |
| -> 69239057 | Exhibit 5 | | 03/02/2016 | 4 |
| -> 69239058 | Exhibit 6 | | 03/02/2016 | 4 |
| -> 69239061 | Exhibit 8 | | 03/02/2016 | 11 |
| -> 69239062 | Exhibit 9 | | 03/02/2016 | 70 |
| 69239076 | Plaintiffs Request for Disclosure to Defendant Hunter, hunter & Sonnier, LLc | | 03/02/2016 | 3 |
| 69239077 | Plaintiffs' first requests for production of Documents to Defendant Hunter, Hunter & Sonnier, LLC | | 03/02/2016 | 20 |
| 69239078 | Plaintiffs Request for Disclosure to Defendant Edwin K. Hunter | | 03/02/2016 | 3 |
| 69239079 | Plaintiffs First Requests for Production of Documents to Defendant Edwin k. Hunter | | 03/02/2016 | 20 |
| 69219409 | Unopposed Motion to Withdraw Filed By Counsel for Defendant/Counter Plaintiff | | 03/01/2016 | 3 |
| -> 69219410 | Proposed Order | | 03/01/2016 | 2 |
| 69167527 | Notice of Hearing | | 02/26/2016 | 2 |
| 69089000 | Original Answer of Defendant E. Pierce Marshall Jr. | | 02/22/2016 | 3 |
| 68983418 | Defendant Hunter, Hunter & Sonnier, LLC's Special Appearance; Motion to Transfer Venue; Motion to Quash | | 02/15/2016 | 5 |
| -> 68983419 | Exhibit 1 | | 02/15/2016 | 3 |
| 68955964 | Vacation Letter | | 02/11/2016 | 2 |
| 68961330 | Plaintiffs' Motion to Quash Defendant Maropco's Notice of Deposition Subpoena for Robert Kerr | | 02/11/2016 | 4 |
| -> 68961332 | Exhibit 1 | | 02/11/2016 | 7 |
| -> 68961334 | Proposed Order | | 02/11/2016 | 1 |
| 68961336 | Plaintiffs' Motion to Quash Defendant Maropco's Notice of Deposition of Sheldon Black | | 02/11/2016 | 4 |
| -> 68961337 | Exhibit 1 | | 02/11/2016 | 3 |
| -> 68961338 | Proposed Order | | 02/11/2016 | 1 |
| 68893647 | Notice of Designation of Lead Counsel | | 02/08/2016 | 3 |
| 68919238 | ORDER MODIFYING AND AMENDING TEMPORARY ORDERS SIGNED | | 02/08/2016 | 3 |

| | | | |
|---|---|---|---|
| 69040322 | Defendant Maropco, inc.'s reply to plaintiff's response to objections to court order appointing special master | 02/08/2016 | 13 |
| > 69040323 | Exhibit A | 02/08/2016 | 11 |
| > 69040324 | Exhibit B | 02/08/2016 | 4 |
| > 68888838 | Proposed Order | 02/08/2016 | 3 |
| 68872292 | Notice of Appearance | 02/05/2016 | 3 |
| 68888661 | Plaintiffs' Motion for Protective Order and Plaintiffs' Response to Maropco, Inc's Motion to Compel Entry Upon and Inspection of Property | 02/05/2016 | 10 |
| > 68888662 | Exhibit 1 | 02/05/2016 | 3 |
| > 68888663 | Exhibit 2 | 02/05/2016 | 2 |
| > 68888664 | Exhibit 3 | 02/05/2016 | 29 |
| > 68888665 | Exhibit 4 | 02/05/2016 | 5 |
| > 68888666 | Exhibit 5 | 02/05/2016 | 5 |
| > 68888667 | Exhibit 6 | 02/05/2016 | 9 |
| > 68888668 | Exhibit 7 | 02/05/2016 | 7 |
| > 68888669 | Proposed Order | 02/05/2016 | 1 |
| 68866746 | Plaintiffs' Response in Opposition to Defendant's Objections to Court Order Appointing Special Master | 02/04/2016 | 13 |
| > 68866747 | Exhibit 1 | 02/04/2016 | 24 |
| > 68866748 | Exhibit 02 | 02/04/2016 | 3 |
| > 68866749 | Exhibit 03 | 02/04/2016 | 15 |
| > 68866750 | Exhibit 04 | 02/04/2016 | 2 |
| > 68866751 | Exhibit 05 | 02/04/2016 | 4 |
| > 68866753 | Exhibit 07 | 02/04/2016 | 2 |
| > 68866754 | Exhibit 08 | 02/04/2016 | 5 |
| > 68866755 | Exhibit 09 | 02/04/2016 | 3 |
| > 68866752 | Exhibit 6 | 02/04/2016 | 3 |
| 68841318 | Notice of Hearing | 02/03/2016 | 3 |
| 68858352 | Defendant/Counter-Plaintiff Maropco, Inc.'s motion to Compel Entry Upon and Inspection of Property | 02/03/2016 | 8 |
| > 68858353 | Exhibit A | 02/03/2016 | 21 |
| > 68837706 | Proposed Order | 02/03/2016 | 2 |
| 68830144 | Plaintiffs' Motion to Quash Eyvonne Scurlock and, Alternatively, Motion for Protective Order | 02/02/2016 | 9 |
| > 68830145 | Exhibit 1 | 02/02/2016 | 5 |
| > 68830146 | Exhibit 2 | 02/02/2016 | 5 |
| > 68830147 | Exhibit 3 | 02/02/2016 | 1 |
| > 68830148 | Exhibit 4 | 02/02/2016 | 9 |
| > 68830151 | Notice of Hearing | 02/02/2016 | 3 |
| > 68830149 | Proposed Order | 02/02/2016 | 1 |
| 68793675 | ORDER GRANTING SUBSTITUTED SERVICE SIGNED | 01/29/2016 | 2 |
| 68759015 | Defendant Counter Plaintiff Maropco Incs Objections to Court Order Appointing Special Master | 01/28/2016 | 11 |
| > 68759016 | Exhibit A | 01/28/2016 | 4 |

| | | | |
|---|---|---|---|
| > 68759018 | Notice of Hearing | 01/28/2016 | 2 |
| > 68759017 | Proposed Order | 01/28/2016 | 1 |
| 68692279 | Defendant MarOpCo Incs Objections and Motion for Protective Order Regarding Plaintiffs Non-Party Subpoena Served on HSSK | 01/25/2016 | 5 |
| > 68692280 | Exhibit A | 01/25/2016 | 37 |
| > 68692281 | Exhibit B | 01/25/2016 | 13 |
| > 68692282 | Proposed Order | 01/25/2016 | 1 |
| 68660164 | Return of Service | 01/21/2016 | 1 |
| 68668415 | Motion for Substituted Service of Process | 01/21/2016 | 6 |
| > 68668418 | Exhibit 1 | 01/21/2016 | 3 |
| > 68668419 | Exhibit 2 | 01/21/2016 | 4 |
| > 68668416 | Exhibit A | 01/21/2016 | 25 |
| > 68668417 | Exhibit B | 01/21/2016 | 2 |
| > 68668420 | Exhibit C | 01/21/2016 | 5 |
| > 68668421 | Exhibit D | 01/21/2016 | 2 |
| > 68668422 | Proposed Order | 01/21/2016 | 2 |
| 68682134 | MASTER IN CHANCERY APPOINTED | 01/21/2016 | 4 |
| 68611652 | Amended Proposed Protective Order | 01/19/2016 | 2 |
| > 68611651 | Filing Letter | 01/19/2016 | 1 |
| 68626053 | ORDER DENYING EXPEDITED DISCOVERY SIGNED | 01/19/2016 | 2 |
| 68626054 | ORDER MODIFYING AND AMENDING TEMPORARY ORDERS SIGNED PROTECTIVE ORDER (CIVIL) ORD SGND | 01/19/2016 01/19/2016 | 2 |
| 68599408 | Letter to Judge Miller | 01/15/2016 | 2 |
| > 68599410 | Proposed Order Denying Plaintiffs' Motion for Expedited Discovery | 01/15/2016 | 2 |
| > 68599409 | Proposed Protective Order | 01/15/2016 | 2 |
| 68609625 | Letter to Judge Miller | 01/15/2016 | 2 |
| > 68609626 | Proposed Order | 01/15/2016 | 1 |
| > 68609627 | Proposed Order | 01/15/2016 | 1 |
| 68565493 | Reporter's Certification Oral Deposition of Carla Coble December 17, 2015 | 01/14/2016 | 5 |
| > 68565494 | Carla Coble changes and signatures | 01/14/2016 | 2 |
| 68565537 | Plaintiffs' Response to Defendant's Emergency Motion to Modify Injunctive Relief Entered by the Court and Plaintiffs' Motion to Extend Protective Order | 01/14/2016 | 22 |
| > 68565538 | Exhibit A | 01/14/2016 | 4 |
| > 68565539 | Exhibit B | 01/14/2016 | 31 |
| > 68565540 | Exhibit C | 01/14/2016 | 3 |
| > 68565541 | Exhibit D | 01/14/2016 | 77 |
| > 68565542 | Exhibit E | 01/14/2016 | 1 |
| > 68565543 | Exhibit F | 01/14/2016 | 4 |
| > 68565544 | Exhibit G | 01/14/2016 | 3 |
| > 68565545 | Exhibit H | 01/14/2016 | 3 |
| > 68565546 | Exhibit I | 01/14/2016 | 3 |
| > 68565547 | Exhibit J | 01/14/2016 | 12 |
| > 68565548 | Exhibit K | 01/14/2016 | 2 |

Office of Harris County District Clerk - Chris Daniel                                    Page 27 of 33

| | | | |
|---|---|---|---|
| -> 68565549 | Exhibit L | 01/14/2016 | 2 |
| -> 68565550 | Proposed Order | 01/14/2016 | 2 |
| 68555180 | Notice of Hearing | 01/13/2016 | 2 |
| 68555207 | Notice of Hearing | 01/13/2016 | 3 |
| 68564223 | Defendant Maropco, Inc.'s Response to Plaintiff's Expedited Motion for Discovery | 01/13/2016 | 10 |
| -> 68564226 | Exhibit A | 01/13/2016 | 2 |
| -> 68564229 | Exhibit B | 01/13/2016 | 1 |
| -> 68564230 | Proposed Order | 01/13/2016 | 1 |
| 68580229 | Civil Bureau Process Pick-Up Form | 01/13/2016 | 1 |
| 68543577 | Plaintiffs' Emergency Motion for Expedited Discovery | 01/12/2016 | 7 |
| -> 68543578 | Exhibit 01 | 01/12/2016 | 4 |
| -> 68543579 | Exhibit 02 | 01/12/2016 | 3 |
| -> 68543580 | Exhibit 03 | 01/12/2016 | 4 |
| -> 68543581 | Exhibit 04 | 01/12/2016 | 3 |
| -> 68543582 | Exhibit 05 | 01/12/2016 | 3 |
| -> 68543583 | Exhibit 06 | 01/12/2016 | 2 |
| -> 68543584 | Exhibit 07 | 01/12/2016 | 10 |
| -> 68543585 | Exhibit 08 | 01/12/2016 | 4 |
| -> 68543586 | Proposed Order | 01/12/2016 | 1 |
| 68543607 | Letter to Judge Miller | 01/12/2016 | 2 |
| 68543608 | Plaintiffs' Emergency Motion for Expedited Discovery | 01/12/2016 | 7 |
| -> 68543609 | Exhibit 1 | 01/12/2016 | 4 |
| -> 68543610 | Exhibit 2 | 01/12/2016 | 3 |
| -> 68543611 | Exhibit 3 | 01/12/2016 | 4 |
| -> 68543612 | Exhibit 4 | 01/12/2016 | 3 |
| -> 68543613 | Exhibit 5 | 01/12/2016 | 3 |
| -> 68543614 | Exhibit 6 | 01/12/2016 | 2 |
| -> 68543615 | Exhibit 7 | 01/12/2016 | 10 |
| -> 68543616 | Exhibit 8 | 01/12/2016 | 4 |
| 68543641 | Defendant MarOpCo Inc's Emergency Motion to Modify Injunctive Relief Entered by the Court | 01/12/2016 | 17 |
| -> 68543643 | Exhibit 1 | 01/12/2016 | 44 |
| -> 68543652 | Exhibit 10 | 01/12/2016 | 3 |
| -> 68543644 | Exhibit 2 | 01/12/2016 | 12 |
| -> 68543645 | Exhibit 3 | 01/12/2016 | 7 |
| -> 68543646 | Exhibit 4 | 01/12/2016 | 7 |
| -> 68543647 | Exhibit 5 | 01/12/2016 | 6 |
| -> 68543648 | Exhibit 6 | 01/12/2016 | 6 |
| -> 68543649 | Exhibit 7 | 01/12/2016 | 7 |
| -> 68543650 | Exhibit 8 | 01/12/2016 | 6 |
| -> 68543651 | Exhibit 9 | 01/12/2016 | 5 |
| 68547842 | Plaintiffs' Third Amended Verified Petition and Request for Temporary and permanent Injunction | 01/12/2016 | 25 |

**App. 0030**

| | | | |
|---|---|---|---|
| -> 68547850 | Civil Process Request Form | 01/12/2016 | 3 |
| -> 68547843 | Ex 1 | 01/12/2016 | 31 |
| -> 68547844 | Ex 2 | 01/12/2016 | 44 |
| -> 68547846 | Ex 3 | 01/12/2016 | 12 |
| -> 68547847 | Ex 4 | 01/12/2016 | 3 |
| -> 68547848 | Ex 5 | 01/12/2016 | 4 |
| -> 68547849 | Proposed Order to Show Cause | 01/12/2016 | 1 |
| 68483754 | Plaintiffs Letter Brief in Support of Plaintiffs Amended Objections and Motion for Protection from Defendants Subpoenas Duces Tecum | 01/08/2016 | 4 |
| -> 68483755 | Exhibit A | 01/08/2016 | 2 |
| 68483757 | Reporter Certification Videotaped Oral Depositon of Rusk Capital Management, LLC by Preston Marshall Taken on December 16, 2015 | 01/08/2016 | 5 |
| 68473406 | Letter to Judge Miller | 01/07/2016 | 1 |
| 68459588 | Supplemental Exhibit to Plaintiffs' Amended Objections and Motion for Protection from Defendant's Subpoenas Duces Tecum | 01/06/2016 | 3 |
| -> 68459589 | Exhibit A | 01/06/2016 | 39 |
| 68442729 | Khozraschyot Capital Management, LLC's, Lednik Capital Managment, LCC's, Glacier Holdings, LLC's and Cartech Systems, LLC' Objections and Motion for Protection From Defendant's Supoenas Duces Tecum | 01/05/2016 | 11 |
| -> 68442730 | Exhibit 1 | 01/05/2016 | 9 |
| -> 68442731 | Exhibit 2 | 01/05/2016 | 9 |
| -> 68442732 | Exhibit 3 | 01/05/2016 | 10 |
| -> 68442733 | Exhibit 4 | 01/05/2016 | 9 |
| -> 68442735 | Notice of Hearing | 01/05/2016 | 2 |
| -> 68442734 | Proposed Order | 01/05/2016 | 1 |
| 68420558 | Amended Notice of Hearing | 01/04/2016 | 2 |
| 68422453 | Notice of Status Conference | 01/04/2016 | 3 |
| 68427312 | Notice of Hearing | 01/04/2016 | 3 |
| 68427313 | Plaintiffs' Objections and Motion for Protection from Discovery Defendant's Subpoenas Duces Tecum | 01/04/2016 | 13 |
| -> 68427314 | Proposed Order | 01/04/2016 | 1 |
| 68427519 | Plaintiffs' Objections and Motion for Protection from Defendant's Subpoenas Duces Tecum | 01/04/2016 | 13 |
| -> 68427520 | Exhibit 01 | 01/04/2016 | 9 |
| -> 68427521 | Exhibit 02 | 01/04/2016 | 9 |
| -> 68427522 | Exhibit 03 | 01/04/2016 | 10 |
| -> 68427523 | Exhibit 04 | 01/04/2016 | 9 |
| -> 68427524 | Exhibit 05 | 01/04/2016 | 5 |
| -> 68427525 | Exhibit 06 | 01/04/2016 | 8 |
| 68427610 | Plaintiffs' Amended Objections and Motion for Protection from Defendant's Subpoenas Duces Tecum | 01/04/2016 | 13 |
| -> 68427611 | Exhibit 01 | 01/04/2016 | 9 |
| -> 68427612 | Exhibit 02 | 01/04/2016 | 9 |
| -> 68427613 | Exhibit 03 | 01/04/2016 | 10 |
| -> 68427614 | Exhibit 04 | 01/04/2016 | 9 |
| -> 68427615 | Exhibit 05 | 01/04/2016 | 5 |

| | | | |
|---|---|---|---|
| -> 68427616 | Exhibit 06 | 01/04/2016 | 8 |
| -> 68427618 | Notice of Hearing | 01/04/2016 | 3 |
| -> 68427617 | Proposed Order | 01/04/2016 | 1 |
| 68352202 | Plaintiffs' Motion to Quash Third Party Subpoenas Duces Tecum | 12/23/2015 | 4 |
| -> 68352205 | Exhibit 1 | 12/23/2015 | 9 |
| -> 68352206 | Exhibit 2 | 12/23/2015 | 9 |
| -> 68352207 | Exhibit 3 | 12/23/2015 | 10 |
| -> 68352208 | Exhibit 4 | 12/23/2015 | 9 |
| 68352213 | Lednik Capital Management, LLC's Khozraschot Capital Management, LLC's, Glacier Holdings, LLC's and Cartech Systems Motion to Quash Defendant's Third Party Subpoena Duces Tecum | 12/23/2015 | 3 |
| -> 68352214 | Exhibit 1 | 12/23/2015 | 9 |
| -> 68352215 | Exhibit 2 | 12/23/2015 | 9 |
| -> 68352216 | Exhibit 3 | 12/23/2015 | 10 |
| -> 68352217 | Exhibit 4 | 12/23/2015 | 9 |
| 68299119 | Letter to Court | 12/21/2015 | 3 |
| 68299120 | Proposed Maropco, Inc.'s Proposed Order Regarding Plaintiffs' Motion to Compel Entry Upon/Inspection of Property | 12/21/2015 | 3 |
| 68299123 | Affidavit of E. Pierce Marshall, Jr. | 12/21/2015 | 2 |
| -> 68299124 | Exhibit 1 | 12/21/2015 | 4 |
| 68314966 | Subpoena Return | 12/21/2015 | 10 |
| 68314998 | Discovery Subpoena Duces Tecum | 12/21/2015 | 10 |
| 68315009 | Discovery Subpoena Duces Tecum | 12/21/2015 | 10 |
| 68315011 | Discovery Subpoena Duces Tecum | 12/21/2015 | 11 |
| 68292712 | Letter to Judge Miller | 12/18/2015 | 2 |
| -> 68292713 | Proposed Order | 12/18/2015 | 2 |
| 68299085 | Defendant Maropco, Inc.'s Response to Plaintiffs' Motion to Compel Production of Documents | 12/18/2015 | 12 |
| -> 68299086 | Exhibit A | 12/18/2015 | 98 |
| 68265231 | Letter to Hon. Mike D. Miller | 12/17/2015 | 1 |
| 68269244 | Defendant Maropco, Inc. 's Motion for Protective Order Against Plaintiffs' Non-Party Subpoenas | 12/17/2015 | 8 |
| -> 68269245 | Exhibit A | 12/17/2015 | 132 |
| -> 68269246 | Exhibit B | 12/17/2015 | 131 |
| -> 68269247 | Proposed Order | 12/17/2015 | 1 |
| 68278214 | Notice of Hearing | 12/17/2015 | 2 |
| 68256904 | Notice of Appearance | 12/16/2015 | 4 |
| 68259502 | Notice of Hearing on Plaintiffs' Motion to Compel Production of Document | 12/16/2015 | 2 |
| 68260004 | Plaintiffs' Motion to Compel Production of Documents | 12/16/2015 | 13 |
| -> 68260005 | Exhibit 01 | 12/16/2015 | 16 |
| -> 68260006 | Exhibit 02 | 12/16/2015 | 13 |
| -> 68260008 | Exhibit 03 | 12/16/2015 | 2 |
| -> 68260009 | Exhibit 04 | 12/16/2015 | 3 |
| -> 68260010 | Exhibit 05 | 12/16/2015 | 9 |

| | | | | |
|---|---|---|---|---|
| -> 68260011 | Exhibit 06 | | 12/16/2015 | 9 |
| -> 68260012 | Exhibit 07 | | 12/16/2015 | 3 |
| -> 68260013 | Exhibit 08 | | 12/16/2015 | 41 |
| -> 68260014 | Exhibit 09 | | 12/16/2015 | 7 |
| -> 68260015 | Exhibit 10 | | 12/16/2015 | 4 |
| -> 68260016 | Exhibit 11 | | 12/16/2015 | 7 |
| -> 68260017 | Exhibit 12 | | 12/16/2015 | 2 |
| -> 68260018 | Exhibit 13 | | 12/16/2015 | 5 |
| -> 68260019 | Exhibit 14 | | 12/16/2015 | 10 |
| -> 68260020 | Exhibit 15 | | 12/16/2015 | 5 |
| -> 68260007 | Exhibit 2A | | 12/16/2015 | 2 |
| -> 68260021 | Proposed Order | | 12/16/2015 | 2 |
| 68223229 | Plaintiffs' Objections to Defendant's Deposition Notice of the Corporate Representative of Rusk Capital Management | | 12/14/2015 | 6 |
| 68051516 | Plaintiffs' Objections and Motion for Protection from Defendant's Subpoenas Duces Tecum | | 11/30/2015 | 11 |
| -> 68051517 | Exhibit A | | 11/30/2015 | 14 |
| -> 68051519 | Exhibit B | | 11/30/2015 | 14 |
| -> 68051520 | Exhibit C | | 11/30/2015 | 15 |
| -> 68051521 | Exhibit D | | 11/30/2015 | 14 |
| -> 68051522 | Proposed Order | | 11/30/2015 | 1 |
| 67986431 | Discovery Subpoena Duces Tecum | | 11/23/2015 | 10 |
| 68025464 | COURT SCHEDULING ORDER SIGNED | | 11/23/2015 | 2 |
| 67980427 | Plaintiffs' Response to Defendant's Motion Requesting Entry of Scheduling Order and discovery Control Plan | | 11/20/2015 | 6 |
| -> 67980428 | Exhibit 1 | | 11/20/2015 | 1 |
| -> 67980429 | Exhibit 2 | | 11/20/2015 | 1 |
| -> 67980430 | Exhibit 3 | | 11/20/2015 | 1 |
| -> 67980431 | Proposed Order | | 11/20/2015 | 1 |
| 67954214 | DOCKET CONTROL/PRETRIAL ORDER SIGNED | | 11/19/2015 | 2 |
| 67902894 | Plaintiffs' Original Answer to Defendant's Original Counterclaim | | 11/16/2015 | 5 |
| 67839682 | MarOpCo Incs Motion to Quash Plaintiffs Notice of Deposition of Maropco, Inc. | | 11/11/2015 | 3 |
| -> 67839683 | Exhibit A | | 11/11/2015 | 4 |
| -> 67839684 | Proposed Order | | 11/11/2015 | 1 |
| 67792701 | Notice of Hearing | | 11/09/2015 | 3 |
| 67798286 | MarOpCo Incs Motion to Quash Plaintiffs Notice of Deposition of Eyvonne Scurlock | | 11/09/2015 | 3 |
| -> 67798287 | Exhibit A | | 11/09/2015 | 3 |
| -> 67798288 | Proposed Order | | 11/09/2015 | 1 |
| 67798289 | MarOpCo Incs Motion to Quash Plaintiffs Notice of Deposition of Sheena Bonadona | | 11/09/2015 | 3 |
| -> 67798290 | Exhibit A | | 11/09/2015 | 3 |
| -> 67798291 | Proposed Order | | 11/09/2015 | 1 |
| 67773688 | Defendants' Response to Plaintiffs' Motion to Compel Carla Coble's Deposition | | 11/06/2015 | 2 |
| -> 67773690 | Exhibit A | | 11/06/2015 | 7 |
| -> 67773691 | Exhibit B | | 11/06/2015 | 27 |

| | | | |
|---|---|---|---|
| -> 67773692 | Proposed Order | 11/06/2015 | 1 |
| 67774949 | Maropco, Inc.'s Response to Plaintiffs' Motion to Compel Entry Upon Property | 11/06/2015 | 10 |
| -> 67774950 | Exhibit A | 11/06/2015 | 2 |
| -> 67774951 | Exhibit B | 11/06/2015 | 6 |
| -> 67774952 | Exhibit C | 11/06/2015 | 6 |
| -> 67774954 | Exhibit D | 11/06/2015 | 6 |
| -> 67774956 | Proposed Order | 11/06/2015 | 2 |
| 67784520 | Plaintiffs' Motion to Quash Defendant's Notice of Deposition of Corporate Representative for Rusk Captial Management, L.L.C. | 11/06/2015 | 4 |
| -> 67784521 | Exhibit A | 11/06/2015 | 8 |
| 67774013 | Defendant MarOpCo's Motion Requesting Entry of Scheduling Order and Discovery Control Plan | 11/05/2015 | 11 |
| -> 67774014 | Exhibit A | 11/05/2015 | 12 |
| -> 67774015 | Exhibit B | 11/05/2015 | 4 |
| 67745250 | Amended Notice of Hearing on Plaintiffs Motion to Compel Deposition | 11/04/2015 | 2 |
| 67750882 | ORDER SIGNED DENYING MOTION TO QUASH SUBPOENA | 11/04/2015 | 1 |
| 67751044 | ORDER SIGNED COMPELLING PRODUCTION | 11/04/2015 | 1 |
| | ORDER SIGNED GRANTING COMPLIANCE | 11/04/2015 | |
| 67704790 | Maropco, Inc. Motion to Quash Plaintiffs Notice of Deposition of Carla Coble | 11/02/2015 | 4 |
| -> 67704791 | Exhibit A | 11/02/2015 | 3 |
| 67708900 | Proposed Order Granting Maropco, Inc.s Motion to Quash Plaintiffs Notice of Deposition of Carla Coble | 11/02/2015 | 1 |
| 67709236 | Plaintiffs Motion to Compel Coble Deposition | 11/02/2015 | 5 |
| -> 67709238 | Exhibit 1 | 11/02/2015 | 1 |
| -> 67709239 | Exhibit 2 | 11/02/2015 | 1 |
| -> 67709240 | Exhibit 3 | 11/02/2015 | 1 |
| -> 67709237 | Exhibit A | 11/02/2015 | 5 |
| -> 67709241 | Exhibit B | 11/02/2015 | 2 |
| -> 67709242 | Exhibit C | 11/02/2015 | 3 |
| -> 67709243 | Exhibit D | 11/02/2015 | 7 |
| -> 67709244 | Exhibit E | 11/02/2015 | 4 |
| -> 67709246 | Notice of Hearing | 11/02/2015 | 2 |
| -> 67709245 | Proposed Order | 11/02/2015 | 1 |
| 67671964 | Plaintiffs' Motion to Compel and Entry Upon Property | 10/29/2015 | 8 |
| -> 67671969 | Exhibit A | 10/29/2015 | 4 |
| -> 67671973 | Exhibit B | 10/29/2015 | 6 |
| -> 67671975 | Exhibit C | 10/29/2015 | 6 |
| -> 67671981 | Notice of Hearing | 10/29/2015 | 2 |
| -> 67671978 | Proposed Order | 10/29/2015 | 1 |
| 67636666 | Defendant Maropco, Inc.s Answer to Plaintiffs Second Amended Petition and Request for Permanent Injunction | 10/28/2015 | 5 |
| 67636611 | Defendant's Original Counterclaim | 10/27/2015 | 22 |
| -> 67636612 | Exhibit A - Employment Agreement | 10/27/2015 | 12 |
| 67493422 | Frost Bank's Objections and Response to Plaintiff's Motion to Compel | 10/19/2015 | 5 |

| | | | | |
|---|---|---|---|---|
| > 67493424 | Exhibit A | | 10/19/2015 | 191 |
| 67472595 | Plaintiffs' Response to MarOpCo's Objections and Motion to Quash Plaintiff's Subpoena for Production of Documents And Tangible Things To Frost Bank | | 10/15/2015 | 4 |
| > 67472596 | Proposed Order | | 10/15/2015 | 1 |
| 67472598 | Plaintiff's Motion to Compel in Response to Frost's Objections And Tangible Things | | 10/15/2015 | 4 |
| > 67472599 | Proposed Order | | 10/15/2015 | 1 |
| 67454478 | Plaintiffs' Second Amended Petition and Request for Permanent Injunction | | 10/14/2015 | 17 |
| > 67454479 | Exhibit A | | 10/14/2015 | 44 |
| > 67454480 | Exhibit B | | 10/14/2015 | 11 |
| 67399563 | MarOpCo Inc Objections and Motion to Quash Plaintiffs Subpoena for Production of Documents and Tangible Things to Frost Bank | | 10/09/2015 | 6 |
| > 67399564 | Exhibit A | | 10/09/2015 | 7 |
| > 67399565 | Proposed Order | | 10/09/2015 | 1 |
| 67399566 | Notice of Submission | | 10/09/2015 | 2 |
| 67400099 | Frost Bank's Objections to Subpoena for Production of Documents and Tangible Things and Alternative Motion for Protective Order | | 10/09/2015 | 7 |
| > 67400100 | Exhibit A | | 10/09/2015 | 5 |
| > 67400101 | Proposed Order | | 10/09/2015 | 2 |
| 67174886 | Subpoena for Production of Documents and Tangible Things | | 09/24/2015 | 6 |
| 66685016 | Brief in Support of Plaintiffs' Application for Temporary Injunction | | 08/19/2015 | 13 |
| > 66685017 | Exhibit A | | 08/19/2015 | 16 |
| > 66685018 | Exhibit B | | 08/19/2015 | 5 |
| > 66685019 | Exhibit C | | 08/19/2015 | 2 |
| > 66685020 | Exhibit D | | 08/19/2015 | 2 |
| > 66685021 | Exhibit E | | 08/19/2015 | 2 |
| 66652269 | Notice of Hearing on Plaintiffs' Application for Temporary Injunction | | 08/17/2015 | 2 |
| 66507514 | Plaintiffs' Emergency Motion for Expedited Discovery | | 08/05/2015 | 4 |
| > 66507515 | Exhibit 1 | | 08/05/2015 | 14 |
| > 66507516 | Exhibit 2 | | 08/05/2015 | 3 |
| > 66507517 | Exhibit 3 | | 08/05/2015 | 3 |
| > 66507518 | Exhibit 4 | | 08/05/2015 | 4 |
| > 66507519 | Exhibit A | | 08/05/2015 | 23 |
| > 66507513 | Letter to Judge | | 08/05/2015 | 2 |
| 66507523 | Plaintiffs' Emergency Motion for Expedited Discovery | | 08/05/2015 | 4 |
| > 66507524 | Exhibit 1 | | 08/05/2015 | 14 |
| > 66507525 | Exhibit 2 | | 08/05/2015 | 3 |
| > 66507526 | Exhibit 3 | | 08/05/2015 | 3 |
| > 66507527 | Exhibit 4 | | 08/05/2015 | 4 |
| > 66507528 | Exhibit A | | 08/05/2015 | 23 |
| > 66507512 | Proposed Order | | 08/05/2015 | 1 |
| 66479780 | Notice of Change of Address of Counsel | | 08/04/2015 | 2 |
| 66458545 | Defendant Maropco, Inc.'s Original Answer | | 08/03/2015 | 3 |
| 66620407 | First court of appeals (Memorandum order) | | 07/23/2015 | 2 |

Office of Harris County District Clerk - Chris Daniel                                          Page 33 of 33

| | | | |
|---|---|---|---|
| 66165282 | Return of Service | 07/10/2015 | 1 |
| 66126994 | ORDER APPROVING STIPULATION SIGNED | 07/08/2015 | 3 |
| | ORDER DISSOLVING TEMPORARY RESTRAINING ORDER SIGNED | 07/08/2015 | |
| 66159136 | Civil Process Pick-Up Form | 07/08/2015 | 1 |
| 66116032 | Agreed Motion for Entry of Agreed Order | 07/07/2015 | 2 |
| > 66116033 | Proposed Order | 07/07/2015 | 3 |
| 66125227 | Civil Process Request | 07/07/2015 | 2 |
| 66125236 | Civil Process Request Form | 07/07/2015 | 2 |
| 66071833 | Proposed Temporary Restraining Order | 07/02/2015 | 3 |
| 66073574 | ORDER SETTING BOND SIGNED | 07/02/2015 | 3 |
| | ORDER SIGNED GRANTING TEMPORARY RESTRAINING ORDER | 07/02/2015 | |
| | ORDER SIGNED SETTING HEARING | 07/02/2015 | |
| 66089352 | Clerks Certificate of Cash Deposit in Lieu of Injunction Bond Per Order of the Court | 07/02/2015 | 1 |
| 66054261 | Notice of Hearing on Plaintiffs' First Amended Petition and Application for Temporary Restraining Order and Temporary Permanent Injunction | 07/01/2015 | 2 |
| 66060484 | Defendant's Verified Response to Plaintiff Application for Temporary Restraining Order | 07/01/2015 | 11 |
| > 66060486 | Exhibit A | 07/01/2015 | 3 |
| > 66060487 | Exhibit B | 07/01/2015 | 1 |
| > 66060488 | Exhibit C | 07/01/2015 | 5 |
| > 66060489 | Exhibit D | 07/01/2015 | 1 |
| > 66060490 | Exhibit E | 07/01/2015 | 4 |
| > 66060491 | Exhibit F | 07/01/2015 | 4 |
| > 66060492 | Exhibit G | 07/01/2015 | 8 |
| > 66060485 | Verification | 07/01/2015 | 1 |
| 66036492 | Plaintiffs' First Amended Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction | 06/30/2015 | 14 |
| > 66036494 | Proposed Temporary Restraining Order | 06/30/2015 | 4 |
| 66050168 | Affidavit of Prestion Marshall | 06/30/2015 | 4 |
| > 66050169 | Exhibit 1 | 06/30/2015 | 7 |
| > 66050170 | Exhibit 2 | 06/30/2015 | 16 |
| > 66050171 | Exhibit 3 | 06/30/2015 | 5 |
| > 66050172 | Exhibit 4 | 06/30/2015 | 11 |
| 65959468 | Second Amended Notice of Hearing on Plaintiff's Application for Temporary Restraining Order | 06/24/2015 | 2 |
| 66036004 | Civil Process Pick-Up Form | 06/24/2015 | 1 |
| 65929734 | Notice of Hearing on Plaintiffs' Application for Temporary Restraining Order | 06/23/2015 | 2 |
| 65937611 | Civil Process Request Form | 06/23/2015 | 1 |
| 65945063 | First Amended Notice of Hearing on Plaintiff's Application for Temporary Restraining Order | 06/23/2015 | 2 |
| 65926497 | Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction | 06/22/2015 | 14 |
| > 65926499 | Civil Case Information Sheet | 06/22/2015 | 2 |
| > 65926500 | Civil Process Request Form | 06/22/2015 | 1 |
| > 65926498 | Proposed Temporary Restraining Order | 06/22/2015 | 5 |

**App. 0036**

6/22/2015 4:45:57 PM
Chris Daniel - District Clerk Harris County
Envelope No. 5775697
By: Nelson Cuero
Filed: 6/22/2015 4:45:57 PM

# 2015-35950 / Court: 011

CAUSE NO. 2014-_____

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY AND RUSK CAPITAL MANAGEMENT, L.L.C., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| MAROPCO, INC. | § § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

### PLAINTIFFS' ORIGINAL VERIFIED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Preston Marshall ("Marshall"), Individually and Rusk Capital Management, L.L.C. ("Rusk Capital") (collectively, the "Plaintiffs") file this Original Verified Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction complaining of MarOpCo, Inc. ("MarOpCo") and would show as follows:

### DISCOVERY CONTROL PLAN

1. Discovery in the above-captioned matter should be conducted in accordance with Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

### PARTIES

2. Preston Marshall is an individual residing in Harris County, Texas.

3. Rusk Capital is a foreign limited liability corporation with its principal place of business in Harris County, Texas.

Certified Document Number: 65926497 - Page 1 of 14

4. MarOpCo, Inc. ("MarOpCo") is a domestic corporation doing business in Harris County, Texas. MarOpCo's designated registered agent for service of process, Preston Marshall, can no longer be found at the registered office for MarOpCo. As such, MarOpCo may be served with citation by serving the Secretary of State for the State of Texas as the agent for service of process for MarOpCo pursuant to Section 5.251 of the Texas Business Organization Code (2015). The Secretary of State may be served with process by certified or regular mail directed to Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079 or by personal or overnight delivery directed to Service of Process, Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701.

## VENUE

5. Venue of this case is proper in Harris County, Texas, pursuant to Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code.

## FACTS

6. MarOpCo is primarily an administrative services provider for a group of businesses and charities owned, operated and/or managed by the Marshall family. Elaine Marshall serves as the President and Chief Executive Officer of MarOpCo.

7. MarOpCo's principal office is located at 7001 Preston Road, Suite 400, Dallas, Texas 75205-5102. However, MarOpCo also

--2--

maintains a Houston office located at 7600 Tidwell, Suite 800, Houston, Texas 77040-6718.

8. As of June 11, 2015, Marshall was Vice President of MarOpCo. Marshall performed his duties and responsibilities for MarOpCo at the Houston office located on Tidwell. For example, Marshall was designated with the Texas Secretary of State as MarOpCo's registered agent for service of process at the Tidwell office location in Houston.

9. In addition to his work for MarOpCo, Marshall maintained oversight of his personal affairs and other business entities at the Tidwell office location. These include:

    a.    Preston Marshall, individually;

    b.    Marshall Heritage Foundation (f/n/a Marshall Museum and Library);

    c.    Marshall Legacy Foundation;

    d.    Eleanore Pierce Stevens Foundation;

    e.    EPS/EPM Charitable Remainder Unitrust;

    f.    Eleanor Pierce (Marshall) Stevens Living Trust;

    g.    Eleanor Stevens Revocable Gift Trust;

    h.    Bettye Morgan Charitable Remainder Unitrust;

    i.    Bettye Morgan Net Income with Makeup Charitable Remainder Unitrust;

    j.    Ada Estes Charitable Remainder Unitrust;

    k.    Ada Estes Net Income with Makeup Charitable Remainder Unitrust;

    l.    Peroxisome Charitable Lead Trust;

Certified Document Number: 65926497 - Page 3 of 14

m.   Citrine Commerce L.L.C.;

n.   Lysosome L.L.C.;

o.   Chondriosome Siftung;

p.   Khozraschyot Capital Management L.L.C.;

q.   Lednik Capital Management L.L.C.;

r.   Glacier Holdings L.L.C.;

s.   Rusk Capital Management LLC; and

t.   CarTech Systems L.L.C.

10.   Importantly, Marshall's responsibilities relative to the various entities create ongoing fiduciary obligations from Marshall to each of the entities identified above.  In performing his duties and responsibilities on behalf of these entities, Marshall used and relied upon files, correspondence, records, reports, documents and other data maintained at the Tidwell office location.

11.   Rusk Capital is an equity investment firm focusing on the purchase of oil and gas producing properties.  Marshall is the sole owner and manager of Rusk Capital.

12.   The principal office of Rusk Capital is located at 7600 Tidwell Road, Suite 800, Houston, Texas 77040.  In that regard, Marshall purchased, used and/or relied upon telephones, computers, computer servers, and other equipment for purposes of conducting business as Rusk Capital at the Tidwell office.  For example, Marshall spent over fourteen thousand dollars ($14,000.00) on computer equipment for Rusk Capital.

-4-

Certified Document Number: 65926497 - Page 4 of 14

**App. 0040**

13. The business of Rusk Capital includes gathering and analyzing information related to potential investors and investment opportunities concerning oil and gas producing properties. As such, Rusk Capital maintains proprietary and confidential information at the Tidwell office location which includes, but is not limited to, all information related to actual and potential investors, data pertaining to investment opportunities, business strategies, investment strategies, business analysis, all communications with actual and potential investors, data evidencing due diligence with respect to investment opportunities, and employee records.

14. Rusk Capital has taken reasonable efforts to keep its confidential and proprietary information secret because it has actual or potential independent economic value to third parties and because it is not generally known to the public and not readily ascertainable from other means.

15. On June 11, 2015, Marshall was notified in writing via correspondence from Elaine Marshall that his employment with MarOpCo was terminated effective immediately. Marshall was also informed that he no longer had access to the Tidwell office location.

16. Additionally, MarOpCo directed the management company of the Tidwell office to deactivate all access entry cards in the possession of Marshall and to change the locks on the secured doors to Suite 800. Further, Rusk Capital's computer system and server were disconnected.

-5-

17.   Consequently, the computers, computer server, files (both physical and electronic), office equipment and furniture, as well as all confidential and proprietary information belonging to Rusk Capital are now in the possession of, and are wrongfully controlled by, MarOpCo.

18.   Similarly, all records, files, and data used and relied upon by Marshall to carry out his personal affairs and to meet his fiduciary obligations with respect to the entities identified above are now in the possession of, and are wrongfully controlled by, MarOpCo.

19.   As a result of MarOpCo's wrongful exercise of dominion and control over the personal and business property of Marshall and related entities including Rusk Capital, MarOpCo has or will cause harm to Marshall, individually and in his fiduciary capacity to the various entities as well as to Rusk Capital.

20.   Marshall and Rusk Capital demanded in writing the immediate return of all property and assets belonging or pertaining to Marshall and Rusk Capital which were stored or located at 7600 W. Tidwell Road, Suite 800, Houston, Texas 77040 by 5:00 p.m. on Monday, June 22, 2015.

21.   MarOpCo failed to contact Marshall, and as such, this suit and application for immediate equitable relief follows.

--6--

### FIRST CAUSE OF ACTION

### Conversion

22.   Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the property of another, in a manner inconsistent with the owners rights.

23.   Applied here, the Plaintiffs owned or had possession of property located at the Tidwell office location. MarOpCo unlawfully and without authorization assumed and exercised control over the Plaintiffs' property in a manner that is inconsistent with their rights as owners.   The Plaintiffs demanded the return of the property and MarOpCo failed to do so.

24.   As a direct and proximate result of MarOpCo's conduct, the Plaintiffs have been harmed and damaged for which they now sue.   The Plaintiffs are entitled to injunctive relief, actual and exemplary damages, and reasonable attorneys fees and costs.

### SECOND CAUSE OF ACTION

### Violation of the Texas Harmful Access by Computer Act
### Tex. Civ. Prac. & Rem. Code Ann. §§ 143.001-143.002

25.   The Plaintiffs own and/or operate a secure intra-computer network, which stores information that is only accessible by certain authorized individuals, including Marshall.   The Plaintiffs' computer systems contains and stores, in part, records and documents containing   confidential   information   concerning   investment opportunities,   potential   investors,   investment   strategies   and employees.   The Plaintiffs limit the access to its computer system

-7-

App. 0043

to certain executive and administrative employees of Rusk Capital.

26.  Nevertheless, MarOpCo knowingly accessed, disassembled and physically moved the Plaintiffs' secure computer networks and databases.  This access and control was intentional, willful and without the Plaintiffs' consent.

27.  The foregoing conduct violates Chapter 33 of the Texas Penal Code, "Computer Crimes."  The Harmful Access by Computer Act contained within § 143.001, et seq. Tex. Civ. Prac. & Rem. Code Ann., provides for a private civil cause of action for violation of Chapter 33 of the Texas Penal Code and entitles the Plaintiffs to actual damages, punitive damages, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION

#### Missappropriation of Trade Secrets Under
#### the Texas Uniform Trade Secrets Act

28.  Rusk Capital owns all right, title and interest in its trade secrets and confidential and proprietary information.  MarOpCo misappropriated the Plaintiffs' trade secrets through improper means in violation of Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.001, et seq.  Specifically, MarOpCo knowingly obtained Rusk Capital's trade secrets and confidential and proprietary information by improper means when MarOpCo unlawfully exercised dominion and control over Rusk Capital's computer systems and secure databases, without authority or right.  MarOpCo's conduct was done willfully and maliciously and has resulted in damage to Rusk Capital.  As such,

-8-

**App. 0044**

Rusk Capital is entitled to injunctive relief, actual and exemplary damages, pre and post-judgment interest, and court costs pursuant to Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.003.

### REQUEST FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION AND PERMANENT INJUNCTION

29. Pursuant to Texas Rule of Civil Procedure 680 and Texas Civil Practice and Remedies Code §§ 65.001 and 65.021 through 65.023, the Plaintiffs seek a temporary restraining order, and after notice and hearing, a temporary injunction and permanent injunction. Injunctive relief is sought for the purpose of maintaining the status quo and preventing additional interference with the Plaintiffs' business relationships and fiduciary duties.

30. There is a substantial likelihood that the Plaintiffs will prevail on the merits of their claims against MarOpCo. Moreover, the Plaintiffs will suffer immediate and irreparable harm unless MarOpCo is immediately restrained from accessing, using, disclosing, or destroying the business and personal property of the Plaintiffs.

31. The Plaintiffs have no adequate remedy at law for the irreparable harm the Plaintiffs will suffer, which includes without limitation, loss of business opportunities, loss of good will and business reputation, and loss of confidential and proprietary information, and liability for breach of fiduciary duties. Money damages cannot adequately compensate the Plaintiffs.

32. Balancing the equities and other factors, the significant potential of further irreparable harm to the Plaintiffs without

-9-

injunctive relief, and the lack of harm due to the entry of injunctive relief, demonstrate that the relief will not disserve the public interest.

33. The threat to the Plaintiffs and related entities substantially outweighs the threat of harm, if any, that MarOpCo would suffer by the granting of injunctive relief. Since MarOpCo is simply being enjoined from wrongful conduct which should be precluded anyway, bond should only be set in the sum of $1,000.00.

34. Specifically, the Plaintiffs request that the Court:

a. Return and restore all of the Plaintiffs' property removed by MarOpCo from the Tidwell office location, including computers, documents, files, records, checks, checkbooks, and all information or documents pertaining to Marshall and/or used and relied upon by Marshall in connection with the following entities (the "Affected Companies") to the Tidwell office location:

1. Preston Marshall, individually;

2. Marshall Heritage Foundation (f/n/a Marshall Museum and Library);

3. Marshall Legacy Foundation;

4. Eleanore Pierce Stevens Foundation;

5. EPS/EPM Charitable Remainder Unitrust;

6. Eleanor Pierce (Marshall) Stevens Living Trust;

7. Eleanor Stevens Revocable Gift Trust;

8. Bettye Morgan Charitable Remainder Unitrust;

9. Bettye Morgan Net Income with Makeup Charitable Remainder Unitrust;

10. Ada Estes Charitable Remainder Unitrust;

-10-

Certified Document Number: 65926497 - Page 10 of 14

    11.   Ada Estes Net Income with Makeup Charitable Remainder Unitrust;

    12.   Peroxisome Charitable Lead Trust;

    13.   Citrine Commerce L.L.C.;

    14.   Lysosome L.L.C.;

    15.   Chondriosome Siftung;

    16.   Khozraschyot Capital Management L.L.C.;

    17.   Lednik Capital Management L.L.C.;

    18.   Glacier Holdings L.L.C.;

    19.   Rusk Capital Management LLC; and

    20.   CarTech Systems L.L.C.

b.   Order MarOpCo to allow the Plaintiffs access to the Plaintiffs' property, including computers, documents, files, records, checks, checkbooks, and all information or documents pertaining to Marshall and/or used and relied upon by Marshall in connection with the Affected Companies;

c.   Order MarOpCo to allow the Plaintiffs access to the Plaintiffs' property removed by MarOpCo from the Tidwell office location, including computers, documents, files, records, checks, checkbooks, and all information or documents pertaining to Rusk Capital;

d.   Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from altering, destroying, concealing, or hiding any records, documents, papers, files, checks, or other property belonging or pertaining to Marshall, Rusk Capital or the Affected Companies;

e.   Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from deleting, removing, or writing over in any respect any documents, computer files or data (including, emails, hard drives, flash drives, disc drives, and zip drives), or other

Certified Document Number: 65926497 - Page 11 of 14

electronic information relating in any way to Marshall, Rusk Capital, or the Affected Companies;

f.  Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from disclosing, transmitting or otherwise using or disclosing for any purpose whatsoever any trade secrets, confidential and proprietary information, or other business information pertaining to or owned by Marshall, Rusk Capital or the Affected Companies removed from the Tidwell office location;

g.  Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from disclosing, transmitting or otherwise using or disclosing for any purpose whatsoever any personal information used by or pertaining to Marshall or relied upon by Marshall in connection with the Affected Companies; and

h.  Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from destroying, deleting, erasing, modifying or otherwise failing to preserve intact all information that originally came from the Tidwell office location used by or pertaining to Marshall, Rusk Capital or the Affected Companies.

35.  Unless the Court issues a temporary restraining order enjoining MarOpCo and those persons in active concert or participation with MarOpCo from committing any of the acts described above, such acts may, and probably will, be committed before notice can be given and hearings held on the Plaintiffs' application for temporary injunction. If the commission of the acts described above is not restrained and enjoined immediately, the Plaintiffs will suffer immediate and irreparable harm, including the loss of business opportunities, loss of good will and business reputation, loss of confidential and proprietary information, and liability for breach of fiduciary duties.

-12-

REQUEST FOR RELIEF AND FINAL JUDGMENT

36.  The Plaintiffs respectfully requests that this Court:

a.  issue a temporary restraining order;

b.  after a hearing, issue a temporary injunction, as requested above pending a trial on the merits;

c.  after a trial on the merits, issue a permanent injunction consistent with the temporary injunction requested above;

d.  award the Plaintiffs all actual, consequential, and exemplary damages to which they are entitled;

e.  award the Plaintiffs attorneys' fees, court costs, and expenses incurred in this action;

f.  award prejudgment and post-judgment interest on the amounts awarded above at the highest rate allowed by law; and

g.  grant the Plaintiffs all other relief, in law or in equity, general or special, as this Court deems proper and to which they may be justly entitled.

<div style="margin-left:40%;">

Respectfully submitted,

WARREN & SIUREK, L.L.P.

By: /S/ Mark Siurek
   Mark Siurek
   TBA# 18447900
   msiurek@warrensiurek.com
   Patricia Haylon
   TBA# 09281925
   thaylon@warrensiurek.com
   3334 Richmond Avenue, Suite 100
   Houston, Texas  77098
   713-522-0066 (telephone)
   713-522-9977 (fax)

ATTORNEYS FOR PLAINTIFFS PRESTON MARSHALL, INDIVIDUALLY, AND RUSK CAPITAL MANAGEMENT, L.L.C.

</div>

-13-

App. 0049

VERIFICATION

STATE OF TEXAS          §
COUNTY OF HARRIS        §

Before me, the undersigned notary, on this day, personally appeared Preston Marshall, a person whose identity is known to me. After I administered an oath to him, upon oath he said he read the Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction and that the facts stated in it are within his personal knowledge and are true and correct.

Preston Marshall

SWORN TO and SUBSCRIBED before me by Preston Marshall on June 22, 2015.

SUSAN M DIEDRICH
NOTARY PUBLIC STATE OF TEXAS
MY COMMISSION EXPIRES
AUG. 5, 2015

Notary Public in and for
the State of Texas



I, Chris Daniel, District Clerk of Harris ☐
County, Texas certify that this is a true and ☐
correct copy of the original record filed and or ☐
recorded in my office, electronically or hard ☐
copy, as it appears on this date. ☐
Witness my official hand and seal of office
this   June 20, 2016.

Certified Document Number:          65926497 Total Pages: 14

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated☐
documents are valid. If there is a question regarding the validity of this document and or seal☐
please e-mail support@hcdistrictclerk.com**

6/30/2015 5:06:00 PM
Chris Daniel - District Clerk Harris County
Envelope No. 5889356
By: <<Name>>
Filed: 6/30/2015 5:06:00 PM

CAUSE NO.  2015-35950

| | | |
|---|---|---|
| PRESTON   MARSHALL,   INDIVIDUALLY AND   RUSK   CAPITAL   MANAGEMENT, L.L.C. | § § § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| MAROPCO, INC., | § | |
| | § | |
| Defendant. | § | 11TH JUDICIAL DISTRICT |

## PLAINTIFFS' FIRST AMENDED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Preston Marshall Individually ("Marshall") and Rusk Capital Management, L.L.C. ("Rusk Capital") (collectively, "Plaintiffs") file this First Amended Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction complaining of MarOpCo, Inc. ("MarOpCo") and would show as follows:

## DISCOVERY CONTROL PLAN

1.      Discovery in the above-captioned matter should be conducted in accordance with Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure and affirmatively plead that this suit is not governed by the expedited-actions process of Texas Rule of Civil Procedure 169 because Plaintiffs seek monetary relief of over $100,000.

## PARTIES

2.      Preston Marshall is an individual residing in Harris County, Texas.

3.      Rusk Capital is a foreign limited liability corporation with its principal place of business in Harris County, Texas.

1

4.      MarOpCo, Inc. is a domestic corporation doing business in Harris County, Texas, and may be served with process through its registered agent for service of process, Sheena Bondadona, at 7001 Preston Road, Suite 400, Dallas, Texas 75205.

## VENUE

### A.      Marshall's employment with MarOpCo.

5.      Venue of this case is proper in Harris County, Texas, pursuant to Section 15.002(a) (1) of the Texas Civil Practice and Remedies Code.

## FACTS

6.      MarOpCo is primarily an administrative services provider for a group of businesses and charities owned, operated and/or managed by the Marshall family.[1] Elaine Marshall serves as the President and Chief Executive Officer of MarOpCo.[2]

7.      MarOpCo's principal office is located at 7001 Preston Road, Suite 400, Dallas, Texas 75205-5102.[3] However, MarOpCo also maintains a Houston office located at 7600 Tidwell, Suite 800, Houston, Texas 77040-6718.[4]

8.      As of June 11, 2015, Marshall was Vice President of MarOpCo.[5] Marshall performed his duties and responsibilities for MarOpCo at the Houston office located on Tidwell.[6] For example, Marshall was designated with the Texas Secretary of State as MarOpCo's registered agent for service of process at the Tidwell office location in Houston.[7]

---

[1] Ex. A, Affidavit of Preston Marshall, ¶ 3.
[2] *Id.*
[3] *Id.* at ¶ 4.
[4] *Id.*
[5] *Id.* at ¶ 3.
[6] *Id.* at ¶ 5.
[7] *Id.* at ¶ 3.

2

**B.    The Affected Entities.**

9.    In addition to his work for MarOpCo, Marshall maintained oversight of his personal affairs and other business entities (collectively referred to as the "Affected Entities") at the Tidwell office location.[8] These include:

    a.  Preston Marshall, individually;

    b.  Marshall Heritage Foundation (f/k/a Marshall Museum and Library);

    c.  Marshall Legacy Foundation;

    d.  Eleanor Pierce Stevens Foundation;

    e.  EPS/EPM Charitable Reminder Unitrust;

    f.  Eleanor Pierce (Marshall) Stevens Living Trust;

    g.  Eleanor Stevens Revocable Gift Trust;

    h.  Bettye Morgan Charitable Remainder Unitrust;

    i.  Bettye Morgan Supplemental Charitable Remainder Unitrust;

    j.  Ada Estes Charitable Reminder Unitrust;

    k.  Ada Estes Supplemental Charitable Remainder Unitrust;

    l.  Peroxisome Charitable Lead Trust;

    m.  Citrine Commence L.L.C.;

    n.  Lysosome L.L.C.;

    o.  Chondriosome Stiftung;

    p.  Khozraschyot Capital Management L.L.C.;

    q.  Lednik Capital Management L.L.C.;

    r.  Glacier Holdings L.L.C.;

    s.  Rusk Capital Management LLC; and

---

[8] *Id.* at ¶ 5.

3

      t.   CarTech Systems L.L.C.

Marshall's actions in operating Rusk Capital and the Affected Entities at the Tidwell office was known and ratified by MarOpCo.[9]

      10.    Importantly, Marshall's responsibilities relative to the various entities create ongoing fiduciary obligations from Marshall to each of the entities identified above.[10] In performing his duties and responsibilities on behalf of these entities, Marshall used and relied upon files, correspondence, records, reports, documents and other data maintained at the Tidwell office location.

**C.    Marshall's dealings with Rusk Capital.**

      11.    Rusk Capital is an equity investment firm focusing on the purchase of oil and gas producing properties.[11] Marshall is the sole owner and manager of Rusk Capital.[12]

      12.    The business of Rusk Capital includes gathering and analyzing information related to potential investors and investment opportunities concerning oil and gas producing properties.[13] As such, Rusk Capital maintains trade secrets, proprietary and confidential information at the Tidwell office location which includes, but is not limited to, all information related to actual and potential investors, data pertaining to investment opportunities, business strategies, investment strategies, business analysis, all communications with actual and potential investors, data evidencing due diligence with respect to investment opportunities, and employee records.[14]

---

[9] *Id.* at ¶ 7.
[10] *Id.* at ¶ 6.
[11] *Id.* at ¶ 2.
[12] *Id.*
[13] *Id.*
[14] *Id.* at 13.

13.     Rusk Capital has taken reasonable efforts to keep its trade secrets, confidential and proprietary information secret because it has actual or potential independent economic value to third parties and because it is not generally known to the public and not readily ascertainable from other means.

14.     The principal office of Rusk Capital is located at 7600 Tidwell Road, Suite 800, Houston, Texas 77040.[15] In that regard, Marshall purchased, used and/or relied upon telephones, computers, computer servers, and other equipment for purposes of conducting business as Rusk Capital at the Tidwell office. For example, Marshall spent over fourteen thousand dollars ($14,000.00) on computer equipment for Rusk Capital.[16] Marshall purchased a computer server (the "Rusk Server") in order to store data related to Rusk Capital and the Affected Entities.[17] Because MarOpCo's server had reached maximum capacity, was affected by frequent age-related hardware failures, out of date, and was unable to meet the demands of MarOpCo's own business, Marshall allowed MarOpCo to transfer files from the MarOpCo server to the Rusk Server.[18] Marshall also permitted MarOpCo to continue to store data and information on the Rusk Server.[19] Additionally, Marshall is the sole licensee of several software applications purchased for the use of Rusk Capital and the Affected Entities.[20] While Plaintiffs allowed MarOpCo use of some these programs while Marshall was a MarOpCo employee, MarOpCo has no right to utilize these programs anymore.[21] MarOpCo's server was still in place at the Tidwell office on June 11, 2015.

---

[15] *Id.* at ¶ 5.
[16] Id at. ¶ 8.
[17] *Id.*
[18] *Id.* at ¶ 10.
[19] *Id.*
[20] *Id.* at ¶ 9.
[21] *See Id.*

App. 0056

### D.      Marshall's termination from MarOpCo.

15.      On June 11, 2015, Marshall was notified in writing via correspondence from Elaine Marshall that his employment with MarOpCo was terminated effective immediately.[22] Marshall was also informed that he no longer had access to the Tidwell office location.[23]

16.      Additionally, MarOpCo directed the management company of the Tidwell office to deactivate all access entry cards in the possession of Marshall and to change the locks on the secured doors to Suite 800.[24] Further, Rusk Capital's computer system and server were disconnected.[25]

17.      Consequently, the computers, the Rusk Server, files (both physical and electronic), office equipment and furniture, as well as all confidential and proprietary information belonging to Rusk Capital are now in the possession of, and are wrongfully controlled by, MarOpCo.[26]

18.      Similarly, all records, files, and data used and relied upon by Marshall to carry out his personal affairs and to meet his fiduciary obligations with respect to the entities identified above have been removed from the Tidwell office and are now in the possession of, and are wrongfully controlled by, MarOpCo.[27]

19.      Additionally, Pierce Marshall, an officer with MarOpCo, is an adverse party in two cases involving Marshall in Texas and Louisiana.[28] Specifically, the case pending in Louisiana is Cause No. 2007-6723, In re Eleanor Pierce (Marshall) Stevens Living Trust, in the

---

[22] *Id.* at ¶ 11.
[23] *See Id.*
[24] *Id.* at ¶ 12.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.* at ¶ 14.

App. 0057

14th Judicial District, Calcasieu Parish, Louisiana.[29] The case pending in Texas is Cause No. PR-15-00746-1, In re the Estate of Eleanor Pierce (Marshall) Stevens, in Probate Court No. 2, Dallas, County, Texas.[30] Electronic files related to these cases are stored on the Rusk Server and tangible documents were kept at the Tidwell office.[31] The files contain confidential attorney-client communications and documents protected by the work-product privilege.[32] Because of MarOpCo's wrongful possession and control, Pierce Marshall may avail himself of privileged information or impermissible, unwarranted and improper discovery.[33]

20.     As a result of MarOpCo's wrongful exercise of dominion and control over the personal and business property of Marshall and Affected Entities including Rusk Capital, MarOpCo has or will cause harm to Marshall, individually and in his fiduciary capacity to the various entities listed above as well as to Rusk Capital.

21.     Marshall and Rusk Capital demanded in writing the immediate return of all property and assets belonging or pertaining to Marshall and Rusk Capital which were stored or located at 7600 W. Tidwell Road, Suite 800, Houston, Texas 77040 by 5:00 p.m. on Monday, June 22, 2015.[34]

22.     MarOpCo failed to return the property or allow Marshall to recover the tangible and electronic data, documents, and files pertaining to Rusk Capital and the Affected Entities. As such, this suit and application for immediate equitable relief follows.

---

[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.* at 15.

7

## CAUSES OF ACTION

**A.      Conversion.**

23.      Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the property of another, in a manner inconsistent with the owners' rights.

24.      Applied here, the Plaintiffs owned or had possession of property located at the Tidwell office location. MarOpCo unlawfully and without authorization removed from the Tidwell office, assumed and exercised control over the Plaintiffs' property in a manner that is inconsistent with their rights as owners. Plaintiffs demanded the return of the property and MarOpCo failed to do so.

25.      As a direct and proximate result of MarOpCo's conduct, the Plaintiffs have been harmed and damaged for which they now sue. The Plaintiffs are entitled to injunctive relief, actual and exemplary damages, and reasonable attorneys' fees and costs.

**B.      Violation of the Texas Harmful Access by Computer Act Tex. Civ. Prac. & Rem. Code Ann. §§ 143.001-143.002.**

26.      The Plaintiffs own and/or operate a secure computer system, which stores information that is only accessible by certain authorized individuals, including Marshall. The Plaintiffs' computer systems contains and stores, in part, records and documents containing confidential information concerning investment opportunities, potential investors, investment strategies and employees. Plaintiffs limit the access to its computer system to certain executive and administrative employees of Rusk Capital.

27.      Nevertheless, MarOpCo knowingly accessed, disassembled and/or physically moved the Plaintiffs' secure computer systems and databases. This access and control was intentional, willful and without the Plaintiffs' consent.

8

28.     The foregoing conduct violates Chapter 33 of the Texas Penal Code, "Computer Crimes." The Harmful Access by Computer Act contained within § 143.001, et seq. Tex. Civ. Prac. & Rem. Code Ann., provides for a private civil cause of action for violation of Chapter 33 of the Texas Penal Code and entitles the Plaintiffs to actual damages, punitive damages, and reasonable attorneys' fees and costs.

**C.      Misappropriation of Trade Secrets Under the Texas Uniform Trade Secrets Act.**

29.     Rusk Capital owns all right, title and interest in its trade secrets and confidential and proprietary information. MarOpCo misappropriated the Plaintiffs' trade secrets through improper means in violation of Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.001, et seq. Specifically, MarOpCo knowingly obtained Rusk Capital's trade secrets and confidential and proprietary information by improper means when MarOpCo unlawfully exercised dominion and control over Rusk Capital's computer systems and secure databases, without authority or right. MarOpCo's conduct was done willfully and maliciously and has resulted in damage to Rusk Capital. As such, Rusk Capital is entitled to injunctive relief, actual and exemplary damages, pre and post-judgment interest, and court costs pursuant to Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.003.

<u>**REQUEST FOR TEMPORARY RESTRAINING ORDER,<br>TEMPORARY INJUNCTION AND PERMANENT INJUNCTION**</u>

30.     Pursuant to Texas Rule of Civil Procedure 680 and Texas Civil Practice and Remedies Code §§ 65.001 and 65.021 through 65.023, the Plaintiffs seek a temporary restraining order, and after notice and hearing, a temporary injunction and permanent injunction. Injunctive relief is sought for the purpose of maintaining the status quo and preventing additional interference with the Plaintiffs' business relationships and fiduciary duties.

9

31.     There is a substantial likelihood that the Plaintiffs will prevail on the merits of their claims against MarOpCo because unless MarOpCo is immediately restrained from accessing, using, disclosing, or destroying the business and personal property of the Plaintiffs, Plaintiffs will suffer immediate and irreparable losses of its trade secrets and confidential and proprietary information.

32.     The Plaintiffs have no adequate remedy at law for the irreparable harm the Plaintiffs will suffer, which includes without limitation, loss of business opportunities, loss of goodwill and business reputation, and loss of confidential and proprietary information, and liability for breach of fiduciary duties. Money damages cannot adequately compensate the Plaintiffs.

33.     Balancing the equities and other factors, the significant potential of further irreparable harm to the Plaintiffs without injunctive relief, the Court should maintain the status quo, which is the "last, actual, peaceable, noncontested status which preceded the pending controversy."[35]

34.     The threat to the Plaintiffs and related entities substantially outweighs the threat of harm, if any, that MarOpCo would suffer by the granting of injunctive relief. Since MarOpCo is simply being enjoined from wrongful conduct which should be precluded anyway, bond should only be set in the sum of $1,000.00.

35.     Specifically, the Plaintiffs request that the Court:

    a.  Return and restore all of the Plaintiffs' property removed by MarOpCo from the Tidwell office location, including computers, documents, files, records, checks; checkbooks, and all information or documents pertaining to Marshall and/or used and relied upon by Marshall in connection with the following entities (the "Affected Companies") to the Tidwell office location:

---

[35] *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.).

1.  Preston Marshall, individually;

2.  Marshall Heritage Foundation (f/n/a Marshall Museum and Library);

3.  Marshall Legacy Foundation;

4.  Eleanor Pierce Stevens Foundation;

5.  EPS/EPM Charitable Remainder Unitrust;

6.  Eleanor Pierce (Marshall) Stevens Living Trust;

7.  Eleanor Stevens Revocable Gift Trust;

8.  Bettye Morgan Charitable Remainder Unitrust;

9.  Bettye Morgan Supplemental Charitable Remainder Unitrust;

10. Ada Estes Charitable Remainder Unitrust;

11. Ada Estes Supplemental Charitable Remainder Unitrust;

12. Peroxisome Charitable Lead Trust;

13. Citrine Commerce L.L.C.;

14. Lysosome L.L.C.;

15. Chondriosome Stiftung;

16. Khozraschyot Capital Management L.L.C.;

17. Lednik Capital Management L.L.C.;

18. Glacier Holdings L.L.C.;

19. Rusk Capital Management LLC; and

20. CarTech Systems L.L.C.

b.  Order MarOpCo to allow the Plaintiffs access to the Plaintiffs' property, including computers, documents, files, records, checks, checkbooks, and all information or documents pertaining to Marshall and/or used and relied upon by Marshall in connection with the Affected Entities;

c.  Order MarOpCo to allow the Plaintiffs access to the Plaintiffs' property removed by MarOpCo from the Tidwell office location, including computers, documents, files, records, checks, checkbooks, and all information or documents pertaining to Rusk Capital;

d.  Order MarOpCo to return the Rusk Server to Plaintiffs;

e.  Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from altering, destroying, concealing, or hiding any records, documents, papers, files, checks, or other property belonging or pertaining to Marshall, Rusk Capital or the Affected Entities;

11

**App. 0062**

     f.   Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from deleting, removing, or writing over in any respect any documents, computer files or data (including, emai1s, hard drives, flash drives, disc drives, and zip drives), or other electronic information relating in any way to Marshall, Rusk Capital, or the Affected Entities;

     g.   Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from disclosing, transmitting or otherwise using or disclosing for any purpose whatsoever any trade secrets, confidential and proprietary information, or other business information pertaining to or owned by Marshall, Rusk Capital or the Affected Entities removed from the Tidwell office location;

     h.   Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from disclosing, transmitting or otherwise using or disclosing for any purpose whatsoever any personal information used by or pertaining to Marshall or relied upon by Marshall in connection with the Affected Entities; and

     i.   Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from destroying, deleting, erasing, modifying or otherwise failing to preserve intact all information that originally came from the Tidwell office location used by or pertaining to Marshall, Rusk Capital or the Affected Entities.

36.    Unless the Court issues a temporary restraining order enjoining MarOpCo and those persons in active concert or participation with MarOpCo from committing any of the acts described above, such acts may, and probably will, be committed before notice can be given and hearings held on the Plaintiffs' application for temporary injunction. If the commission of the acts described above is not restrained and enjoined immediately, the Plaintiffs will suffer immediate and irreparable harm, including the loss of business opportunities, loss of good will and business reputation, loss of confidential and proprietary information, and liability for breach of fiduciary duties.

## REQUEST FOR RELIEF AND FINAL JUDGMENT

37.    The Plaintiffs respectfully requests that this Court:

     a.   issue a temporary restraining order as set forth above;

     b.   after a hearing, issue a temporary injunction, as requested above pending a trial on the merits;

c.  after a trial on the merits, issue a permanent injunction consistent with the temporary injunction requested above;

d.  award the Plaintiffs all actual, consequential, and exemplary damages to which they are entitled;

e.  award the Plaintiffs attorneys' fees, court costs, and expenses incurred in this action;

f.  award prejudgment and post-judgment interest on the amounts awarded above at the highest rate allowed by law; and

g.  grant the Plaintiffs all other relief, in law or in equity, general or special, as this Court deems proper and to which they may be justly entitled.

Respectfully submitted,

**DOBROWSKI, LARKIN & JOHNSON LLP**

By:  */s/ Paul J. Dobrowski*
Paul J. Dobrowski
SBN 05927100
Frederick T. Johnson
SBN 00785429
Akilah F. Craig
SBN 24076194
4601 Washington Ave., Suite 300
Houston, TX 77007
Telephone: (713) 659-2900
Facsimile: (713) 659-2908
pjd@doblaw.com
fjohnson@doblaw.com
acraig@doblaw.com

13

**WARREN & SIUREK, L.L.P.**

By:    */s/ Mark Siurek*                       
        Mark Siurek
        TBA# 18447900
        msiurek@warrensiurek.com
        Patricia Haylon
        TBA# 09281925
        thaylon@warrensiurek.com
        3334 Richmond Avenue, Suite 100
        Houston, Texas 77098
        Telephone: (713) 522-0066
        Facsimile: (713) 522-9977

ATTORNEYS FOR PRESTON MARSHALL AND RUSK CAPITAL MANAGEMENT, L.L.C.

14

CAUSE NO 2015-35950

| PRESTON MARSHALL, INDIVIDUALLY and RUSK CAPITAL MANAGEMENT, L.L.C., | § § § | IN THE DISTRICT COURT |
|---|---|---|
| Plaintiffs, | § § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| MAROPCO, INC., | § § § | |
| Defendant. | § | 11th JUDICIAL DISTRICT |

**AFFIDAVIT OF PRESTON MARSHALL**

| STATE OF TEXAS | § |
|---|---|
| | § |
| COUNTY OF HARRIS | § |

Before me, the undersigned notary, on this day personally appeared Preston Marshall, the affiant, a person whose identity is known to me. After I administered the oath to the affiant, the affiant testified:

1. "My name is Preston Marshall. I am a resident of Harris County, Texas. I am over the age of 18 and I am qualified in all respects to give this affidavit. The facts set forth in this affidavit are within my personal knowledge and are true and correct.

2. I am the sole owner and manager of Rusk Capital Management, L.L.C. ("Rusk Capital"). Rusk Capital is an equity investment firm focusing on the purchasing of oil and gas producing properties. Rusk Capital gathers and analyzes information related to potential investors and investment opportunities concerning oil and gas producing properties.

3. As of June 11, 2015, I was also Vice President of MarOpCo, Inc. ("MarOpCo"), which is primarily an administrative services provider for a group of businesses and charities owned, operated, and/or managed by the Marshall Family. Elaine Marshall serves as the President and Chief Executive Officer of MarOpCo. Until my termination from MarOpCo, I also served as MarOpCo's registered agent for service of process.

4. MarOpCo's principal office is located at 7001 Preston Road, Suite 400, Dallas, Texas 75205-5105. However, MarOpCo maintains a Houston office, located at 7600 Tidwell, Suite 800, Houston, Texas 77040-6718.

5. For the entirety of my employment with MarOpCo, I have maintained and occupied an office at MarOpCo's Tidwell office. Further, at all times relevant to this

1

this litigation, the primary office of Rusk Capital is located at the Tidwell office. I also operated the Affected Entities out of the Tidwell office, including:[1]

a.    Marshall Heritage Foundation (f/k/a/ Marshall Museum and Library);
b.    Marshall Legacy Foundation;
c.    Eleanor Pierce Stevens Foundation;
d.    EPS/EPM Charitable Remainder Unitrust;
e.    Eleanor Pierce (Marshall) Stevens Living Trust;
f.    Eleanor Stevens Revocable Gift Trust;
g.    Bettye Morgan Charitable Remainder Unitrust;
h.    Bettye Morgan Supplemental Charitable Remainder Unitrust;
i.    Ada Estes Charitable Remainder Unitrust;
j.    Ada Estes Supplemental Charitable Remainder Unitrust;
k.    Peroxisome Charitable Lead Trust;
l.    Citrine Commerce L.L.C.;
m.    Lysome L.L.C.;
n.    Chondrisome Stiftung;
o.    Khozraschyot Capital Management L.L.C.;
p.    Lednik Capital Management L.L.C.;
q.    Glacier Holdings L.L.C.;
r.    CarTech Systems L.L.C.

6.    My responsibilities relative to the Affected Entities create ongoing fiduciary obligations from me to each of the Affected Entities.

7.    My actions in operating Rusk Capital and the Affected Entities was known by MarOpCo and Elaine Marshall, including the fact that my controller for Rusk Capital worked in the Tidwell office as well. True and correct copies of correspondence demonstrating MarOpCo's knowledge are attached hereto as *Exhibit 1*.

8.    Between May 2013 and October 2014, I spent over fourteen thousand dollars ($14,000) on computer equipment (hardware and software) for Rusk Capital. A true and correct copy of the invoices for the purchases are attached hereto as *Exhibit 2*. I personally purchased (1) Microsoft Office Home and Business; and (2) Lacerte Fast Path tax preparation software. See Ex. 2. In addition, I purchased a Hewlett-Packard Gen8 v2 Server and accompanying software (the "Rusk Server"), as well as a keyboard, mouse, LED monitor, and two workstations. See Ex. 2. Each of these purchases were billed to me personally or to Rusk Capital and I used my personal credit card to make the purchases.

9.    Additionally, the Rusk Server contains software and programs that are subject to licenses for which Rusk Capital is the sole licensee. For example, Rusk Capital is the sole licensee of Microsoft Window Server 2012 R2 and Microsoft SQL Server

---

[1] These entities are referred to herein as the "Affected Entities."

2012. Because the licenses are specific to the individually named user and cannot be shared, MarOpCo has no right to utilize these programs.

10.   Because MarOpCo's server had reached maximum capacity, was affected by frequent age-related hardware failures, outdated and unable to meet the demands of MarOpCo's own business, I allowed MarOpCo to transfer files and save data and information on the Rusk Server, which was housed at the Tidwell office. I also saved data and information from the Affected Entities listed above on the Rusk Server.  MarOpCo's server was still in place at the Tidwell office on June 11, 2015.

11.   On June 11, 2015, I received a letter from Elaine Marshall terminating my employment with MarOpCo. A true and correct copy of the letter is attached hereto as *Exhibit 3*. While the letter purported to terminate my right of access to the Tidwell office, the letter also acknowledged my use of the office for the Affected Entities as well as MarOpCo, and represented that I could go to the Tidwell office to identify and collect my personal effects.

12.   However, on June 15, 2015, the locks to the Tidwell office were changed, my access card was deactivated, the Rusk Server was disconnected, and my tangible personal files and documents were removed from the Tidwell office. As such, the computers, server, files (both physical and electronic), physical original attorney-client files (including communications, legal research, advice and mental impressions), office equipment, and furniture owned by me or Rusk Capital, as well as confidential and proprietary information of Rusk Capital and the Affected Entities are in the possession and control of MarOpCo. Similarly, all records, files and data used and relied upon by me to carry out my personal affairs and to meet my fiduciary obligations with respect to the Affected Entities are now in the possession and control of MarOpCo.

13.   Prior to my termination from MarOpCo and ultimate lock-out from the Tidwell office, Rusk Capital maintained proprietary and confidential business information at the Tidwell office, including but not limited to, all information related to actual and potential investors, data pertaining to investment opportunities, business strategies, investment strategies, business analysis, all communications with actual and potential investors, data evidencing due diligence with respect to investment opportunities, and employee records, as well as physical, original attorney-client files. This information constitutes trade secrets, confidential business information, and protected/protectable attorney-client communications of Rusk Capital, the Affected Entities and me.

14.   In addition, Pierce Marshall, an officer with MarOpCo, is an adverse party in two cases pending in Texas and Louisiana, in which I am currently involved. Specifically, the case pending in Louisiana is Cause No. 2007-6723, In re Eleanor Pierce (Marshall) Stevens Living Trust, in the 14th Judicial District, Calcasieu Parish, Louisiana. The case pending in Texas is Cause No. PR-15-00746-1, In re the Estate of Eleanor Pierce (Marshall) Stevens, in Probate Court No. 2, Dallas, County, Texas. I have electronic files related to both of these matters stored on the

3

Rusk Server as well as physical, tangible documents stored at the Tidwell office. To the extent my property is not returned in full, without Pierce Marshall being allowed access, he may be able to access and view confidential attorney-client privileged documents and documents protected by the work-product privilege. Pierce Marshall may also avail himself of impermissible, unwarranted and unlimited discovery.

15.     On June 19, 2015, I demanded the immediate return of all property and assets belonging or pertaining to me individually or Rusk Capital in writing. A true and correct copy of my demand letter is attached hereto as *Exhibit 4*. However, to date, MarOpCo has failed to return the property or allow me to recover the tangible and electronic data, documents, and files pertaining to the Affected Entities or me personally.

16.     If my property is not returned, I will suffer imminent harm, including loss of business opportunity, loss of good will and business reputation, loss of confidential and proprietary information, potential breach of attorney-client communications, and I may be exposed to liability for breach of fiduciary duties.

Further affiant sayeth not."

By: _____
Preston Marshall

SUBSCRIBED AND SWORN TO before me by Preston Marshall on this 30ᵗʰ day of June, 2015.

_____
Notary Public in and for
The State of Texas

ANDREA BANDA
Notary Public, State of Texas
My Commission Expires
January 31, 2019

4

# EXHIBIT 1



**From:** sheena.bonadona@maropco.com [mailto:sheena.bonadona@maropco.com]
**Sent:** Monday, December 22, 2014 5:40 PM
**To:** 'Eyvonne Scurlock'
**Cc:** 'Preston Marshall'
**Subject:** Peroxisome transfer letters to Foundations

Eyvonne,

Please see attached transfer request letters from Peroxisome to the Foundations.  I will fax over a copy to Keith tomorrow morning that includes Pierce's signature.  Once you have Preston's signature, please fax a copy to Keith as well.

Thanks,
Sheena
_____

Sheena Adams Bonadona, CPA

App. 0071

Corporate Controller
MarOpCo, Inc.
7001 Preston Road, Ste. 400
Dallas, Texas 75205
Phone: (214) 447-7486
Fax: (972) 460-4326

2

**App. 0072**



**From:** Eyvonne Scurlock [mailto:eyvonne.scurlock@maropco.com]
**Sent:** Monday, February 23, 2015 2:21 PM
**To:** 'Preston Marshall'
**Subject:** RE: Sheldon Black

I told her that he did not work on anything but Rusk and that is who pays his salary.  She does think she is paying rent for his office.

**From:** Preston Marshall [mailto:preston.marshall@maropco.com]
**Sent:** Monday, February 23, 2015 2:14 PM
**To:** 'Eyvonne Scurlock'
**Subject:** RE: Sheldon Black

You can tell her he does not have access to all the files and that she wrote me a letter instructing me to hire an accountant and pay him myself.  She is not paying rent for his office.

**From:** Eyvonne Scurlock [mailto:eyvonne.scurlock@maropco.com]
**Sent:** Monday, February 23, 2015 10:29 AM

App. 0073

**To:** 'Preston Marshall'
**Subject:** Sheldon Black

Your mom called this morning.  She said Brad told there was a strange man in the office.  She wanted to know who he was, how long he had been here and who was paying him.  She did not like it that he had access to all the files.   I told her he worked only with RCM and that was who paid him.

App. 0074



**From:** sheena.bonadona@maropco.com [mailto:sheena.bonadona@maropco.com]
**Sent:** Friday, April 10, 2015 4:57 PM
**To:** 'Preston Marshall'; 'Eyvonne Scurlock'
**Subject:** Marshall tax returns

Hi all.  So we are all on the same page, please see the list of returns I'm preparing and which returns I'm under the impression that Preston is preparing. Please let me know if anything needs to be changed.

Prepared by Sheena:
- Trof, Inc.
- Ribosome, LP
- MarOpCo BBP for Dallas & Harris Counties
- EPM Testamentary Lead Trust
- Eagle Trust
- Falcon Trust
- Harrier Trust
- Estate of J. Howard Marshall II
- J. Howard Marshall II Living Trust
- EPM MIT
- Marshall Grandchildren Trust FBO Preston

App. 0075

- Marshall Grandchildren Trust FBO Pierce
- Idzig, LLC
- Elaine T. Marshall
- Rusk Oil Corporation
- Estate of EPM
- Marshall Heritage Foundation

Prepared by Preston to be reviewed by Sheena:
- Chondriosome Stiftung
- Peroxisome Trust
- Lysosome, LLC
- Marshall Legacy Foundation

Prepared by Preston:
- Morgan CRUT
- Morgan Supplemental CRUT
- EPS/EPM CRUT
- Estes CRUT
- Estes CRAT

Thanks,
Sheena

_____

Sheena Adams Bonadona, CPA
Corporate Controller
MarOpCo, Inc.
7001 Preston Road, Ste. 400
Dallas, Texas 75205
Phone: (214) 447-7486
Fax: (972) 460-4326

2

App. 0076

# EXHIBIT 2

App. 0077

**From:** Microsoft Store Support [mailto:DO-NOT-REPLY@microsoftstore.com]
**Sent:** Friday, June 13, 2014 4:00 PM
**To:** pmarshall28@hotmail.com
**Subject:** Microsoft Store - Order Confirmation (Order #9653449434)



Account | Customer Services

# Thanks for your purchase

*Dear Preston Marshall,*

Thank you for shopping with Microsoft on June 13, 2014. We hope you enjoyed your shopping experience.

If your order contains products that require downloading, just sign in with your Microsoft account and click the download link right next to the product name.

If your order contains physical products, we'll send you a separate email when your products have shipped.

## Order summary

| | |
|---|---|
| **Your order number:** | **Order date:** |
| 9653449434 | June 13, 2014 |

**Bill to:**
Preston Marshall
7600 W. Tidwell Rd.
Suite# 800
Houston TX 77040
United States
713690-4321
pmarshall28@hotmail.com

**Payment:**
MC
************9387 112016

## Products on your order

App. 0078

Product Name: Office Home and Business 2013          $439.98
Product SKU: AAA-02675
Unit Price: $219.99
Qty Ordered: 2
Product Key: MXVKN-RW4RX-8JK2D-9G9VF-TVGHR

Product Key: W3NYM-F46YP-2BHCT-V92RB-VQTHR

---

Subtotal: $439.98
Sales tax: $36.30
Order total: $476.28

---

To look up your order, please log in using your Microsoft account.

Additional Questions?
View our help pages
Read our return policy
View your account online

Thank you for shopping with Microsoft.

Sincerely, Microsoft Store Customer Service

---

2

From: Microsoft Store Support [mailto:DO-NOT-REPLY@microsoftstore.com]
Sent: Tuesday, May 28, 2013 5:42 PM
To: pmarshall28@hotmail.com
Subject: Microsoft Store - Order Confirmation (Order #9683492447)

     Account  |  Customer Services

# Thanks for your purchase

Dear Preston Marshall,

Thank you for shopping with Microsoft on May 28, 2013. We hope you enjoyed your shopping experience.

If your order contains products that require downloading, just log in to your Microsoft account using the information and link below. In your order summary, just click the download link right next to the product name.

If your order contains physical products, we'll send you a separate email when your products have shipped.

**Order summary**

**Your order number:**
9683492447

**Order date:**
May 28, 2013

**Bill to:**
Preston Marshall
7600 W. Tidwell Rd.
Suite# 800
Houston TX 77040
United States
713690-4321
pmarshall28@hotmail.com

**Payment:**
MC
***********9387 112013

1

**Products on your order**

Name: Office Home and Business 2013                    $219.99
Product SKU: AAA-02675
Unit Price: $219.99
Qty Ordered: 1
Product Key: NH84J-QG3VD-MVKX4-Y732D-C34MF

**Subtotal:** $219.99
**Sales tax:** $18.15
**Order total:** $238.14

To look up your order, please log in using your Microsoft account.

Additional Questions?
View our help pages
Read our return policy
View your account online

Thank you for shopping with Microsoft.

Sincerely, Microsoft Store Customer Service

2

**From:** Lacerte Customer Service [mailto:No_Reply@notifications.intuit.com]
**Sent:** Friday, October 03, 2014 2:31 PM
**To:** preston.marshall@ruskcapital.com
**Subject:** Your Lacerte Tax Order Confirmation



Dear Preston Marshall,

Thank you. We have received your order and it is currently being processed.

Sign in to My Account to view your order or make changes to your billing, contacts, and other account information. Don't have a login for My Account? No problem, it's quick and easy to create one by clicking the link above and following the on-screen instructions.



## ORDER INFORMATION

**Order #:**   100000728550981

**Order Date:** Oct 03, 2014

| Qty | Item | Type | Current Charge |
|-----|------|------|----------------|
| 1 | Lacerte Fast Path Download Tax Year 2014 1 | One-Time | $345.00 |
| 1 | Lacerte New Customer Fast Path Download Tax Year 2013 | One-Time | $150.00 |

| | |
|---|---|
| Subtotal: | $495.00 |
| Sales Tax: | $40.84 |
| Total for this Order: | $535.84 |

**Notes:**

- Sales tax calculations are estimated. The final sales tax calculation will comply with local regulations.

## Billing Information

**Bill To:**   Preston Marshall
7600 W Tidwell Rd
STE 800



### Ask Lacerte

Get Your Answers Fast Through "Ask Lacerte®"

### Manage Your Lacerte Account

Sign in to My Account to:
- Update account
- Change contact info
- Track shipments
- View REP balances
- Renew online

### Lacerte Planned Releases

View scheduled Lacerte software releases and planned release dates

1



Houston, TX 77040

**E-mail Address:** preston.marshall@ruskcapital.com

**Payment Type:** American Express *2006

**NEED HELP?**

If you have any questions, we're here to help. Please visit the customer support site to see all of our support options.

Lacerte Training & CPE Courses

Lacerte Product Release/Ship Dates

Privacy | Legal | Contact Us | About Intuit

You have received this business communication as part of our efforts to fulfill your request or service your account. You may receive this and other business communications from us even if you have opted out of marketing messages.

If you receive an email message that appears to come from Intuit but that you suspect is a phishing email, please forward it immediately to spoof@intuit.com . Please visit http://security.intuit.com for additional security information.

**Please note:** This email was sent from an auto-notification system that cannot accept incoming email. Please do not reply to this message.

© 2014 Intuit Inc. or its affiliates. All rights reserved.

2

**App. 0083**

**From:** CUSTOMERREPLIES@HP.COM [mailto:CUSTOMERREPLIES@HP.COM] **On Behalf Of** HP DIRECT ORDERS
**Sent:** Monday, June 02, 2014 4:31 PM
**To:** PMARSHALL28@HOTMAIL.COM
**Subject:** Order Confirmation. 4896759

Confirmation of your HP order



# Order confirmation

## Thank you for doing business with HP

Hewlett-Packard receipt of 034940084 ordered on 06/02/2014

Thank you for choosing Hewlett-Packard Company as your provider. Below are the details of your recent purchase. To check the status of your order online, please refer to the order status link on our website. Please note HP is committed to meet shipping dates & for that reason some of the items on your order might ship separately as available to expedite the delivery process.

** Please do not respond to this email, as emails sent to this mailbox are not monitored.
** If you have questions, please contact your Client Service or Sales Representative at 866-625-0759. A subsequent shipping confirmation email will be sent at the time your order ships.

| | |
|---|---|
| Customer Account Number: | 461463 |
| Web Order Number: | 4896759 |
| Customer PO Number: | 4896759 |
| Order Date: | 06/02/2014 |
| Carrier: | F2D-FEDEX 2 DAY |

| Item #: | Description/Mfg part #: | Quantity: | Unit price: | Extended price: |
|---|---|---|---|---|

1

| | | | | | | |
|---|---|---|---|---|---|---|
| *534204 | 748270-999 | | | 1 | 12,386.00 | 12,386.00 |
| | ML350e Gen8 v2 Server KMAT CTO | | | | | |
| 1235398 | 740897-B21 | | | 1 | .00 | .00 |
| | HP ML350e Gen8 v2 Hot Plug 8SFF CTO Svr | | | | | |
| 9871614 | 701849-L21 | | | 1 | .00 | .00 |
| | HP ML350e Gen8 v2 E5-2470v2 FIO Kit | | | | | |
| *775969 | 713985-32G | | | 2 | .00 | .00 |
| HP 32GB | 2x16GB | | 2Rx4 PC3L-12800R-11 Kit | | | |
| 2440289 | 713985-B21 | | | 4 | .00 | .00 |
| | HP 16GB 2Rx4 PC3L-12800R-11 Kit | | | | | |
| 9871640 | 701849-B21 | | | 1 | .00 | .00 |
| | HP ML350e Gen8 v2 E5-2470v2 Kit | | | | | |
| 6100057 | 755997-B21 | | | 1 | .00 | .00 |
| | MS WS12 R2 Std FIO Npi E/F/I/G/S SW | | | | | |
| 2210004 | 694474-B21 | | | 1 | .00 | .00 |
| | MS SQL Srv 2012 Std FIO Npi en SW | | | | | |
| 7550501 | 718162-B21 | | | 3 | .00 | .00 |
| | HP 1.2TB 6G SAS 10K 2.5in DP ENT SC HDD | | | | | |
| 0521875 | 339779-B21 | | | 1 | .00 | .00 |
| | HP RAID 5 Drive 1 FIO Setting | | | | | |
| 1880060 | 624192-B21 | | | 1 | .00 | .00 |
| | HP Hh SATA DVD RW Black Bzl Kit | | | | | |
| *610875 | 698530-SC2 | | | 1 | .00 | .00 |
| | HP SA P430/4GB FBWC 6Gb Cntrlr+Cable Kit | | | | | |
| 6100081 | 698530-B21 | | | 1 | .00 | .00 |
| | HP Smart Array P430/4G Controller | | | | | |
| 2650145 | 725895-B21 | | | 1 | .00 | .00 |
| | HP ML350e Gen8 v2 Smart Array Cable Kit | | | | | |
| 2650146 | 738655-B21 | | | 1 | .00 | .00 |
| | HP PCI Baffle Kit | | | | | |
| *411603 | 656363-4RK | | | 1 | .00 | .00 |
| | 2xHP750W CS PlatPlus PwrSply+Enblmnt KT | | | | | |
| 8640116 | 656363-B21 | | | 2 | .00 | .00 |
| | HP 750W CS Plat PL Ht Plg Pwr Supply Kit | | | | | |
| 1830501 | 738661-B21 | | | 1 | .00 | .00 |
| | HP ML350e v2 Redundant PSU Kit | | | | | |
| 1551508 | 631341-B21 | | | 1 | 30.00 | 30.00 |
| | HP USB BFR-PVC US | | | | | |

2

|  | Keyboard/Mouse Kit | | | |
| *284967 | U2FT7E | 1 | 552.00 | 552.00 |
|  | HP 3y Nbd ML350e FC SVC | | | |
| 2730974 | 701606-DN1 | 1 | 138.00 | 138.00 |
|  | MS WS12 CAL 5USR | | | |
|  | en/fr/es/xc Lic | | | |

| Sub Total: | 13,106.00 |
| Freight: | 71.00 |
| Estimated Tax: | 1,081.26 |
| ----- | ----- |
| Order Total: | 14,258.26 |

**Shipping information**      **Billing information**

Ship to:                          Bill to:

RUSK CAPITAL MANAGEMENT           RUSK CAPITAL MANAGEMENT
PRESTON MARSHALL                  PRESTON MARSHALL
7600 W. TIDWELL 800               7600 W. TIDWELL 800
HOUSTON, TX 77040                 HOUSTON, TX 77040

For contact information, return policy or terms of sale please click here.

## Stay up to date

Receive updates on the latest technology, industry news, new products and solutions, promotions and events, plus driver and support alerts.

Subscribe to HP communications.

## We're here to help

Order Support Specialists are available to assist customers after order placement at 1-866-625-0242 Option #3. Hours of availability are Monday through Friday, 6am to 6pm MST.

## Special offers                          View all offers

3

App. 0086



Our thinnest business Ultrabook™ yet

The desktop has evolved

Save instantly on HP ProLiant Smart Buys

Fast, easy operation

**Computing**

Laptops and tablets

Desktops

Workstations

Monitors

**Printing**

Printers and multifunction

Ink, toner and paper

Scanners and fax

**Networking**

Servers and blades

Storage

Solutions

**Connect with HP**

☒ Facebook

☒ Twitter

☒ LinkedIn

☒ 367 Addison Avenue

Promotions subject to terms and conditions. HP Privacy Mailbox, 11445 Compaq Center Drive W., Mailstop 040307, Houston, TX 77070.

HP is committed to respecting your privacy. For specific guidelines, visit the HP Online Privacy Statement.

© 2014 Hewlett-Packard Company, L.P. The only warranties for HP products and services are set forth in the express limited warranty statements accompanying such products and services. Nothing herein should be construed as constituting an additional warranty. HP shall not be liable for technical or editorial errors or omissions contained herein. THIS DOCUMENT IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY. This document may be copied provided all text is included and copies contain HP's copyright notice and any other notices provided herein. For more information on our legal policy please click here.

App. 0087

**From:** CUSTOMERREPLIES@HP.COM [mailto:CUSTOMERREPLIES@HP.COM] **On Behalf Of** HP DIRECT ORDERS
**Sent:** Saturday, June 14, 2014 4:09 PM
**To:** PMARSHALL28@HOTMAIL.COM
**Subject:** Order Confirmation. 4900510

Confirmation of your HP order



# Order confirmation

# Thank you for doing business with HP

Hewlett-Packard receipt of 034998976 ordered on 06/14/2014

Thank you for choosing Hewlett-Packard Company as your provider. Below are the details of your recent purchase. To check the status of your order online, please refer to the order status link on our website. Please note HP is committed to meet shipping dates & for that reason some of the items on your order might ship separately as available to expedite the delivery process.

** Please do not respond to this email, as emails sent to this mailbox are not monitored.
** If you have questions, please contact your Client Service or Sales Representative at 866-625-0759. A subsequent shipping confirmation email will be sent at the time your order ships.

| | |
|---|---|
| Customer Account Number: | 461463 |
| Web Order Number: | 4900510 |
| Customer PO Number: | 4900510 |
| Order Date: | 06/14/2014 |
| Carrier: | RPS-FEDEX GROUND |

| Item #: | Description/Mfg part #: | Quantity: | Unit price: | Extended price: |
|---|---|---|---|---|

1

4034247  A5V72AA#ABA                          1      95.00      95.00
        nPLV1911 18.5-InchLEDLCDMonitor
        US

Sub Total:                                                    95.00
Freight:                                                        .00
Estimated Tax:                                                 7.84
-----------------------------------------------------------------------
Order Total:                                                 102.84

**Shipping information**            **Billing information**

Ship to:                            Bill to:

RUSK CAPITAL MANAGEMENT             RUSK CAPITAL MANAGEMENT
PRESTON MARSHALL                    PRESTON MARSHALL
7600 W. TIDWELL 800                 7600 W. TIDWELL 800
HOUSTON, TX 77040                   HOUSTON, TX 77040

For contact information, return policy or terms of sale please click here.

---

## Stay up to date

Receive updates on the latest technology, industry news, new products and solutions, promotions and events, plus driver and support alerts.

Subscribe to HP communications.

---

## We're here to help

Order Support Specialists are available to assist customers after order placement at 1-866-625-0242 Option #3. Hours of availability are Monday through Friday, 6am to 6pm MST.

---

## Special offers

View all offers

2

App. 0089

| Great business solutions at competitive prices | Keep pace with your multitasking | Save instantly on HP ProLiant Smart Buys | Find all of your printer supplies here |
| --- | --- | --- | --- |

| **Computing** | **Printing** | **Networking** | **Connect with HP** |
| --- | --- | --- | --- |
| Laptops and tablets | Printers and multifunction | Servers and blades | ☒ Facebook |
| Desktops | Ink, toner and paper | Storage | ☒ Twitter |
| Workstations | | Solutions | ☒ LinkedIn |
| Monitors | Scanners and fax | | ☒ 367 Addison Avenue |

Promotions subject to terms and conditions. HP Privacy Mailbox, 11445 Compaq Center Drive W., Mailstop 040307, Houston, TX 77070.

HP is committed to respecting your privacy. For specific guidelines, visit the HP Online Privacy Statement.

© 2014 Hewlett-Packard Company, L.P. The only warranties for HP products and services are set forth in the express limited warranty statements accompanying such products and services. Nothing herein should be construed as constituting an additional warranty. HP shall not be liable for technical or editorial errors or omissions contained herein. THIS DOCUMENT IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY. This document may be copied provided all text is included and copies contain HP's copyright notice and any other notices provided herein. For more information on our legal policy please click here.

3

# Order Status Details

To obtain more detailed information for this order, select line item detail, tracking information and config status links below.

**Order Status Detail**

| | | | |
|---|---|---|---|
| Order #: | 34928984 | Order Date/Time: | 05/29/2014  4:54:31 PM |
| Customer # | 461463 | Estimated Ship Date: | 06/03/2014 |
| Customer PO #: | 4896714 | Estimated Delivery Date: | 06/03/2014 |
| Associated Order #: | 0 | Credit Approval Date: | 05/29/2014 |
| Invoice#(s) : | 54428102 | | |

| | | | |
|---|---|---|---|
| Customer Bill To: | RUSK CAPITAL MANAGEMENT<br>7600 W. TIDWELL 800<br>PRESTON MARSHALL<br>HOUSTON  TX  77040 | Customer Ship To: | RUSK CAPITAL MANAGEMENT<br>7600 W. TIDWELL 800<br>PRESTON MARSHALL<br>HOUSTON  TX  77040 |
| Configuration: | Yes | Ship Via: | RPS GROUND |
| Express Config: | No | Carrier Info: | RPS GRND |
| | | Ship Complete : | Yes |
| Sale Amount: | $2,343.20 | Credit Terms: | CREDIT CARD |
| Tax Amount: | $193.31 | Credit Status: | CLO |
| Total Amount: | **$2,536.51** | | |

Line Item Detail | Config Status | Tracking Information | Print Preview | Export Data

# Line Item Detail

Select the item# or mfg part# to view serial number and asset tag information. Select the more info button to view products that have shipped directly from other vendors.

**line item detail**

| | | | | |
|---|---|---|---|---|
| Order #: | 34928984 | Order Date/Time: | 05/29/2014  4:54:31 PM |
| Customer PO #: | 4896714 | Requested Ship Date: | 05/29/2014 |
| Configuration #: | Yes | Credit Approval Date: | 05/29/2014 |
| Ship Complete: | Yes | | |

| Item# | MFG Part# | Line | Qty Order | Qty Alloc. | Qty B/O | Qty Invcd | CTO Ship | Unit$ | Ext$ | Whse# | ESD EDD |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5581075 | F4K98UT#ABA | 001 | 2 | 0 | 0 | 2 | 0 | $1,144.00 | $2,288.00 | CA | >> |
| | PROMO600PONAi74770S500hmq4X46k US | | | | | | | | | | |
| *SHPHDL | *SHPHDLI | 002 | 1 | 0 | 0 | 1 | 0 | $55.20 | $55.20 | CA | >> |
| | SHIPPING AND HANDLING | | | | | | | | | | |

Order Header  |  Config Status  |  Tracking Information  |

# EXHIBIT 3

App. 0093

**ELAINE T. MARSHALL**
**5917 Club Oaks Drive**
**Dallas, TX 75248**

June 11, 2015

*Via Facsimile (713) 690-3054*
*Certified Mail - Return Receipt Requested*
*Tracking No. 7014 1820 0002 1348 5385*

Mr. Preston Marshall
7600 W. Tidwell Rd., Suite 800
Houston, TX 77040

RE:  Termination and Frost Bank

Dear Preston:

As President, Chief Executive Officer, and Sole Director of MarOpCo, Inc. I notify you that your employment by that company is hereby terminated. This termination extends to all offices, services, and responsibilities for Trof, Inc. and its affiliates. If you communicate a willingness and ability to work under my direction with me in these enterprises and take the steps set forth below before the end of this business day tomorrow (June 12, 2015), I will have my lawyers submit a new employment contract on materially similar terms for your consideration.  I have directed the corporate controller to compute your final paycheck on the basis of days worked in the current pay period. She will mail your final paycheck within five (5) days of this letter.

Sadly, you have consistently dismissed my instructions. This has impeded operations and created unnecessary financial burdens. Among the most recent impediments, you ignored my instructions to execute a document correctly stating that I either own or control several entities and that you have no authority to contest my wishes for the accounts Frost Bank has seized and that are now subject to interpleader. Tomorrow I am formally engaging a specialist attorney to correct many of the now public and potentially harmful misrepresentations Frost Bank has made in the interpleader action.

You no longer have access to the MarOpCo office in Houston absent my written approval.  I understand that you have an employee using the MarOpCo office for your personal business.  This person also has no authority to be on the MarOpCo premises. Do not remove property from the MarOpCo offices.  I will make arrangements for a designated company representative to meet with you for the purposes of identifying

Mr. Preston L. Marshall
June 11, 2015
Page 2 of 2

personal effects you may wish to remove.  You have property in your possession in other locations. Please identify this property so that an authorized employee may recover it from you.

I am attaching a document regarding Frost Bank that I expect to be executed by you.  Fax the executed document to the Dallas headquarters at 972-460-4326 by 5pm CST Friday June 12, 2015.  Have the original sent to me for Monday delivery at the Dallas headquarters located at 7001 Preston Road, Suite 400 Dallas, TX 75205.  I hope your judgment will improve and you will do as I instruct.

Sincerely yours,

Elaine T. Marshall

Elaine T. Marshall

Mr. Rupert Barron
Hirsch & Westheimer
1415 Louisiana, 36th Floor
Houston, Texas 77002

   RE: Elaine T. Marshall

Mr. Barron,

  This letter is formal notice that I do not wish to contest my mother's directions and wishes with regards to any Frost Bank account associated with the entities described below, nor do I have the authority to do so.  These entities include:

   Telomere, LLC
   Ribosome, LP
   MarOpCo, Inc.
   Trof, Inc.
   Idzig, LLC

  These entities are either owned or controlled by my mother, Elaine T. Marshall. Any authority I had to sign or access these accounts was unequivocally and unconditionally revoked by her, and she had the sole and exclusive authority to do so.  I do not contest her authority to remove me as a signatory, I do not contest her authority to transfer funds from Frost Bank to any other bank, and I do not contest her authority to close all accounts with Frost Bank. My mother, Elaine T. Marshall, has the sole authority to decide who these entities choose to bank with and who shall have signature authority for each and every one of them.

      Sincerely,

      Preston L. Marshall

MarOpCo, Inc.
7001 Preston Rd, Ste 400
Dallas, TX 75205



**CERTIFIED MAIL**

7014 1820 0002 1348 5385

U.S. POSTAGE
PAID
ADDISON, TX
75001
JUN 11 15
AMOUNT
**$6.74**
R2303S101408-01

1000

77040



RECEIVED

JUN 15 2015

MarOpCo, Inc.
Attn: Preston L. Marshall
7600 West Tidwell, Ste. 800
Houston, TX 77040

77040$6718 C010

**App. 0097**

# EXHIBIT 4

## WARREN & SIUREK, L.L.P.

MARK SIUREK

3334 RICHMOND AVE, SUITE 100
HOUSTON, TEXAS 77098
TELEPHONE (713) 522-0066  TELECOPIER (713) 522-9977
msiurek@warrensiurek.com
www.warrensiurek.com

FOR SETTLEMENT PURPOSES ONLY

June 19, 2015

BY FAX NO. 713-690-3054          BY FAX NO. 972-460-4326

Elaine T. Marshall, President      Elaine T. Marshall, President
MarOpCo, Inc.                      MarOpCo, Inc.
7600 W. Tidwell Rd., Suite 800     7001 Preston Road, Suite 400
Houston, Texas 77040               Dallas, Texas 75205

  Re: Issues relating to the conversion of property
     and assets pertaining to Rusk Capital
     Management, L.L.C. ("Rusk Capital") and
     Preston Marshall, individually, by MarOpCo,
     Inc.

Dear Ms. Marshall:

  This law firm has been retained by Preston Marshall ("Mr. Marshall") both individually and in his official capacity as Manager of Rusk Capital in connection with the termination of his employment with MarOpCo, Inc. ("MarOpCo") and MarOpCo's wrongful exercise of dominion and control over the assets and property of Rusk Capital and Mr. Marshall.

  In that regard, the following is a brief summary of the pertinent facts based on my investigation:

  1. On June 11, 2015, Mr. Marshall was notified that his employment as vice-president of MarOpCo was terminated;

  2. Although Rusk Capital and MarOpCo are unrelated entities, Rusk Capital and MarOpCo shared office space located at 7600 W. Tidwell Road, Suite 800, Houston, Texas 77040;

  3. Mr. Marshall remains the manager and sole member of Rusk Capital;

**App. 0099**

4.    Mr. Marshall was informed by MarOpCo that he no longer had access to the Tidwell office location;

5.    MarOpCo directed the management company at the Tidwell office location to deactivate all access entry cards in the possession of Mr. Marshall and change the lock on the doors to Suite 800;

6.    Rusk Capital's computer system and server have been disconnected; and

7.    As a result, the office furniture, computers, computer server, files (both physical and electronic), and all confidential and proprietary information belonging to Rusk Capital are now in the possession of, and are controlled by, MarOpCo.

Simply put, MarOpCo's wrongful exercise of dominion and control over the property and assets of Rusk Capital and Mr. Marshall constitutes conversion for which Mr. Marshall intends to pursue all available legal and equitable remedies, including actual and punitive damages. Therefore, demand is hereby made for the immediate return of all property and assets of Rusk Capital as well as any personal property belonging to Mr. Marshall in the possession of MarOpCo or any of its affiliates and agents or representatives, including all confidential and proprietary information pertaining to Rusk Capital,[1] all physical files, work papers, computers, computer servers, electronic devices, electronically stored data, books, records, office equipment, checkbooks or boxes of checks, and office chairs, decorations and supplies.

Additionally, you are advised to preserve all property and assets of Rusk Capital as well as any personal property belonging to Mr. Marshall in the condition in which they were found on June 11, 2015. Specifically, MarOpCo, or anyone acting on its behalf, shall not:

a.    Attempt to access any server, computer or other electronically stored data owned or used by Mr. Marshall or Rusk Capital or for which Mr. Marshall or Rusk Capital has any form of password or security protection;

---

[1] Proprietary and confidential information includes, but is not limited to, all information related to actual and potential investors, data pertaining to investment opportunities, business strategies, investment strategies, business analysis, all communications with actual and potential investors, all data pertaining to or evidencing due diligence with respect to investment opportunities, and employee records.

-2-

b.  Use, disclose or transfer any information, knowledge or data belonging to Mr. Marshall or Rusk Capital that you received, developed or had access to, including any proprietary and confidential information or other compilation of information owned by Mr. Marshall or Rusk Capital, and which are regularly used in the operation of their business(es);

c.  Alter, destroy, conceal, or hide any records, documents, papers, files, checks, or other property belonging or pertaining to Mr. Marshall, Rusk Capital or any actual or potential investors of Rusk Capital;

d.  Alter, delete, remove, or write over in any respect any documents, computer files or data (including, emails, hard drives, flash drives, disc drives, and zip drives), or other electronic information relating in any way to Mr. Marshall, Rusk Capital, or any actual or potential investors of Rusk Capital or business information of any kind;

e.  Alter, delete, remove, or write over the internet cache on any computer system, hard drive, server, flash drive or mobile device which was utilized by Mr. Marshall or Rusk Capital, or its employees;

f.  Alter, delete, remove, destroy, repurpose, or reimage any computer, computer drive, server, portable device, or associated metadata which was utilized by Mr. Marshall or Rusk Capital, or its employees.

Please contact me to discuss the return of all property and assets belonging or pertaining to Mr. Marshall and Rusk Capital which were stored or located at 7600 W. Tidwell Road, Suite 800, Houston, Texas 77040.

If I do not hear from you by 5:00 p.m. on Monday, June 22, 2015, I will seek expedited legal recourse, including injunctive or other equitable relief.

-3-

**App. 0101**

I hope to hear from you soon.

<div style="margin-left:50%">

Very truly yours,

WARREN & STUREK, L.L.P.

*Mark Sturek*

Mark Sturek

</div>

cc:  <u>BY FAX 337-439-2505 AND EMAIL</u>
     Brad Trevino (btrevino@hunterlaw.com)
     Hunter, Hunter & Sonnier
     1807 Lake Street
     Lake Charles, Louisiana 70601

     <u>BY EMAIL sheena.bonadona@maropco.com</u>
     Sheena Bonadona, Treasurer
     MarOpCo, Inc.
     7001 Preston Road, Suite 400
     Dallas, Texas 75205

<div style="text-align:center">-4-</div>

# Warren & Siurek, L.L.P.
www.warrensiurek.com
Mark Siurek
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
phone (713) 522-0066        facsimile (713) 522-9977

## TELECOMMUNICATION TRANSMITTAL

| Please Deliver To The Following: | Telephone Number | Facsimile Number |
|---|---|---|
| Elaine T. Marshall | | 713-690-3054 |
| Elaine T. Marshall | | 972-460-4326 |
| Brad Trevino | | 337-439-2505 |
| | | |
| | | |

**From: Mark Siurek**

The information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.

**Date: June 19, 2015**            **Time: _____**

**Number of Pages Including Cover Sheet: ____**

Please call (713) 522-0066 as soon as possible if you do not receive the total number of pages or if the transmission is not legible.

**CLIENT/MATTER: Rusk Capital Management, LLC, and Preston Marshall**

**ADDITIONAL MESSAGE:**

**Sue Diedrich**

| | |
|---|---|
| **From:** | Sue Diedrich |
| **Sent:** | Friday, June 19, 2015 4:20 PM |
| **To:** | 'btrevino@hunterlaw.com'; 'sheena.bonadona@maropco.com' |
| **Subject:** | Rusk Capital Management, LLC, and Preston Marshall |
| **Attachments:** | maropco ltr.pdf |

Mr. Trevino and Ms. Bonadona:  Mr. Siurek asked that I forward the attached to you, a copy of which is also being faxed to Mr. Trevino's office.

Susan Diedrich, CLA
Warren & Siurek, L.L.P.
3334 Richmond Avenue, Suite 100
Houston, Texas  77098
713-522-0066 x 104 (telephone)
713-522-9977 (general fax)
713-400-9195 (direct fax)

1

**App. 0104**

**Sue Diedrich**

| | |
|---|---|
| **From:** | MAILER-DAEMON@server506.appriver.com |
| **To:** | sheena.bonadona@maropco.com; btrevino@hunterlaw.com |
| **Sent:** | Friday, June 19, 2015 4:21 PM |
| **Subject:** | Delivered: Rusk Capital Management, LLC, and Preston Marshall |

**Your message has been delivered to the following recipients:**

sheena.bonadona@maropco.com

btrevino@hunterlaw.com

Subject: Rusk Capital Management, LLC, and Preston Marshall

1

```
┌─────────────────────────────────────┐
│ TRANSMISSION VERIFICATION REPORT     │
└─────────────────────────────────────┘

                              TIME  : 06/19/2015 15:04
                              NAME  : WARREN SIUREK
                              FAX   : 7135229977
                              TEL   : 7135220066
                              SER.# : BROH5J317364

┌────────────────────────────────────────────────────────────┐
│  DATE,TIME              06/19  15:02                         │
│  FAX NO./NAME           7136903054                           │
│  DURATION               00:01:20                             │
│  PAGE(S)                05                                   │
│  RESULT                 OK                                   │
│  MODE                   STANDARD                             │
│                         ECM                                  │
└────────────────────────────────────────────────────────────┘
```

# Warren & Siurek, L.L.P.
www.warrensiurek.com
**Mark Siurek**
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
phone (713) 522-0066      facsimile (713) 522-9977

## TELECOMMUNICATION TRANSMITTAL

| Please Deliver To The Following: | Telephone Number | Facsimile Number |
|---|---|---|
| Elaine T. Marshall | | 713-690-3054 |
| Elaine T. Marshall | | 972-460-4326 |
| Brad Trevino | | 337-439-2505 |
| | | |
| | | |

**From:** Mark Siurek

The information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.

**Date:** June 19, 2015          **Time:** _____

**Number of Pages Including Cover Sheet:** ____

```
┌─────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT    │
└─────────────────────────────────────┘

                              TIME   : 06/19/2015 15:07
                              NAME   : WARREN SIUREK
                              FAX    : 7135229977
                              TEL    : 7135220066
                              SER.#  : BROH5J317364
```

```
┌──────────────────────────────────────────────────────────────────────┐
│   DATE,TIME              06/19  15:06                                   │
│   FAX NO./NAME           13374392505                                   │
│   DURATION               00:01:22                                      │
│   PAGE(S)                05                                             │
│   RESULT                 OK                                            │
│   MODE                   STANDARD                                      │
│                          ECM                                           │
└──────────────────────────────────────────────────────────────────────┘
```

# Warren & Siurek, L.L.P.

www.warrensiurek.com
**Mark Siurek**
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
phone (713) 522-0066      facsimile (713) 522-9977

## TELECOMMUNICATION TRANSMITTAL

| Please Deliver To The Following: | Telephone Number | Facsimile Number |
|---|---|---|
| Elaine T. Marshall | | 713-690-3054 |
| Elaine T. Marshall | | 972-460-4326 |
| Brad Trevino | | 337-439-2505 |
| | | |
| | | |

From: Mark Siurek

The information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.

Date: June 19, 2015          Time: _____

Number of Pages Including Cover Sheet: ____

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘

                              TIME  : 06/19/2015 15:25
                              NAME  : WARREN SIUREK
                              FAX   : 7135229977
                              TEL   : 7135220066
                              SER.# : BRCH5J317364
```

```
DATE,TIME              06/19  15:23
FAX NO./NAME           19724604326
DURATION               00:01:35
PAGE(S)                05
RESULT                 OK
MODE                   STANDARD
                       ECM
```

# Warren & Siurek, L.L.P.
### www.warrensiurek.com
### Mark Siurek
### 3334 Richmond Avenue, Suite 100
### Houston, Texas 77098
#### phone (713) 522-0066      facsimile (713) 522-9977

## TELECOMMUNICATION TRANSMITTAL

| Please Deliver To The Following: | Telephone Number | Facsimile Number |
|---|---|---|
| Elaine T. Marshall | | 713-690-3054 |
| Elaine T. Marshall | | 972-460-4326 |
| Brad Trevino | | 337-439-2505 |
| | | |
| | | |

From: Mark Siurek

The information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.

Date: June 19, 2015          Time: _____

Number of Pages Including Cover Sheet:____

App. 0108

7/1/2015 11:57:17 PM
Chris Daniel - District Clerk Harris County
Envelope No. 5910507
By: <<Name>>
Filed: 7/1/2015 11:57:17 PM

CAUSE NO. 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, | § | IN THE DISTRICT COURT OF |
| INDIVIDUALLY AND RUSK CAPITAL | § | |
| MANAGEMENT, L.L.C., | § | |
| | § | HARRIS COUNTY, TEXAS |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | |
| | § | |
| MAROPCO, INC. | § | 11th JUDICIAL DISTRICT |
| | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT'S VERIFIED RESPONSE TO PLAINTIFFS'
APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Maropco, Inc. ("Maropco"), Defendant in the above entitled and numbered cause, appears

to file Defendant's Verified Response to Plaintiffs' Application for Temporary Restraining Order,

and would respectfully show this Court as follows:

**I.
Introduction**

Plaintiff Preston Marshall — a former employee of Defendant MarOpCo whom MarOpCo

terminated for cause — and Rusk Capital Management, L.L.C. — one of the companies that he

improperly operated out of MarOpCo's Houston office without the authorization of MarOpCo's

management and directly contrary to instructions of MarOpCo's CEO — has filed an application

for temporary restraining order ("TRO"), seeking extraordinary equitable relief that would

drastically *alter*, rather than *preserve*, the status quo pending any hearing on a preliminary

injunction.  Defendant would respectfully show that Plaintiffs' application should be denied as a

matter of settled law because:

a.   **Plaintiffs Seek to Alter Status Quo**:  The very purpose of a TRO is *to preserve*
the status quo prior to any hearing on an application for temporary injunction, but
contrary to this purpose, Plaintiffs' application for TRO seeks to dramatically *alter*
the status quo.

**App. 0109**

b. **Plaintiffs Cannot Establish Irreparable Harm As Required to Obtain a TRO:** Plaintiffs — who have rejected multiple reasonable offers to return their property and enter into an agreement to resolve all issues raised in their TRO application — will not suffer irreparable harm absent the entry of a TRO.

c. **Further, No Imminent Threat of Immediate Harm to Plaintiffs Exists:** As a matter of law, no imminent or immediate harm exists where, as here, Defendant has openly declared that it has no desire or intent to retain any of Plaintiffs' property, and has agreed to return it, and enter into a process for segregating and returning electronic data that Plaintiffs wrongfully stored at MarOpCo offices without permission.

d. **Plaintiffs Cannot Show the Absence of An Adequate Remedy at Law:** Plaintiffs' legal remedies, especially when coupled with Defendant's offer to return all property to which Plaintiffs have any right, are fully adequate, and Plaintiffs cannot use the TRO process to pre-litigate ultimate issues

e. **Plaintiffs Have "Unclean Hands" and, Therefore, Are Not Entitled to Equitable Relief:** To seek equity, Plaintiffs must "do equity," and in this case, Plaintiffs' own misconduct disqualifies them from equitable relief, including a TRO.

## II.
## Background Facts

A.  <u>Overview of the Parties</u>.

Prior to his termination from Defendant MarOpCo, Inc. ("MarOpCo"), Plaintiff Preston Marshall ("Marshall") held the office of Vice President of MarOpCo.  Based on information and belief, Plaintiff Rusk Capital Management, L.L.C. ("Rusk") is Marshall's company.  At all relevant times, Defendant MarOpCo has leased office space located at 7600, W. Tidwell Rd, Suite 800, Houston, Texas ("MarOpCo's Houston Office").

B.  <u>Marshall Was Terminated For Cause on June 11, 2015</u>.

MarOpCo terminated Marshall's employment and position of corporate Vice President for cause on June 11, 2015, and notified him in writing that he no longer was authorized to access the MarOpCo Houston Office.  *See* **Exhibit A**, June 11, 2015 letter to Marshall from MarOpCo's CEO and President, Elaine T. Marshall ("I notify you that your employment . . . is hereby terminated. .

2

. Sadly, you have consistently dismissed my instructions.  This has impeded operations and created unnecessary financial burdens. . . .  You no longer have access to the MarOpCo office in Houston absent my written approval.  I understand that you have an employee using the MarOpCo office for your personal business.  This person also has no authority to be on the MarOpCo premises").

The June 11, 2015 termination letter also offered to arrange for Marshall to identify and remove his personal effects, and in turn, demanded that he return all of MarOpCo's property.  *See* **Exhibit A**, at 1-2 ("Do not remove property from the MarOpCo offices. I will make arrangements for a designated company representative to meet with you for the purpose of identifying personal effects you may want to remove.").  Rather than accepting MarOpCo's offer, and making arrangements with MarOpCo, Marshall filed this suit.  Moreover, Marshall has not returned or tendered any of MarOpCo's property that is in his possession.  The remainder of this response will address and controvert the claims made by Plaintiffs in their Application (and Amended Application) for TRO.

        C.      <u>After His Termination, Marshall Attempts to Sneak Back Into MarOpCo's Houston Office Without Authorization and is Removed By Security.</u>

After receiving the termination letter, and, therefore, with full knowledge that he had no authority to access the MarOpCo Houston Office, Marshall entered the office, and based on information and belief, took at least one item from the space before MarOpCo employees discovered him there, and had him escorted off the premises by building security.

        D.      <u>Plaintiffs Have No Rights To, or Interest In, MarOpCo's Houston Office and MarOpCo's President and CEO Had Strictly Prohibited Marshall from Operating Other Businesses There.</u>

At no time were Plaintiffs Marshall and Rusk co-tenants, lessees, sub-lessees, or parties to an office-sharing arrangement with respect to all or any part of MarOpCo's Houston Office.  To the contrary, on December 5, 2014, more than six months prior to Marshall's termination,

<div align="center">3</div>

MarOpCo's CEO and President, Elaine T. Marshall, expressly instructed Marshall not to allow any company she did not own or control the use the MarOpCo Houston office for any purpose, concluding:

> Finally, please be aware that I do not authorize the use of the Tidwell business address for any entity that I do not control.  Please be sure no entities other than those I own or control have the Tidwell address listed on any document.

*See* **Exhibit B**, December 5, 2014 letter.

To the extent that Marshall was operating Rusk, or any of his other personal businesses, from the MarOpCo Houston Office, as he has claimed in his Application (and Amended Application) for Temporary Restraining Order, he did so contrary to the express instructions of MarOpCo's President and CEO.

E.   Marshall Suspected By MarOpCo CEO of Using His Various Positions to Obtain Unauthorized Access to Documents.

Concerns relating to Marshall's pre-termination use of the MarOpCo Houston Offices, and the access it provided to him, proved to be more than purely academic.  On May 22, 2015, MarOpCo President and CEO, Elaine T. Marshall, forwarded a letter to Marshall advising him that, "Two alarming matters have been brought to my attention. . . . I have been informed . . . that you are using whatever position you have with your grandmother's trust as a vehicle to gain access to documents of mine that you do not have a right to."  *See* **Exhibit C**, Ms. Marshall's May 22, 2015 letter to Marshall.[1]

---

[1]   In contrast, none of MarOpCo's representatives, much less E. Pierce Marshall, a licensed attorney who fully appreciates the significance of attorney-client confidentiality, have done anything to improperly review Plaintiffs' files or data relating to any lawsuit, or otherwise have threated to do so at any time.   Plaintiffs have offered absolutely no evidence suggesting that this has occurred.  Equitable relief must be actual and imminent or threatened harm, not speculation.  *See, e.g., Camarena v. Tex. Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988).

4

F.    <u>Marshall Breaches Fiduciary Duties and Engages in Serious Misconduct — After Being Advised He Had No Expectation of Privacy With Respect to MarOpCo Email, Marshall — Without Authority — Wiped MarOpCo's Server Clean and Destroyed It, and Then Loaded MarOpCo Data on a Server He Now Claims Belongs to Him or Rusk.</u>

Concerned about Marshall's misuse of MarOpCo's servers and computers, Ms. Marshall forwarded a letter dated February 25, 2014 to Marshall, stating:

> Please note that all information, documents, or emails stored on a MarOpCo owned computer, the MarOpCo server, or through a MarOpCo.com email address are <u>explicitly the property of the company and there should be no expectation of privacy for said documents or email</u>.

*See* **Exhibit D**, Ms. Marshall's February 25, 2014 letter to Marshall.

Only after Marshall's termination were MarOpCo personnel in a position of authority shocked to discover significant malfeasance by Marshall relating to the computer servers.  After Marshall was placed on notice that he had no expectation of privacy as to any MarOpCo email or servers, it was discovered that — without any authority or permission from MarOpCo — he:

- Wiped clean existing MarOpCo computers and server.

- Engaged a computer specialist to destroy the MarOpCo computer equipment.

- Loaded MarOpCo software and data onto a server at the MarOpCo Houston Office that he now claims for the first time belongs to him, but which he never was authorized bring on-site unless it was a MarOpCo server.

After Marshall's termination, MarOpCo discovered a Certificate of Destruction in its records relating to Marshall's unauthorized destruction of its server on April 24, 2015, a true and correct copy of which is attached as **Exhibit E**.

Contrary to Marshall's suggestion in this case, MarOpCo <u>never</u> authorized its electronic data, licensed software, or any other material to be removed from its server and loaded onto a different one, or co-mingled with data Marshall now claims to be related to his private business.

<div align="center">5</div>

Further, MarOpCo never authorized Marshall, Rusk or any of Marshall's private businesses to use MarOpCo's software, which always had been operating on one or more of MarOpCo's servers.

Based on information and belief, Marshall has converted MarOpCo's software and data and used it for an unauthorized purpose.  The oil and gas accounting software that Marshall removed without authorization from the MarOpCo's server and improperly loaded onto what he now claims for the first time is his server, is called PetroComp; Marshall used PetroComp for the benefit of his company, Rusk, without authorization; and Rusk is not the licensee or authorized user.[2]   Based upon information and belief, Marshall further has attempted to prevent MarOpCo's use of this wrongfully converted software by telling the vendor that MarOpCo and/or Idzig are not allowed to change the authorized user of such software.  But it is Marshall who is preventing MarOpCo and its related entities from using its own software and data.

      G.    <u>After Marshall's Termination and Despite His Misconduct, MarOpCo Repeatedly Has Offered to Return All of His and Rusk's Property, Documents, and Files and Agree to Allow A Forensic Computer Examiner to Address Electronic Data Pursuant to An Agreed Protocol ─ Plaintiffs Rebuffed All Such Attempts</u>.

As referenced above, the letter terminating Marshall's employment specifically offered to return his property.  Further, MarOpCo's and Elaine T. Marshall's counsel timely responded to Plaintiffs' counsel Warren Siurek's letter, contesting the assertions now made in this suit, including Preston Marshall's claim to ownership of computers located in MarOpCo's offices, which house proprietary MarOpCo software and information.  *See* **Exhibit F**, Ms. Sonnier's June 22, 2015 letter to Warren Siurek.

Moreover, since this suit has been filed, the undersigned counsel for MarOpCo has repeatedly and reasonably offered to address every issue that is the subject of Plaintiffs'

---

[2]    The license instead is owned by Idzig, L.L.C., MarOpCo's oil and gas company.

<div align="center">6</div>

Application for TRO by agreement.  *See* **Exhibit G**, MarOpCo's counsel, Susan L. Bickley's letters to Plaintiffs' counsel.   All such efforts have been rebuffed.[3/]

<div align="center">

**III.**
**Argument and Authorities**

</div>

A.     <u>Plaintiffs Seek to Alter ─ Not Preserve ─ The Status Quo.</u>

The purpose of a TRO is to *preserve* the status quo prior to any hearing on an application for temporary injunction, but contrary to this purpose, Plaintiffs' application for TRO seeks to dramatically *alter* the status quo.  In fact, a temporary restraining order is appealable if the effect of the order goes beyond protecting the status quo pending a hearing on the temporary injunction. *See Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 n.2 (Tex. 1992); *Global Nat. Res. v. Bear, Stearns & Co.*, 642 S.W.2d 852, 854-855 (Tex. App.─Dallas 1992, no writ).

Not surprisingly, as a terminated officer and former employee when he filed this suit, Marshall had no right to go on his former employer's business premises, rummage through its property, or access computers and servers maintained on the premises.  Through his attempt to obtain a TRO, Marshall has attempted to dramatically alter the status quo and reverse existing realities.  As a matter of law, a TRO may not be issued alter the status quo. *See* 5-87 TEXAS TORTS AND REMEDIES § 87.02 (2015)("prima facie ownership of property rests with the person currently in possession of the property" and, for that reason, a mandatory injunction generally will not issue to restore property to a person out of possession).

B.     <u>Plaintiffs Cannot Establish Irreparable Harm As Required to Obtain a TRO.</u>

Plaintiffs ─ who have rejected multiple reasonable offers to return their property and enter into an agreement to resolve all issues raised in their TRO application ─ as a matter of law, will

---

[3/]     In fact, some issues that Plaintiffs' counsel previously had agreed there was no immediate urgency to address, and which could wait until defense counsel returned from a long-planned vacation, are now the subject of immediate demands and apparently, Plaintiffs' Application for TRO.

<div align="center">7</div>

not suffer irreparable harm absent the entry of a TRO.   They have had every opportunity to obtain full relief based on the multiple reasonable offers extended to them by Defendant and as described in further detail in the letters attached as **Exhibit G**.

A TRO is an extraordinary remedy and does not issue as a matter of right.   As with other equitable remedies such as a temporary injunction, a party cannot obtain a TRO unless the applicant pleads and proves (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim.   *Pinebrook Prop. v. Brookhaven Lake,* 77 S.W.3d 487, 505 (Tex. App.—Texarkana 2002, pet. denied).

      C.    <u>No Imminent Threat of Immediate Harm to Plaintiffs Exists.</u>

As a matter of law, no imminent or immediate harm exists where, as here, Defendant has openly declared that it has no desire or intent to retain any of Plaintiffs' property, and has agreed to return it, and enter into a process for segregating and returning electronic data that Plaintiffs wrongfully stored at MarOpCo offices without permission.

An applicant for a TRO must show that the defendant actually intends to engage in the conduct that is sought to be enjoined.   For instance, a trial court was held to abuse its discretion in enjoining a hospital from destroying medical records when the evidence showed no intention on the part of the hospital to do so.   *Hermann Hosp. v. Thu Nga Thi Tran*, 730 S.W.2d 56, 57-58 (Tex. App.—Houston [14th Dist.] 1987, no writ); *see also Crawford v. Boyd,* 453 S.W.2d 232, 236 (Tex. Civ. App.—Fort Worth 1970, writ ref'd n.r.e.) (defendant testified he had no intention of violating restrictive covenant and would enforce it against other parties; no immediate harm existed justifying injunctive relief).

Similarly, in this case, MarOpCo repeatedly has stated that it has no desire to retain any of Plaintiffs property, and it has offered to enter into an agreement to address every issue raised in Plaintiffs' application.  Accordingly, there is no imminent threat or risk of harm to Marshall or Rusk justifying relief.

  D. <u>Plaintiff Cannot Show the Absence of An Adequate Remedy at Law.</u>

Plaintiffs' legal remedies, especially when coupled with Defendant's offer to return all property and electronic date to which Plaintiffs have any right, are fully adequate, and Plaintiffs cannot use the TRO process to pre-litigate ultimate issues that must be resolved through the trial process.

Plaintiffs are not entitled to a TRO unless they prove that they have "no adequate remedy at law for prevention or redress of wrongs and grievance of which complaint is made*." EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 657 (Tex. App.— Houston [14th Dist.] 2010, no pet.); *Hancock v. Bradshaw*, 350 S.W.2d 955, 957 (Tex. Civ. App.—Amarillo 1961, no writ).   A plaintiff must show not only that a suit for damages would fail to give complete relief, but also that no other remedy is available.  *See, e.g.,  El Paso Electric Co. v. Public Utility Com.,* 727 S.W.2d 283, 286-287 (Tex. App.—Austin 1987, no writ); *Brazoria County Appraisal v. Notlef, Inc.,* 721 S.W.2d 391, 393 (Tex. App.—Corpus Christi 1986, no writ).  They are unable to meet this burden as a matter of law in this case.

  E. <u>Plaintiffs Have "Unclean Hands" and No "Clear Right or Entitlement" and, Therefore, They Are Not Entitled to Equitable Relief.</u>

To seek equity, Plaintiffs must "do equity," and in this case, Plaintiffs' own misconduct disqualifies them from equitable relief, including a TRO.[4/]  TEX. CIV. PRAC. & REM. CODE § 65.001

---

[4/] A person who would have equity must do equity.  *See, e.g., Riley v. Davidson*, 196 S.W.2d 557, 559 (Tex. Civ. App.— Galveston 1946, writ ref'd n.r.e)(plaintiff who established water supply illegally was not entitled to enjoin removal of certain pipes).

<div align="center">9</div>

(principles of equity govern injunctive relief).  In fact, Plaintiffs are in the current position due solely to their own misconduct as follows:  (1) prior to his termination, Marshall disregarded his former employer's clear and direct instructions to not operate his other businesses, maintain other files, or otherwise use MarOpCo's offices, (2) Rusk operated out of MarOpCo's offices without permission or authority, (3) after being told he had no expectation of privacy, Marshall took the extraordinarily brazen action of wiping MarOpCo's server clean and destroying it without permission and in breach of his fiduciary duties to MarOpCo, and then migrating MarOpCo data and software onto a server located on MarOpCo's premises, which server he only now claims for the first time belongs to him or Rusk, and (4) despite being advised he could not come onto MarOpCo property, Marshall attempted to, and did, gain access to the office without permission, only to be escorted out by security.

Additionally, a plaintiff must show a clear right or entitlement before equity will protect his interests.  *See MPI, Inc. v. Dupre*, 596 S.W.2d 251, 255 (Tex. Civ. App.—Fort Worth 1980, writ ref'd n.r.e.).  Plaintiffs' allegations, not only have been contradicted by Defendant, but they do not in any event reflect that Plaintiffs have any clear right to relief.  Accordingly, Plaintiffs are not entitled to a TRO or any other form of extraordinary relief.

### Conclusion

Plaintiffs respectfully request that this Court:

1.    Deny Plaintiffs' Application for Temporary Restraining Order;

2.    Tax costs against the Plaintiffs; and

3.    Grant such other and further relief, at law or in equity, to which Defendant may be justly or equitably entitled.

10

Respectfully submitted,

BLANK ROME LLP

By:/s/ Susan L. Bickley
    Barry Abrams
    State Bar No. 00822700
    Email: babrams@blankrome.com
    Susan L. Bickley
    State Bar No. 02298150
    717 Texas Avenue, Suite 1400
    Houston, Texas  77002
    (713) 228-6601
    (713) 228-6605 (Fax)
    Email: sbickley@blankrome.com

ATTORNEYS FOR DEFENDANT, MAROPCO, INC.


## CERTIFICATE OF SERVICE

I certify that all counsel of record who are Filing Users of the Electronic Case File System of the Harris County District Court System have been served a true and correct copy of the foregoing by electronic submission for filing and by Certified Mail, Return Receipt Requested on July 1, 2015 as follows:

    Mr. Mark Siurek
    Ms. Patricia Haylon
    Warren & Siurek, L.L.P.
    3334 Richmond Avenue, Suite 100
    Houston, Texas 77098

    Mr. Paul J. Dobrowski
    Mr. Frederick T. Johnson
    Mr. Akilah F. Craig
    Dobrowski, Larkin & Johnson LLP
    4601 Washington Avenue, Suite 300
    Houston, Texas  77007

    /s/ Susan L. Bickley
    Susan L. Bickley

11

App. 0119

## VERIFICATION

THE STATE OF TEXAS     §
                             §

COUNTY OF DALLAS     §

       Before me, the undersigned authority, on this day personally appeared E. Pierce Marshall, Jr., who, upon oath, did state that he is Vice President of MarOpCo, Inc., the Defendant in the above-entitled and numbered suit, and he has reviewed the foregoing Defendant's Response to Plaintiff's Application for Temporary Restraining Order and the factual allegations contained therein are true and correct to his knowledge and belief.

E. Pierce Marshall, Jr.

       SUBSCRIBED and SWORN to before me on June 29, 2015.

Notary Public in and for THE
State of T E X A S

My Commission expires:

March 18, 2017

AMY ELAINE CARTER
My Commission Expires
March 18, 2017

**ELAINE T. MARSHALL**
**5917 Club Oaks Drive**
**Dallas, TX 75248**


June 11, 2015

*Via Facsimile (713) 690-3054*
*Certified Mail - Return Receipt Requested*
*Tracking No. 7014 1820 0002 1348 5385*

Mr. Preston Marshall
7600 W. Tidwell Rd., Suite 800
Houston, TX 77040

RE:  Termination and Frost Bank

Dear Preston:

As President, Chief Executive Officer, and Sole Director of MarOpCo, Inc. I notify you that your employment by that company is hereby terminated. This termination extends to all offices, services, and responsibilities for Trof, Inc. and its affiliates. If you communicate a willingness and ability to work under my direction with me in these enterprises and take the steps set forth below before the end of this business day tomorrow (June 12, 2015), I will have my lawyers submit a new employment contract on materially similar terms for your consideration.  I have directed the corporate controller to compute your final paycheck on the basis of days worked in the current pay period. She will mail your final paycheck within five (5) days of this letter.


Sadly, you have consistently dismissed my instructions. This has impeded operations and created unnecessary financial burdens. Among the most recent impediments, you ignored my instructions to execute a document correctly stating that I either own or control several entities and that you have no authority to contest my wishes for the accounts Frost Bank has seized and that are now subject to interpleader. Tomorrow I am formally engaging a specialist attorney to correct many of the now public and potentially harmful misrepresentations Frost Bank has made in the interpleader action.


You no longer have access to the MarOpCo office in Houston absent my written approval.  I understand that you have an employee using the MarOpCo office for your personal business.  This person also has no authority to be on the MarOpCo premises. Do not remove property from the MarOpCo offices.  I will make arrangements for a designated company representative to meet with you for the purposes of identifying


EXHIBIT A

**App. 0121**

Mr. Preston L. Marshall
June 11, 2015
Page 2 of 2

personal effects you may wish to remove.  You have property in your possession in
other locations. Please identify this property so that an authorized employee may
recover it from you.

I am attaching a document regarding Frost Bank that I expect to be executed by
you.  Fax the executed document to the Dallas headquarters at 972-460-4326 by 5pm
CST Friday June 12, 2015.  Have the original sent to me for Monday delivery at the
Dallas headquarters located at 7001 Preston Road, Suite 400 Dallas, TX 75205.  I hope
your judgment will improve and you will do as I instruct.

Sincerely yours,

Elaine T. Marshall

Elaine T. Marshall

App. 0122

Mr. Rupert Barron
Hirsch & Westheimer
1415 Louisiana, 36th Floor
Houston, Texas 77002

   RE: Elaine T. Marshall

Mr. Barron,

   This letter is formal notice that I do not wish to contest my mother's directions and wishes with regards to any Frost Bank account associated with the entities described below, nor do I have the authority to do so.  These entities include:

   Telomere, LLC
   Ribosome, LP
   MarOpCo, Inc.
   Trof, Inc.
   Idzig, LLC

   These entities are either owned or controlled by my mother, Elaine T. Marshall. Any authority I had to sign or access these accounts was unequivocally and unconditionally revoked by her, and she had the sole and exclusive authority to do so.  I do not contest her authority to remove me as a signatory, I do not contest her authority to transfer funds from Frost Bank to any other bank, and I do not contest her authority to close all accounts with Frost Bank. My mother, Elaine T. Marshall, has the sole authority to decide who these entities choose to bank with and who shall have signature authority for each and every one of them.

       Sincerely,


       Preston L. Marshall

### ELAINE T. MARSHALL
### 5917 Club Oaks Drive
### Dallas, TX 75248

December 5, 2014

Mr. Preston L. Marshall
11100 Meadowick
Houston, TX  77024

Dear Preston:

Attached is the Employment Agreement and its exhibit for your engagement as Vice President of MarOpCo, Inc. for 2015. This needs to be executed with the original signature being returned to our corporate archivist, Amy Carter in the Dallas office, no later than December 15, 2014. Please provide your actual signature to the document and not a stamp or electronic signature.

This contract offer supersedes the existing employment contract, which will now terminate on January 1, 2015. If I do not receive the executed employment agreement as described in this letter, compensation from MarOpCo, Inc. will cease on January 1, 2015. This is not an offer to negotiate. No revisions will be considered or accepted. An identical letter and agreement as it relates to the Employment Agreement is being submitted to the other Vice President of MarOpCo, Inc.

Please be aware that while I have decided to pay Long Consultants, Inc. for their outstanding invoices, the attached Employment Agreement specifically prohibits you from contracting on behalf of any entity I control moving forward. I do not view payment of Long Consultants as a ratification of your actions in hiring them, rather an unfortunate decision by you that I do not condone nor will I pay for in the future.

Finally, please be aware that I do not authorize the use of the Tidwell business address for any entity that I do not control. Please be sure no entities, other than those I own or control have the Tidwell address listed on any document.

Thank you for your prompt attention. I look forward to a productive 2015.

Sincerely,

*Elaine T. Marshall*

Elaine T. Marshall

Enclosure

EXHIBIT B

**App. 0124**

### ELAINE T. MARSHALL
### 5917 Club Oaks Drive
### Dallas, TX 75248

May 22, 2015

*Via Facsimile (713) 690-3054*
*Certified Mail - Return Receipt Requested*
*Tracking No. 7014-1820-0002-1348-5330*

Mr. Preston Marshall                                    
7600 W. Tidwell Rd., Suite 800
Houston, TX 77040

RE: Immediate action required.

Dear Preston:

Two alarming matters have been brought to my attention, I require immediate action from you regarding both matters.

The Frost Bank situation is unacceptable. Previously, I directed you to sign documents for wire transfers from Frost Bank to Northern Trust. Sadly, consistent with your previous actions, you dismissed my instructions. This has impeded operations and created unnecessary financial burdens. Most recently, you provoked Frost Bank's demand that I travel to Houston to negotiate or mediate with you over signature authority with respect to the transfer of company bank accounts. You have done this by directly communicating with Frost's lawyer without my authority. Amazingly, the only communications I have received from you on this matter has been through Frost Bank from its lawyer by e-mails to my lawyers. Although I understand that Frost Bank now identifies Dallas as the proper venue for these proposed "negotiations" they will obviously not occur anyway. I provide leadership for my companies. I do not negotiate their operations with my subordinates.

In passing, I observe that you recommended Frost Bank with the claim that it featured extraordinary customer service. In this instance, it interjected itself into the operation of my businesses by disregarding clear instructions as to how I wished to inform you of the change in signature authority, freezing funds on the pretext that an interpleader action would be required to determine the ownership of my companies' funds and threatening to burden my company with attorney fees if I chose not to negotiate or mediate with a subordinate. Apart from your behavior, I find your recommendation of Frost Bank ill-considered and you need to exercise better judgment.

EXHIBIT C

Mr. Preston L. Marshall
May 22, 2015
Page 2 of 2

     I have been informed by my attorney that you are using whatever position you have with your grandmother's trust as a vehicle to gain access to documents of mine that you do not have a right to. I am saddened that you would attempt to do this. You are not authorized to have these documents.

     I am including two documents that I expect you to execute and deliver to me by Friday May 29, 2015. I expect these to be delivered to MarOpCo at its headquarters in Dallas at 7001 Preston Rd., Suite 400 Dallas, Texas 75205. Please note that execution of documents for this purpose requires affixing your actual signature. Facsimiles such as digital signatures and stamps will not suffice as far as I am concerned.

                 Sincerely yours,

                 Elaine T. Marshall

COPY

| | | |
|---|---|---|
| **STATE OF TEXAS** | : | |
| | : | **AFFIDAVIT** |
| **COUNTY OF HARRIS** | : | |

 **BEFORE ME**, the undersigned authority, a Notary Public, on this ___ day of May,

2015, personally appeared Preston L. Marshall, known to me to be a credible person and

of lawful age, who being by me first duly sworn, on his oath, deposes and says:

1.   I am Preston L. Marshall, a credible person and of lawful age, whose home address is 11100 Meadowick Drive, Houston, TX 77024.

2.   I am not asserting, in Louisiana's 14th Judicial District Court, or in any way whatsoever privilege to any documents held by Hunter, Hunter, & Sonnier, LLC regarding the following individuals, trusts, and entities:

3.   J. Howard Marshall, II; The Estate of J. Howard Marshall, II; J. Howard Marshall Living Trust; Charitable foundations or trusts related to J. Howard Marshall, II;  E Pierce Marshall; The Estate of E. Pierce Marshall; Charitable foundations or trusts related to E. Pierce Marshall; MarOpCo, Inc.; Trof Inc.; Idzig LLC; Elaine T. Marshall; Elaine T. Marshall as Executor of the Estate of E. Pierce Marshall; Elaine T. Marshall as Trustee of the Marshall Grandchildren's Trust for the benefit of E. Pierce Marshall, Jr.; Elaine T. Marshall as Trustee of the Marshall Grandchildren's Trust for the Benefit of Preston L. Marshall.

 **Preston L. Marshall**
 **11100 Meadowick Dr.**
 **Houston, Texas 77024**

**STATE OF TEXAS**

**COUNTY OF HARRIS**

     Sworn to and subscribed before me, the undersigned authority, on the _____ day

of May 2015, by Preston L. Marshall.

                                 _____

                                 Notary Public, State of Texas

Mr. Rupert Barron
Hirsch & Westheimer
1415 Louisiana, 36th Floor
Houston, Texas 77002

       RE:   Elaine T. Marshall

Mr. Barron,

     This letter is formal notice that I do not wish to contest my mother's directions and wishes with regards to any Frost Bank account associated with the entities described below, nor do I have the authority to do so. These entities include:

    Telomere, LLC
    Ribosome, LP
    MarOpCo, Inc.
    Trof, Inc.
    Idzig, LLC

     These entities are either owned or controlled by my mother, Elaine T. Marshall. Any authority I had to sign or access these accounts was unequivocally and unconditionally revoked by her, and she had the sole and exclusive authority to do so. I do not contest her authority to remove me as a signatory and I do not contest her authority to transfer funds from Frost Bank to any other bank. My mother, Elaine T. Marshall, has the sole authority to decide who these entities choose to bank with and who shall have signature authority for each and every one of them.

                Sincerely,

                Preston L. Marshall

**ELAINE T. MARSHALL**
**5917 Club Oaks Drive**
**Dallas, TX 75248**

February 25, 2014

Mr. Preston L. Marshall
MarOpCo, Inc.
7600 W. Tidwell Rd., Suite 800
Houston, TX 77040-6718

Dear Preston:

Pursuant to your conversation with Bradley J. Trevino on Thursday February, 20th, 2014, please make copies of all information, documents, or emails stored on a MarOpCo owned computer, the MarOpCo server, or through a MarOpCo.com email address, or archives related to DCI and deliver to me by Friday February 28, 2014.

Please note that all information, documents, or emails stored on a MarOpCo owned computer, the MarOpCo server, or through a MarOpCo.com email address are explicitly the property of the company and there should be no expectation of privacy for said documents or emails.

Additionally, by Friday, February 28, 2014, please turn over to me copies of all documents in your possession, electronic or otherwise, that are in any way related to any Marshall company or entity engaged, directly or indirectly, in litigation in the State of Wyoming.

Finally, please let this letter serve as notice of my wishes that should at any time Edwin K. Hunter, Bradley J. Trevino, or Chris Klein request copies of any Marshall entity's tax return, that it will be promptly (within 24 hours) copied and sent to the requesting party.

If you have any questions, please call Edwin K. Hunter.

Sincerely,

*Elaine T. Marshall*

ELAINE T. MARSHALL
Chairman of the Board

EXHIBIT D

Lot#1478

# STS Electronic Recycling, Inc.

# Certificate of Destruction

### Issued to

## LOT#1478

EXHIBIT E

*T*his is to certify that the electronic items received by STS Electronic Recycling, Inc. have been processed in accordance with Federal and State regulations.  This certifies that all data has been erased or physically destroyed to National Institute of Standards and Technology (NIST) standards (NIST SP80088).

None of the received materials were sent to landfills.

Date Received: 4/24/2015                                     Date Processed/Destroyed: 05/04/2015

Approved by: Brad Guidry, CIO STS Electronic Recycling, Inc.                    Revision 2: 05/13/2014

**App. 0131**

 **STS Electronic Recycling** ® 

522 County Road 1520
Jacksonville, TX 75766-9840
Phone: (903) 589-3705 Fax: (903) 589-3729

## STS Electronic Recycling Million Dollar Guarantee

Complying with data destruction and mandatory privacy laws reduces liability of data loss, data

theft and identity theft. With many privacy laws such as HIPAA, GLBA, FERPA and FACTA,

requiring that we safeguards for financial, personal and health records are rigid and executed

according to federal and state law.  At STS Electronic Recycling, we keep you legal and up to

date with current laws and regulations by making sure we adjust our service ahead of pending

and newly instituted statutes and amendments. We are so confident in our data and media

destruction service we back it by a $1,000,000 guarantee. It is critical to ensure you're working

with a company that will guarantee any and all information isn't getting into unauthorized

hands.



# STS Electronic Recycling ®

## Staying Legal with STS Electronic Recycling

STS Electronic Recycling Inc. takes pride in knowing that we are helping people stay compliant with our secure data destruction services. Privacy laws such as FACTA, HITECH, FERPA, HIPAA, and GLBA require businesses and organizations to protect their medical, personal, and financial records from unauthorized access. Trusting STS with your data destruction needs ensures compliant and legal hard drive and media destruction.

**The Health Information Technology for Economic and Clinical Health (HITECH):** provides Health and Human Services with the authority to establish programs to improve health care quality, safety, and efficiency through the promotion of health IT, including electronic health records and private and secure electronic health information exchange. HITECH is an extension of certain HIPAA requirements. Not adhering to HITECH Act can result in fines and penalties that are based on a tiered-penalty structure. An organization's level of knowledge of the violation reflects the potential penalties and fines. Penalties and fines consist of: if entity did not know of violation, penalties of $100-$50,000 per violation; due to reasonable cause and not willful neglect, penalties of $1,000 – $50,000 per violation; willful neglect and failure is corrected within 30 days, penalties of $10,000 – $50,000 per violation; willful neglect and failure is not corrected within 30 days, penalties of at least $50,000 per violation.

**Health Insurance Portability and Accountability Act of 1996 (HIPAA):** is a federal law that requires health care organizations to "maintain reasonable and appropriate, technical, and physical safeguards to prevent intentional or unintentional use or disclosure of protected health information".

**HIPAA Privacy Rule:** provides federal protections for individually identifiable health information held by covered entities and their business associates and gives patients an array of rights with respect to that information.

**The Family Educational Rights and Privacy Act (FERPA):** is a Federal law that protects the privacy of student education records. The law applies to all schools that receive funds under an applicable program of the U.S. Department of Education.

**The Fair and Accurate Credit Transactions Act of 2003 (FACT Act or FACTA):** is a federal law and is an amendment to the Fair Credit Reporting Act (FCRA). The act contains provisions to help reduce identity theft, such as the ability for individuals to place alerts on their credit histories if identity theft is suspected, or if deploying overseas in the military, thereby making fraudulent applications for credit more difficult. It requires secure disposal of consumer information.

Any business or individual who uses a consumer report for a business purpose is subject to the requirements of the Disposal Rule, a part of the Fair and Accurate Credit Transactions Act of 2003 (FACTA), which calls for the proper disposal of information in consumer reports and records to protect against "unauthorized access to or use of the information.

**Fair Credit Reporting Act:** is a federal law that regulates the collection, dissemination, and use of consumer information, including consumer credit information.

**Gramm-Leach-Bliley Act (GLBA):** requires financial institutions – companies that offer consumers financial products or services like loans, financial or investment advice, or insurance – to explain their information-sharing practices to their customers and to safeguard sensitive data. The (GLB) requires companies defined under the laws as "financial institutions" to ensure the security and confidentiality of information such as: customer names, addresses, phone numbers and social security numbers. This requirement includes companies of all sizes that are "significantly engages" in providing financial products or services.

# HUNTER, HUNTER & SONNIER

### A LIMITED LIABILITY COMPANY

1507 Lake Street
Lake Charles, LA 70601-5771

Phone: (337) 436-1600
Fax: (337) 439-2505
info@hunterlaw.com

Edwin Kidd Hunter†‡                    ekhunter@hunterlaw.com
Edwin Ford Hunter III                   efhunter@hunterlaw.com
Shayna L. Sonnier‡                      ssonnier@hunterlaw.com
Bradley J. Trevino*‡                    btrevino@hunterlaw.com
Cherry Wicker, CLA                      cherry@hunterlaw.com

Robert M. W. Las   1920-2000

June 22, 2015

**Via Certified Mail - Return Receipt Requested**
**Tracking No. 7004-2890-0002-2022-9858 and**
**Facsimile: (713) 522-9977**

Mr. Mark Siurek
Warren & Siurek, LLC
3334 Richmond Ave., Suite 100
Houston, TX 77098

      RE:    Preston L. Marshall/Rusk Capital Management, LLC

Dear Mr. Siurek:

      Our client, Elaine T. Marshall, received your letter dated June 19, 2015 wherein you make several assertions and demands on behalf of Preston L. Marshall, Individually, and, in his capacity as Manager of Rusk Capital Management, LLC ("Rusk Capital"). As you know, Mrs. Marshall is a represented party. Please do not communicate directly with Mrs. Marshall.

      I will address your assertion that Rusk Capital and MarOpCo, Inc. ("MarOpCo") shared office space at the Tidwell location. On December 5, 2014, Elaine T. Marshall sent a letter to Preston L. Marshall wherein she specifically instructed him that he was not to use the Tidwell address for any entity not owned or controlled by her. I attach a copy of this letter for your edification. Furthermore, Rusk Capital is not a sublessee to the lease agreement for the Tidwell address nor has Rusk Capital ever contributed to the expenses associated with the Tidwell address. If Preston L. Marshall was operating Rusk Capital out of the MarOpCo office, he was doing so not only without the authority/permission of Elaine T. Marshall but also contrary to her direct written instructions.

EXHIBIT F

**App. 0135**

Mr. Mark Siurek
June 22, 2015
Page 2 of 3

Next, I will address your demand for Rusk Capital equipment and office furniture. Neither MarOpCo nor Mrs. Marshall concede that these servers and/or computers, and/or any office furniture/equipment are owned by Preston L. Marshall and/or Rusk Capital.  Regardless, the proprietary information and software of MarOpCo and other Marshall entities is being housed on the equipment currently located at MarOpCo.  Therefore, if Preston L. Marshall chooses to allege that any of the equipment, including but not limited to the servers and/or computers and office furniture, were purchased by him and/or Rusk Capital, please provide us with documentation confirming ownership and provide us with documentation to show Preston L. Marshall/Rusk Capital was authorized to install and utilize this equipment at my client's office.  Upon receiving documentation that is satisfactory to Mrs. Marshall, she will reimburse Preston L. Marshall and/or Rusk Capital the purchase price of said equipment in exchange for Preston L. Marshall and/or Rusk Capital transferring title and ownership of the equipment, including the servers and/or computers, to MarOpCo and/or Mrs. Marshall.

It has come to our attention that Preston L. Marshall, without any permission and/or authority from Elaine T. Marshall, wiped/cleaned/destroyed the servers and/or computers belonging to MarOpCo, Inc. and/or Mrs. Marshall. Obviously, Mrs. Marshall demands an explanation as to why this was done. Further, Mrs. Marshall wants to know if any of the information stored on the servers and/or computers was copied. If so, please provide the location of such information with an assurance that no other copies were made and turn over same immediately. Additionally, please provide a list of all corporate property, including but not limited to physical and/or electronic, of MarOpCo, Inc. and/or any other Marshall entities that are currently in the possession of Preston L. Marshall and return same no later than ten (10) business days from the date of this letter.

I do take this opportunity to respond to a few other sections of your letter.  We are not in settlement discussions, Mrs. Marshall will not negotiate with her child.  Your unilateral and arbitrary one (1) business day response deadlines are less than ideal, especially when transmitted via facsimile after 4 p.m. CST on a Friday.  Finally, it does not go without being noted that you have threatened Mrs. Marshall with punitive damages, apparently under the instruction of her child.  I expect you to retract that statement affirmatively and in writing without delay.  Mrs. Marshall reserves all rights she may have with regards to all matters and this letter does not constitute an offer subject to being accepted.

Mr. Mark Siurek
June 22, 2015
Page 3 of 3

   If you have any questions, please do not hesitate to contact me in writing.  I hope you have a pleasant day.

        Sincerely,

        Shayna L. Sonnier

SLS/vm
Enclosure

**ELAINE T. MARSHALL**
**5917 Club Oaks Drive**
**Dallas, TX 75248**

December 5, 2014

Mr. Preston L. Marshall
11100 Meadowick
Houston, TX  77024

Dear Preston:

Attached is the Employment Agreement and its exhibit for your engagement as Vice President of MarOpCo, Inc. for 2015. This needs to be executed with the original signature being returned to our corporate archivist, Amy Carter in the Dallas office, no later than December 15, 2014. Please provide your actual signature to the document and not a stamp or electronic signature.

This contract offer supersedes the existing employment contract, which will now terminate on January 1, 2015. If I do not receive the executed employment agreement as described in this letter, compensation from MarOpCo, Inc. will cease on January 1, 2015. This is not an offer to negotiate. No revisions will be considered or accepted. An identical letter and agreement as it relates to the Employment Agreement is being submitted to the other Vice President of MarOpCo, Inc.

Please be aware that while I have decided to pay Long Consultants, Inc. for their outstanding invoices, the attached Employment Agreement specifically prohibits you from contracting on behalf of any entity I control moving forward. I do not view payment of Long Consultants as a ratification of your actions in hiring them, rather an unfortunate decision by you that I do not condone nor will I pay for in the future.

Finally, please be aware that I do not authorize the use of the Tidwell business address for any entity that I do not control. Please be sure no entities, other than those I own or control have the Tidwell address listed on any document.

Thank you for your prompt attention. I look forward to a productive 2015.

Sincerely,

Elaine T. Marshall

Elaine T. Marshall

Enclosure



**Susan L. Bickley, Partner**
Phone:    (713) 228-6601
Fax:       (713) 228-6605
Email:     sbickley@BlankRome.com

June 24, 2015

***Via Facsimile***
Mr. Mark Siurek
Warren & Siurek, L.L.P.
3334 Richmond Avenue, Suite 100
Houston, Texas 77098

> Re:   *Preston L. Marshall and Rusk Capital Management, LLC v. MarOpCo, Inc.*; Cause
>        No. 2015-35950; In the 11th Judicial District Court of Harris County, Texas

Dear Mark:

This will confirm that our firm has been retained by MarOpCo, Inc. ("MarOpCo") in connection with the above suit and Application for Temporary Restraining Order ("TRO").

The purpose of this letter is to confirm our telephone conversation today, and MarOpCo's offer to address any legitimate concerns that your clients, Preston L. Marshall and/or Rusk Capital Management, LLC ("Rusk Capital"), may have relating to personal property, hard copies of documents, and electronic data in the MarOpCo office at 7600 W. Tidwell Rd., Suite 800, Houston, Texas (MarOpCo's Houston Office) that either belong to them or a company, foundation, or trust owned or controlled by them, either exclusively or jointly.

I appreciate your agreement during our telephone conference to pass the hearing on the Application for TRO set for tomorrow.  This letter will set out MarOpCo's proposal, which if agreeable, I suggest we memorialize in a more detailed letter agreement.  <u>As we discussed, while I believe we should be able to reach an agreement that avoids any necessity for any hearing, please do not reset the hearing any time from June 29-July 7, 2015 when I will be on vacation, and during which time MarOpCo's representative also will be out of the country.</u>

### Tender of Personal Property, Documents, and Electronic Data

MarOpCo generally has no desire to retain any personal or other property belonging to your clients and, therefore, offers immediately to enter into an agreement containing the following terms:

EXHIBIT G

Boca Raton  •  Cincinnati  •  Fort Lauderdale  •  Houston  •  Los Angeles  •  New York  •  Philadelphia  •  Pittsburgh  •  Princeton  •  San Francisco  •  Shanghai  •  Tampa  •  Washington  •  Wilmington

**App. 0139**

Mr. Mark Siurek
Warren & Siurek, L.L.P.
June 24, 2015
Page 2

1.    Please provide me a list of any and all tangible personal property, including documents and files, which your clients claim belong to them exclusively, and MarOpCo will immediately return any such property assuming that there is no bona fide dispute regarding ownership.  Further, to the extent we identify any property belonging to your clients, we will forward it to them without receiving a request.

2.    To the extent that the tangible personal property referenced above includes hard copies of documents and files, the following procedure will be employed:

    a    *Right of Access:* If such documents and files are items to which one or more of your clients have a right of access, but they have no exclusive right to maintain the original records, we will immediately provide a copy of such records.

    b.    *Original Documents and Files*: If MarOpCo and/or Elaine T. Marshall in any capacity has no rights to review or access certain documents because they relate to a company in which they have no interest, we will return the original documents and files and will not retain a copy.

3.    MarOpCo has already had the computer server(s) imaged, and for any electronic data to which your clients claim an interest, we propose the following procedure:

    a.    *Forensic computer examiner*:  MarOpCo proposes that the parties agree to engage a forensic computer examiner.  The parties will attempt to reach an agreement regarding the identity of the examiner, but if an agreement cannot be reached, they will request that the Court appoint one not previously associated with a party.

    b.    *Copy of electronic data to which all parties have legitimate need to access*: MarOpCo offers to provide your clients with a copy of any electronic data to which your clients have a right of access.  The forensic computer examiner will identify these documents based on information provided by the parties and will give your clients an external hard drive or storage device containing such material. MarOpCo will also retain a copy of such material.

    c.    *Copy/removal from servers any electronic data to which your clients have sole rights*: For electronic data pertaining to only to your clients or their companies in which MarOpCo and Elaine T. Marshall have no interest and no rights of access, the forensic examiner will download such material to a hard drive for your clients alone, and certify that he or she has removed such material from any computer system to which MarOpCo has access.

Mr. Mark Siurek
Warren & Siurek, L.L.P.
June 24, 2015
Page 3

While my client believes that we should be able to address any legitimate interest your clients may have through this agreement, please do not confuse our reasonable approach, and desire to avoid unnecessary conflict with an agreement to the facts alleged in your pleadings. We have profound disagreements with both the factual and legal positions taken in your clients' Original Petition and Application for TRO. By way of example only, contrary to your client's claims:

a.      Preston Marshall and Rusk Capital have no legal right to physical possession of, or access to MarOpCo's Houston Office, and no property of theirs has been converted, intentionally or otherwise.

b.      Preston Marshall and Rusk Capital had absolutely no right to oversee other companies' activities, work out of the MarOpCo Houston Offices, or use telephones, computers, servers, and other equipment at that location. To the contrary, if this occurred, such conduct constitutes a gross violation of the express instructions of the President and CEO, Elaine T. Marshall, and a clear violation of his employment agreement. MarOpCo does not waive or release any breach of such employment agreement.

c.      Preston Marshall had no right to co-mingle his companies' electronic files and data with MarOpCo's electronic files and data. It is shocking – as MarOpCo learned for the first time only recently – that after MarOpCo had advised Preston Marshall that he had no expectation of privacy regarding any data on MarOpCo's computers, but before he was terminated, Preston Marshall had MarOpCo's computer servers wiped cleaned and then destroyed. Further, Preston Marshall was not authorized to destroy old servers, place new ones at the MarOpCo Houston Office (which he is now claiming ownership of), place MarOpCo software on new servers, or co-mingle MarOpCo data with unrelated companies' data on such servers. The sequence of events is highly disturbing, and Ms. Marshall's legal counsel already has demanded an explanation, additional information, and copies of any electronic data that Preston Marshall may have made from the original servers.

Despite such serious disagreements, we always want to minimize areas of conflict when we can, and if both sides will responsibly approach the issues set out in this letter, we should be able to arrange for the return of your client's property entirely by agreement. If you agree to this proposal in principle, please sign where indicated below and return a signed copy by email or facsimile.

If you have any questions, please do not hesitate to give me a call.

Very truly yours,



Susan L. Bickley

Mr. Mark Siurek
Warren & Siurek, L.L.P.
June 24, 2015
Page 4


AGREED:


_____
Mark Siurek, Counsel for Plaintiffs



**Susan L. Bickley, Partner**
Phone:      (713) 228-6601
Fax:        (713) 228-6605
Email:      sbickley@BlankRome.com

June 26, 2015

*Via Email & Facsimile*
Mr. Mark Siurek
Warren & Siurek, L.L.P.
3334 Richmond Avenue, Suite 100
Houston, Texas 77098

> Re:  *Preston L. Marshall and Rusk Capital Management, LLC v. MarOpCo, Inc.*; Cause
> No. 2015-35950; In the 11th Judicial District Court of Harris County, Texas

Dear Mark:

Thank you for your proposed letter agreement, which works from a draft that we provided you on behalf of MarOpCo, Inc. ("MarOpCo") in connection with the above suit and Application for Temporary Restraining Order ("TRO").

I am forwarding this revised letter agreement after our telephone conversations today to once again, propose an arrangement that will address any legitimate concerns that your clients, Preston L. Marshall and/or Rusk Capital Management, LLC ("Rusk Capital"), may have relating to personal property, hard copies of documents, and electronic data in, or was previously in, the MarOpCo office at 7600 W. Tidwell Rd., Suite 800, Houston, Texas (MarOpCo's Houston Office) that either belong to them or a company, foundation, or trust owned or controlled by them, either exclusively or jointly.

## Tender of Personal Property, Documents, and Electronic Data

MarOpCo generally has no desire to retain any personal or other property belonging to your clients and, therefore, offers immediately to enter into an agreement containing the following terms:

1.  Plaintiffs will provide a list of any and all tangible personal property, including documents and files, which they claim belong to them exclusively, and MarOpCo will immediately return any such property assuming that there is no bona fide dispute regarding ownership. Further, to the extent MarOpCo identifies any property belonging to Plaintiffs or either of them, MarOpCo will forward it to them without receiving a request.

**App. 0143**

Mr. Mark Siurek
Warren & Siurek, L.L.P.
June 26, 2015
Page 2

2.    Within three (3) days after receiving the list in No . 1 above, MarOpCo will identify
      those items with which it disagrees as to the ownership, and give Plaintiffs an
      opportunity to submit through counsel a description of its claim of ownership,
      including any evidence supporting such claim, so that the parties hopefully can reach
      an agreement. To the extent an agreement cannot be reached, MarOpCo will
      segregate and preserve such property for ultimate disposition by the Court.

3.    To the extent that the tangible personal property referenced above includes hard
      copies of documents and files, the following procedure will be employed:

      a    *Right of Access:* If such documents and files are items to which one or more
           of the Plaintiffs have a right of access, but they have no superior right to
           maintain the original records, MarOpCo will immediately provide a copy of
           such records to the Plaintiffs.

      b.   *Original Documents and Files*: If MarOpCo and/or Elaine T. Marshall, in
           any and all capacities, have no rights to review or access certain documents
           because they relate to a company in which neither has an interest, MarOpCo
           will return the original documents and files to Plaintiffs and will not retain
           a copy.

4.    MarOpCo has already had the computer server(s) imaged, and for any electronic data
      to which your clients claim an interest, we propose the following procedure:

      a.   *Forensic computer examiner*: MarOpCo has proposed that the parties agree
           to engage a forensic computer examiner. Plaintiffs propose either Jerry
           Hatchett or Sheryl Falk serve as a forensic examiner and will provide
           information to MarOpCo concerning their businesses' names, if any, and will
           state whether Plaintiffs and/or Plaintiffs' counsel have worked with either of
           them on a prior occasion. MarOpCo agrees to propose one or more forensic
           examiners as well. The parties agree to equally share the expense of such
           forensic examiner with each side being responsible for half of the total cost.
           If none of the parties' proposed examiners is acceptable or available, the
           parties will attempt to reach an agreement regarding the identity of the
           examiner, but if an agreement cannot be reached, they will request that the
           Court appoint one not previously associated with a party. The parties agree
           in good faith to work with each other (through counsel unless other
           arrangements are made) and the forensic examiner to develop a protocol for
           identifying the electronic data described in paragraphs 4(b)-(c) below.

Mr. Mark Siurek
Warren & Siurek, L.L.P.
June 26, 2015
Page 3

        b.    *Copy of electronic data to which all parties have legitimate need to access*:
        MarOpCo agrees to provide Plaintiffs with a copy of any electronic data to
        which they or either of them have a right of access. The forensic computer
        examiner will identify these documents based on information provided by the
        parties under the agreed protocol and will give Plaintiffs an external hard
        drive or storage device containing such material. MarOpCo will also retain
        a copy of such material.

        c.    *Copy/removal from servers any electronic data to which your clients have*
        *sole rights*: For electronic data pertaining only to Plaintiffs or either of them,
        and in which MarOpCo and Elaine T. Marshall, in any and all capacities,
        have no interest and no rights of access, the forensic examiner will download
        such material to a hard drive for Plaintiffs alone, and certify that he or she
        has removed such material from any server or other storage material to which
        MarOpCo has access.

5.    Upon being provided with any and all documentation pertaining to the purchase,
    installation and migration of data, including software, onto the server or servers
    Plaintiffs claim to have purchased and placed at the MarOpCo Houston Office,
    MarOpCo will reimburse Plaintiffs for the purchase price of such server(s) within
    ten (10) days.

6.    MarOpCo will immediately provide Preston Marshall (through his counsel) a copy
    of that employment agreement referenced in my original letter proposal, at page 3.

7.    No party admits any allegation made by the other and no party waives any right it
    may have against any other party of whatever kind or character.

We look forward to reaching an agreement with you today, if possible. If this proposal is
agreeable, please sign where indicated below and return a signed copy by email or facsimile and we
can have our clients sign later.

If you have any questions, please do not hesitate to give me a call.

Very truly yours,

Susan L. Bickley

Mr. Mark Siurek
Warren & Siurek, L.L.P.
June 26, 2015
Page 4


AGREED:


WARREN & SIUREK


_____

Mark Siurek, Counsel for Plaintiffs


BLANK ROME LLP


_____

Susan L. Bickley, Counsel for Defendant



P. 3
TRORY
STBNX
CASO

CAUSE NO. 2015-35950

PRESTON MARSHALL, INDIVIDUALLY § IN THE DISTRICT COURT OF
AND RUSK CAPITAL MANAGEMENT, §
L.L.C. §
§
Plaintiffs, §
§
v. § OF HARRIS COUNTY, TEXAS
§
MAROPCO, INC., §
§
Defendant. § 11TH JUDICIAL DISTRICT

## TEMPORARY RESTRAINING ORDER

On this day, the Court heard the Plaintiffs' Amended Application for Temporary Restraining Order in this case. Plaintiffs Preston Marshall and Rusk Capital Management, L.L.C. (collectively, the "Plaintiffs") appeared by and through their attorneys of record. *Defendant appeared through counsel.* After considering Plaintiffs' Amended Application for Temporary Restraining Order, Defendant's Verified Response to Plaintiffs' Application for Temporary Restraining Order, and the pleadings, evidence, and arguments of counsel, the Court finds and concludes that the Plaintiffs have stated cognizable claims against Defendant MarOpCo, Inc. ("MarOpCo"); presented sufficient evidence to demonstrate a probability of prevailing on those claims; and further, that without the issuance of a temporary restraining order, the Plaintiffs will suffer probable, imminent and irreparable injury in the interim for which there is no adequate legal remedy because MarOpCo has taken possession of the Plaintiffs' confidential business information, business and personal records, and computer workstation, Rusk Server, and associated software. The Plaintiffs are currently unable to conduct business without access to their business records, files, documents, checks, checkbooks, computer workstation, and the Rusk Server.

1

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

**App. 0147**

Therefore a temporary restraining order is necessary to preserve the status quo ante

pending a hearing for a temporary injunction. It is, therefore:

a.  ORDERED that MarOpCo, and anyone acting by, through, or in concert with MarOpCo, is enjoined from accessing, deleting, removing, erasing, destroying, concealing, altering, writing over in any respect, using, or otherwise failing to preserve any documents, computer files or data (including, emails, hard drives, flash drives, disc drives, and zip drives), or other electronic information relating in any way to Plaintiff Preston Marshall, Rusk Capital Management LLC ("Rusk Capital"), or the Affected Companies, which were copied from the Rusk Server prior to its return to Plaintiffs;

b.  ORDERED that Plaintiff Preston Marshall acting on his individual behalf, or on behalf of Rusk Capital or the Affected Entities is enjoined from accessing, deleting, removing, erasing, destroying, concealing, altering, writing over in any respect, using, or otherwise failing to preserve any documents, computer files or data (including, emails, hard drives, flash drives, disc drives, and zip drives), or other electronic information relating in any way to MarOpCo and its business operations which are contained on the Rusk Server;

c.  ORDERED that MarOpCo provide Plaintiffs access to its computers by returning to Plaintiffs one of the workstations identified in the affidavit of Plaintiff Preston Marshall, specifically that workstation used by Sheldon Black, the controller for Rusk Capital, on or before by 5 p.m. on July 3, 2015;

d.  ORDERED, based on Defendants' representation to the Court that the Rusk Server has been imaged, that this image of the Rusk Server be preserved in its present condition, and not altered, erased, removed, changed, or compromised in any respect;

e.  ORDERED that MarOpCo have and retain a copy of the complete contents of the Rusk Server, including but not limited to, all the files, documents, software, and applications contained, stored, and/or saved thereon;

f.  ORDERED that MarOpCo return the Rusk Server to Plaintiffs on or before 5 p.m. on July 3, 2015;

g.  ORDERED that MarOpCo return to Plaintiffs thirty-one (31) boxes of physical, tangible files, documents, and personal property belonging to Plaintiffs and/or the Affected Entities on or before 5 p.m. on July 3, 2015.[1]

_____

[1]  It is the Court's understanding from Defendant's statements during the hearing on Plaintiff's Request for Temporary Restraining Order that delivery of these items will be accomplished on July 2, 2015.

2

Nothing in this order shall be construed to constitute a final order or determination regarding the ownership and/or ultimate right to possession of any of the property in dispute, including but not limited to the Rusk Server.

IT IS FURTHER ORDERED that all injunctions/restraining orders issued herein shall remain in effect until July 13, 2015. The temporary injunction hearing is set for July 13, 2015, at 1:30 p.m. in the 11th Judicial District Court of Harris County, Texas.

This order shall not be effective unless and until the Plaintiffs either: (i) execute and file with the clerk a bond executed by it in the sum of $5000.00 conditioned as required by law; or (ii) deposit cash in the amount of $5,000.00 into the registry of the Court to await the further order of this Court.

SIGNED this ___2___ day of July, 2015, at _3:12_ o'clock _p_.m.

_____
PRESIDING JUDGE

3



I, Chris Daniel, District Clerk of Harris ☐
County, Texas certify that this is a true and ☐
correct copy of the original record filed and or ☐
recorded in my office, electronically or hard ☐
copy, as it appears on this date. ☐
Witness my official hand and seal of office
this  July 2, 2015

Certified Document Number:          66073574 Total Pages: 3

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated☐
documents are valid. If there is a question regarding the validity of this document and or seal☐
please e-mail support@hcdistrictclerk.com**

7/7/2015 5:14:21 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 5969774
By: DE LA ROSA, GABRIELA
Filed: 7/7/2015 5:14:21 PM

Pgs-3

CAUSE NO.  2015-35950

STIPX
DITRX

| | | |
|---|---|---|
| PRESTON MARSHALL, | § | IN THE DISTRICT COURT OF |
| INDIVIDUALLY AND RUSK CAPITAL | § | |
| MANAGEMENT, L.L.C. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| MAROPCO, INC., | § | |
| | § | |
| Defendant. | § | 11TH JUDICIAL DISTRICT |

## AGREED ORDER

1.     The parties have filed an Agreed Motion for Entry of Agreed Order and enter into the agreement outlined below, but do so without waiving any of their rights, claims or causes of action including, but not limited to, questions related to ownership of certain personal property.

2.     IT IS THEREFORE ORDERED that:

   a.   MarOpCo, Inc. ("MarOpCo") will transfer the computer server which Rusk Capital Management, L.L.C. claims to own (hereinafter "Server") and computer/workstation Rusk Capital Management, L.L.C. ("Rusk") claims was used by Sheldon Black until the termination of Preston Marshall's employment with MarOpCo (hereinafter "Computer/Workstation"), by 5:00 p.m. on July 8, 2015, to the office of counsel for Plaintiffs, Dobrowski, Larkin and & Johnson LLP ("DLJ") and such Server and Computer/Workstation shall be stored in a locked closet at DLJ's offices located at 4601 Washington Avenue, Suite 300, Houston, Texas 77007. The Server and Computer/Workstation shall not be accessed by anyone, including but not limited to the parties to the litigation or their counsel, absent future agreement by the parties or court order. Preston Marshall, Rusk and MarOpCo further agree that they shall not seek any such court order before August 1, 2015;

   b.   Counsel for Defendant will be provided with the sole key to the closet in which the  Server and Computer/Workstation are located;

   c.   The parties shall jointly work until Friday, July 31, 2015, to resolve the issues regarding ownership and right of possession of the Server and Computer/Workstation, and an orderly agreed transfer of one or more party's electronic files, software and data from the Server and Computer/Workstation to another server and, to the extent appropriate, the removal of one or more

1

**App. 0151**

party's electronic files, software and data from the Server and Computer/Workstation;

d.  In the event no agreement is reached relating to the disposition of the Server and Computer/Workstation on or before midnight on July 31, 2015, the Server and Computer/Workstation shall remain in the locked closet described above and shall remain subject to the restrictions concerning access set out in paragraph 2(h) below. Neither the parties nor their counsel shall have any access to the locked closet where the Server and Computer/Workstation are located pending later agreement or further order of the 11th District Court. Any dispute regarding the disposition of the Server and Computer/Workstation shall be resolved by the 11th Judicial District Court through appropriate action of either party, which shall be through an evidentiary hearing on an Application for Temporary Injunction to take place no earlier than August 3, 2015, a Motion for Summary Judgment, or a trial on the merits;

e.  The Temporary Restraining Order signed by the Ancillary Judge on July 2, 2015 is hereby dissolved and Plaintiffs agree that upon entry of this Agreed Order, they shall withdraw their Application for Temporary Restraining Order;

f.  The July 13, 2015 hearing set on Plaintiffs' Application for Temporary Injunction is passed;

g.  Upon entry of this Agreed Order, Defendant will immediately dismiss as moot its Petition for Writ of Mandamus, in Cause No. 01-15-00579-CV, In re MarOpCo, Inc., in the 1st Court of Appeals, Houston, Texas;

h.  Neither party, nor their counsel, agents, anyone acting on behalf of the any of them shall access, delete, remove, erase, conceal, alter, write over in any respect, use, or otherwise fail to preserve any documents, computer files or data (including emails, hard drives, flash drives, disc drives, and zip drives), other electronic information stored, kept, or maintained on the Server and Computer/Workstation, or any forensic or IT images of the Server created by or in the possession of either party, during the time the Server and Computer/Workstation are located in the locked closet at DLJ's office.

Other than expressly stated herein, this Agreed Order does not in any way waive or limit Plaintiffs Preston Marshall, Rusk Capital Management, LLC's rights or Defendant MarOpCo, Inc.'s rights, including but not limited to, any claims, causes of action or defenses that any of the parties have or may have against each other.

SIGNED THIS _____ day of July, 2015

Signed:
7/8/2015
Judge Presiding

AGREED AS TO FORM AND SUBSTANCE:

**DOBROWSKI, LARKIN & JOHNSON LLP**

By:     */s/ Paul J. Dobrowski*
        Paul J. Dobrowski

**WARREN & SIUREK, L.L.P.**

By:     */s/ Mark Siurek*
        Mark Siurek

ATTORNEYS FOR PRESTON MARSHALL
AND RUSK CAPITAL MANAGEMENT, L.L.C.

**BLANK ROME LLP**

By:     /s/ Susan Bickley
        Susan Bickley

ATTORNEYS FOR MAROPCO, INC.

3

App. 0153

7/10/2015 2:00:37 PM
Chris Daniel - District Clerk Harris County
Envelope No. 6018955
By: Tammy Tolman
Filed: 7/10/2015 2:00:37 PM

### CAUSE NO. 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, | § | |
| **PLAINTIFF** | § | |
| | § | IN THE 11TH CIVIL DISTRICT COURT |
| VS. | § | |
| | § | HARRIS COUNTY, TX |
| MAROPCO INC , | § | |
| **DEFENDANT** | § | |
| | § | |

### RETURN OF SERVICE

**ON Thursday, July 09, 2015 AT 08:34 AM** - CITATION, PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTION **CAME TO HAND.**

**ON Thursday, July 09, 2015 AT 02:15 PM, I, GUY CONNELLY, PERSONALLY DELIVERED THE ABOVE-NAMED DOCUMENTS TO:** MAROPCO INC, C/O REGISTERED AGENT: SHEENA BONDADONA, 7001 PRESTON ROAD , DALLAS, DALLAS COUNTY, TX, 75205.


My name is GUY CONNELLY. My address is 1201 Louisiana, Suite 210, Houston, Texas 77002, USA. I am a private process server authorized by and through the Supreme Court of Texas (SCH 02201, expires Wednesday, September 30, 2015). My date of birth is November 4, 1951. I am in all ways competent to make this statement, and this statement is based on personal knowledge. I am not a party to this case, and have no interest in its outcome. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Collin County, Texas on Thursday, July 09, 2015.


/S/ GUY CONNELLY

DocID: P230182_1

1455.03

**App. 0154**

**Opinion issued July 23, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

## NO. 01-15-00579-CV

_____

## IN RE MAROPCO, INC., Relator

---

**Original Proceeding on Petition for Writ of Mandamus**

---

## MEMORANDUM OPINION

Relator, MarOpCo, Inc., filed a petition for a writ of mandamus challenging a temporary restraining order.[1] Relator, representing that the temporary restraining order has been dissolved by an agreed order and the mandamus petition is moot, has filed a motion to dismiss the petition. No opinion has issued. *See* TEX. R. APP.

---

[1]  The underlying case is *Preston Marshall, Individually and Rusk Capital Management, L.L.C. v. MarOpCo, Inc.*, cause number 2015-35950, in the 11th District Court of Harris County, Texas.

P. 42.1(c). Further, although the motion does not include a certificate of conference, more than ten days have passed and no party has responded to the motion. *See* TEX. R. APP. P. 10.1(a)(5), 10.3(a).

Accordingly, we grant the motion and dismiss the petition for a writ of mandamus.

## PER CURIAM

Panel consists of Justices Jennings, Bland, and Brown.

8/3/2015 11:09:27 AM
Chris Daniel - District Clerk Harris County
Envelope No. 6325741
By: GABRIELA COX
Filed: 8/3/2015 11:09:27 AM

CAUSE NO. 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY | § | IN THE DISTRICT COURT OF |
| AND RUSK CAPITAL MANAGEMENT, | § | |
| L.L.C., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| MAROPCO, INC., | § | |
| | § | |
| *Defendant.* | § | 11ᵀᴴ JUDICIAL DISTRICT |

## DEFENDANT MAROPCO, INC.'S ORIGINAL ANSWER

Maropco, Inc., Defendant in the above entitled cause ("Defendant"), appears to file its Original Answer to Plaintiffs' First Amended Petition and would respectfully show the Court as follows:

### General Denial

1.     Defendant Maropco, Inc. generally denies Plaintiffs' allegations under Rule 92 of the Texas Rules of Civil Procedure and demands that Plaintiff prove its allegations by a preponderance of the credible evidence as is required by the Constitution and the laws of the State of Texas.

### Affirmative Defenses

2.     Plaintiff Rusk Capital Management, L.L.C. lacks the legal capacity to sue or be sued, having been administratively dissolved by the State of Wyoming.

3.     Plaintiff Rusk Capital Management, L.L.C. does not exist as a legal entity.

4.     Pursuant to Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 134A.005(1), Defendant is entitled to recover its attorneys' fees because Plaintiffs have asserted their claim of trade secret misappropriation in bad faith.

5.     Defendants' claims are barred in whole or in part by waiver and estoppel.

6.      Defendant Marshall's claims are barred in whole or in part by his own breaches of fiduciary duty.

7.      Defendant reserves the right to plead such other and further defenses as may be desirable.

### Conclusion

Accordingly, Defendant Maropco respectfully requests that the Court dismiss Plaintiffs' suit and award it costs of court, attorneys' fees, expert fees and expenses, and such other and further relief to which Defendant may be legally, justly and equitably entitled.

Respectfully submitted,

BLANK ROME LLP

By:/s/ Susan L. Bickley
    Barry Abrams
    State Bar No. 00822700
    Susan L. Bickley
    State Bar No. 02298150
    700 Louisiana, Suite 4000
    Houston, Texas  77002
    (713) 228-6601
    (713) 228-6605 (Fax)
    Email: sbickley@blankrome.com

ATTORNEYS FOR DEFENDANT,
MAROPCO, INC.

### CERTIFICATE OF SERVICE

I certify that all counsel of record have been served a true and correct copy of the foregoing by Certified Mail/Return Receipt Requested and email on August 3, 2015 as follows:

Mr. Mark Siurek
Ms. Patricia Haylon
Warren & Siurek, L.L.P.
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
Email: msiurek@warrensiurek.com
Email: thaylon@warrensiurek.com

-2-

App. 0158

Mr. Paul J. Dobrowski
Mr. Frederick T. Johnson
Mr. Akilah F. Craig
Dobrowski, Larkin & Johnson LLP
4601 Washington Avenue, Suite 300
Houston, Texas  77007
Email: pjd@doblaw.com
Email: fjohnson@doblaw.com
Email: acraig@doblaw.com


/s/ Susan L. Bickley
Susan L. Bickley

-3-

10/14/2015 6:27:22 PM
Chris Daniel - District Clerk Harris County
Envelope No. 7381779
By: Tammy Tolman
Filed: 10/14/2015 6:27:22 PM

CAUSE NO.  2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY AND RUSK CAPITAL MANAGEMENT, L.L.C. | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| v. | § § | OF HARRIS COUNTY, TEXAS |
| MAROPCO, INC., | § § | |
| *Defendant.* | § | 11TH JUDICIAL DISTRICT |

### PLAINTIFFS' SECOND AMENDED PETITION AND REQUEST FOR PERMANENT INJUNCTION

TO THE HONORABLE JUDGE MIKE D. MILLER:

Plaintiffs Preston Marshall Individually ("Marshall") and Rusk Capital Management, L.L.C. ("Rusk Capital") (collectively, "Plaintiffs") file this Second Amended Petition and Request for Permanent Injunction complaining of MarOpCo, Inc. ("MarOpCo") and would show as follows:

### DISCOVERY CONTROL PLAN

1.      Discovery in the above-captioned matter should be conducted in accordance with Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure and affirmatively plead that this suit is not governed by the expedited-actions process of Texas Rule of Civil Procedure 169 because Plaintiffs seek monetary relief of over $100,000.00.

### PARTIES

2.      Preston Marshall is an individual residing in Harris County, Texas.

3.      Rusk Capital is a foreign limited liability corporation with its principal place of business in Harris County, Texas.

4.      MarOpCo, Inc. has appeared and answered.

1

## VENUE

5.     Venue of this case is proper in Harris County, Texas, pursuant to Section 15.002(a) (1) of the Texas Civil Practice and Remedies Code.

## FACTS

**A.     Marshall's employment with MarOpCo.**

6.     MarOpCo is primarily an administrative services provider for a group of businesses owned, operated and/or managed by the Marshall family.[1] Elaine Marshall serves as the President and Chief Executive Officer of MarOpCo.[2]

7.     MarOpCo's principal office is located at 7001 Preston Road, Suite 400, Dallas, Texas 75205-5102.[3] However, MarOpCo also maintains a Houston office located at 7600 Tidwell, Suite 800, Houston, Texas 77040-6718.[4]

8.     Marshall was employed as a Vice President of MarOpCo pursuant to an employment agreement (the "Agreement") effective December 12, 2014 through December 31, 2015.[5] Pursuant to the express terms of paragraph 5(a) of the Agreement, MarOpCo reserved the right to terminate Marshall's employment at any time without cause, preserving Marshall's status as an "at will" employee.[6] However, Marshall was to be paid all accrued salary, benefits and personal time off in the event of his termination.[7]

9.     As a Vice President of MarOpCo, Marshall performed his duties and responsibilities for MarOpCo at the Houston office located on Tidwell.[8] For example, Marshall

---

[1] Ex. A, ¶ 3.
[2] *Id.*
[3] *Id.* at ¶ 4.
[4] *Id.*
[5] A true and correct copy of the Agreement is attached hereto as <u>Exhibit B</u>.
[6] *Id.*
[7] *Id.*
[8] Ex. A, ¶ 5.

2

was designated with the Texas Secretary of State as MarOpCo's registered agent for service of process at the Tidwell office location in Houston.[9]

**B.      The Affected Entities.**

10.     In addition to his work for MarOpCo, Marshall maintained oversight of his personal affairs and other business entities (collectively referred to as the "Affected Entities") at the Tidwell office location.[10] These included:

   a.   Preston Marshall, individually;

   b.   Marshall Heritage Foundation (f/k/a Marshall Museum and Library);

   c.   Marshall Legacy Foundation;

   d.   Eleanor Pierce Stevens Foundation;

   e.   EPS/EPM Charitable Reminder Unitrust;

   f.   Eleanor Pierce (Marshall) Stevens Living Trust;

   g.   Eleanor Stevens Revocable Gift Trust;

   h.   Bettye Morgan Charitable Remainder Unitrust;

   i.   Bettye Morgan Supplemental Charitable Remainder Unitrust;

   j.   Ada Estes Charitable Reminder Unitrust;

   k.   Ada Estes Supplemental Charitable Remainder Unitrust;

   l.   Peroxisome Charitable Lead Trust;

   m.   Citrine Commence L.L.C.;

   n.   Lysosome L.L.C.;

   o.   Chondriosome Stiftung;

   p.   Khozraschyot Capital Management L.L.C.;

---

[9] *Id.* at ¶ 3.
[10] *Id.* at ¶ 5.

App. 0162

q.   Lednik Capital Management L.L.C.;

r.   Glacier Holdings L.L.C.;

s.   Rusk Capital Management LLC; and

t.   CarTech Systems L.L.C.

Marshall's actions in operating Rusk Capital and the Affected Entities at the Tidwell office was known and ratified by MarOpCo.[11]

11.   Importantly, Marshall's responsibilities relative to the various entities created ongoing fiduciary obligations from Marshall to each of the entities identified above.[12] In performing his duties and responsibilities on behalf of these entities, Marshall used and relied upon files, correspondence, records, reports, documents and other data maintained at the Tidwell office location.[13]

## C.   Marshall's dealings with Rusk Capital.

12.   Rusk Capital is an equity investment firm focusing on the purchase of oil and gas producing properties including from Idzig LLC. Marshall is the sole owner and manager of Rusk Capital.[14]

13.   The business of Rusk Capital includes gathering and analyzing information related to potential investors and investment opportunities concerning oil and gas producing properties.[15] As such, Rusk Capital maintains trade secrets, proprietary and confidential information at the Tidwell office location which includes, but is not limited to, all information related to actual and potential investors, data pertaining to investment opportunities, business strategies, investment strategies, business analysis, all communications with actual and potential

---

[11] *Id.* at ¶ 7.
[12] *Id.* at ¶ 6.
[13] *Id.*
[14] *Id.* at ¶ 2.
[15] *Id.*

4

investors, data evidencing due diligence with respect to investment opportunities, and employee records.[16]

14.     Rusk Capital has taken reasonable efforts to keep its trade secrets, confidential and proprietary information secret because it has actual or potential independent economic value to third parties and because it is not generally known to the public and not readily ascertainable from other means.

15.     The principal office of Rusk Capital is located at 7600 Tidwell Road, Suite 800, Houston, Texas 77040.[17] In that regard, Marshall purchased, used and/or relied upon telephones, computers, computer servers, and other equipment for purposes of conducting business as Rusk Capital at the Tidwell office.[18] For example, Marshall spent over fourteen thousand dollars ($14,000.00) on behalf of Rusk Capital on computer equipment for Rusk Capital. Marshall purchased a computer server (the "Rusk Server") on behalf of Rusk Capital in order to store data related to Rusk Capital and the Affected Entities.[19] Because MarOpCo's server had reached maximum capacity, was affected by frequent age-related hardware failures, out of date, and was unable to meet the demands of MarOpCo's own business, Rusk Capital allowed MarOpCo to transfer files from the MarOpCo server to the Rusk Server.[20] Rusk Capital also permitted MarOpCo to continue to store data and information on the Rusk Server.[21] Additionally, Marshall and/or Rusk Capital is the sole licensee of several software applications purchased for the use of Rusk Capital and the Affected Entities.[22] While Plaintiffs allowed MarOpCo use of some of these programs while Marshall was a MarOpCo employee, MarOpCo has no right to utilize these

---

[16] *Id.* at ¶ 13.
[17] *Id.* at ¶ 5.
[18] *Id.* at ¶ 8.
[19] *Id.*
[20] *Id.* at ¶ 10.
[21] *Id.*
[22] *Id.* at ¶ 9.

5

programs anymore.[23]  MarOpCo's old server was still in place at the Tidwell office on June 11, 2015.[24]

**D.      Marshall's termination from MarOpCo.**

16.      By correspondence dated May 22, 2015, the President of MarOpCo instructed Marshall to consent to the transfer of funds related to various entities from one bank to another.[25] Marshall would have no signatory authority on any newly established accounts and would no longer receive monthly statements on such accounts.[26]

17.      Marshall complied with MarOpCo's instructions as to all entities with the exception of Ribosome LP ("Ribosome").[27]  Marshall refused to consent to his removal from the Ribosome account as substantially all of the funds contained in the account belonged to Chondriosome Stiftung ("Chondriosome").[28]

18.      Marshall is a member of the Foundation Council, the governing body of Chondriosome and, thus, acts as a fiduciary with respect to Chondriosome.[29]  As such, Marshall has a fiduciary duty to monitor and manage the funds belonging to Chondriosome.[30]

19.      Agreeing to relinquish oversight of the funds belonging to Chondriosome would leave the Foundation Council without access to its funds and constitute an intentional breach of Marshall's fiduciary duties owed to Chondriosome.[31]

20.      Marshall was also instructed by the President of MarOpCo, in the same correspondence of May 22, 2015, to execute a prepared affidavit provided by MarOpCo for his

---

[23] *Id.*
[24] *Id.* at ¶ 10.
[25] *Id.* at ¶ 11.
[26] *Id.*
[27] *Id.*
[28] *Id.* A Stiftung is a fund endowed for a specific purpose under foreign law which is generally treated as a trust by the Internal Revenue Service.
[29] *Id.* at ¶ 12.
[30] *Id.*
[31] *Id.*

signature.[32] Marshall refused to sign the affidavit as it contained false statements concerning Marshall's relationship to various entities.[33]

21. On June 11, 2015, Marshall was notified in writing that his employment with MarOpCo was terminated effective immediately because he failed to execute documents as instructed.[34] Marshall was also informed that he no longer had access to the Tidwell office location.[35]

22. Additionally, MarOpCo directed the management company of the Tidwell office to deactivate all access entry cards in Marshall's possession and to change the locks on the secured doors to Suite 800. Further, Rusk Capital's computer system and server were disconnected.

23. Consequently, the computers, the Rusk Server, files (both physical and electronic), office equipment and furniture, as well as all confidential and proprietary information belonging to Rusk Capital were then in the possession of, and wrongfully controlled by, MarOpCo.[36]

24. Similarly, all records, files, and data used and relied upon by Marshall to carry out his personal affairs and to meet his fiduciary obligations with respect to the Affected Entities were removed from the Tidwell office and were then in the possession of, and wrongfully controlled by, MarOpCo.[37]

25. Additionally, E. Pierce Marshall Jr., an officer with MarOpCo, is an adverse party in two cases involving Marshall in Texas and Louisiana.[38] Specifically, the case pending in

---

[32] *Id.* at ¶ 11.
[33] *Id.*
[34] *Id.* at ¶ 13.
[35] *Id.*
[36] *Id.* at ¶ 14.
[37] *Id.*
[38] *Id.* at ¶ 16.

App. 0166

Louisiana is Cause No. 2007-6723, In re Eleanor Pierce (Marshall) Stevens Living Trust, in the 14th Judicial District, Calcasieu Parish, Louisiana.[39] The case pending in Texas is Cause No. PR-15-00746-1, In re the Estate of Eleanor Pierce (Marshall) Stevens, in Probate Court No. 2, Dallas, County, Texas.[40] Electronic files related to these cases are stored on the Rusk Server and tangible documents were kept at the Tidwell office.[41] The files contain confidential attorney-client communications and documents protected by the work-product privilege.[42] Because of MarOpCo's wrongful possession and control, E. Pierce Marshall Jr. has availed himself of privileged information or impermissible, unwarranted and improper discovery.[43]

26.     As a result of MarOpCo's wrongful exercise of dominion and control over the personal and business property of Marshall and the Affected Entities including Rusk Capital, MarOpCo has or will cause harm to Marshall, individually and in his fiduciary capacity to the Affected Entities  including Rusk Capital.

27.     Marshall and Rusk Capital demanded in writing the immediate return of all property and assets belonging or pertaining to Marshall and Rusk Capital which were stored or located at 7600 W. Tidwell Road, Suite 800, Houston, Texas 77040 by 5:00 p.m. on Monday, June 22, 2015.[44]

28.     MarOpCo failed to return the property or allow Marshall to recover the tangible and electronic data, documents, and files pertaining to Rusk Capital and the Affected Entities. As such, this suit and application for immediate equitable relief followed.[45]

---

[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.* at ¶ 17.
[45] *Id.*

## CAUSES OF ACTION

**A.  Conversion.**

29.     Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the property of another, in a manner inconsistent with the owners' rights.

30.     Applied here, the Plaintiffs owned or had possession of property located at the Tidwell office location. MarOpCo unlawfully and without authorization removed from the Tidwell office, assumed and exercised control over the Plaintiffs' property in a manner that was inconsistent with their rights as owners. Plaintiffs demanded the return of the property and MarOpCo failed to do so.

31.     As a direct and proximate result of MarOpCo's conduct, the Plaintiffs have been harmed and damaged for which they now sue. The Plaintiffs are entitled to injunctive relief, actual and exemplary damages, and reasonable attorneys' fees and costs.

**B.     Violation of the Texas Harmful Access by Computer Act Tex. Civ. Prac. & Rem. Code Ann. §§ 143.001-143.002.**

32.     The Plaintiffs own and/or operate a secure computer system, which stores information that is only accessible by certain authorized individuals, including Marshall. The Plaintiffs' computer system contain and store, in part, records and documents containing confidential information concerning investment opportunities, potential investors, investment strategies and employees. Plaintiffs limit access to the computer system to certain executive and administrative employees of Rusk Capital.

33.     Nevertheless, MarOpCo knowingly accessed, disassembled and/or physically moved Plaintiffs' secure computer system and databases. This access and control was intentional, willful and without the Plaintiffs' consent.

9

34.     The foregoing conduct violates Chapter 33 of the Texas Penal Code, "Computer Crimes." The Harmful Access by Computer Act contained within  section 143.001, et seq. of the Texas Civil Practice & Remedies Code  provides a private civil cause of action for violation of Chapter 33 of the Texas Penal Code and entitles the Plaintiffs to actual damages, punitive damages, and reasonable attorneys' fees and costs.

**C.      Misappropriation of Trade Secrets Under the Texas Uniform Trade Secrets Act.**

35.     Rusk Capital owns all right, title and interest in its trade secrets and confidential and proprietary information. MarOpCo misappropriated the Plaintiffs' trade secrets through improper means in violation of sections 124A.001, et seq. of the Texas Civil Practice & Remedies Code. Specifically, MarOpCo knowingly obtained Rusk Capital's trade secrets and confidential and proprietary information by improper means when MarOpCo unlawfully exercised dominion and control over Rusk Capital's computer systems and secure databases, without authority or right. MarOpCo's conduct was done willfully and maliciously and has resulted in damage to Rusk Capital. As such, Rusk Capital is entitled to injunctive relief, actual and exemplary damages, pre and post-judgment interest, and court costs pursuant to Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.003.

**D.      Wrongful Discharge for Refusing to Commit an Illegal Act.**

36.     Marshall was an at will employee who was terminated solely because he refused to commit an illegal act.  Specifically, it is a felony under section  32.45 of the Texas Penal Code for a person to intentionally or knowingly misapply property they hold as a fiduciary in a manner that involves substantial risk of loss to the owner of the property.   Tex. Penal Code § 32.45.

37.     As such, MarOpCo's  demand that  Marshall  authorize  the  transfer  of  the Chondriosome's funds into a new account inaccessible by any member of the Foundation Council

10

constituted a demand that Marshall commit a misapplication of fiduciary property in violation of the Texas Penal Code that would subject Marshall to criminal penalties, including imprisonment.

38.     Similarly, it is a violation of section 37.03 of the Texas Penal Code to make a false statement under oath in connection with an official proceeding.  Tex. Penal Code § 37.03.  The affidavit that Marshall refused to sign was expressly related to the litigation described above in paragraph 25.  A violation of section 37.03 of the Texas Penal Code is a felony that would subject Marshall to criminal penalties, including imprisonment.

39.  Simply put, both instructions from MarOpCo to Marshall on May 22, 2015, directed Marshall to commit illegal acts.   Consequently, MarOpCo's termination of Marshall's employment for his failure to execute the documents as directed violates the public policy exception to the employment at will doctrine established in *Sabine Pilot v. Hauck*. 687 S.W.2d 733 (Tex. 1987).

40.     Accordingly, Marshall is entitled to reinstatement, actual damages, including back wages, benefits, and front pay, as well as compensatory damages and exemplary damages far in excess of the jurisdictional minimums of this Court.

**E.     Breach of Contract**

41.     Paragraph 5(a) of the Agreement required that MarOpCo pay Marshall all of his accrued salary, benefits and personal time off if he was terminated without cause.[46]  Because MarOpCo failed to pay Marshall in accordance with the terms of the Agreement following his termination, MarOpCo has breached the Agreement, which has resulted in damages to Marshall.

**F.     Tortious Interference with Existing Contracts**

42.     Marshall had existing contracts with the Affected Entities that gave him authority to act on their behalf.   MarOpCo willfully and intentionally interfered with Marshall's

---

[46] Ex. B.

performance of such contracts by locking him out of the Tidwell office location and wrongfully denying Marshall access to the computers, the Rusk Server, records, files and other data necessary to perform his required tasks on behalf of the Affected Entities.

43.     MarOpCo's intentional interference with Marshall's performance of the contracts with the Affected Entities directly and proximately caused damages to Marshall for which he now sues.

**G.      Tortious Interference with Business Relations**

44.     Marshall had a continuing business relationship with Rusk Capital, Chondriosome and the Affected Entities.  MarOpCo intentionally interfered with Marshall's continuing business relationships with these entities by locking him out of the Tidwell office and denying him access to the computers, the Rusk Server server, records, documents and other data pertaining to those entities.

45.     MarOpCo's actions as described above were unlawful and constitute conversion, a violation of the Texas Harmful Access by Computer Act, and a misappropriation of trade secrets. Further, MarOpCo's unlawful conduct and interference proximately caused Marshall to suffer actual damages or loss for which he now sues.

**H.      Business Disparagement**

46.     As noted above, MarOpCo informed the management company of the Tidwell office location that Marshall had no basis to enter the Tidwell office and that he was to be denied access to the office.  MarOpCo clearly intended its communication to cast doubt on Marshall's business interests and ownership of property at the Tidwell office.

47.     MarOpCo knew that its statements to the management company were false and were made with the intent to interfere with Marshall's economic or business interests.

App. 0171

MarOpCo's disparagement caused a direct economic loss to Marshall, including out of pocket damages and a loss of goodwill.

## REQUEST FOR PERMANENT INJUNCTION

48.     Pursuant to Texas Civil Practice and Remedies Code sections 65.001 and 65.021 through 65.023, Plaintiffs seek a permanent injunction. Injunctive relief is sought for the purpose of maintaining the status quo and preventing additional interference with the Plaintiffs' business relationships and fiduciary duties.

49.     There is a substantial likelihood that the Plaintiffs will prevail on the merits of their claims against MarOpCo because unless MarOpCo is immediately restrained from accessing, using, disclosing, or destroying Plaintiffs' business and personal property of the Plaintiffs, Plaintiffs will suffer immediate and irreparable losses of its trade secrets and confidential and proprietary information.

50.     Plaintiffs have no adequate remedy at law for the irreparable harm the Plaintiffs will suffer, which includes without limitation, loss of business opportunities, loss of goodwill and business reputation, loss of confidential and proprietary information, and liability for breach of fiduciary duties. Money damages cannot adequately compensate the Plaintiffs.

51.     The threat to the Plaintiffs and the Affected Entities substantially outweighs the threat of harm, if any, that MarOpCo would suffer by the granting of injunctive relief.

52.     Specifically, Plaintiffs request that the Court:

> a.     Return and restore all of the Plaintiffs' property removed by MarOpCo from the Tidwell office location, including computers, the Rusk Server, documents, files, records, checks; checkbooks, and all information or documents pertaining to Marshall and/or used and relied upon by Marshall in connection with the following entities (the "Affected Companies") to the Tidwell office location:

13

1.     Preston Marshall, individually;

2.     Marshall Heritage Foundation (f/n/a Marshall Museum and Library);

3.     Marshall Legacy Foundation;

4.     Eleanor Pierce Stevens Foundation;

5.     EPS/EPM Charitable Remainder Unitrust;

6.     Eleanor Pierce (Marshall) Stevens Living Trust;

7.     Eleanor Stevens Revocable Gift Trust;

8.     Bettye Morgan Charitable Remainder Unitrust;

9.     Bettye Morgan Supplemental Charitable Remainder Unitrust;

10.    Ada Estes Charitable Remainder Unitrust;

11.    Ada Estes Supplemental Charitable Remainder Unitrust;

12.    Peroxisome Charitable Lead Trust;

13.    Citrine Commerce L.L.C.;

14.    Lysosome L.L.C.;

15.    Chondriosome Stiftung;

16.    Khozraschyot Capital Management L.L.C.;

17.    Lednik Capital Management L.L.C.;

18.    Glacier Holdings L.L.C.;

19.    Rusk Capital Management LLC; and

20.    CarTech Systems L.L.C.

b.    Order MarOpCo to allow the Plaintiffs access to the Plaintiffs' property, including computers, the Rusk Server, documents, files, records, checks, checkbooks, and all information or documents pertaining to Marshall and/or used and relied upon by Marshall in connection with the Affected Entities;

c.    Order MarOpCo to allow the Plaintiffs access to the Plaintiffs' property removed by MarOpCo from the Tidwell office location, including computers, the Rusk Server, documents, files, records, checks, checkbooks, and all information or documents pertaining to Rusk Capital;

d.    Order MarOpCo to return the Rusk Server to Plaintiffs;

e.    Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from altering, destroying, concealing, or hiding any records, documents, papers, files, checks, or other property belonging or pertaining to Marshall, Rusk Capital or the Affected Entities;

14

f.  Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from deleting, removing, or writing over in any respect any documents, computer files or data (including, emai1s, hard drives, flash drives, disc drives, and zip drives), or other electronic information relating in any way to Marshall, Rusk Capital, or the Affected Entities;

g.  Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from disclosing, transmitting or otherwise using or disclosing for any purpose whatsoever any trade secrets, confidential and proprietary information, or other business information pertaining to or owned by Marshall, Rusk Capital or the Affected Entities removed from the Tidwell office location;

h.  Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from disclosing, transmitting or otherwise using or disclosing for any purpose whatsoever any personal information used by or pertaining to Marshall or relied upon by Marshall in connection with the Affected Entities; and

i.  Enjoin MarOpCo, and anyone acting by, through, or in concert with MarOpCo, from destroying, deleting, erasing, modifying or otherwise failing to preserve intact all information that originally came from the Tidwell office location used by or pertaining to Marshall, Rusk Capital or the Affected Entities.

## <u>REQUEST FOR RELIEF AND FINAL JUDGMENT</u>

53.  The Plaintiffs respectfully requests that this Court:

a.  after a trial on the merits, issue a permanent injunction as set forth above;

b.  award Marshall all equitable relief to which he may be entitled, including reinstatement to his former position as Vice President of MarOpCo;

c.  award the Plaintiffs all actual, compensatory, consequential, and exemplary    damages to which they are entitled;

d.  award the Plaintiffs attorneys' fees, court costs, and expenses incurred in this    action;

e.  award prejudgment and post-judgment interest on the amounts awarded above at    the highest rate allowed by law; and

f.  grant the Plaintiffs all other relief, in law or in equity, general or special, as this  Court deems proper and to which they may be justly entitled.

15

Respectfully submitted,

**DOBROWSKI, LARKIN & JOHNSON LLP**

By:    */s/ Paul J. Dobrowski*
           Paul J. Dobrowski
           SBN 05927100
           Frederick T. Johnson
           SBN 00785429
           Akilah F. Craig
           SBN 24076194
           4601 Washington Ave., Suite 300
           Houston, TX 77007
           Telephone: (713) 659-2900
           Facsimile: (713) 659-2908
           pjd@doblaw.com
           fjohnson@doblaw.com
           acraig@doblaw.com

**WARREN & SIUREK, L.L.P.**

By:    */s/ Mark Siurek*
           Mark Siurek
           TBA# 18447900
           msiurek@warrensiurek.com
           Patricia Haylon
           TBA# 09281925
           thaylon@warrensiurek.com
           3334 Richmond Avenue, Suite 100
           Houston, Texas 77098
           Telephone: (713) 522-0066
           Facsimile: (713) 522-9977

ATTORNEYS FOR PRESTON MARSHALL AND RUSK CAPITAL MANAGEMENT, L.L.C.

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record on this the 14th day of October, 2015, by mail, facsimile and/or electronic mail.

Barry Abrams
Susan Bickley
Blank Rome LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002

*/s/ Akilah F. Craig*
Akilah F. Craig

CAUSE NO 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY and RUSK CAPITAL MANAGEMENT, L.L.C., | § § § | IN THE DISTRICT COURT |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| MAROPCO, INC., | § | |
| | § | |
| Defendant. | § | 11th JUDICIAL DISTRICT |

## AFFIDAVIT OF PRESTON MARSHALL

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

Before me, the undersigned notary, on this day personally appeared Preston Marshall, the affiant, a person whose identity is known to me. After I administered the oath to the affiant, the affiant testified:

1.    "My name is Preston Marshall. I am a resident of Harris County, Texas. I am over the age of 18 and I am qualified in all respects to give this affidavit. The facts set forth in this affidavit are within my personal knowledge and are true and correct.

2.    I am the sole owner and manager of Rusk Capital Management, L.L.C. ("Rusk Capital"). Rusk Capital is an equity investment firm focusing on the purchasing of oil and gas producing properties. Rusk Capital gathers and analyzes information related to potential investors and investment opportunities concerning oil and gas producing properties.

3.    As of June 11, 2015, I was also Vice President of MarOpCo, Inc. ("MarOpCo"), which is primarily an administrative services provider for a group of businesses owned, operated, and/or managed by the Marshall Family. Elaine Marshall serves as the President and Chief Executive Officer of MarOpCo. Until my termination from MarOpCo, I also served as MarOpCo's registered agent for service of process.

4.    MarOpCo's principal office is located at 7001 Preston Road, Suite 400, Dallas, Texas 75205-5105. However, MarOpCo maintains a Houston office, located at 7600 Tidwell, Suite 800, Houston, Texas 77040-6718.

5.    For the entirety of my employment with MarOpCo, I have maintained and occupied an office at MarOpCo's Tidwell office. Further, at all times relevant to

1

**EXHIBIT A**

this litigation, the primary office of Rusk Capital is located at the Tidwell office. I also operated the Affected Entities out of the Tidwell office, including:[1]

    a.     Marshall Heritage Foundation (f/k/a/ Marshall Museum and Library);
    b.     Marshall Legacy Foundation;
    c.     Eleanor Pierce Stevens Foundation;
    d.     EPS/EPM Charitable Remainder Unitrust;
    e.     Eleanor Pierce (Marshall) Stevens Living Trust;
    f.     Eleanor Stevens Revocable Gift Trust;
    g.     Bettye Morgan Charitable Remainder Unitrust;
    h.     Bettye Morgan Supplemental Charitable Remainder Unitrust;
    i.     Ada Estes Charitable Remainder Unitrust;
    j.     Ada Estes Supplemental Charitable Remainder Unitrust;
    k.     Peroxisome Charitable Lead Trust;
    l.     Citrine Commerce L.L.C.;
    m.     Lysome L.L.C.;
    n.     Chondrisome Stiftung;
    o.     Khozraschyot Capital Management L.L.C.;
    p.     Lednik Capital Management L.L.C.;
    q.     Glacier Holdings L.L.C.;
    r.     CarTech Systems L.L.C.

6.     My responsibilities relative to the Affected Entities create ongoing fiduciary obligations from me to each of the Affected Entities. In performing my dutues and responsibilities on behalf of these entities, I used and relied upon files, correspondence, records, reports, documents and other data maintained at the Tidwell office location.

7.     My actions in operating Rusk Capital and the Affected Entities was known by MarOpCo and Elaine Marshall, including the fact that my controller for Rusk Capital worked in the Tidwell office as well. True and correct copies of correspondence demonstrating MarOpCo's knowledge are attached hereto as ***Exhibit 1***.

8.     Between May 2013 and October 2014, I spent over fourteen thousand dollars ($14,000) on behalf of Rusk Capital on computer equipment (hardware and software) for Rusk Capital. A true and correct copy of the invoices for the purchases are attached hereto as ***Exhibit 2***. I purchased (1) Microsoft Office Home and Business; and (2) Lacerte Fast Path tax preparation software. See Ex. 2. In addition, on behalf of Rusk Capital, I purchased a Hewlett-Packard Gen8 v2 Server and accompanying software (the "Rusk Server"), as well as a keyboard, mouse, LED monitor, and two Hewlett-Packard workstations. See Ex. 2. Each of these purchases were billed to me personally or to Rusk Capital and I used my personal credit card to make the purchases. MarOpCo has not reimbursed me for these expenses.

---

[1] These entities are referred to herein as the "Affected Entities."

9.  Additionally, the Rusk Server contains software and programs that are subject to licenses for which Rusk Capital is the sole licensee. For example, Rusk Capital is the sole licensee of Microsoft Window Server 2012 R2 and Microsoft SQL Server 2012. Because the licenses are specific to the individually named user and cannot be shared, MarOpCo has no right to utilize these programs.

10. Because MarOpCo's old server had reached maximum capacity, was affected by frequent age-related hardware failures, outdated and unable to meet the demands of MarOpCo's own business, I allowed MarOpCo to transfer files and save data and information on the Rusk Server, which was housed at the Tidwell office. I also saved data and information from the Affected Entities listed above on the Rusk Server. MarOpCo's old server was still in place at the Tidwell office on June 11, 2015.

11. By correspondence dated May 22, 2015, Elaine Marshall instructed me to consent to the transfer of funds related to various entities from one bank to another. I would have no signatory authority on any newly established accounts and would no longer receive monthly statements on such accounts. I informed her that I previously complied with MarOpCo's instructions as to all entities with the exception of Ribosome LP ("Ribosome"). I refused to consent to my removal from the Ribosome account as substantially all of the funds contained in the account belonged to Chondriosome Siftung ("Chondrisome"). I was also instructed in the May 22, 2015 correspondence to execute a prepared affidavit provided by MarOpCo. I refused to sign the affidavit as it contained false statements concerning my relationship with various entities.

12. I am a member of the Foundation Council, the governing body of Chondriosome and, thus, acts as a fiduciary with respect to Chondriosome. As such, I have a fiduciary duty to monitor and manage the funds belonging to Chondriosome. Agreeing to relinquish oversight of the funds belonging to Chondriosome would leave the Foundation Council without access to its funds and constitute an intentional breach of my fiduciary duties owed to Chondriosome.

13. On June 11, 2015, I received a letter from Elaine Marshall terminating my employment with MarOpCo because of my failure to execute documents as instructed. A true and correct copy of the letter is attached hereto as *Exhibit 3*. While the letter purported to terminate my right of access to the Tidwell office, the letter also acknowledged my use of the office for the Affected Entities as well as MarOpCo, and represented that I could go to the Tidwell office to identify and collect my personal effects.

14. However, on June 15, 2015, the locks to the Tidwell office were changed, my access card was deactivated, the Rusk Server was disconnected, and my tangible personal files and documents were removed from the Tidwell office. As such, the computers, server, files (both physical and electronic), physical original attorney-client files (including communications, legal research, advice and mental impressions), office equipment, and furniture owned by me or Rusk Capital, as

3

well as confidential and proprietary information of Rusk Capital and the Affected Entities are in the possession and control of MarOpCo. Similarly, all records, files and data used and relied upon by me to carry out my personal affairs and to meet my fiduciary obligations with respect to the Affected Entities are now in the possession and control of MarOpCo.

15. Prior to my termination from MarOpCo and ultimate lock-out from the Tidwell office, Rusk Capital maintained proprietary and confidential business information at the Tidwell office, including but not limited to, all information related to actual and potential investors, data pertaining to investment opportunities, business strategies, investment strategies, business analysis, all communications with actual and potential investors, data evidencing due diligence with respect to investment opportunities, and employee records, as well as physical, original attorney-client files. This information constitutes trade secrets, confidential business information, and protected/protectable attorney-client communications of Rusk Capital, the Affected Entities and me.

16. In addition, Pierce Marshall, an officer with MarOpCo, is an adverse party in two cases pending in Texas and Louisiana, in which I am currently involved. Specifically, the case pending in Louisiana is Cause No. 2007-6723, In re Eleanor Pierce (Marshall) Stevens Living Trust, in the 14th Judicial District, Calcasieu Parish, Louisiana. The case pending in Texas is Cause No. PR-15-00746-1, In re the Estate of Eleanor Pierce (Marshall) Stevens, in Probate Court No. 2, Dallas, County, Texas. I have electronic files related to both of these matters stored on the Rusk Server as well as physical, tangible documents stored at the Tidwell office. To the extent my property is not returned in full, without Pierce Marshall being allowed access, he may be able to access and view confidential attorney-client privileged documents and documents protected by the work-product privilege. Pierce Marshall may also avail himself of impermissible, unwarranted and unlimited discovery.

17. On June 19, 2015, I demanded the immediate return of all property and assets belonging or pertaining to me individually or Rusk Capital in writing. A true and correct copy of my demand letter is attached hereto as *Exhibit 4*. However, to date, MarOpCo has failed to return the property or allow me to recover the tangible and electronic data, documents, and files pertaining to the Affected Entities or me personally.

18. If my property is not returned, I will suffer imminent harm, including loss of business opportunity, loss of good will and business reputation, loss of confidential and proprietary information, potential breach of attorney-client communications, and I may be exposed to liability for breach of fiduciary duties.

Further affiant sayeth not."

4

By: _____

Preston Marshall

SUBSCRIBED AND SWORN TO before me by Preston Marshall on this _14th_ day of October, 2015.

_____
Notary Public in and for
The State of Texas

5

# EXHIBIT 1



**From:** sheena.bonadona@maropco.com [mailto:sheena.bonadona@maropco.com]
**Sent:** Monday, December 22, 2014 5:40 PM
**To:** 'Eyvonne Scurlock'
**Cc:** 'Preston Marshall'
**Subject:** Peroxisome transfer letters to Foundations

Eyvonne,

Please see attached transfer request letters from Peroxisome to the Foundations.  I will fax over a copy to Keith tomorrow morning that includes Pierce's signature.  Once you have Preston's signature, please fax a copy to Keith as well.

Thanks,
Sheena
_____

Sheena Adams Bonadona, CPA

1

Corporate Controller
MarOpCo, Inc.
7001 Preston Road, Ste. 400
Dallas, Texas 75205
Phone: (214) 447-7486
Fax: (972) 460-4326

2



**From:** Eyvonne Scurlock [mailto:eyvonne.scurlock@maropco.com]
**Sent:** Monday, February 23, 2015 2:21 PM
**To:** 'Preston Marshall'
**Subject:** RE: Sheldon Black

I told her that he did not work on anything but Rusk and that is who pays his salary.  She does think she is paying rent for his office.

**From:** Preston Marshall [mailto:preston.marshall@maropco.com]
**Sent:** Monday, February 23, 2015 2:14 PM
**To:** 'Eyvonne Scurlock'
**Subject:** RE: Sheldon Black

You can tell her he does not have access to all the files and that she wrote me a letter instructing me to hire an accountant and pay him myself.  She is not paying rent for his office.

**From:** Eyvonne Scurlock [mailto:eyvonne.scurlock@maropco.com]
**Sent:** Monday, February 23, 2015 10:29 AM

App. 0185

**To:** 'Preston Marshall'
**Subject:** Sheldon Black

Your mom called this morning.  She said Brad told there was a strange man in the office.  She wanted to know who he was, how long he had been here and who was paying him.  She did not like it that he had access to all the files.   I told her he worked only with RCM and that was who paid him.

2



**From:** sheena.bonadona@maropco.com [mailto:sheena.bonadona@maropco.com]
**Sent:** Friday, April 10, 2015 4:57 PM
**To:** 'Preston Marshall'; 'Eyvonne Scurlock'
**Subject:** Marshall tax returns

Hi all.  So we are all on the same page, please see the list of returns I'm preparing and which returns I'm under the impression that Preston is preparing. Please let me know if anything needs to be changed.

Prepared by Sheena:
- Trof, Inc.
- Ribosome, LP
- MarOpCo BBP for Dallas & Harris Counties
- EPM Testamentary Lead Trust
- Eagle Trust
- Falcon Trust
- Harrier Trust
- Estate of J. Howard Marshall II
- J. Howard Marshall II Living Trust
- EPM MIT
- Marshall Grandchildren Trust FBO Preston

App. 0187

- Marshall Grandchildren Trust FBO Pierce
- Idzig, LLC
- Elaine T. Marshall
- Rusk Oil Corporation
- Estate of EPM
- Marshall Heritage Foundation

Prepared by Preston to be reviewed by Sheena:
- Chondriosome Stiftung
- Peroxisome Trust
- Lysosome, LLC
- Marshall Legacy Foundation

Prepared by Preston:
- Morgan CRUT
- Morgan Supplemental CRUT
- EPS/EPM CRUT
- Estes CRUT
- Estes CRAT

Thanks,
Sheena

_____

Sheena Adams Bonadona, CPA
Corporate Controller
MarOpCo, Inc.
7001 Preston Road, Ste. 400
Dallas, Texas 75205
Phone: (214) 447-7486
Fax: (972) 460-4326

App. 0188

# EXHIBIT 2

**From:** Microsoft Store Support [mailto:DO-NOT-REPLY@microsoftstore.com]
**Sent:** Friday, June 13, 2014 4:00 PM
**To:** pmarshall28@hotmail.com
**Subject:** Microsoft Store - Order Confirmation (Order #9653449434)

Account  |  Customer Services



# Thanks for your purchase

*Dear Preston Marshall,*

Thank you for shopping with Microsoft on June 13, 2014. We hope you enjoyed your shopping experience.

If your order contains products that require downloading, just sign in with your Microsoft account and click the download link right next to the product name.

If your order contains physical products, we'll send you a separate email when your products have shipped.

## Order summary

**Your order number:**
9653449434

**Order date:**
June 13, 2014

**Bill to:**
Preston Marshall
7600 W. Tidwell Rd.
Suite# 800
Houston TX 77040
United States
713690-4321
pmarshall28@hotmail.com

**Payment:**
MC
************9387 112016

## Products on your order

1

App. 0190

Product Name: Office Home and Business 2013                    $439.98
Product SKU: AAA-02675
Unit Price: $219.99
Qty Ordered: 2
Product Key: MXVKN-RW4RX-8JK2D-9G9VF-TVGHR

Product Key: W3NYM-F46YP-2BHCT-V92RB-VQTHR

---

**Subtotal:** $439.98
**Sales tax:** $36.30
**Order total:** $476.28

---

To look up your order, please log in using your Microsoft account.

Additional Questions?
View our help pages
Read our return policy
View your account online

Thank you for shopping with Microsoft.

Sincerely, Microsoft Store Customer Service

2

App. 0191

**From:** Microsoft Store Support [mailto:DO-NOT-REPLY@microsoftstore.com]
**Sent:** Tuesday, May 28, 2013 5:42 PM
**To:** pmarshall28@hotmail.com
**Subject:** Microsoft Store - Order Confirmation (Order #9683492447)

                                    Account  |  Customer Services

## Thanks for your purchase

Dear Preston Marshall,

Thank you for shopping with Microsoft on May 28, 2013. We hope you enjoyed your shopping experience.

If your order contains products that require downloading, just log in to your Microsoft account using the information and link below. In your order summary, just click the download link right next to the product name.

If your order contains physical products, we'll send you a separate email when your products have shipped.

### Order summary

**Your order number:**
9683492447

**Order date:**
May 28, 2013

**Bill to:**
Preston Marshall
7600 W. Tidwell Rd.
Suite# 800
Houston TX 77040
United States
713690-4321
pmarshall28@hotmail.com

**Payment:**
MC
***********9387 112013

1

App. 0192

**Products on your order**

       Name: Office Home and Business 2013         $219.99
Product SKU: AAA-02675
Unit Price: $219.99
Qty Ordered: 1
Product Key: NH84J-QG3VD-MVKX4-Y732D-C34MF

**Subtotal:** $219.99
**Sales tax:** $18.15
**Order total:** $238.14

To look up your order, please log in using your Microsoft account.

Additional Questions?
View our help pages
Read our return policy
View your account online

Thank you for shopping with Microsoft.

Sincerely, Microsoft Store Customer Service

2

App. 0193

**From:** Lacerte Customer Service [mailto:No_Reply@notifications.intuit.com]
**Sent:** Friday, October 03, 2014 2:31 PM
**To:** preston.marshall@ruskcapital.com
**Subject:** Your Lacerte Tax Order Confirmation



Dear Preston Marshall,

Thank you. We have received your order and it is currently being processed.

Sign in to My Account to view your order or make changes to your billing, contacts, and other account information. Don't have a login for My Account? No problem, it's quick and easy to create one by clicking the link above and following the on-screen instructions.



## ORDER INFORMATION

**Order #:**      100000728550981

**Order Date:** Oct 03, 2014

| Qty | Item | Type | Current Charge |
|-----|------|------|----------------|
| 1 | Lacerte Fast Path Download Tax Year 2014 1 | One-Time | $345.00 |
| 1 | Lacerte New Customer Fast Path Download Tax Year 2013 | One-Time | $150.00 |

| | |
|---|---|
| Subtotal: | $495.00 |
| Sales Tax: | $40.84 |
| Total for this Order: | $535.84 |

Notes:

- Sales tax calculations are estimated. The final sales tax calculation will comply with local regulations.

### Billing Information

**Bill To:**      Preston Marshall
7600 W Tidwell Rd
STE 800

### Ask Lacerte

Get Your Answers Fast Through "Ask Lacerte®"

### Manage Your Lacerte Account

Sign in to My Account to:

- Update account
- Change contact info
- Track shipments
- View REP balances
- Renew online

### Lacerte Planned Releases

View scheduled Lacerte software releases and planned release dates

1



Houston, TX 77040
E-mail Address: preston.marshall@ruskcapital.com
Payment Type:   American Express *2006

**NEED HELP?**

If you have any questions, we're here to help. Please
visit the customer support site to see all of our support
options.

Lacerte Training & CPE Courses

Lacerte Product Release/Ship Dates

Privacy | Legal | Contact Us | About Intuit

You have received this business communication as part of our efforts to fulfill your request or service your account. You may receive
this and other business communications from us even if you have opted out of marketing messages.

If you receive an email message that appears to come from Intuit but that you suspect is a phishing email, please forward it
immediately to spoof@intuit.com . Please visit http://security.intuit.com for additional security information.

**Please note:** This email was sent from an auto-notification system that cannot accept incoming
email. Please do not reply to this message.

© 2014 Intuit Inc. or its affiliates.  All rights reserved.

App. 0195

**From:** CUSTOMERREPLIES@HP.COM [mailto:CUSTOMERREPLIES@HP.COM] **On Behalf Of** HP DIRECT ORDERS
**Sent:** Monday, June 02, 2014 4:31 PM
**To:** PMARSHALL28@HOTMAIL.COM
**Subject:** Order Confirmation. 4896759

Confirmation of your HP order



# Order confirmation

## Thank you for doing business with HP

Hewlett-Packard receipt of 034940084 ordered on 06/02/2014

Thank you for choosing Hewlett-Packard Company as your provider. Below are the details of your recent purchase. To check the status of your order online, please refer to the order status link on our website. Please note HP is committed to meet shipping dates & for that reason some of the items on your order might ship separately as available to expedite the delivery process.

** Please do not respond to this email, as emails sent to this mailbox are not monitored.
** If you have questions, please contact your Client Service or Sales Representative at 866-625-0759. A subsequent shipping confirmation email will be sent at the time your order ships.

| | |
|---|---|
| Customer Account Number: | 461463 |
| Web Order Number: | 4896759 |
| Customer PO Number: | 4896759 |
| Order Date: | 06/02/2014 |
| Carrier: | F2D-FEDEX 2 DAY |

| Item #: | Description/Mfg part #: | Quantity: | Unit price: | Extended price: |
|---|---|---|---|---|

1

| | | | Qty | | |
|---|---|---|---|---|---|
| *534204 | 748270-999 | | 1 | 12,386.00 | 12,386.00 |
| | ML350e Gen8 v2 Server KMAT CTO | | | | |
| 1235398 | 740897-B21 | | 1 | .00 | .00 |
| | HP ML350e Gen8 v2 Hot Plug 8SFF CTO Svr | | | | |
| 9871614 | 701849-L21 | | 1 | .00 | .00 |
| | HP ML350e Gen8 v2 E5-2470v2 FIO Kit | | | | |
| *775969 | 713985-32G | | 2 | .00 | .00 |
| HP 32GB | 2x16GB | | 2Rx4 PC3L-12800R-11 Kit | | |
| 2440289 | 713985-B21 | | 4 | .00 | .00 |
| | HP 16GB 2Rx4 PC3L-12800R-11 Kit | | | | |
| 9871640 | 701849-B21 | | 1 | .00 | .00 |
| | HP ML350e Gen8 v2 E5-2470v2 Kit | | | | |
| 6100057 | 755997-B21 | | 1 | .00 | .00 |
| | MS WS12 R2 Std FIO Npi E/F/I/G/S SW | | | | |
| 2210004 | 694474-B21 | | 1 | .00 | .00 |
| | MS SQL Srv 2012 Std FIO Npi en SW | | | | |
| 7550501 | 718162-B21 | | 3 | .00 | .00 |
| | HP 1.2TB 6G SAS 10K 2.5in DP ENT SC HDD | | | | |
| 0521875 | 339779-B21 | | 1 | .00 | .00 |
| | HP RAID 5 Drive 1 FIO Setting | | | | |
| 1880060 | 624192-B21 | | 1 | .00 | .00 |
| | HP Hh SATA DVD RW Black Bzl Kit | | | | |
| *610875 | 698530-SC2 | | 1 | .00 | .00 |
| | HP SA P430/4GB FBWC 6Gb Cntrlr+Cable Kit | | | | |
| 6100081 | 698530-B21 | | 1 | .00 | .00 |
| | HP Smart Array P430/4G Controller | | | | |
| 2650145 | 725895-B21 | | 1 | .00 | .00 |
| | HP ML350e Gen8 v2 Smart Array Cable Kit | | | | |
| 2650146 | 738655-B21 | | 1 | .00 | .00 |
| | HP PCI Baffle Kit | | | | |
| *411603 | 656363-4RK | | 1 | .00 | .00 |
| | 2xHP750W CS PlatPlus PwrSply+Enblmnt KT | | | | |
| 8640116 | 656363-B21 | | 2 | .00 | .00 |
| | HP 750W CS Plat PL Ht Plg Pwr Supply Kit | | | | |
| 1830501 | 738661-B21 | | 1 | .00 | .00 |
| | HP ML350e v2 Redundant PSU Kit | | | | |
| 1551508 | 631341-B21 | | 1 | 30.00 | 30.00 |
| | HP USB BFR-PVC US | | | | |

2

Keyboard/Mouse Kit

| | | | | | |
|---|---|---|---|---|---|
| *284967 | U2FT7E | | 1 | 552.00 | 552.00 |
| | HP 3y Nbd ML350e FC SVC | | | | |
| 2730974 | 701606-DN1 | | 1 | 138.00 | 138.00 |
| | MS WS12 CAL 5USR | | | | |
| | en/fr/es/xc Lic | | | | |

| | |
|---|---|
| Sub Total: | 13,106.00 |
| Freight: | 71.00 |
| Estimated Tax: | 1,081.26 |

| | |
|---|---|
| Order Total: | 14,258.26 |

**Shipping information**    **Billing information**

Ship to:                    Bill to:

RUSK CAPITAL MANAGEMENT    RUSK CAPITAL MANAGEMENT
PRESTON MARSHALL             PRESTON MARSHALL
7600 W. TIDWELL 800             7600 W. TIDWELL 800
HOUSTON, TX 77040           HOUSTON, TX 77040

For contact information, return policy or terms of sale please click here.

## Stay up to date

Receive updates on the latest technology, industry news, new products and solutions, promotions and events, plus driver and support alerts.

Subscribe to HP communications.

## We're here to help

Order Support Specialists are available to assist customers after order placement at 1-866-625-0242 Option #3. Hours of availability are Monday through Friday, 6am to 6pm MST.

## Special offers

View all offers

3

App. 0198



| Our thinnest business Ultrabook™ yet | The desktop has evolved | Save instantly on HP ProLiant Smart Buys | Fast, easy operation |
|---|---|---|---|

**Computing**

Laptops and tablets

Desktops

Workstations

Monitors

**Printing**

Printers and multifunction

Ink, toner and paper

Scanners and fax

**Networking**

Servers and blades

Storage

Solutions

**Connect with HP**

☒ Facebook

☒ Twitter

☒ LinkedIn

☒ 367 Addison Avenue

Promotions subject to terms and conditions. HP Privacy Mailbox, 11445 Compaq Center Drive W., Mailstop 040307, Houston, TX 77070.

HP is committed to respecting your privacy. For specific guidelines, visit the HP Online Privacy Statement.

© 2014 Hewlett-Packard Company, L.P. The only warranties for HP products and services are set forth in the express limited warranty statements accompanying such products and services. Nothing herein should be construed as constituting an additional warranty. HP shall not be liable for technical or editorial errors or omissions contained herein. THIS DOCUMENT IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY. This document may be copied provided all text is included and copies contain HP's copyright notice and any other notices provided herein. For more information on our legal policy please click here.

App. 0199

**From:** CUSTOMERREPLIES@HP.COM [mailto:CUSTOMERREPLIES@HP.COM] **On Behalf Of** HP DIRECT ORDERS
**Sent:** Saturday, June 14, 2014 4:09 PM
**To:** PMARSHALL28@HOTMAIL.COM
**Subject:** Order Confirmation. 4900510

Confirmation of your HP order



# Order confirmation

# Thank you for doing business with HP

Hewlett-Packard receipt of 034998976 ordered on 06/14/2014

Thank you for choosing Hewlett-Packard Company as your provider. Below are the details of your recent purchase. To check the status of your order online, please refer to the order status link on our website. Please note HP is committed to meet shipping dates & for that reason some of the items on your order might ship separately as available to expedite the delivery process.

** Please do not respond to this email, as emails sent to this mailbox are not monitored.
** If you have questions, please contact your Client Service or Sales Representative at 866-625-0759. A subsequent shipping confirmation email will be sent at the time your order ships.

Customer Account Number:    461463
Web Order Number:            4900510
Customer PO Number:          4900510
Order Date:                  06/14/2014
Carrier:                     RPS-FEDEX
                             GROUND

| Item #: | Description/Mfg part #: | | Quantity: | Unit price: | Extended price: |
|---------|-------------------------|--|-----------|-------------|-----------------|

1

| 4034247 | A5V72AA#ABA | 1 | 95.00 | 95.00 |

nPLV1911 18.5-InchLEDLCDMonitor
US

| Sub Total: | 95.00 |
| Freight: | .00 |
| Estimated Tax: | 7.84 |

---

| Order Total: | 102.84 |

**Shipping information**      **Billing information**

Ship to:                     Bill to:

RUSK CAPITAL MANAGEMENT       RUSK CAPITAL MANAGEMENT
PRESTON MARSHALL             PRESTON MARSHALL
7600 W. TIDWELL 800          7600 W. TIDWELL 800
HOUSTON, TX 77040            HOUSTON, TX 77040

For contact information, return policy or terms of sale please click here.

## Stay up to date

Receive updates on the latest technology, industry news, new products and solutions, promotions and events, plus driver and support alerts.

Subscribe to HP communications.

## We're here to help

Order Support Specialists are available to assist customers after order placement at 1-866-625-0242 Option #3. Hours of availability are Monday through Friday, 6am to 6pm MST.

## Special offers

View all offers

2

| Great business solutions at competitive prices | Keep pace with your multitasking | Save instantly on HP ProLiant Smart Buys | Find all of your printer supplies here |

## Computing

Laptops and tablets

Desktops

Workstations

Monitors

## Printing

Printers and multifunction

Ink, toner and paper

Scanners and fax

## Networking

Servers and blades

Storage

Solutions

## Connect with HP

Facebook

Twitter

LinkedIn

367 Addison Avenue

Promotions subject to terms and conditions. HP Privacy Mailbox, 11445 Compaq Center Drive W., Mailstop 040307, Houston, TX 77070.

HP is committed to respecting your privacy. For specific guidelines, visit the HP Online Privacy Statement.

© 2014 Hewlett-Packard Company, L.P. The only warranties for HP products and services are set forth in the express limited warranty statements accompanying such products and services. Nothing herein should be construed as constituting an additional warranty. HP shall not be liable for technical or editorial errors or omissions contained herein. THIS DOCUMENT IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY. This document may be copied provided all text is included and copies contain HP's copyright notice and any other notices provided herein. For more information on our legal policy please click here.

3

# Order Status Details

To obtain more detailed information for this order, select line item detail, tracking information and config status links below.

**Order Status Detail**

| | | | |
|---|---|---|---|
| Order #: | 34928984 | Order Date/Time: | 05/29/2014  4:54:31 PM |
| Customer # | 461463 | Estimated Ship Date: | 06/03/2014 |
| Customer PO #: | 4896714 | Estimated Delivery Date: | 06/03/2014 |
| Associated Order #: | 0 | Credit Approval Date: | 05/29/2014 |
| Invoice#(s) : | 54428102 | | |

| | | | |
|---|---|---|---|
| Customer Bill To: | RUSK CAPITAL MANAGEMENT 7600 W. TIDWELL 800 PRESTON MARSHALL HOUSTON  TX  77040 | Customer Ship To: | RUSK CAPITAL MANAGEMENT 7600 W. TIDWELL 800 PRESTON MARSHALL HOUSTON  TX  77040 |
| Configuration: | Yes | Ship Via: | RPS GROUND |
| Express Config: | No | Carrier Info: | RPS GRND |
| | | Ship Complete : | Yes |
| Sale Amount: | $2,343.20 | Credit Terms: | CREDIT CARD |
| Tax Amount: | $193.31 | Credit Status: | CLO |
| Total Amount: | **$2,536.51** | | |

Line Item Detail | Config Status | Tracking Information | Print Preview | Export Data

App. 0203

## Line Item Detail

Select the item# or mfg part# to view serial number and asset tag information. Select the more info button to view products that have shipped directly from other vendors.

**line item detail**

| | | | | |
|---|---|---|---|
| Order #: | 34928984 | Order Date/Time: | 05/29/2014  4:54:31 PM |
| Customer PO #: | 4896714 | Requested Ship Date: | 05/29/2014 |
| Configuration #: | Yes | Credit Approval Date: | 05/29/2014 |
| Ship Complete: | Yes | | |

| Item# | MFG Part# | Line | Qty Order | Qty Alloc. | Qty B/O | Qty Invcd | CTO Ship | Unit$ | Ext$ | Whse# | ESD EDD |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5581075 | F4K98UT#ABA | 001 | 2 | 0 | 0 | 2 | 0 | $1,144.00 | $2,288.00 | CA | >> |
| | PROMO600PONAi74770S500hmq4X46k US | | | | | | | | | | |
| *SHPHDL | *SHPHDLI | 002 | 1 | 0 | 0 | 1 | 0 | $55.20 | $55.20 | CA | >> |
| | SHIPPING AND HANDLING | | | | | | | | | | |

Order Header  |  Config Status  |  Tracking Information  |

# EXHIBIT 3

**ELAINE T. MARSHALL**
**5917 Club Oaks Drive**
**Dallas, TX 75248**

June 11, 2015

*Via Facsimile (713) 690-3054*
*Certified Mail - Return Receipt Requested*
*Tracking No. 7014 1820 0002 1348 5385*

Mr. Preston Marshall
7600 W. Tidwell Rd., Suite 800
Houston, TX 77040

RE:  Termination and Frost Bank

Dear Preston:

As President, Chief Executive Officer, and Sole Director of MarOpCo, Inc. I notify you that your employment by that company is hereby terminated. This termination extends to all offices, services, and responsibilities for Trof, Inc. and its affiliates. If you communicate a willingness and ability to work under my direction with me in these enterprises and take the steps set forth below before the end of this business day tomorrow (June 12, 2015), I will have my lawyers submit a new employment contract on materially similar terms for your consideration.  I have directed the corporate controller to compute your final paycheck on the basis of days worked in the current pay period. She will mail your final paycheck within five (5) days of this letter.

Sadly, you have consistently dismissed my instructions. This has impeded operations and created unnecessary financial burdens. Among the most recent impediments, you ignored my instructions to execute a document correctly stating that I either own or control several entities and that you have no authority to contest my wishes for the accounts Frost Bank has seized and that are now subject to interpleader. Tomorrow I am formally engaging a specialist attorney to correct many of the now public and potentially harmful misrepresentations Frost Bank has made in the interpleader action.

You no longer have access to the MarOpCo office in Houston absent my written approval.  I understand that you have an employee using the MarOpCo office for your personal business.  This person also has no authority to be on the MarOpCo premises. Do not remove property from the MarOpCo offices.  I will make arrangements for a designated company representative to meet with you for the purposes of identifying

Mr. Preston L. Marshall
June 11, 2015
Page 2 of 2

personal effects you may wish to remove.  You have property in your possession in other locations. Please identify this property so that an authorized employee may recover it from you.

I am attaching a document regarding Frost Bank that I expect to be executed by you.  Fax the executed document to the Dallas headquarters at 972-460-4326 by 5pm CST Friday June 12, 2015.  Have the original sent to me for Monday delivery at the Dallas headquarters located at 7001 Preston Road, Suite 400 Dallas, TX 75205.  I hope your judgment will improve and you will do as I instruct.

Sincerely yours,

*Elaine T. Marshall*

Elaine T. Marshall

App. 0207

Mr. Rupert Barron
Hirsch & Westheimer
1415 Louisiana, 36th Floor
Houston, Texas 77002

      RE:   Elaine T. Marshall

Mr. Barron,

     This letter is formal notice that I do not wish to contest my mother's directions and wishes with regards to any Frost Bank account associated with the entities described below, nor do I have the authority to do so.  These entities include:

      Telomere, LLC
      Ribosome, LP
      MarOpCo, Inc.
      Trof, Inc.
      Idzig, LLC

     These entities are either owned or controlled by my mother, Elaine T. Marshall. Any authority I had to sign or access these accounts was unequivocally and unconditionally revoked by her, and she had the sole and exclusive authority to do so.  I do not contest her authority to remove me as a signatory, I do not contest her authority to transfer funds from Frost Bank to any other bank, and I do not contest her authority to close all accounts with Frost Bank. My mother, Elaine T. Marshall, has the sole authority to decide who these entities choose to bank with and who shall have signature authority for each and every one of them.

               Sincerely,

               Preston L. Marshall

MarOpCo, Inc.
7001 Preston Rd, Ste 400
Dallas, TX 75205



**CERTIFIED MAIL**

7014 1820 0002 1348 5385



1000          77040

U.S. POSTAGE
PAID
ADDISON, TX
75001
JUN 11 15
AMOUNT
**$6.74**
R2303S101408-01

MarOpCo, Inc.
Attn: Preston L. Marshall
7600 West Tidwell, Ste. 800
Houston, TX  77040



RECEIVED

JUN 15 2015

77040$6718 C010

# EXHIBIT 4

## WARREN & SIUREK, L.L.P.

MARK SIUREK

3334 RICHMOND AVE, SUITE 100
HOUSTON, TEXAS 77098
TELEPHONE (713) 522-0066  TELECOPIER (713) 522-9977
msiurek@warrensiurek.com
www.warrensiurek.com

FOR SETTLEMENT PURPOSES ONLY

June 19, 2015

BY FAX NO. 713-690-3054            BY FAX NO. 972-460-4326

Elaine T. Marshall, President      Elaine T. Marshall, President
MarOpCo, Inc.                      MarOpCo, Inc.
7600 W. Tidwell Rd., Suite 800     7001 Preston Road, Suite 400
Houston, Texas 77040               Dallas, Texas 75205

     Re:  Issues relating to the conversion of property
         and assets pertaining to Rusk Capital
         Management, L.L.C. ("Rusk Capital") and
         Preston Marshall, individually, by MarOpCo,
         Inc.

Dear Ms. Marshall:

    This law firm has been retained by Preston Marshall ("Mr. Marshall") both individually and in his official capacity as Manager of Rusk Capital in connection with the termination of his employment with MarOpCo, Inc. ("MarOpCo") and MarOpCo's wrongful exercise of dominion and control over the assets and property of Rusk Capital and Mr. Marshall.

    In that regard, the following is a brief summary of the pertinent facts based on my investigation:

    1.    On June 11, 2015, Mr. Marshall was notified that his employment as vice-president of MarOpCo was terminated;

    2.    Although Rusk Capital and MarOpCo are unrelated entities, Rusk Capital and MarOpCo shared office space located at 7600 W. Tidwell Road, Suite 800, Houston, Texas 77040;

    3.    Mr. Marshall remains the manager and sole member of Rusk Capital;

**App. 0211**

4.   Mr. Marshall was informed by MarOpCo that he no longer had access to the Tidwell office location;

5.   MarOpCo directed the management company at the Tidwell office location to deactivate all access entry cards in the possession of Mr. Marshall and change the lock on the doors to Suite 800;

6.   Rusk Capital's computer system and server have been disconnected; and

7.   As a result, the office furniture, computers, computer server, files (both physical and electronic), and all confidential and proprietary information belonging to Rusk Capital are now in the possession of, and are controlled by, MarOpCo.

Simply put, MarOpCo's wrongful exercise of dominion and control over the property and assets of Rusk Capital and Mr. Marshall constitutes conversion for which Mr. Marshall intends to pursue all available legal and equitable remedies, including actual and punitive damages. Therefore, demand is hereby made for the immediate return of all property and assets of Rusk Capital as well as any personal property belonging to Mr. Marshall in the possession of MarOpCo or any of its affiliates and agents or representatives, including all confidential and proprietary information pertaining to Rusk Capital,[1] all physical files, work papers, computers, computer servers, electronic devices, electronically stored data, books, records, office equipment, checkbooks or boxes of checks, and office chairs, decorations and supplies.

Additionally, you are advised to preserve all property and assets of Rusk Capital as well as any personal property belonging to Mr. Marshall in the condition in which they were found on June 11, 2015. Specifically, MarOpCo, or anyone acting on its behalf, shall not:

a.   Attempt to access any server, computer or other electronically stored data owned or used by Mr. Marshall or Rusk Capital or for which Mr. Marshall or Rusk Capital has any form of password or security protection;

---

[1]   Proprietary and confidential information includes, but is not limited to, all information related to actual and potential investors, data pertaining to investment opportunities, business strategies, investment strategies, business analysis, all communications with actual and potential investors, all data pertaining to or evidencing due diligence with respect to investment opportunities, and employee records.

-2-

b. Use, disclose or transfer any information, knowledge or data belonging to Mr. Marshall or Rusk Capital that you received, developed or had access to, including any proprietary and confidential information or other compilation of information owned by Mr. Marshall or Rusk Capital, and which are regularly used in the operation of their business(es);

c. Alter, destroy, conceal, or hide any records, documents, papers, files, checks, or other property belonging or pertaining to Mr. Marshall, Rusk Capital or any actual or potential investors of Rusk Capital;

d. Alter, delete, remove, or write over in any respect any documents, computer files or data (including, emails, hard drives, flash drives, disc drives, and zip drives), or other electronic information relating in any way to Mr. Marshall, Rusk Capital, or any actual or potential investors of Rusk Capital or business information of any kind;

e. Alter, delete, remove, or write over the internet cache on any computer system, hard drive, server, flash drive or mobile device which was utilized by Mr. Marshall or Rusk Capital, or its employees;

f. Alter, delete, remove, destroy, repurpose, or reimage any computer, computer drive, server, portable device, or associated metadata which was utilized by Mr. Marshall or Rusk Capital, or its employees.

Please contact me to discuss the return of all property and assets belonging or pertaining to Mr. Marshall and Rusk Capital which were stored or located at 7600 W. Tidwell Road, Suite 800, Houston, Texas 77040.

If I do not hear from you by 5:00 p.m. on Monday, June 22, 2015, I will seek expedited legal recourse, including injunctive or other equitable relief.

-3-

I hope to hear from you soon.

Very truly yours,

WARREN & SIUREK, L.L.P.

Mark Siurek

cc:   <u>BY FAX 337-439-2505 AND EMAIL</u>
Brad Trevino (btrevino@hunterlaw.com)
Hunter, Hunter & Sonnier
1807 Lake Street
Lake Charles, Louisiana 70601

<u>BY EMAIL sheena.bonadona@maropco.com</u>
Sheena Bonadona, Treasurer
MarOpCo, Inc.
7001 Preston Road, Suite 400
Dallas, Texas 75205

—4—

App. 0214

# Warren & Siurek, L.L.P.
### www.warrensiurek.com
### Mark Siurek
### 3334 Richmond Avenue, Suite 100
### Houston, Texas 77098
phone (713) 522-0066     facsimile (713) 522-9977

## TELECOMMUNICATION TRANSMITTAL

| Please Deliver To The Following: | Telephone Number | Facsimile Number |
|---|---|---|
| Elaine T. Marshall | | 713-690-3054 |
| Elaine T. Marshall | | 972-460-4326 |
| Brad Trevino | | 337-439-2505 |
| | | |
| | | |

**From: Mark Siurek**

The information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.

**Date: June 19, 2015**          **Time:** _____

**Number of Pages Including Cover Sheet:** ____

Please call (713) 522-0066 as soon as possible if you do not receive the total number of pages or if the transmission is not legible.

**CLIENT/MATTER: Rusk Capital Management, LLC, and Preston Marshall**

**ADDITIONAL MESSAGE:**

**Sue Diedrich**

| | |
|---|---|
| **From:** | Sue Diedrich |
| **Sent:** | Friday, June 19, 2015 4:20 PM |
| **To:** | 'btrevino@hunterlaw.com'; 'sheena.bonadona@maropco.com' |
| **Subject:** | Rusk Capital Management, LLC, and Preston Marshall |
| **Attachments:** | maropco ltr.pdf |

Mr. Trevino and Ms. Bonadona:  Mr. Siurek asked that I forward the attached to you, a copy of which is also being faxed to Mr. Trevino's office.

Susan Diedrich, CLA
Warren & Siurek, L.L.P.
3334 Richmond Avenue, Suite 100
Houston, Texas  77098
713-522-0066 x 104 (telephone)
713-522-9977 (general fax)
713-400-9195 (direct fax)

1

**Sue Diedrich**

| | |
|---|---|
| **From:** | MAILER-DAEMON@server506.appriver.com |
| **To:** | sheena.bonadona@maropco.com; btrevino@hunterlaw.com |
| **Sent:** | Friday, June 19, 2015 4:21 PM |
| **Subject:** | Delivered: Rusk Capital Management, LLC, and Preston Marshall |

**Your message has been delivered to the following recipients:**

sheena.bonadona@maropco.com

btrevino@hunterlaw.com

Subject: Rusk Capital Management, LLC, and Preston Marshall

1

App. 0217

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘

                          TIME  : 06/19/2015 15:04
                          NAME  : WARREN SIUREK
                          FAX   : 7135229977
                          TEL   : 7135220066
                          SER.# : BROH5J317364

┌─────────────────────────────────────────────────────────────┐
│  DATE,TIME               06/19  15:02                         │
│  FAX NO./NAME            7136903054                           │
│  DURATION                00:01:20                             │
│  PAGE(S)                 05                                   │
│  RESULT                  OK                                   │
│  MODE                    STANDARD                            │
│                          ECM                                  │
└─────────────────────────────────────────────────────────────┘
```

# Warren & Siurek, L.L.P.

www.warrensiurek.com
**Mark Siurek**
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
phone (713) 522-0066    facsimile (713) 522-9977

## TELECOMMUNICATION TRANSMITTAL

| Please Deliver To The Following: | Telephone Number | Facsimile Number |
|---|---|---|
| Elaine T. Marshall | | 713-690-3054 |
| Elaine T. Marshall | | 972-460-4326 |
| Brad Trevino | | 337-439-2505 |
| | | |
| | | |

**From: Mark Siurek**

The information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.

Date: June 19, 2015          Time: _____

Number of Pages Including Cover Sheet:____

**App. 0218**

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT         │
└─────────────────────────────────────────┘

                        TIME   : 06/19/2015 15:07
                        NAME   : WARREN SIUREK
                        FAX    : 7135229977
                        TEL    : 7135220066
                        SER.#  : BROH5J317364
```

```
┌────────────────────────────────────────────────────────────────┐
│   DATE,TIME            06/19  15:06                              │
│   FAX NO./NAME         13374392505                              │
│   DURATION             00:01:22                                 │
│   PAGE(S)              05                                       │
│   RESULT               OK                                       │
│   MODE                 STANDARD                                 │
│                        ECM                                      │
└────────────────────────────────────────────────────────────────┘
```

# Warren & Siurek, L.L.P.

www.warrensiurek.com
**Mark Siurek**
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
phone (713) 522-0066      facsimile (713) 522-9977

## TELECOMMUNICATION TRANSMITTAL

| Please Deliver To The Following: | Telephone Number | Facsimile Number |
|---|---|---|
| Elaine T. Marshall | | 713-690-3054 |
| Elaine T. Marshall | | 972-460-4326 |
| Brad Trevino | | 337-439-2505 |
| | | |
| | | |

From: Mark Siurek

The information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.

Date: June 19, 2015          Time: _____

Number of Pages Including Cover Sheet: ____

```
TRANSMISSION VERIFICATION REPORT
```

```
TIME : 06/19/2015 15:25
NAME : WARREN SIUREK
FAX  : 7135229977
TEL  : 7135220066
SER.# : BRCH5J317364
```

```
DATE,TIME          06/19  15:23
FAX NO./NAME       19724604326
DURATION           00:01:35
PAGE(S)            05
RESULT            OK
MODE              STANDARD
                  ECM
```

# Warren & Siurek, L.L.P.

www.warrensiurek.com
**Mark Siurek**
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
phone (713) 522-0066     facsimile (713) 522-9977

## TELECOMMUNICATION TRANSMITTAL

| Please Deliver To The Following: | Telephone Number | Facsimile Number |
|---|---|---|
| Elaine T. Marshall | | 713-690-3054 |
| Elaine T. Marshall | | 972-460-4326 |
| Brad Trevino | | 337-439-2505 |
| | | |
| | | |

From: Mark Siurek

The information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.

Date: June 19, 2015          Time: _____

Number of Pages Including Cover Sheet:____

**App. 0220**

## EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT (this "Agreement") is made and entered into on December _12_, 2014 (the "Effective Date") and effective as of the date of execution through December 31, 2015 by and MarOpCo, Inc. (the "Company"), and Preston L. Marshall, an individual residing at 11100 Meadowick, Houston, Texas 77024 (the "Executive"). Terms used herein and not otherwise defined shall have the meanings set forth in Section 23.

### RECITALS:

**WHEREAS**, the Company desires to employ the Executive in the capacity hereinafter stated, and the Executive desires to be employed by the Company in such capacity for the period and on the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth herein and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto covenant and agree as follows:

1. Employment Term. The Company hereby agrees to employ the Executive as a Vice President, and the Executive, in such capacity, agrees to provide services to the Company for the period beginning on the Effective Date and ending on December 31, 2015, which period shall automatically be renewed on the terms and conditions set forth herein for additional twelve (12) month periods (the "Employment Term"), unless (a) terminated earlier pursuant to the terms and conditions of this Agreement, or (b) either party gives the other party written notice not less than thirty (30) days prior to the expiration of the Employment Period (a "Non-Renewal Notice") that this Agreement will terminate at the end of such Employment Period.

2. Performance of Duties. The Executive agrees that during the Employment Term, the Executive shall (a) devote the Executive's full time, energies and talents exclusively to serving in the capacity of Vice President of the Company, (b) act at all times in the best interests of the Company, and (c) perform the duties assigned to the Executive by the President of the Company faithfully, efficiently and in a professional manner.

3. Compensation. Subject to the terms and conditions of this Agreement, during the Employment Term, the Executive shall be compensated by the Company for the Executive's services as follows:

(a) The Executive shall receive a salary of $525,000 for each twelve (12) month period beginning on the Effective Date (the "Base Salary") payable in substantially equal monthly or more frequent installments in accordance with the Company's general payroll practices and subject to applicable tax withholding. During the Employment Term, the Executive's Base Salary shall not be reduced unless agreed by the Executive in writing and shall be reviewed annually by the President of the Company to determine whether an increase in the Executive's Base Salary is appropriate. The Base Salary shall not be reduced during the Employment Term, other than across the board reduction of similarly situated employees of the Company, unless the Executive with the written consent of the President is not devoting his full

MAR000002

**EXHIBIT B**

**App. 0221**

time, energies, and talents exclusively to serving in the capacity of Vice President of the Company.

(b)    The Executive shall be a participant in the following executive benefit plans maintained by the Company on substantially the same terms and conditions as other senior executives of the Company: group medical (which is, as of the date hereof, supplied through BlueCross BlueShield of Texas), long-term disability, any retirement plans that may be implemented in the future (none currently), vacation, and sick days.

(c)    The Executive shall be provided with one hundred seventy five (175) hours of paid time off per calendar year. For each calendar year, any unused paid time off shall be carried over to the following calendar year; provided, that the maximum number of hours of paid time off to be carried over at any time shall not exceed one hundred seventy five (175) hours in the aggregate. Executive shall be compensated for any accrued but unused paid time off at the termination of Executive's employment regardless of whether said termination was for cause, not for cause, or through the natural expiration of this Agreement. The President, in her untrammeled discretion, may authorize more vacation time in writing but any such additional authorization beyond the one hundred seventy five (175) hours shall not accrue or be paid out on termination under any circumstance (if it is not actually used it is lost).

(d)    The Executive shall be reimbursed by the Company for all reasonable business, promotional, travel and entertainment expenses incurred or paid by the Executive and approved in writing by the President during the Employment Term in the performance of the Executive's services under this Employment Agreement. In order that the Company reimburse the Executive for such allowable expenses, the Executive shall furnish to the Company, in a timely fashion, the appropriate documentation required by the Code (as defined below) in connection with such expenses and shall furnish such other documentation and accounting as the Company may from time to time reasonably request. To be timely the expense must be turned in within thirty (30) days of the date the expense is incurred.

4.    Restrictive Covenants. The Executive acknowledges and agrees that (i) the Executive has substantial responsibility for the operation, development and growth of the Company's Business; (ii) the Executive's work for the Company has brought him and will continue to bring him, into close contact with confidential information of the Company, their applicable employees, consultants, representatives, service providers, closely related parties and vendors; and (iii) the agreements and covenants contained in this Section 4 are essential to protect the business interests of the Company, and the Company would not enter into this Agreement but for such agreements and covenants. Accordingly, the Executive covenants and agrees to the following:

(a)    Confidential Information. Except as may be required under applicable law, including by the lawful order of a court or agency of competent jurisdiction, the Executive agrees to keep secret and confidential, both during the Employment Term and indefinitely after the Executive's employment with the Company terminates, all non-public information concerning the Company, and/or their respective Affiliates that was acquired by, or disclosed to, the Executive during the course of the Executive's employment hereunder, including all trade

Page 2 of 11

MAR000003

App. 0222

secrets, know-how, research and development, software, databases, inventions, processes, technology, information relating to Shareholders, costs, operations, sales, pricing, suppliers, vendors, customers, compensation, marketing, advertising, promotions, financial data, plans, and government and regulatory activities, whether past, current or planned and not to disclose the same, either directly or indirectly, to any other Person (as defined below), or to use it in any way; provided, however, that the provisions of this Section 4(a) shall not apply to information that (i) was, is now, or becomes generally available to the public (but not as a result of a breach of any duty of confidentiality by which the Executive is bound); (ii) was disclosed to the Executive by a third party not subject to any duty of confidentiality to the Company; or (iii) is disclosed by the Executive in the ordinary course of the Company's business as a proper part of the Executive's employment in connection with communications with proper parties; provided, that such disclosure is for a proper purpose solely for the benefit of the Company and approved in writing by the President. If the Executive is required by law to disclose any such information, to the extent not legally prohibited, the Executive will notify the President of the Company so that the President may seek any appropriate protective order, seek to obtain confidential treatment of such information and/or take any other action related to the protection of such information, and the Executive shall, at the expense of the Company, use commercially reasonable efforts to assist the President in her efforts.  In no way does this Agreement replace or limit any prior obligations or understandings regarding obligations on behalf of the Executive, including in his personal capacity, to maintain private or confidential materials.  The Executive is not authorized to voluntarily disclose private or confidential materials to any person without the express written consent of the President.

(b)  Non-Disparagement.  The Executive agrees not to make any statement or disclosure that (i) would be prohibited by applicable federal or state laws, or (ii) is intended or reasonably likely to be detrimental to the Company and/or any of their respective subsidiaries or Affiliates.

(c)  Non-Competition.  The Executive agrees that for the period commencing on the Effective Date and ending upon the termination of this Agreement, regardless of what brings about the termination, the Executive shall not compete with the Company in the business of the Company.

(d)  Non-Solicitation.  The Executive agrees that for the period commencing on the Effective Date and ending on the second (2nd) anniversary of the date on which the Executive's employment with the Corporation is terminated (the "Non-Solicitation Period"), the Executive shall not, directly or indirectly, alone or as a partner, officer, director, employee, consultant, agent, independent contractor, or equity holder of any Person:

(i)  Employ, seek to employ or solicit for employment or endeavor to entice away from employment with anyone employed by or the Company or an Affiliate; or

(ii)  Solicit or induce any supplier, proprietor, equity holder, lender, director, officer, professional, employee, joint venturer, investor, lessor, customer, agent, service provider, consultant or other Person that has a business relationship with the Company and/or

MAR000004

App. 0223

any of their respective Affiliates to discontinue, reduce or modify such relationship with the Company and/or any of their respective Affiliates; or

(e)     Notwithstanding the restrictions set forth in Section 4(c) or Section 4(d), nothing contained in Section 4(c) or Section 4(d) shall be deemed to prohibit the Executive from acquiring or holding or owning, solely as a passive investment, publicly traded securities of any entity, provided, that (A) the Executive is not a controlling person of, or a member of a group which controls, such entity, (B) the Executive is not an employee, officer, director, or consultant of such entity, (C) such entity is not competitive to the Business, (D) the Executive does not, directly or indirectly, own, in the aggregate, more than five percent (5%) of any class or series of outstanding securities of such entity, and (E) such ownership interest would not adversely impact in any material respect the ability of the Executive to perform the Executive's duties hereunder.

(f)     Remedies.    The Executive agrees that money damages would be an inadequate remedy for any breach of any of the provisions contained in Section 4(a), Section 4(b), Section 4(c), or Section 4(d) (collectively, the "Restrictive Covenants"). Therefore, in the event of a breach or threatened breach of any of the Restrictive Covenant, the Company, in addition to other rights and remedies existing in its favor, shall be entitled to seek specific performance and/or injunctive or other equitable relief from a court of competent jurisdiction in order to enforce, or prevent any violations of, the provisions of this Agreement (without posting a bond or other security). The provisions of this Section 4 are intended to be for the benefit the Company, which may enforce such provisions. The Executive acknowledges and agrees that in the event of a violation or threatened violation of any of the Restrictive Covenants, the Company shall have no adequate remedy at law and shall therefore be entitled to enforce each such provision by temporary or permanent injunction or mandatory relief obtained in any court of competent jurisdiction without the necessity of proving damages, posting any bond or other security, and without prejudice to any other rights and remedies that may be available at law or in equity, and the Company shall also be entitled to recover its attorneys' fees and costs incurred to enforce any of the Restrictive Covenants from the Executive.

(g)     Inventions and Intellectual Property.    The Executive acknowledges and agrees that all developments, including, without limitation, inventions, patentable or otherwise, discoveries, improvements, patents, trade secrets, designs, reports, computer software, flow charts and diagrams, procedures, data, documentation, ideas and writings and applications thereof relating to the present or planned Business of the Company that, alone or jointly with others, the Executive has already or may in the future conceive, create, make, develop, reduce to practice or acquire during the Employment Term (collectively, the "Developments") are works made for hire and shall remain the sole and exclusive property of the Company and the Executive hereby assigns to the Company all of the Executive's right, title and interest in and to all such Developments, and such Development shall not be used by the Executive in any way adverse to the Company's interests. All related items, including, but not limited to, memoranda, notes, lists, charts, drawings, records, files, computer software, programs, source and programming narratives and other documentation (and all copies thereof) made or compiled by the Executive, or made available to the Executive, concerning the business or planned business of the Company shall be the property of the Company and shall be delivered to the Company promptly upon the termination of this Agreement. The Executive shall not deliver, reproduce or

Page 4 of 11

MAR000005

in any way allow such documents or things to be delivered or used by any third party without the written approval of the President. The provisions of this <u>Section 4</u> shall survive the termination of this Agreement.

        (h)    <u>Severability; Enforceability</u>. If any of the Restrictive Covenants, or any part thereof, are held to be invalid or unenforceable, the same shall not affect the remainder of the covenant or covenants, which shall be given full effect, without regard to the invalid or unenforceable portions.

        5.    <u>Termination and Compensation Due Upon Termination</u>. The Employment Term may be terminated, and the Executive's right to compensation for periods after the date the Executive's employment with the Company terminates shall be determined in accordance with this <u>Section 5</u>:

        (a)    <u>Termination Without Cause</u>. The Company shall have the right to terminate the Executive's employment at any time during the Employment Term without Cause (including termination following delivery by the Company to the Executive of a Non-Renewal Notice). In the event the Company terminates the Executive's employment without Cause (including termination following delivery by the Company to the Executive of a Non-Renewal Notice), the Company shall pay the Executive (i) any Base Salary in accordance with the provisions of <u>Section 3(a)</u> through the termination date, (ii) any benefits pursuant to <u>Section 3(b)</u>, (iv) any unused paid time off pursuant to <u>Section 3(c)</u>, and (v) any expense reimbursement that the Company owes to the Executive pursuant to <u>Sections 3(d)</u>, in each case through the effective date of termination (collectively, the "<u>Accrued Obligations</u>"). Additionally, and conditioned upon the Executive's voluntary execution of the Release of Claims Agreement substantially in the form of <u>Exhibit A</u> attached hereto (the "<u>Release</u>"), which includes, but is not limited to, a non-disparagement provision and a release of any claims for lost wages or benefits; compensatory damages; punitive damages; attorneys' fees; equitable relief; or any other form of damages or relief the Executive may assert against the Company or any of their respective subsidiaries (<u>provided</u>, that the terms of such Release shall be subject to modification to the extent necessary to comply with changes in applicable law, if any, occurring after the Effective Date and prior to date such Release is executed).

        (b)    <u>Resignation With Good Reason</u>. The Executive shall have the right to terminate the Executive's employment with the Company during the Employment Term for Good Reason (excluding termination following delivery by the Executive to the Company of a Non-Renewal Notice). In the event the Executive terminates the Executive's employment with the Company for Good Reason during the Employment Term, the Executive will be entitled to all payments and benefits as if the Executive had been terminated without Cause pursuant to <u>Section 5(a)</u>. Notwithstanding anything to the contrary, Good Reason shall cease to exist after forty-five (45) days following the occurrence of an event otherwise constituting Good Reason hereunder unless the Executive has given the Company written notice thereof prior to such date.

        (c)    <u>Voluntary Resignation</u>. The Executive may terminate the Executive's employment with the Company for any reason (other than for Good Reason) at any time by giving the Company forty-five (45) days prior written notice of the Executive's voluntary

MAR000006

App. 0225

resignation; provided, however, that the Company may elect that the Executive's voluntary resignation be effective immediately upon notice of such resignation, in which case the Company shall pay to the Executive the Accrued Obligations and shall thereafter have no further obligation to make any other payments to the Executive in accordance with the provisions of Section 3 or otherwise for periods after the date on which the Executive's employment with the Company terminates due to the Executive's voluntary resignation.

(d)     Termination for Cause. The Company shall have the right to terminate the Executive's employment at any time during the Employment Term for Cause. In the event the Executive's employment with the Company is terminated for Cause, the Company shall pay to the Executive any Accrued Obligations as of the date of termination and shall thereafter have no further obligation to make any other payments to the Executive in accordance with the provisions of Section 3 or otherwise for periods after the Executive's employment with the Company is terminated on account of the Executive's discharge for Cause.

(e)     Disability. The Company shall have no obligation to make payments to the Executive in accordance with the provisions of Section 3 or otherwise for periods after the date the Executive's employment with the Company terminates on account of disability, except for the Accrued Obligations. For purposes of this Section 5(e), determination of whether the Executive is disabled shall be determined in accordance with the Company's long term disability plan (if any) and applicable law.

(f)     Death. The Company shall have no obligation to make payments to the Executive in accordance with the provisions of Section 3 for periods after the date of the Executive's death, except the Accrued Obligations.

6.     Successors. This Agreement shall be binding on, and inure to the benefit of the Company and its respective successors and assigns and any Person acquiring, whether by merger, consolidation, purchase of all or substantially all the Company's assets and business, or otherwise without further action or consent by the Executive; provided, however, that the Executive hereby agrees to execute an acknowledgement of assignment if requested to do so by the successor, assign or acquiring person.

7.     Nonalienation. The interests of the Executive under this Agreement are not subject to the claims of the Executive's creditors, other than the Company, and may not otherwise be voluntarily or involuntarily assigned, alienated or encumbered except to the Executive's estate upon the Executive's death.

8.     Waiver of Breach. The waiver by either the Company or the Executive of a breach of any provision of this Agreement shall not operate as, or be deemed a waiver of, any subsequent breach by either the Company or the Executive.

9.     Severability. If any term or other provision of this Agreement is determined by a court of competent jurisdiction to be invalid, illegal or incapable of being enforced by any rule of law or public policy, all other terms, provisions and conditions of this Agreement shall nevertheless remain in full force and effect. Upon such determination that any term or other

MAR000007

App. 0226

provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible to the fullest extent permitted by applicable law in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the extent possible.

10.     Notice.  Any notice to be given hereunder by a party hereto shall be in writing and shall be deemed to have been given when received, rejected or refused or, when deposited in the U.S. mail, certified or registered mail, postage prepaid to the parties at the following addresses:

      (a)     to the Executive addressed as follows:

           Preston L. Marshall
           11100 Meadowick
           Houston, TX  77024

      (b)     to the Company addressed as follows:

           MarOpCo, Inc.
           5917 Club Oaks Drive
           Dallas, TX  75248

           with a copy to (which shall not constitute notice
           hereunder):

           Hunter, Hunter & Sonnier, L.L.C.
           Attention: Edwin Kidd Hunter
           1807 Lake Street
           Lake Charles, LA  70601

11.     Amendment.  This Agreement may be amended or canceled by mutual agreement of the parties hereto in writing without the consent of any other person.  The parties hereby agree that no oral conversations shall be deemed to be a modification of this Agreement and neither party shall assert the same.

12.     Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute and be one and the same instrument.  Counterpart signatures need not be on the same page and shall be deemed effective upon receipt.

13.     Governing Law and Venue.  Texas law shall govern the rights and obligations under this Agreement, without giving effect to any conflict of laws principles that would require application of the laws of any other jurisdiction.  In the event litigation is necessary, such legal

MAR000008

App. 0227

action shall be commenced only in a federal court located in Dallas, Texas or if federal court shall not have jurisdiction for whatever reason then in a state district court located in Dallas, Texas. Any litigation commenced other than in a federal court located in Dallas, Texas shall be subject to being dismissed, stayed or having venue transferred to a federal court located in Dallas, Texas at the option of the party not commencing said litigation. The parties further waive all objections and defenses to litigation being conducted in a federal court located in Dallas, Texas based upon venue or under the doctrine of *forum non conveniens*.

14.     Assignments. The Executive shall not be permitted to assign this Agreement or any of the Executive's rights or obligations hereunder without the prior written consent of the Company. The Company may assign this Agreement and its rights or obligations hereunder to any of its Affiliates, successors or assigns, or in connection with the Sale of the Company.

15.     Effect of Termination. Following the Employment Term, all of the provisions of this Agreement shall terminate, except that Sections 4, the Company's payment obligations under Section 5 (if any), and Sections 6 through Section 26 shall survive indefinitely after the expiration of the Employment Term. Any termination of the Executive's employment with the Company shall automatically be deemed to be simultaneous resignation of all other positions and titles the Executive holds with any Affiliate of the Company.

16.     Entire Agreement. This Agreement and the schedules an exhibits attached hereto sets forth the entire agreement and understanding between the Company, on the one hand, and the Executive, on the other hand, relating to the subject matter herein and merges all prior discussions between the parties, including, but not limited to, any and all statements made by any officer, employee or representative of the Company.   The Executive understands and acknowledges that, except as set forth in this Agreement, (a) no other representation or inducement has been made to the Executive, (b) the Executive has relied on the Executive's own judgment and investigation in executing this Agreement, and (c) the Executive has not relied on any representation or inducement made by any officer, employee or representative of the Company. Any prior agreement similar to the subject matter of this Agreement is revoked.

17.     Separation from Service. Notwithstanding any provision of this Agreement to the contrary, the Executive's employment will be deemed to have terminated on the date of the Executives "separation from service" (within the meaning of Treas. Reg. Section 1.409A-1(h)) with the Company, as reasonably determined by its President.

18.     Limitation on Authority and Duties. Executive shall have no authority to bind the Company except as expressly outlined in a written and executed instrument by the President. The Executive shall not have the authority to incur obligations on behalf of the Company or settle or pay obligations on behalf of the Company except as expressly outlined in a written and executed instrument by the President. As of the Execution Date, the President has not issued any authorization to the Executive to take any action.  Executive shall report regularly to the President and shall undertake such acts as the President instructs in writing that is consistent with the past actions taken by Executive.

MAR000009

**App. 0228**

19.     Confidentiality.  The parties acknowledge and agree that this Agreement and each of its provisions are and shall be treated strictly confidential.  During the Employment Term and thereafter, the Executive shall not disclose any terms of this Agreement to any person or entity without the prior written consent of the Company (as evidenced by a written instrument from the President), with the exception of the Executive's tax, legal or accounting advisors or for legitimate business purposes of the Executive, or as otherwise required by law.

20.     Enforcement Costs.  If any legal action or other proceeding is brought, for the enforcement or interpretation of any of the terms or conditions of this Agreement, or because of an alleged dispute, breach, or default, in connection with any of the provisions of this Agreement the prevailing party in such action shall be entitled to recover from the non-prevailing party the reasonably incurred costs it incurred in such action including, but not limited to, reasonable attorneys' fees (including costs and fees incurred on appeal) subject to the limit imposed in the following sentence, in addition to any other relief to which such party may be entitled. Notwithstanding this provision, the Executive may not recover costs or legal fees in excess of $100,000 under any circumstances.

21.     Compliance with other Agreements.  The Executive represents, warrants, agrees and covenants to the Company that (a) the execution and delivery of this Agreement by the Executive and the Executive's performance of the Executive's obligations hereunder shall not constitute (with or without notice or lapse of time or both) a default, breach or violation of any contract, written or oral, express or implied, to which the Executive is a party or to which the Executive is or may be bound, including, without limitation, any contract with any present or former employer and (b) this Agreement constitutes a valid and legally binding obligation of the Executive, enforceable against the Executive in accordance with its terms.  The Executive hereby agrees to indemnify and hold the Company and their respective Affiliates harmless from and against any and all claims, losses, damages, liabilities, costs and expenses (including, without limitation, attorneys' fees and expenses) incurred by the Company and/or their respective Affiliates in connection with any default, breach or violation by the Executive of any such contract.  All representations and warranties contained herein will survive the execution and delivery of this Agreement.

22.     No Rule of Construction.  This Agreement shall be construed to be neither against nor in favor of any party hereto based upon any party's role in drafting this Agreement, but rather in accordance with the fair meaning hereof.

23.     Definitions.  As used in this Agreement, the following terms have the respective meanings set forth below:

(a)     "Affiliate" shall mean any person or entity which controls, is controlled by, or is under common control with the Company or any shareholder.

(b)     "Business" means the actual businesses of the Company and/or any of their respective Affiliates during the Employment Term and as of the date that the Executive's employment with the Company is terminated.

Page 9 of 11

(c) "Cause" means the occurrence of one or more of the following events: (i) the Executive becomes habitually addicted to drugs or alcohol; (ii) the Executive breaches any of the Restrictive Covenants; (iii) the Company is directed by regulatory or governmental authorities to terminate the employment of the Executive or the Executive engages in activities that cause actions to be taken by regulatory or governmental authorities that have a material adverse effect on the Company; (iv) the Executive is convicted of a felony crime (other than a felony resulting from a minor traffic violation); (v) the Executive flagrantly disregards the Executive's duties after (A) written notice has been given to the Executive by the Board regarding the same and (B) the Executive has been given a period of ten (10) days after such notice to cure such misconduct; provided, however, that no notice or cure period shall be required if the Executive's disregard of the Executive's duties has materially and adversely affected the Company); (vi) any event of egregious misconduct by the Executive involving serious moral turpitude to the extent that, in the reasonable judgment of the Board, the Executive's credibility and reputation no longer conform to the standard of the Company's employees; or (vii) the Executive commits an act of fraud against the Company, violates a fiduciary duty to the Company, violates the Executive's duties, or tells a material lie to the President.

(d) "Good Reason" means the occurrence of one of the following events: (i) the Executive's duties are materially reduced; (ii) the relocation of the Executive's office outside the State of Texas; or (iii) a material breach by the Company of its obligations to make mandatory payments or provide required benefits under Section 3.

(e) "Non-Performance" means the Executive does not materially perform the duties assigned to the Executive by the President and such determination is made by the President in good faith using its reasonable business judgment and the Executive has been given a period of ten (10) days after written notice thereof to cure such performance (however, no notice or cure period shall be required if the Executive's disregard of the Executive's duties has materially and adversely affected the Company).

(f) "Sale of the Company" shall mean the sale the Company to an independent third party or group of independent third parties pursuant to which such party or parties acquire (i) equity interests (whether by merger, consolidation or sale or transfer of such equity interests), or (ii) all or substantially all of the Company's assets determined on a consolidated basis.

24. Insurance. The Executive acknowledges that the Company shall have the right, but not the obligation, to obtain life and/or disability insurance on the Executive, which insurance policies shall be paid for by and shall be for the benefit of the Company.

25. WAIVER OF JURY TRIAL. THE EXECUTIVE AND THE COMPANY EXPRESSLY WAIVE ANY RIGHT EITHER MAY HAVE TO A JURY TRIAL CONCERNING ANY CIVIL ACTION THAT MAY ARISE FROM THIS AGREEMENT.

MAR000011

IN WITNESS WHEREOF, the Executive and the Company have executed this Employment Agreement as of the day and year first above written.

**EXECUTIVE:**

Preston L. Marshall

**COMPANY:**

MarOpCo, Inc.

By: Elaine T. Marshall
Elaine T. Marshall, President

Page 11 of 11

MAR000012

10/27/2015 5:25:09 PM
Chris Daniel - District Clerk Harris County
Envelope No. 7567799
By: Marcella Hill
Filed: 10/27/2015 5:25:09 PM

CAUSE NO. 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY | § | IN THE DISTRICT COURT OF |
| AND RUSK CAPITAL MANAGEMENT, | § | |
| L.L.C., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | HARRIS COUNTY, TEXAS |
| vs. | § | |
| | § | |
| MAROPCO, INC., | § | |
| | § | |
| Defendant. | § | 11TH JUDICIAL DISTRICT |

## DEFENDANT'S ORIGINAL COUNTERCLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant/Counter-Plaintiff MarOpCo, Inc. ("MarOpCo") appears to file this Counterclaim against Plaintiffs/Counter-Defendants Preston Marshall, individually, and Rusk Capital Management, L.L.C. ("Rusk Capital") and would show as follows:

## I.
## Discovery Control Plan

1.      Discovery in the above-captioned matter should be conducted in accordance with Level 3 pursuant to TEX. R. CIV. P. 190.4 and this suit is not governed by TEX. R. CIV. P. 169. Pursuant to TEX. R. CIV. P. 47, MarOpCo seeks monetary relief over $1,000,000.

## II.
## Introduction

2.      Over the last three years, MarOpCo has paid its former Vice President, Preston Marshall ("Marshall"), more than $2.425 million for his supposed performance in that role. To earn this substantial income, Marshall signed a written employment agreement in which he agreed to devote his full time and attention to MarOpCo; he agreed to always act in the best

**App. 0232**

interests of MarOpCo and not to compete with MarOpCo; he agreed to perform the duties assigned by MarOpCo's President; and he agreed to maintain the confidentiality of MarOpCo's confidential business information.  Instead of performing in accordance with his employment agreement, MarOpCo has now learned that Marshall engaged in an ongoing pattern of disloyalty, insubordination, and complete failure to fulfill his job responsibilities as a Vice President of MarOpCo.

3.     Specifically, instead of devoting his full time and attention to MarOpCo, Marshall performed no meaningful work and focused on his own personal endeavors.  He blatantly violated his non-compete agreement and his promise to act in the best interests of MarOpCo by forming an equity investment firm (Rusk Capital) focused on the same line of business as MarOpCo's affiliates, investments in oil and gas producing properties.     In addition to Rusk Capital, unbeknownst to MarOpCo, Marshall also maintained and tended to an expansive network of business entities that he presumably created to further his own personal interests. MarOpCo seeks discovery to determine whether Marshall also stole MarOpCo's opportunities or its affiliates' opportunities with respect to Marshall's other entities.

4.     Making matters worse, without ever seeking or obtaining MarOpCo's authorization, Marshall deleted MarOpCo's confidential business information, physically destroyed MarOpCo's server, and improperly transferred MarOpCo's confidential data to Marshall's own alleged personal server, where he commingled MarOpCo's confidential business information with certain of his own personal information for businesses that he never should have been pursuing.  MarOpCo will be forced to expend substantial funds to address the unauthorized destruction and commingling of its confidential business information, and, in the meantime, MarOpCo lacks critical data to operate its business.  Moreover, after MarOpCo

terminated Marshall for insubordination, Marshall tricked the building's cleaning staff into letting him have access to MarOpCo's office, and he wrongfully accessed MarOpCo's email account and deleted relevant evidence.  MarOpCo therefore files its counterclaims and seeks to recover the $2.425 million that it paid to Marshall, as well as substantial additional damages for Marshall's usurpation of MarOpCo's business opportunities and the damages caused to MarOpCo by the improper destruction of certain of its confidential business information and the unauthorized commingling of other MarOpCo's confidential business information with Marshall's data.

## III.
### Parties

5.      MarOpCo, Inc. is a domestic corporation that at all relevant times was doing business in Harris County, Texas, and has appeared in this case.

6.      Preston Marshall is an individual residing in Harris County, Texas, who has appeared in this case and may be served through his counsel of record.

7.      Rusk Capital Management, L.L.C., a Wyoming limited liability company with its principal office and its principal place of business in Harris County, Texas, has appeared in this case and may be served through its counsel of record.

## IV.
### Venue

8.      Venue of this case is proper in Harris County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1)-(3) because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, the county of Counter-Defendant Marshall's residence at the time the cause of action accrued, and the county of Counter-Defendant Rusk Capital's principal office in Texas.

App. 0234

# V.
# Factual Background

A.    Overview of the Parties.

9.    Prior to the termination of his employment from Counter-Plaintiff MarOpCo for insubordination, Counter-Defendant Marshall was a corporate officer in MarOpCo, holding the office of Vice President.  Marshall owed fiduciary and contractual duties to the company by virtue of his office and under his written Employment Agreement, a true and correct copy of which is attached as Exhibit  A.  Rusk Capital is a company owned and/or controlled by Marshall.

B.    Marshall's Employment Agreement with MarOpCo.

10.    Under the Employment Agreement ("Employment Agreement") with MarOpCo in effect at the time of Marshall's termination, Marshall agreed, among other obligations, to:

a.    "devote [his] full time, energies and talents exclusively to serving in the capacity of Vice President of the Company.  See Employment Agreement, at ¶2 (emphasis added);

b.    "act at all times in the best interests of the Company. See Employment Agreement, at ¶2 (emphasis added);

c.    "perform the duties assigned to [Marshall] by the President of the Company faithfully, efficiently and in a professional manner." See Employment Agreement, at ¶2 (emphasis added);

d.    "keep secret and confidential [during and after employment] all non-public information concerning the Company, and/or their respective Affiliates . . . including all trade secrets, know-how, research and development, software, databases, inventions, processes, technology, information relating to Shareholders, costs, operations, sales, pricing, suppliers, vendors, customers, compensation, marketing, advertising, promotions, financial data, plans, and government and regulatory activities, whether past, current or planned and not to disclose the same, either directly or indirectly . . . or to use it in any way. . . . [Marshall] is not authorized to voluntarily disclose private or confidential materials to any person without the express written consent of the President."[1] See Employment Agreement, at ¶4(a)(emphasis added);

---

[1]    The limited exceptions to the confidentiality clause in the Employment Agreement are not applicable and, in

-4-

e.   "not [] make any statement or disclosure intended or reasonably likely to be detrimental to the Company and/or any of their respective subsidiaries or Affiliates." See Employment Agreement, at ¶4(b);

f.   "not compete with the Company in the business of the Company" and "business" is defined to include "the actual businesses of the Company and/or any of their respective Affiliates during the Employment Term and as of the date that the Executive's employment with the Company is terminated."[2] See Employment Agreement, at ¶¶4(c) and 23(b)(emphasis added);

g.   "not, directly or indirectly . . . [s]olicit or induce any supplier, proprietor, equity holder, lender, director, officer, professional, employee, joint venturer, investor, lessor, customer, agent, service provider, consultant or other Person that has a business relationship with the Company and/or any of their respective Affiliates to discontinue, reduce or modify such relationship with the Company and/or any of their respective Affiliates" during the Employment Agreement and for a period of two years after his termination." See Employment Agreement, at ¶4(d)(ii);

h.   promptly deliver and return all MarOpCo's property, "including memoranda, notes, lists, charts, drawings, records, files, computer software, programs, source and programming narratives and other documentation (and all copies thereof) made or compiled by [Marshall], or made available to [him], concerning the business or planned business of MarOpCo" to MarOpCo upon the termination of the Employment Agreement. See Employment Agreement, at ¶4(g); and

i.   "report regularly to the President and [] undertake such acts as the President instructs in writing that is consistent with the past actions taken by Executive." See Employment Agreement, at ¶18.

11.   Moreover, under the Employment Agreement, Marshall specifically agreed that various items of property belonged to MarOpCo – not Marshall individually or any third party –

---

any event, required approval "in writing by the President" of the Company, which Marshall never sought or obtained. *Id.* To the contrary, the President, Elaine T. Marshall, always reinforced the need to protect the confidential information and data of MarOpCo and its affiliates.

2   An exception, inapplicable in connection with this Counterclaim, was provided for ". . . acquiring or holding or owning, solely as a passive investment, publicly traded securities of any entity, provided, that (A) [Marshall] is not a controlling person of, or a member of a group which controls, such entity, (B) [Marshall] is not an employee, officer, director, or consultant of such entity, (C) such entity is not competitive to the Business, (D) [Marshall] does not, directly or indirectly, own, in the aggregate, more than five percent (5%) of any class or series of outstanding securities of such entity, and (E) such ownership interest would not adversely impact in any material respect the ability of [Marshall] to perform [his] duties hereunder." *See* Employment Agreement, at ¶ 4(e).

and in addition, he fully assigned any right, title, and interest in such property to MarOpCo.

Under the Employment Agreement:

a. Such property included "all developments, including, without limitation . . . <u>improvements,</u> . . . trade secrets, designs, reports, <u>computer software,</u> flow charts and diagrams, procedures, <u>data, documentation, ideas and writings and applications acquired,</u>" which he agreed were all "works made for hire and shall remain the sole and exclusive property of the Company." *See* Employment Agreement, at ¶ 4(g) (emphasis added);

b. Marshall "assigned all of his right, title and interest in [such property] to MarOpCo, and agreed that they shall not be used by him any way adverse to the MarOpCo's interests." *See* Employment Agreement, at ¶ 4(g);

c. Additionally, Marshall agreed under the Employment Agreement that "[a]ll related items, including, but not limited to, <u>memoranda, notes, lists, charts, drawings, records, files, computer software, programs, source and programming narratives and other documentation (and all copies thereof)</u> made or compiled by [Marshall], or made available to [him], concerning the business or planned business of MarOpCo shall be the property of [MarOpCo] and shall be delivered to the Company promptly upon the termination of this Agreement." *See* Employment Agreement, at ¶ 4(g) (emphasis added); and

d. Marshall agreed "not [to] deliver, reproduce or in any way allow such documents or things to be delivered or used by any third party without the written approval of the President." *See* Employment Agreement, at ¶ 4(g).

12.    The server, workstations, software and other data that Marshall claims to own in this case, all constitute improvements, trade secrets, data, documentation, ideas and writings, and applications that are the exclusive property of MarOpCo, and to which Marshall assigned all of his rights, title and interest under the contract provisions set out above. As set out below, Marshall violated each of the obligations in the Employment Agreement outlined in Paragraphs 7 and 8 above, as well as his fiduciary duties as a MarOpCo corporate officer, duty of loyalty as an employee, and the specific instructions of MarOpCo's President and CEO.

C.    <u>Instructions of MarOpCo's President and CEO To Marshall Underscore His Contractual and Fiduciary Obligations</u>.

13.    MarOpCo previously occupied office space located at 7600 W. Tidwell Road, Suite 800, Houston, Texas ("MarOpCo's Houston Office"). As Marshall has admitted, he performed his duties as Vice President of MarOpCo at MarOpCo's Houston Office prior to his termination.[3] Sensitive to the fact that confidential information and documents were maintained in MarOpCo's Houston office, MarOpCo's CEO and President, Elaine T. Marshall, expressly instructed Marshall not to allow <u>any</u> company she did not own or control the use MarOpCo's Houston office for any purpose, concluding:

> Finally, please be aware that <u>I do not authorize the use of the Tidwell business address for any entity that I do not control.</u> Please be sure no entities other than those I own or control have the Tidwell address listed on any document.

*See* December 5, 2014 letter.

14.    Because of concern about the potential for misuse of MarOpCo's servers, computers and electronic data, Ms. Marshall forwarded a letter dated February 25, 2014 to Marshall, stating:

> Please note that all information, documents, or emails stored on a MarOpCo owned computer, the MarOpCo server, or through a MarOpCo.com email address are <u>explicitly the property of the company and there should be no expectation of privacy for said documents or email.</u>

*See* Ms. Marshall's February 25, 2014 letter to Marshall (emphasis added).

D.    <u>Marshall Was Terminated for Insubordination on June 11, 2015.</u>

15.    MarOpCo terminated Marshall's employment as Vice President for insubordination on June 11, 2015, and notified him in writing that he no longer was authorized to

---

3    *See* Plaintiffs' Verified Original Petition, at ¶ 8, Plaintiffs' First Amended Petition, at ¶ 8.

access MarOpCo's Houston Office.[4]  The June 11, 2015 termination letter also demanded that he return all of MarOpCo's property.  Contrary to his obligations under the Employment Agreement and MarOpCo's demands, Marshall has failed to return any of MarOpCo's property.  In contrast, however, MarOpCo has delivered to Marshall forty-three (43) boxes, and various other property potentially belonging to Marshall and/or Rusk Capital despite the fact that he maintained it without authorization or approval at MarOpCo's Houston Office.[5]

16.     After receiving the termination letter, and with full knowledge that he had no authority to access MarOpCo's Houston Office, Marshall bypassed building security and entered the office by falsely telling the cleaning staff he had authority to do so.  A MarOpCo employee discovered Marshall, and building security ultimately escorted him off the premises.

E.      <u>After Marshall's Termination, Substantial Additional Misconduct Discovered.</u>

17.     Only after Marshall's termination did MarOpCo discover that he had engaged in significant additional misconduct both prior to and after his termination, all of which constitutes a breach of his fiduciary duties to MarOpCo and a breach of his Employment Agreement, which has caused substantial damage to MarOpCo.  Such conduct includes, but is not limited to, the following:

a.      Marshall used MarOpCo employees to locate one or more services to sanitize MarOpCo's computers and a server;

b.      Marshall then retained such services to wipe clean MarOpCo's various computers and a server without authorization or permission, thereby rendering any data maintained on them unretrievable by

---

4   *See* June 11, 2015 letter to Marshall from MarOpCo's CEO and President, Elaine T. Marshall ("I notify you that your employment . . . is hereby terminated. . . Sadly, you have consistently dismissed my instructions. This has impeded operations and created unnecessary financial burdens. . . . You no longer have access to the MarOpCo office in Houston absent my written approval.  I understand that you have an employee using the MarOpCo office for your personal business.  This person also has no authority to be on the MarOpCo premises").

5   Given that Marshall and Rusk Capital wrongfully co-mingled data they claim to own with data belonging to MarOpCo and its affiliates contrary to his contractual and fiduciary duties by migrating such data to servers located at MarOpCo's office as described below, MarOpCo also has agreed to a process through which a neutral computer forensic expert will assist the parties to segregate such data. This process, and the resulting expense, would not have been incurred by MarOpCo but for Marshall's misconduct.

-8-

MarOpCo;

c.   Without authorization or permission, Marshall physically destroyed MarOpCo's server and computer equipment as evidenced by a Certificate of Destruction found in MarOpCo's Houston Office;

d.   Marshall purchased a new server and new computer workstations, which he installed and maintained at MarOpCo's Houston Office without authorization or permission;

e.   In order to wrongfully assume control over MarOpCo's electronic data, Marshall loaded software and electronic data belonging to MarOpCo and its affiliates onto the server and workstations he purchased and installed at MarOpCo's Houston Office;

f.   After Marshall migrated entire electronic databases and electronic data belonging to MarOpCo and its affiliates onto the server and workstations that he purchased, he co-mingled MarOpCo's electronic data with data he now claims belongs to him and/or Rusk Capital;

g.   Without authorization or permission, Marshall hired an employee to work for his company, Rusk Capital, and gave such employee access to MarOpCo's Houston office, as well as confidential data, documents, and information belonging to MarOpCo, its representatives, and affiliates;

h.   Marshall acquired and disclosed, and Marshall and Rusk Capital misappropriated, confidential information, assets, trade secrets, and electronic data belonging to MarOpCo and its affiliates, and they then used such property and information for their own benefit;

i.   Marshall formed Rusk Capital, and through it, competed in the same business as MarOpCo and/or its affiliates were engaged in violation of his Employment Agreement, thereby placing his own interests and the interests of his company, Rusk Capital, over the interests of MarOpCo in violation of his fiduciary duties as set forth in the Employment Agreement;[6]

j.   Marshall also formed and devoted substantial time and energy to pursuing other personal business ventures through a variety of other entities, including Khozraschyot Capital Management LLC, Lednik Capital Management LLC, Glacier Holdings LLC, and CarTech Systems LLC.

---

[6]   That Marshall, while a MarOpCo officer, has breached his agreement not to compete and fiduciary duties is beyond dispute.  He and Rusk Capital already have admitted that they are engaging in the same business as MarOpCo and/or one or more of its affiliates as follows: (1) "Rusk Capital is an equity investment firm focusing on the purchasing of oil and gas producing properties." *See* Plaintiffs' Brief in Support, at ¶5; and (2) "Rusk Capital gathers and analyzes information related to potential investors and investment opportunities concerning oil and gas producing properties." *See* Plaintiffs' Verified Original Petition, at ¶13, Plaintiffs' First Amended Petition, at ¶ 12, Marshall Sworn Affidavit, at ¶ 2.

-9-

The details of these enterprises and their various business interests are not yet known, but given Marshall's demonstrated willingness to work against the interests of MarOpCo for his own personal gain, and his blatant destruction of evidence, MarOpCo anticipates that Marshall may have stolen additional corporate opportunities.

k.   Marshall and Rusk Capital attempted to transfer software licenses belonging to MarOpCo and/or its affiliates to Rusk Capital, and even used MarOpCo's vendors and services for this purpose. Additionally, the oil and gas accounting software that Marshall removed without authorization from MarOpCo's server and improperly loaded onto the server he purchased, is called PetroComp. Marshall and Rusk Capital have wrongfully used PetroComp and MarOpCo's documents and data for their own benefit;

l.   Immediately upon being terminated, Marshall – who never had disclosed any of his wrongful conduct to MarOpCo – claimed for the first time that he and/or Rusk Capital owned and/or was licensed to use, the server, workstations, software, and electronic data maintained at MarOpCo's Houston Office.  In furtherance of their wrongful scheme, Marshall and Rusk Capital brazenly and maliciously have claimed control over MarOpCo's electronic data, filed this lawsuit, and further attempted to create confusion regarding MarOpCo's ownership of various property, preventing MarOpCo and its affiliates from accessing and controlling their own data, all of which has caused MarOpCo substantial harm; and

m.   In an effort to destroy evidence of his misconduct even after his termination, Marshall surreptitiously contacted Hostgator.com, MarOpCo's email host, and destroyed and deleted vast amounts of MarOpCo email using credentials obtained in his position as MarOpCo's Vice President while, at the same time, withholding such credentials from MarOpCo together with the information it needed to access such remotely maintained email databases.  Marshall deleted all of his emails and Robert Kerr's emails, and he deleted most of the email accounts for Eyvonne Scurlock and Carla Coble.

18.   In summary, in breach of his fiduciary duties and duties of loyalty, directly in violation of his multiple obligations in the Employment Agreement, and contrary to the instructions of MarOpCo's President and CEO, Marshall failed to devote his full time and energy to working for MarOpCo,  but instead operated Rusk Capital – a company competing with, and engaged in the same business as, MarOpCo and/or one or more of its affiliates – as well as other personal businesses, all while making unauthorized personal and business use of MarOpCo's

-10-

office space, business address, assets, vendors, business relationships, electronic data, software, confidential information, trade secrets, equipment, supplies and personnel for such purposes.

19.     Moreover, Marshall used MarOpCo's Houston Office, and the access it provided him to confidential documents and proprietary data, in a manner that violated both his fiduciary duties to MarOpCo, and the Employment Agreement provisions referenced above.  Marshall placed the interests of himself and Rusk Capital above MarOpCo, failed to act in MarOpCo's best interests, stole MarOpCo's corporate opportunities, violated instructions of the President of MarOpCo, destroyed assets of the company without permission (both before and after his termination as a MarOpCo employee), migrated MarOpCo's data to a server and computers he claims to personally own, and rendered such data inaccessible to MarOpCo, all of which is the proximate, producing and actual cause of MarOpCo's substantial damages and harm.

## VI.
## Causes of Action

A.     Breach of Contract (Marshall).

20.     MarOpCo incorporates by reference herein the factual allegations set out in paragraphs 1-19 above.

21.     The elements of a breach of contract claim are (a) the existence of a valid contract, (b) performance or tendered performance by aggrieved party, (c) a breach of the contract, and (d) damages resulting from the breach.

22.     A valid Employment Agreement existed between Marshall and MarOpCo, which MarOpCo fully performed and all conditions precedent to the recovery sought in this case have been met.  Despite MarOpCo's full performance, Marshall materially breached the following provisions

-11-

of such agreement without excuse, resulting in irreparable injury and substantial damages to

MarOpCo:

a.  In violation of paragraph 2 of the Employment Agreement, Marshall failed to devote his full time, energies and talents exclusively to serving in the capacity of Vice President of the Company;

b.  In violation of paragraph 2 of the Employment Agreement, Marshall failed to act at all times in the best interests of MarOpCo;

c.  In violation of paragraph 2 of the Employment Agreement, Marshall failed to carry out duties and instructions faithfully, efficiently and in a professional manner;

d.  In violation of paragraph 4 of the Employment Agreement, Marshall failed to keep secret and confidential all non-public information concerning MarOpCo and/or its affiliates and instead, used MarOpCo's secret and non-public information to benefit himself, and his company, Rusk Capital;

e.  In violation of paragraph 4(b) of the Employment Agreement, Marshall made statements or disclosures intended or reasonably likely to be detrimental to MarOpCo, its subsidiaries and/or affiliates;

f.  In violation of paragraph 4(c) of the Employment Agreement, Marshall competed in the business of MarOpCo and/or its affiliates at a time when he was employed by MarOpCo;

g.  In violation of paragraph 4(d)(ii) of the Employment Agreement, Marshall directly or indirectly solicited and induced one or more suppliers, proprietors, lenders, professionals, employees, joint venturers, investors, lessors, customers, agents, service providers, consultants or others in a business relationship with MarOpCo and/or one or more of its affiliates to discontinue, reduce or modify such relationship with the Company and/or any affiliates during the Employment Agreement, including soliciting one or more vendors to transfer MarOpCo's software licenses to Rusk Capital;

h.  In violation of paragraph 4(g) of the Employment Agreement, Marshall failed to promptly deliver and return all of MarOpCo's property upon his termination;

i.  In violation of paragraph 4(g) of the Employment Agreement, Marshall has claimed ownership of, and title to, property belonging to MarOpCo; and

j.  In violation of paragraph 18 of the Employment Agreement, Marshall failed to report regularly to the President of MarOpCo and undertake those acts as the President instructed him in writing.

-12-

23.     MarOpCo accordingly seeks to recover all damages, including but not limited to, direct, general, special, incidental and consequential damages, resulting from Marshall's breaches of the Employment Agreement, which damages exceed the minimum jurisdictional limits of the Court, together with any and all equitable relief to which it may be entitled. Pursuant to paragraph 20 of the Employment Agreement, as well as TEX. CIV. PRAC. & REM. CODE § 38.001 et seq, MarOpCo also is entitled to recover all of its reasonably incurred costs in the above case including, but not limited to, reasonable attorneys' fees together with all costs and attorney's fees incurred on appeal, and prejudgment and post judgment interest.

B.      Breach of Fiduciary Duty/Constructive Fraud/Constructive Trust (Marshall).

24.     MarOpCo incorporates by reference herein the factual allegations set out in paragraphs 1-19 above.

25.     The elements of a breach of fiduciary duty claim are: (a) the existence of a fiduciary relationship; (b) the breach of a fiduciary duty owed to the plaintiff; and (c) resulting injury to the plaintiff or benefit to the defendant.  Constructive fraud is breach of some legal or equitable duty, such as fiduciary duties, which the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interest.

26.     Under Texas law, Marshall owed MarOpCo fiduciary duties as an officer of the corporation and additionally, based on his position of trust and confidence within the company. Corporate officers owe strict fiduciary obligations to the corporation they serve. Moreover, Marshall's Employment Agreement expressly confirms that he owed a fiduciary duty of loyalty to MarOpCo, given that Marshall committed to always act in the best interests of MarOpCo.  Marshall thus owed MarOpCo fiduciary duties under Texas law, including (a) the duty of loyalty, (b) the duty to work solely for the benefit of the

-13-

corporation, (c) the duty to act in good faith, (d) the duty to not allow his personal interests to prevail over the interests of the corporation, and (e) the duty of full disclosure, and extreme candor, and unselfishness.

27.     As described above, Marshall breached such fiduciary duties by engaging in egregious misconduct, including but not limited to, failing to work solely for the benefit of MarOpCo, competing against MarOpCo and its affiliates in business, usurping MarOpCo's corporate opportunities, failing to exhibit loyalty and good faith towards MarOpCo, placing his personal interests and those of Rusk Capital over MarOpCo, and failing to act with extreme candor, and unselfishness with respect to MarOpCo, all of which also constitutes constructive fraud as a matter of law.  By destroying material evidence after his termination by MarOpCo, Marshall has confirmed the malicious nature of his breaches of fiduciary duty, and he has engaged in the intentional spoliation of evidence that gives rise to a presumption of liability.

28.     Marshall's conduct – which additionally involved migrating MarOpCo's electronic data and databases onto a server and workstations that Marshall and/or Rusk Capital claim to own, and then co-mingling such electronic data with other data allegedly belonging to Marshall and/or Rusk Capital – constituted a breach of fiduciary duty owed to, and constructive fraud upon, MarOpCo, supporting the imposition of a constructive trust on the server, workstations, and electronic data at issue in this case.  Accordingly, even in the event Marshall or Rusk Capital are found to own the server and/or workstations at issue, which MarOpCo denies, MarOpCo would be irreparably harmed, and Marshall and Rusk Capital would be unjustly enriched, if a constructive trust was not imposed under the facts of this case.

29.     MarOpCo accordingly seeks to recover all damages caused by Marshall's breaches of fiduciary duty (including but not limited to direct, incidental, special, and consequential damages),

-14-

which damages exceed the minimum jurisdictional limits of the Court, together with any and all equitable relief to which it may be entitled.  MarOpCo further seeks the equitable remedy of disgorgement and/or fee forfeiture of all compensation MarOpCo has paid to Marshall, as well as any profits that Marshall, Rusk Capital, and/or any entities owned or controlled by Marshall (including but not limited to Khozraschyot Capital Management LLC, Lednik Capital Management LLC, Glacier Holdings LLC, and CarTech Systems LLC) have obtained as a result of Marshall's breaches of fiduciary duty.  Further, because Marshall's duty of loyalty is set forth in his Employment Agreement, MarOpCo also is entitled to recover its attorneys' fees.  Additionally, under TEX. CIV. PRAC. & REM. CODE § 41.003, MarOpCo is entitled to exemplary damages for the harm that it suffered, which resulted from Marshall and Rusk Capital's fraud and malice.

      C.        <u>Breach of Employee's Duty of Loyalty (Marshall).</u>

      30.     MarOpCo incorporates by reference herein the factual allegations set out in paragraphs 1-19 above.

      31.     An employee owes a fiduciary duty of loyalty to his or her employer, and such duty includes the duty not to compete and a duty of full disclosure.  As set out above, Marshall violated each of these duties, causing MarOpCo substantial injury and damage.

      32.     MarOpCo seeks to recover all damages (including but not limited to direct, incidental, special, and consequential damages) caused by Marshall's breaches of loyalty, which damages exceed the minimum jurisdictional limits of the Court, together with any and all equitable relief to which it may be entitled.  MarOpCo further seeks the equitable remedy of disgorgement and/or fee forfeiture of all compensation MarOpCo has paid to Marshall, as well as any profits that Marshall, Rusk Capital, and/or any entities owned or controlled by

Marshall (including but not limited to Khozraschyot Capital Management LLC, Lednik Capital Management LLC, Glacier Holdings LLC, and CarTech Systems LLC) have obtained as a result of Marshall's breaches of fiduciary duty.  Additionally, under TEX. CIV. PRAC. & REM. CODE § 41.003, MarOpCo pleads that it is entitled to exemplary damages because the harm suffered resulted from Marshall's malice.

> D.      Conversion (Marshall and Rusk Capital).

33.      MarOpCo incorporates by reference herein the factual allegations set out in paragraphs 1-19 above.

34.      MarOpCo would show that it (a) owned various property at its Houston office, (b) Marshall and Rusk Capital unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, MarOpCo's rights as an owner; (3) MarOpCo demanded a return of such property and that the misconduct cease; and (d) Marshall and Rusk Capital have refused.

35.      MarOpCo seeks to recover all damages (including but not limited to direct, incidental, special, and consequential damages) caused by such conversion, which damages exceed the minimum jurisdictional limits of the Court, together with any and all equitable relief to which it may be entitled.  Additionally, under TEX. CIV. PRAC. & REM. CODE § 41.003, MarOpCo pleads that it is entitled to exemplary damages as a result of such malicious and fraudulent conduct.

> E.      Misappropriation of Trade Secrets (Marshall and Rusk Capital).

36.      MarOpCo incorporates by reference herein the factual allegations set out in paragraphs 1-19 above.

-16-

37.     As set out above, Marshall and Rusk Capital have acquired and/or misappropriated trade secrets belonging to MarOpCo without its express or implied consent in violation of TEX. CIV. PRAC. & REM. CODE §134A.002.

38.     As a result, MarOpCo seeks all recoverable damages for misappropriation set out in TEX. CIV. PRAC. & REM. CODE §134A.004(a), injunctive and equitable relief under TEX. CIV. PRAC. & REM. CODE §134A.003, remedies for preservation of secrecy under TEX. CIV. PRAC. & REM. CODE §134A.006, exemplary damages for willful and malicious misappropriation under TEX. CIV. PRAC & REM. CODE §134A.005(3), and attorneys' fees under TEX. CIV. PRAC. & REM. CODE §134A.004(b), together with all costs of court.

F.     Violation of the Computer Fraud and Abuse Act (Marshall)

39.     MarOpCo incorporates by reference herein the factual allegations set out in paragraphs 1-19 above.

40.     The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, is a criminal statute that makes it a federal crime punishable by fine and/or imprisonment to, among other things, intentionally access a computer without authorization and obtain information from a protected computer or intentionally access a protected computer and cause damage and loss.

41.     The CFAA also includes a civil cause of action, specifically providing that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

42.     Marshall, after his termination from MarOpCo, knowingly and intentionally accessed, deleted, obtained information, downloaded, copied, took, and/or stole MarOpCo's confidential business and proprietary information, trade secrets, and data, without authorization,

-17-

from computers and/or the computer network maintained by Hostgator.com for the benefit of MarOpCo.

43.     The computers and computer systems maintained by Hostgator.com for the benefit of MarOpCo are "protected computers" as that term is defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and communication in the course of MarOpCo's business.

44.     By intentionally accessing computers and/or the computer network maintained by Hostgator.com for the benefit of MarOpCo without authorization and thereafter accessing, obtaining, and deleting/destroying information from a protected computer, Marshall violated 18 U.S.C. § 1030(a)(2)(c) and 18 U.S.C. § 1030(a)(5)(C).

45.     As a result of Marshall's conduct, MarOpCo has suffered damage to the computers and/or computer network maintained by Hostgator.com for MarOpCo's benefit and has suffered damage to MarOpCo's business, including impairment of the integrity and/or availability of data and/or information in its computers in an amount to be determined at trial, but far in excess of the statutory minimum of $5,000.

46.     As a result of Marshall's conduct, MarOpCo has suffered and/or will suffer a loss incurred in the course of MarOpCo's investigation, damage assessment, and data recovery far in excess of the statutory minimum of $5,000, including specifically repair and recovery of deleted computer files, data, and other components.  As MarOpCo's data recovery efforts remain ongoing it is currently unable to state the full extent of such loss/misappropriation.  MarOpCo has also suffered consequential damages and lost revenue resulting from Marshall's conduct by virtue of its inability to use its data to evaluate and complete transactions in its business.

-18-

G.     Harmful Access by Computer

47.     MarOpCo incorporates by reference herein the factual allegations set out in paragraphs 1-19 above.

48.     Under Chapter 33.02(a) of the Texas Penal Code, "a person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner."

49.     Tex. Civ. Prac. & Rem. Code § 143.001 provides a civil action by which "a person who is injured or whose property has been injured as a result of a violation under Chapter 33, Texas Penal Code, has a civil cause of action if the conduct constituting the violation was committed knowingly or intentionally."

50.     As alleged herein, Marshall knowingly and intentionally accessed the computer, computer network, and/or computer system maintained by Hostgator.com for MarOpCo's benefit without MarOpCo and/or Hostgator's effective consent.

51.     As a result of Marshall's conduct, MarOpCo has suffered damages in an amount to be determined at trial, plus courts costs and reasonable attorneys' fees.

H.     Trespass

52.     MarOpCo incorporates by reference herein the factual allegations set out in paragraphs 1-19 above.

53.     MarOpCo had a lawful right to possess the premises of its office space.

54.     As explained above, after he had been terminated from the company and explicitly instructed not to enter MarOpCo's office, Marshall fraudulently induced the building cleaning staff to unlawfully gain entry to the premises of the office.

-19-

55.     Marshall's unlawful entry was physical, intentional, and voluntary, and it was not authorized.

56.     Marshall's trespass caused injury to MarOpCo's right of possession of its office space, and his trespass further allowed Marshall to access, obtain, and/or destroy MarOpCo's property, causing MarOpCo damage.

57.     In addition, because Marshall's trespass resulted from fraud and malice, MarOpCo is entitled to exemplary damages in an amount to be determined by the trier of fact at trial.

## Conditions Precedent

58.     All conditions precedent to recovery have been performed or have occurred.

## Prayer for Relief

Accordingly, MarOpCo, Inc., Defendant/Counter-Plaintiff, respectfully requests that the Court render judgment in its favor and against Preston Marshall and Rusk Capital Management, L.L.C., Plaintiffs/Counter-Defendants, for the full amount of all damages, disgorgement, exemplary damages, reasonable attorney's fees, injunctive and equitable relief, pre-judgment and post-judgment interest, and for such other and further relief to which it may show itself justly and equitably entitled.

-20-

Respectfully submitted,


/s/ John T. Cox III
John T. Cox III
Texas Bar No. 24003722
tcox@lynnllp.com
Christopher J. Akin
Texas Bar No. 00793237
cakin@lynnllp.com
Jonathan R. Patton
Texas Bar No. 24088198
jpatton@lynnllp.com
LYNN TILLOTSON PINKER & COX, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile:  (214) 981-3839




/s/ Susan L. Bickley
Barry Abrams
Texas Bar No. 00822700
babrams@blankrome.com
Susan L. Bickley
Texas Bar No. 02298150
sbickley@blankrome.com
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas  77002
Telephone: (713) 228-6601
Facsimile: (713) 228-6605

ATTORNEYS FOR
DEFENDANT/COUNTER-PLAINTIFF,
MAROPCO, INC.

-21-

## <u>CERTIFICATE OF SERVICE</u>

I certify that all counsel of record have been served a true and correct copy of the foregoing by Certified Mail/Return Receipt Requested and email on October 27, 2015 as follows:

Mr. Mark Siurek
Ms. Patricia Haylon
Warren & Siurek, L.L.P.
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
Email: msiurek@warrensiurek.com
Email: thaylon@warrensiurek.com

Mr. Paul J. Dobrowski
Mr. Frederick T. Johnson
Mr. Akilah F. Craig
Dobrowski, Larkin & Johnson LLP
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Email: pjd@doblaw.com
Email: fjohnson@doblaw.com
Email: acraig@doblaw.com

*/s/ Christopher J. Akin*
Christopher J. Akin

4819-2490-0905

-22-

App. 0253

# EXHIBIT A

## EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT (this "Agreement") is made and entered into on December _12_, 2014 (the "Effective Date") and effective as of the date of execution through December 31, 2015 by and MarOpCo, Inc. (the "Company"), and Preston L. Marshall, an individual residing at 11100 Meadowick, Houston, Texas 77024 (the "Executive"). Terms used herein and not otherwise defined shall have the meanings set forth in Section 23.

### RECITALS:

**WHEREAS**, the Company desires to employ the Executive in the capacity hereinafter stated, and the Executive desires to be employed by the Company in such capacity for the period and on the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth herein and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto covenant and agree as follows:

1.      Employment Term. The Company hereby agrees to employ the Executive as a Vice President, and the Executive, in such capacity, agrees to provide services to the Company for the period beginning on the Effective Date and ending on December 31, 2015, which period shall automatically be renewed on the terms and conditions set forth herein for additional twelve (12) month periods (the "Employment Term"), unless (a) terminated earlier pursuant to the terms and conditions of this Agreement, or (b) either party gives the other party written notice not less than thirty (30) days prior to the expiration of the Employment Period (a "Non-Renewal Notice") that this Agreement will terminate at the end of such Employment Period.

2.      Performance of Duties. The Executive agrees that during the Employment Term, the Executive shall (a) devote the Executive's full time, energies and talents exclusively to serving in the capacity of Vice President of the Company, (b) act at all times in the best interests of the Company, and (c) perform the duties assigned to the Executive by the President of the Company faithfully, efficiently and in a professional manner.

3.      Compensation. Subject to the terms and conditions of this Agreement, during the Employment Term, the Executive shall be compensated by the Company for the Executive's services as follows:

(a)      The Executive shall receive a salary of $525,000 for each twelve (12) month period beginning on the Effective Date (the "Base Salary") payable in substantially equal monthly or more frequent installments in accordance with the Company's general payroll practices and subject to applicable tax withholding. During the Employment Term, the Executive's Base Salary shall not be reduced unless agreed by the Executive in writing and shall be reviewed annually by the President of the Company to determine whether an increase in the Executive's Base Salary is appropriate. The Base Salary shall not be reduced during the Employment Term, other than across the board reduction of similarly situated employees of the Company, unless the Executive with the written consent of the President is not devoting his full

time, energies, and talents exclusively to serving in the capacity of Vice President of the Company.

(b)     The Executive shall be a participant in the following executive benefit plans maintained by the Company on substantially the same terms and conditions as other senior executives of the Company:  group medical (which is, as of the date hereof, supplied through BlueCross BlueShield of Texas), long-term disability, any retirement plans that may be implemented in the future (none currently),  vacation, and sick days.

(c)     The Executive shall be provided with one hundred seventy five (175) hours of paid time off per calendar year.  For each calendar year, any unused paid time off shall be carried over to the following calendar year; provided, that the maximum number of hours of paid time off to be carried over at any time shall not exceed one hundred seventy five (175) hours in the aggregate.  Executive shall be compensated for any accrued but unused paid time off at the termination of Executive's employment regardless of whether said termination was for cause, not for cause, or through the natural expiration of this Agreement.  The President, in her untrammeled discretion, may authorize more vacation time in writing but any such additional authorization beyond the one hundred seventy five (175) hours shall not accrue or be paid out on termination under any circumstance (if it is not actually used it is lost).

(d)     The Executive shall be reimbursed by the Company for all reasonable business, promotional, travel and entertainment expenses incurred or paid by the Executive and approved in writing by the President during the Employment Term in the performance of the Executive's services under this Employment Agreement.  In order that the Company reimburse the Executive for such allowable expenses, the Executive shall furnish to the Company, in a timely fashion, the appropriate documentation required by the Code (as defined below) in connection with such expenses and shall furnish such other documentation and accounting as the Company may from time to time reasonably request.  To be timely the expense must be turned in within thirty (30) days of the date the expense is incurred.

4.     Restrictive Covenants.  The Executive acknowledges and agrees that (i) the Executive has substantial responsibility for the operation, development and growth of the Company's Business; (ii) the Executive's work for the Company has brought him and will continue to bring him, into close contact with confidential information of the Company, their applicable employees, consultants, representatives, service providers, closely related parties and vendors; and (iii) the agreements and covenants contained in this Section 4 are essential to protect the business interests of the Company, and the Company would not enter into this Agreement but for such agreements and covenants.  Accordingly, the Executive covenants and agrees to the following:

(a)     Confidential Information.  Except as may be required under applicable law, including by the lawful order of a court or agency of competent jurisdiction, the Executive agrees to keep secret and confidential, both during the Employment Term and indefinitely after the Executive's employment with the Company terminates, all non-public information concerning the Company, and/or their respective Affiliates that was acquired by, or disclosed to, the Executive during the course of the Executive's employment hereunder, including all trade

App. 0256

secrets, know-how, research and development, software, databases, inventions, processes, technology, information relating to Shareholders, costs, operations, sales, pricing, suppliers, vendors, customers, compensation, marketing, advertising, promotions, financial data, plans, and government and regulatory activities, whether past, current or planned and not to disclose the same, either directly or indirectly, to any other Person (as defined below), or to use it in any way; provided, however, that the provisions of this Section 4(a) shall not apply to information that (i) was, is now, or becomes generally available to the public (but not as a result of a breach of any duty of confidentiality by which the Executive is bound); (ii) was disclosed to the Executive by a third party not subject to any duty of confidentiality to the Company; or (iii) is disclosed by the Executive in the ordinary course of the Company's business as a proper part of the Executive's employment in connection with communications with proper parties; provided, that such disclosure is for a proper purpose solely for the benefit of the Company and approved in writing by the President. If the Executive is required by law to disclose any such information, to the extent not legally prohibited, the Executive will notify the President of the Company so that the President may seek any appropriate protective order, seek to obtain confidential treatment of such information and/or take any other action related to the protection of such information, and the Executive shall, at the expense of the Company, use commercially reasonable efforts to assist the President in her efforts. In no way does this Agreement replace or limit any prior obligations or understandings regarding obligations on behalf of the Executive, including in his personal capacity, to maintain private or confidential materials. The Executive is not authorized to voluntarily disclose private or confidential materials to any person without the express written consent of the President.

(b)     Non-Disparagement. The Executive agrees not to make any statement or disclosure that (i) would be prohibited by applicable federal or state laws, or (ii) is intended or reasonably likely to be detrimental to the Company and/or any of their respective subsidiaries or Affiliates.

(c)     Non-Competition. The Executive agrees that for the period commencing on the Effective Date and ending upon the termination of this Agreement, regardless of what brings about the termination, the Executive shall not compete with the Company in the business of the Company.

(d)     Non-Solicitation. The Executive agrees that for the period commencing on the Effective Date and ending on the second (2nd) anniversary of the date on which the Executive's employment with the Corporation is terminated (the "Non-Solicitation Period"), the Executive shall not, directly or indirectly, alone or as a partner, officer, director, employee, consultant, agent, independent contractor, or equity holder of any Person:

(i)     Employ, seek to employ or solicit for employment or endeavor to entice away from employment with anyone employed by or the Company or an Affiliate; or

(ii)     Solicit or induce any supplier, proprietor, equity holder, lender, director, officer, professional, employee, joint venturer, investor, lessor, customer, agent, service provider, consultant or other Person that has a business relationship with the Company and/or

App. 0257

any of their respective Affiliates to discontinue, reduce or modify such relationship with the Company and/or any of their respective Affiliates; or

(e)    Notwithstanding the restrictions set forth in Section 4(c) or Section 4(d), nothing contained in Section 4(c) or Section 4(d) shall be deemed to prohibit the Executive from acquiring or holding or owning, solely as a passive investment, publicly traded securities of any entity, provided, that (A) the Executive is not a controlling person of, or a member of a group which controls, such entity, (B) the Executive is not an employee, officer, director, or consultant of such entity, (C) such entity is not competitive to the Business, (D) the Executive does not, directly or indirectly, own, in the aggregate, more than five percent (5%) of any class or series of outstanding securities of such entity, and (E) such ownership interest would not adversely impact in any material respect the ability of the Executive to perform the Executive's duties hereunder.

(f)    Remedies.   The Executive agrees that money damages would be an inadequate remedy for any breach of any of the provisions contained in Section 4(a), Section 4(b), Section 4(c), or Section 4(d) (collectively, the "Restrictive Covenants"). Therefore, in the event of a breach or threatened breach of any of the Restrictive Covenant, the Company, in addition to other rights and remedies existing in its favor, shall be entitled to seek specific performance and/or injunctive or other equitable relief from a court of competent jurisdiction in order to enforce, or prevent any violations of, the provisions of this Agreement (without posting a bond or other security).  The provisions of this Section 4 are intended to be for the benefit the Company, which may enforce such provisions. The Executive acknowledges and agrees that in the event of a violation or threatened violation of any of the Restrictive Covenants, the Company shall have no adequate remedy at law and shall therefore be entitled to enforce each such provision by temporary or permanent injunction or mandatory relief obtained in any court of competent jurisdiction without the necessity of proving damages, posting any bond or other security, and without prejudice to any other rights and remedies that may be available at law or in equity, and the Company shall also be entitled to recover its attorneys' fees and costs incurred to enforce any of the Restrictive Covenants from the Executive.

(g)    Inventions and Intellectual Property.   The Executive acknowledges and agrees that all developments, including, without limitation, inventions, patentable or otherwise, discoveries, improvements, patents, trade secrets, designs, reports, computer software, flow charts and diagrams, procedures, data, documentation, ideas and writings and applications thereof relating to the present or planned Business of the Company that, alone or jointly with others, the Executive has already or may in the future conceive, create, make, develop, reduce to practice or acquire during the Employment Term (collectively, the "Developments") are works made for hire and shall remain the sole and exclusive property of the Company and the Executive hereby assigns to the Company all of the Executive's right, title and interest in and to all such Developments, and such Development shall not be used by the Executive in any way adverse to the Company's interests.  All related items, including, but not limited to, memoranda, notes, lists, charts, drawings, records, files, computer software, programs, source and programming narratives and other documentation (and all copies thereof) made or compiled by the Executive, or made available to the Executive, concerning the business or planned business of the Company shall be the property of the Company and shall be delivered to the Company promptly upon the termination of this Agreement.  The Executive shall not deliver, reproduce or

App. 0258

in any way allow such documents or things to be delivered or used by any third party without the written approval of the President. The provisions of this Section 4 shall survive the termination of this Agreement.

(h)     Severability; Enforceability.   If any of the Restrictive Covenants, or any part thereof, are held to be invalid or unenforceable, the same shall not affect the remainder of the covenant or covenants, which shall be given full effect, without regard to the invalid or unenforceable portions.

5.     Termination and Compensation Due Upon Termination.   The Employment Term may be terminated, and the Executive's right to compensation for periods after the date the Executive's employment with the Company terminates shall be determined in accordance with this Section 5:

(a)     Termination Without Cause.   The Company shall have the right to terminate the Executive's employment at any time during the Employment Term without Cause (including termination following delivery by the Company to the Executive of a Non-Renewal Notice). In the event the Company terminates the Executive's employment without Cause (including termination following delivery by the Company to the Executive of a Non-Renewal Notice), the Company shall pay the Executive (i) any Base Salary in accordance with the provisions of Section 3(a) through the termination date, (ii) any benefits pursuant to Section 3(b), (iv) any unused paid time off pursuant to Section 3(c), and (v) any expense reimbursement that the Company owes to the Executive pursuant to Sections 3(d), in each case through the effective date of termination (collectively, the "Accrued Obligations"). Additionally, and conditioned upon the Executive's voluntary execution of the Release of Claims Agreement substantially in the form of Exhibit A attached hereto (the "Release"), which includes, but is not limited to, a non-disparagement provision and a release of any claims for lost wages or benefits; compensatory damages; punitive damages; attorneys' fees; equitable relief; or any other form of damages or relief the Executive may assert against the Company or any of their respective subsidiaries (provided, that the terms of such Release shall be subject to modification to the extent necessary to comply with changes in applicable law, if any, occurring after the Effective Date and prior to date such Release is executed).

(b)     Resignation With Good Reason.   The Executive shall have the right to terminate the Executive's employment with the Company during the Employment Term for Good Reason (excluding termination following delivery by the Executive to the Company of a Non-Renewal Notice). In the event the Executive terminates the Executive's employment with the Company for Good Reason during the Employment Term, the Executive will be entitled to all payments and benefits as if the Executive had been terminated without Cause pursuant to Section 5(a). Notwithstanding anything to the contrary, Good Reason shall cease to exist after forty-five (45) days following the occurrence of an event otherwise constituting Good Reason hereunder unless the Executive has given the Company written notice thereof prior to such date.

(c)     Voluntary Resignation.   The Executive may terminate the Executive's employment with the Company for any reason (other than for Good Reason) at any time by giving the Company forty-five (45) days prior written notice of the Executive's voluntary

**App. 0259**

resignation; provided, however, that the Company may elect that the Executive's voluntary resignation be effective immediately upon notice of such resignation, in which case the Company shall pay to the Executive the Accrued Obligations and shall thereafter have no further obligation to make any other payments to the Executive in accordance with the provisions of Section 3 or otherwise for periods after the date on which the Executive's employment with the Company terminates due to the Executive's voluntary resignation.

(d) Termination for Cause. The Company shall have the right to terminate the Executive's employment at any time during the Employment Term for Cause. In the event the Executive's employment with the Company is terminated for Cause, the Company shall pay to the Executive any Accrued Obligations as of the date of termination and shall thereafter have no further obligation to make any other payments to the Executive in accordance with the provisions of Section 3 or otherwise for periods after the Executive's employment with the Company is terminated on account of the Executive's discharge for Cause.

(e) Disability. The Company shall have no obligation to make payments to the Executive in accordance with the provisions of Section 3 or otherwise for periods after the date the Executive's employment with the Company terminates on account of disability, except for the Accrued Obligations. For purposes of this Section 5(e), determination of whether the Executive is disabled shall be determined in accordance with the Company's long term disability plan (if any) and applicable law.

(f) Death. The Company shall have no obligation to make payments to the Executive in accordance with the provisions of Section 3 for periods after the date of the Executive's death, except the Accrued Obligations.

6. Successors. This Agreement shall be binding on, and inure to the benefit of the Company and its respective successors and assigns and any Person acquiring, whether by merger, consolidation, purchase of all or substantially all the Company's assets and business, or otherwise without further action or consent by the Executive; provided, however, that the Executive hereby agrees to execute an acknowledgement of assignment if requested to do so by the successor, assign or acquiring person.

7. Nonalienation. The interests of the Executive under this Agreement are not subject to the claims of the Executive's creditors, other than the Company, and may not otherwise be voluntarily or involuntarily assigned, alienated or encumbered except to the Executive's estate upon the Executive's death.

8. Waiver of Breach. The waiver by either the Company or the Executive of a breach of any provision of this Agreement shall not operate as, or be deemed a waiver of, any subsequent breach by either the Company or the Executive.

9. Severability. If any term or other provision of this Agreement is determined by a court of competent jurisdiction to be invalid, illegal or incapable of being enforced by any rule of law or public policy, all other terms, provisions and conditions of this Agreement shall nevertheless remain in full force and effect. Upon such determination that any term or other

provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible to the fullest extent permitted by applicable law in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the extent possible.

10.    Notice.  Any notice to be given hereunder by a party hereto shall be in writing and shall be deemed to have been given when received, rejected or refused or, when deposited in the U.S. mail, certified or registered mail, postage prepaid to the parties at the following addresses:

(a)    to the Executive addressed as follows:

Preston L. Marshall
11100 Meadowick
Houston, TX 77024

(b)    to the Company addressed as follows:

MarOpCo, Inc.
5917 Club Oaks Drive
Dallas, TX 75248

with a copy to (which shall not constitute notice hereunder):

Hunter, Hunter & Sonnier, L.L.C.
Attention: Edwin Kidd Hunter
1807 Lake Street
Lake Charles, LA 70601

11.    Amendment.  This Agreement may be amended or canceled by mutual agreement of the parties hereto in writing without the consent of any other person.  The parties hereby agree that no oral conversations shall be deemed to be a modification of this Agreement and neither party shall assert the same.

12.    Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute and be one and the same instrument. Counterpart signatures need not be on the same page and shall be deemed effective upon receipt.

13.    Governing Law and Venue.  Texas law shall govern the rights and obligations under this Agreement, without giving effect to any conflict of laws principles that would require application of the laws of any other jurisdiction.  In the event litigation is necessary, such legal

App. 0261

action shall be commenced only in a federal court located in Dallas, Texas or if federal court shall not have jurisdiction for whatever reason then in a state district court located in Dallas, Texas. Any litigation commenced other than in a federal court located in Dallas, Texas shall be subject to being dismissed, stayed or having venue transferred to a federal court located in Dallas, Texas at the option of the party not commencing said litigation. The parties further waive all objections and defenses to litigation being conducted in a federal court located in Dallas, Texas based upon venue or under the doctrine of *forum non conveniens*.

14.     Assignments. The Executive shall not be permitted to assign this Agreement or any of the Executive's rights or obligations hereunder without the prior written consent of the Company. The Company may assign this Agreement and its rights or obligations hereunder to any of its Affiliates, successors or assigns, or in connection with the Sale of the Company.

15.     Effect of Termination. Following the Employment Term, all of the provisions of this Agreement shall terminate, except that Sections 4, the Company's payment obligations under Section 5 (if any), and Sections 6 through Section 26 shall survive indefinitely after the expiration of the Employment Term. Any termination of the Executive's employment with the Company shall automatically be deemed to be simultaneous resignation of all other positions and titles the Executive holds with any Affiliate of the Company.

16.     Entire Agreement. This Agreement and the schedules an exhibits attached hereto sets forth the entire agreement and understanding between the Company, on the one hand, and the Executive, on the other hand, relating to the subject matter herein and merges all prior discussions between the parties, including, but not limited to, any and all statements made by any officer, employee or representative of the Company. The Executive understands and acknowledges that, except as set forth in this Agreement, (a) no other representation or inducement has been made to the Executive, (b) the Executive has relied on the Executive's own judgment and investigation in executing this Agreement, and (c) the Executive has not relied on any representation or inducement made by any officer, employee or representative of the Company. Any prior agreement similar to the subject matter of this Agreement is revoked.

17.     Separation from Service. Notwithstanding any provision of this Agreement to the contrary, the Executive's employment will be deemed to have terminated on the date of the Executives "separation from service" (within the meaning of Treas. Reg. Section 1.409A-1(h)) with the Company, as reasonably determined by its President.

18.     Limitation on Authority and Duties. Executive shall have no authority to bind the Company except as expressly outlined in a written and executed instrument by the President. The Executive shall not have the authority to incur obligations on behalf of the Company or settle or pay obligations on behalf of the Company except as expressly outlined in a written and executed instrument by the President. As of the Execution Date, the President has not issued any authorization to the Executive to take any action. Executive shall report regularly to the President and shall undertake such acts as the President instructs in writing that is consistent with the past actions taken by Executive.

19.    Confidentiality. The parties acknowledge and agree that this Agreement and each of its provisions are and shall be treated strictly confidential. During the Employment Term and thereafter, the Executive shall not disclose any terms of this Agreement to any person or entity without the prior written consent of the Company (as evidenced by a written instrument from the President), with the exception of the Executive's tax, legal or accounting advisors or for legitimate business purposes of the Executive, or as otherwise required by law.

20.    Enforcement Costs. If any legal action or other proceeding is brought, for the enforcement or interpretation of any of the terms or conditions of this Agreement, or because of an alleged dispute, breach, or default, in connection with any of the provisions of this Agreement the prevailing party in such action shall be entitled to recover from the non-prevailing party the reasonably incurred costs it incurred in such action including, but not limited to, reasonable attorneys' fees (including costs and fees incurred on appeal) subject to the limit imposed in the following sentence, in addition to any other relief to which such party may be entitled. Notwithstanding this provision, the Executive may not recover costs or legal fees in excess of $100,000 under any circumstances.

21.    Compliance with other Agreements. The Executive represents, warrants, agrees and covenants to the Company that (a) the execution and delivery of this Agreement by the Executive and the Executive's performance of the Executive's obligations hereunder shall not constitute (with or without notice or lapse of time or both) a default, breach or violation of any contract, written or oral, express or implied, to which the Executive is a party or to which the Executive is or may be bound, including, without limitation, any contract with any present or former employer and (b) this Agreement constitutes a valid and legally binding obligation of the Executive, enforceable against the Executive in accordance with its terms. The Executive hereby agrees to indemnify and hold the Company and their respective Affiliates harmless from and against any and all claims, losses, damages, liabilities, costs and expenses (including, without limitation, attorneys' fees and expenses) incurred by the Company and/or their respective Affiliates in connection with any default, breach or violation by the Executive of any such contract. All representations and warranties contained herein will survive the execution and delivery of this Agreement.

22.    No Rule of Construction. This Agreement shall be construed to be neither against nor in favor of any party hereto based upon any party's role in drafting this Agreement, but rather in accordance with the fair meaning hereof.

23.    Definitions. As used in this Agreement, the following terms have the respective meanings set forth below:

(a)    "Affiliate" shall mean any person or entity which controls, is controlled by, or is under common control with the Company or any shareholder.

(b)    "Business" means the actual businesses of the Company and/or any of their respective Affiliates during the Employment Term and as of the date that the Executive's employment with the Company is terminated.

App. 0263

(c)    "Cause" means the occurrence of one or more of the following events: (i) the Executive becomes habitually addicted to drugs or alcohol; (ii) the Executive breaches any of the Restrictive Covenants; (iii) the Company is directed by regulatory or governmental authorities to terminate the employment of the Executive or the Executive engages in activities that cause actions to be taken by regulatory or governmental authorities that have a material adverse effect on the Company; (iv) the Executive is convicted of a felony crime (other than a felony resulting from a minor traffic violation); (v) the Executive flagrantly disregards the Executive's duties after (A) written notice has been given to the Executive by the Board regarding the same and (B) the Executive has been given a period of ten (10) days after such notice to cure such misconduct; provided, however, that no notice or cure period shall be required if the Executive's disregard of the Executive's duties has materially and adversely affected the Company); (vi) any event of egregious misconduct by the Executive involving serious moral turpitude to the extent that, in the reasonable judgment of the Board, the Executive's credibility and reputation no longer conform to the standard of the Company's employees; or (vii) the Executive commits an act of fraud against the Company, violates a fiduciary duty to the Company, violates the Executive's duties, or tells a material lie to the President.

(d)    "Good Reason" means the occurrence of one of the following events:  (i) the Executive's duties are materially reduced; (ii) the relocation of the Executive's office outside the State of Texas; or (iii) a material breach by the Company of its obligations to make mandatory payments or provide required benefits under Section 3.

(e)    "Non-Performance" means the Executive does not materially perform the duties assigned to the Executive by the President and such determination is made by the President in good faith using its reasonable business judgment and the Executive has been given a period of ten (10) days after written notice thereof to cure such performance (however, no notice or cure period shall be required if the Executive's disregard of the Executive's duties has materially and adversely affected the Company).

(f)    "Sale of the Company" shall mean the sale the Company to an independent third party or group of independent third parties pursuant to which such party or parties acquire (i) equity interests (whether by merger, consolidation or sale or transfer of such equity interests), or (ii) all or substantially all of the Company's assets determined on a consolidated basis.

24.    Insurance. The Executive acknowledges that the Company shall have the right, but not the obligation, to obtain life and/or disability insurance on the Executive, which insurance policies shall be paid for by and shall be for the benefit of the Company.

25.    WAIVER OF JURY TRIAL.  THE EXECUTIVE AND THE COMPANY EXPRESSLY WAIVE ANY RIGHT EITHER MAY HAVE TO A JURY TRIAL CONCERNING ANY CIVIL ACTION THAT MAY ARISE FROM THIS AGREEMENT.

App. 0264

IN WITNESS WHEREOF, the Executive and the Company have executed this Employment Agreement as of the day and year first above written.

**EXECUTIVE:**

Preston L. Marshall

**COMPANY:**

MarOpCo, Inc.

By: Elaine T. Marshall
Elaine T. Marshall, President

**App. 0265**

10/28/2015 10:47:43 AM
Chris Daniel - District Clerk Harris County
Envelope No. 7574220
By: Kenya Kossie
Filed: 10/28/2015 10:47:43 AM

CAUSE NO. 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY AND RUSK CAPITAL MANAGEMENT, L.L.C., | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| VS. | § § | HARRIS COUNTY, TEXAS |
| MAROPCO, INC., | § § | |
| *Defendant.* | § | 11TH JUDICIAL DISTRICT |

**DEFENDANT MAROPCO, INC.'S ANSWER TO PLAINTIFFS' SECOND AMENDED PETITION AND REQUEST FOR PERMANENT INJUNCTION**

Maropco, Inc., Defendant in the above entitled cause ("Defendant"), appears to file its Answer to Plaintiffs' Second Amended Petition and Request for Permanent Injunction and would respectfully show the Court as follows:

**I.**

**General Denial**

1.      Defendant generally denies Plaintiffs' allegations under Rule 92 of the Texas Rules of Civil Procedure and demands that Plaintiffs prove their allegations by a preponderance of the credible evidence as is required by the Constitution and the laws of the State of Texas.

**II.**

**Affirmative Defenses**

2.      Plaintiffs' claims are barred in whole or in part by waiver and estoppel.

3.      Plaintiffs effectively consented to the conduct that they claim constitutes conversion, and/or a violation of TEX. CIV. PRAC. & REM. CODE §134A.005, and §§143.001-143.002.

**App. 0266**

4.      Without waiving MarOpCo's right to assert that Plaintiff has the burden of proof or persuasion on the following elements, at no time did MarOpCo ask Plaintiff Marshall, or did he refuse, to perform an illegal act, and Defendant denies that Marshall was terminated as a result of any such claimed refusal.

5.      Defendant would show that Plaintiffs' claims are barred in whole or in part by the defense of privilege and/or justification because Defendant acted at all times in the exercise of its own corresponding legal rights and interests.

6.      Without waiving MarOpCo's right to assert that Plaintiff has the burden of proof or persuasion on the following elements, MarOpCo pleads that Plaintiffs' claim under TEX. CIV. PRAC. & REM. CODE §§ 143.001-143.002 fails because Defendant did not knowingly access any computer, computer network, or computer system without the effective consent of the owner and did not intend to defraud, harm another or alter, damage, or delete property belonging to another.

7.      Without waiving MarOpCo's right to assert that Plaintiff has the burden of proof or persuasion on the following elements, Plaintiffs' business disparagement claim fails because Defendant did not publish any false and disparaging information about Plaintiffs with malice, without privilege, which resulted in special damages to Plaintiffs, or either of them.

8.      The server, workstations, software and other data that Marshall claims to own in this case, all constitute improvements, trade secrets, data, documentation, ideas and writings, and applications that are the exclusive property of MarOpCo, to which Preston Marshall assigned all of his rights, title and interest under the express terms of his Employment Agreement. *See* Employment Agreement, at ¶4(g).

9.     Plaintiff Marshall's claims are barred in whole or in part by his own breaches of fiduciary duty owed to, and constructive fraud upon, MarOpCo, which support the imposition of a constructive trust upon the server, workstations and computer equipment at issue in this case. Marshall owed MarOpCo fiduciary duties under Texas law, including (a) the duty of loyalty, (b) the duty to work solely for the benefit of the corporation, (c) the duty to act in good faith, (d) the duty to not allow his personal interests to prevail over the interests of the corporation, and (e) the duty of full disclosure, and extreme candor, and unselfishness.  Marshall's conduct – which involved migrating MarOpCo's electronic data and databases onto the server and workstations that Marshall and/or Rusk Capital now claim to own, and then co-mingling such electronic data with other data allegedly belonging to Marshall and/or Rusk Capital – constituted a breach of fiduciary duty owed to, and constructive fraud upon, MarOpCo.  In the event Marshall or Rusk Capital are found to own the server and/or workstations at issue, which MarOpCo denies, MarOpCo would be irreparably harmed, and Marshall and Rusk Capital would be unjustly enriched, if a constructive trust was not imposed under the facts of this case.

10.     Without waiving MarOpCo's right to assert that Plaintiff has the burden of proof or persuasion on the following elements, Defendant's termination of Plaintiff Marshall was not "without cause" and, therefore,  Paragraph 5(a) of the Employment Agreement, on which Plaintiff bases his breach of contract claim, is inapplicable.

11.     Pursuant to TEX. CIV. PRAC. & REM. CODE § 134A.005(1), Defendant is entitled to recover its attorneys' fees because Plaintiffs have asserted their claim of trade secret misappropriation in bad faith.

12.     Pursuant to Paragraph 20 of the Employment Agreement, Defendant is entitled to recover its reasonably incurred costs including its attorneys' fees (as well as costs and fees incurred on appeal) in connection with defending Plaintiffs' breach of contract claim.

13.     Defendant reserves the right to plead such other and further defenses as may be desirable.

## III.

### Conclusion

Accordingly, Defendant Maropco respectfully requests that the Court dismiss Plaintiffs' suit and award it all of its costs of court, attorneys' fees, expert fees and expenses, and such other and further relief to which Defendant may be legally, justly and equitably entitled.

Respectfully submitted,

BLANK ROME LLP

By:/s/ Susan L. Bickley
        Barry Abrams
        State Bar No. 00822700
        Susan L. Bickley
        State Bar No. 02298150
        717 Texas Avenue, Suite 1400
        Houston, Texas  77002
        (713) 228-6601
        (713) 228-6605 (Fax)
        Email: sbickley@blankrome.com

ATTORNEYS FOR DEFENDANT,
MAROPCO, INC.

-4-

## <u>CERTIFICATE OF SERVICE</u>

I certify that all counsel of record have been served a true and correct copy of the foregoing by email and certified mail, return receipt requested on October 28, 2015 as follows:

>Mr. Mark Siurek
>Ms. Patricia Haylon
>Warren & Siurek, L.L.P.
>3334 Richmond Avenue, Suite 100
>Houston, Texas 77098
>Email: msiurek@warrensiurek.com
>Email: thaylon@warrensiurek.com


>Mr. Paul J. Dobrowski
>Mr. Frederick T. Johnson
>Mr. Akilah F. Craig
>Dobrowski, Larkin & Johnson LLP
>4601 Washington Avenue, Suite 300
>Houston, Texas 77007
>Email: pid@doblaw.com
>Email: fjohnson@doblaw.com
>Email: acraig@doblaw.com


>/s/ Susan L. Bickley
>Susan L. Bickley

-5-

10/15/2015 5:16:11 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 7401209
By: KOSSIE, KENYA
Filed: 10/15/2015 5:16:11 PM

CAUSE NO. 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY | § | IN THE DISTRICT COURT OF |
| AND RUSK CAPITAL MANAGEMENT, | § | |
| L.L.C. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| MAROPCO, INC., | § | |
| | § | |
| Defendant. | § | 11TH JUDICIAL DISTRICT |

## ORDER

On this day, came to be considered Plaintiffs' Motion to Compel Production of Documents and Tangible Things ("Plaintiffs' Motion"), in response to Frost Bank's Objections to Subpoena for Production of Documents and Tangible Things and Alternative Motion for Protection. The Court, having considered the pleadings on file, is of the opinion that Plaintiffs' Motion should be GRANTED.

It is therefore ORDERED that Frost Bank's objections to Plaintiffs' Subpoena for Production of Documents and Tangible Things are overruled.

It is further ORDERED that Frost Bank produce documents responsive to Plaintiffs' Subpoena for Production of Documents and Tangible things. **The documents must be produced within 25 days of the date of this order and Plaintiffs' must pay the reasonable costs for compliance prior to production of the documents.**

SIGNED this ____ day of _____, 201___

Signed:
11/4/2015

_____
JUDGE PRESIDING

10/15/2015 5:10:36 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 7401031
By: KOSSIE, KENYA
Filed: 10/15/2015 5:10:36 PM

CAUSE NO. 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY AND RUSK CAPITAL MANAGEMENT, L.L.C. | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § | OF HARRIS COUNTY, TEXAS |
| MAROPCO, INC., | § § | |
| Defendant. | § | 11TH JUDICIAL DISTRICT |

## ORDER

On this day, came to be considered Defendant, MarOpCo, Inc.'s Objections and Motion

to Quash Plaintiffs' Subpoena for Production of Documents and Tangible Things to Frost Bank.

The Court, having considered the Motion and the Response thereto is of the opinion that the

Motion should be DENIED.

It is therefore, ORDERED that MarOpCo's objections to Plaintiff's Subpoena for

Production of Documents and Tangible Things to Frost Bank are OVERRULED.

It is further ORDERED that MarOpCo's Motion to Quash Plaintiff's Subpoena for

Production of Documents and Tangible Things to Frost Bank is DENIED.

SIGNED this ___ day of _____, 2015.

Signed:
11/4/2015

_____

JUDGE PRESIDING

**App. 0272**

11/16/2015 4:44:19 PM
Chris Daniel - District Clerk Harris County
Envelope No. 7852080
By: GABRIELA COX
Filed: 11/16/2015 4:44:19 PM

CAUSE NO.  2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY AND RUSK CAPITAL MANAGEMENT, L.L.C. | § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § | OF HARRIS COUNTY, TEXAS |
| MAROPCO, INC., | § § | |
| Defendant. | § § | 11TH JUDICIAL DISTRICT |

**PLAINTIFFS' ORIGINAL ANSWER TO
DEFENDANT'S ORIGINAL COUNTERCLAIM**

TO THE HONORABLE JUDGE MIKE D. MILLER:

Plaintiffs/Counter-Defendants Preston Marshall ("Marshall") and Rusk Capital Management, L.L.C. ("Rusk Capital") (collectively, "Plaintiffs/Counter-Defendants") file this Original Answer to Defendant/Counter-Plaintiff MarOpCo, Inc.'s ("MarOpCo") Original Counterclaim and would show as follows:

**GENERAL DENIAL**

1.      As authorized by Rule 92 of the Texas Rules of Civil Procedure, Marshall and Rusk Capital enter a general denial of the matters pled by MarOpCo and demand that MarOpCo prove its allegations against Marshall and Rusk Capital by a preponderance of the evidence as is required by the Constitution and the laws of the State of Texas.

**AFFIRMATIVE DEFENSES**

Without assuming any burden of proof that would otherwise rest with MarOpCo, Marshall and Rusk Capital assert the following defenses:

2.      MarOpCo's Original Counterclaim (the "Counterclaim") fails to state a claim upon which relief may be granted.

1

**App. 0273**

3.      MarOpCo's claims are barred in whole or in part by the applicable statute of limitations.

4.      The contract provisions upon which MarOpCo seeks recovery and attempts to enforce are illegal restraints on trade.

5.      MarOpCo's claim for attorneys' fees incurred as a result of an alleged breach of restrictive covenants found in Marshall's employment agreement is barred because the alleged restrictive covenants upon which MarOpCo sues are unreasonable and impose a greater restraint than is necessary to protect the goodwill or other business interests of MarOpCo and MarOpCo was aware at the time the agreement was executed that the terms were unreasonable.

6.      MarOpCo's claims are barred, in whole or in part, because the alleged restrictive covenants do not comply with the statutory requirements of the Texas Business and Commerce Code.

7.      Although expressly denying any liability and without any admission that MarOpCo has suffered damages, MarOpCo's own acts and/or omissions caused or contributed to its alleged injury and/or damages.

8.      MarOpCo's claims are barred, in whole or in part, by estoppel and waiver.

9.      MarOpCo's claims are barred, in whole or in part, by the doctrine of unclean hands.

10.     Marshall was privileged to engage in the conduct alleged by the doctrine of legal justification and/or excuse.

11.     MarOpCo's claims are barred, in whole or in part, because MarOpCo was aware of, consented to, and/or ratified Marshall's conduct and business activities which are now made the basis of the Counterclaim.

12.     Marshall and/or Rusk Capital maintained a superior title and/or right to possess all property at issue, including the computers and computer servers used for business purposes.

13.     Without any admission by Marshall or Rusk Capital that MarOpCo suffered damages in any way, MarOpCo's claims are barred, in whole or in part, because it failed to use reasonable means to prevent the alleged damages and failed to use reasonable means to mitigate its damages.

14.     Although expressly denying any liability, any alleged violations of the Computer Fraud and Abuse Act and/or the Texas Uniform Trade Secret Act were not intentional, malicious, or willful.

15.     MarOpCo's own conduct, negligence, or disclosure prevents the information MarOpCo claims as trade secrets from being classified as trade secrets.

16.     Although expressly denying any liability, Marshall and Rusk Capital are entitled to offset or credit any damages alleged by MarOpCo, the entitlement to which is expressly denied, as a result of the damages owed to Marshall and/or Rusk Capital by MarOpCo.

17.     To the extent that MarOpCo's allegations are found frivolous, unreasonable and without foundation, Marshall and Rusk Capital are entitled to recover their costs and attorneys' fees incurred in defending such claims from MarOpCo.

18.     In addition to the foregoing affirmative defenses, Marshall and MarOpCo hereby reserve their right to add additional defenses upon completion of discovery.

## CONCLUSION

19.     Plaintiff/Counter-Defendants Marshall and Rusk Capital respectfully request that the Court dismiss MarOpCo's Counterclaim and award them all of its attorneys' fees, costs of court, and such other and further relief to which they may be entitled.

Respectfully submitted,

**DOBROWSKI, LARKIN & JOHNSON LLP**

By:    */s/ Davis Bradford*                   
            Paul J. Dobrowski
            SBN 05927100
            Frederick T. Johnson
            SBN 00785429
            Akilah F. Craig
            SBN 24076194
            C. Davis Bradford
            SBN 24064939
            4601 Washington Ave., Suite 300
            Houston, TX 77007
            Telephone: (713) 659-2900
            Facsimile: (713) 659-2908
            pjd@doblaw.com
            fjohnson@doblaw.com
            acraig@doblaw.com
            dbradford@doblaw.com

**WARREN & SIUREK, L.L.P.**

By:    */s/ Mark Siurek*                     
            Mark Siurek
            TBA# 18447900
            msiurek@warrensiurek.com
            Patricia Haylon
            TBA# 09281925
            thaylon@warrensiurek.com
            3334 Richmond Avenue, Suite 100
            Houston, Texas 77098
            Telephone: (713) 522-0066
            Facsimile: (713) 522-9977

ATTORNEYS FOR PRESTON MARSHALL
AND RUSK CAPITAL MANAGEMENT, L.L.C.

4

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record on this the 16th day of November, 2015, by ECF filing and electronic mail.

| | |
|---|---|
| Susan Bickley | John T. Cox, III |
| sbickley@blankrome.com | tcox@lynllp.com |
| Barry Abrams | John T. Cox, III |
| babrams@blankrome.com | cakin@lynnllp.com |
| Blank Rome LLP | Jonathon R. Patton |
| 717 Texas Avenue, Suite 1400 | jpatton@lynnllp.com |
| Houston, Texas 77002 | Lynn Tillotson Pinker & Cox, LLP |
| 713- 228-6605 (Fax) | 2100 Ross Avenue, Suite 2700 |
| | Dallas, Texas 75201 |
| | 214-981-3839 (Fax) |

           /s/ *Akilah F. Craig*
           Akilah F. Craig

App. 0277

Case No. 201535950

**DCORX**

MARSHALL, PRESTON (INDIVIDUALL

vs.

MAROPCO INC

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

11th    JUDICIAL DISTRICT

## DOCKET CONTROL ORDER

The following docket control order shall apply to this case unless modified by the court. If no date is given below, the item is governed by the Texas Rules of Civil Procedure.

1.    **JOINDER.** All parties must be added and served, whether by amendment or third party practice, by this date. THE PARTY CAUSING THE JOINDER SHALL PROVIDE A COPY OF THIS DOCKET CONTROL ORDER AT THE TIME OF SERVICE.

2.    **EXPERT WITNESS DESIGNATION.** Expert witness designations are required and must be served by the following dates. The designation must include the information listed in Rule 194.2(f). Failure to timely respond will be governed by Rule 193.6.
(a)   Experts for parties seeking affirmative relief.
(b)   All other experts.

3.    **STATUS CONFERENCE.** Parties shall be prepared to discuss all aspects of the case, including ADR, with the court on this date.    TIME:
Failure to appear will be grounds for dismissal for want of prosecution.

4.    **DISCOVERY LIMITATIONS.** The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:
(a)   Total hours per side for oral depositions.
(b)   Number of interrogatories that may be served by each party on any other party.

5.    **ALTERNATIVE DISPUTE RESOLUTION.**
(a) **06/14/16**   By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR. If no agreement or objection is filed, the court may sign an ADR order.
(b) **08/01/16**   ADR conducted pursuant to the agreement of the parties must be completed by this date.

6.    **DISCOVERY PERIOD ENDS.** All discovery must be conducted before the end of the discovery period. Parties seeking discovery must serve requests sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period. Counsel may conduct discovery beyond this deadline by agreement. Incomplete discovery will not delay the trial.

7.    **DISPOSITIVE MOTIONS AND PLEAS.** Must be heard by oral hearing or submission.
(a)   If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.
(b)   Summary judgment motions not subject to an interlocutory appeal must be heard by this date.
(c)   Rule 166a(i) motions may not be heard before this date.

8.    **CHALLENGES TO EXPERT TESTIMONY.** All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9.    **PLEADINGS.** All amendments and supplements must be filed by this date. This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.
Parties shall be prepared to discuss all aspects of trial with the court on this date.
TIME:        Failure to appear will be grounds for dismissal for want of prosecution.

11. **08/15/16**   **TRIAL.** If not assigned by the second Friday following this date, the case will be reset.

SIGNED

Signed: 11/19/2015

MARK STEVEN SIUREK
3334 RICHMOND AVE STE 100
HOUSTON TX 77098-3023

2        18447900

MICHAEL D. MILLER
Judge, 11TH DISTRICT COURT
Date Generated 11/11/2015

JCVO02
rev.11202006

Case No. 201535950

**DCORX**

MARSHALL, PRESTON (INDIVIDUALL

IN THE DISTRICT COURT OF

vs.

HARRIS COUNTY, TEXAS

MAROPCO INC

11th    JUDICIAL DISTRICT

## DOCKET CONTROL ORDER

The following docket control order shall apply to this case unless modified by the court. If no date is given below, the item is governed by the Texas Rules of Civil Procedure.

1.        **JOINDER**. All parties must be added and served, whether by amendment or third party practice, by this date. THE PARTY CAUSING THE JOINDER SHALL PROVIDE A COPY OF THIS DOCKET CONTROL ORDER AT THE TIME OF SERVICE.

2.        **EXPERT WITNESS DESIGNATION**. Expert witness designations are required and must be served by the following dates.    The designation must include the information listed in Rule 194.2(f).    Failure to timely respond will be governed by Rule 193.6.
(a)        Experts for parties seeking affirmative relief.
(b)        All other experts.

3.        **STATUS CONFERENCE**. Parties shall be prepared to discuss all aspects of the case, including ADR, with the court on this date.    TIME:
Failure to appear will be grounds for dismissal for want of prosecution.

4.        **DISCOVERY LIMITATIONS**. The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:
(a)        Total hours per side for oral depositions.
(b)        Number of interrogatories that may be served by each party on any other party.

5.        **ALTERNATIVE DISPUTE RESOLUTION.**
(a) **06/14/16**    By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR. If no agreement or objection is filed, the court may sign an ADR order.
(b) **08/01/16**    ADR conducted pursuant to the agreement of the parties must be completed by this date.

6.        **DISCOVERY PERIOD ENDS.**    All discovery must be conducted before the end of the discovery period. Parties seeking discovery must serve requests sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period. Counsel may conduct discovery beyond this deadline by agreement. Incomplete discovery will not delay the trial.

7.        **DISPOSITIVE MOTIONS AND PLEAS**. Must be heard by oral hearing or submission.
(a)        If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.
(b)        Summary judgment motions not subject to an interlocutory appeal must be heard by this date.
(c)        Rule 166a(i) motions may not be heard before this date.

8.        **CHALLENGES TO EXPERT TESTIMONY**. All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9.        **PLEADINGS**.    All amendments and supplements must be filed by this date.    This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.
Parties shall be prepared to discuss all aspects of trial with the court on this date.
TIME:        Failure to appear will be grounds for dismissal for want of prosecution.

11. **08/15/16**    **TRIAL**. If not assigned by the second Friday following this date, the case will be reset.

SIGNED        Signed: 11/19/2015

SUSAN LOUISE BICKLEY
717 TEXAS ST STE 1400
HOUSTON TX 77002-2776

1        2298150

MICHAEL D. MILLER
Judge, 11TH DISTRICT COURT
Date Generated 11/11/2015

JCVO02
rev.11202006

$P.2$

CAUSE NO. 2015-35950

$CSORX$



| PRESTON MARSHALL, INDIVIDUALLY AND RUSK CAPITAL MANAGEMENT, L.L.C. | § § § § | IN THE DISTRICT COURT OF |
|---|---|---|
| Plaintiffs, | § § | FILED Chris Daniel District Clerk |
| v. | § § | OF HARRIS COUNTY, TEXAS |
| MAROPCO, INC., | § § | NOV 2 3 2015 |
| Defendant. | § | 11TH JUDICIAL DISTRICT |

Time:_____ Harris County, Texas
By_____ Deputy

## SCHEDULING ORDER AND DISCOVERY CONTROL PLAN

The Court enters the following scheduling order and discovery control plan and orders

the following actions be completed by the dates indicated. Nothing herein shall be construed as a

waiver of any parties' right to seek leave of Court to conduct discovery after the discovery

period, amend pleadings after the deadline, or otherwise alter these deadlines. The parties may

also take such actions by agreement.

| Amended Pleadings seeking Affirmative Relief | The deadline to amend or supplement any pleadings without leave of court is August 12, 2015. |
|---|---|
| **Fact Discovery Cut-off** | The close of fact discovery is September 15, 2016. All written discovery must be served in time for the response to be due on or before the close of fact discovery. |
| **Experts** | a. **Deadline for Designating Expert Witnesses and Serving Expert Reports for Parties Seeking Affirmative Relief.** Any party seeking affirmative relief is required to designate expert witnesses and serve expert witness reports by June 3, 2016.<br><br>b. **Deadline for Designating Expert Witnesses and Serving Expert Reports for Parties Opposing Requests for Affirmative Relief.** Parties opposing requests for affirmative relief are required to designate expert witnesses and serve expert reports opposing such relief by July 1, 2016. |
| **Expert Discovery Cut-off** | All depositions of experts shall be completed by September 15, 2016. |
| **Expert Challenges** | All expert challenges shall be filed by October 7, 2016. |

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

**App. 0280**

| Court Ordered Mediation | The parties shall participate in mediation by October 3, 2016. |
|---|---|
| Dispositive Motions | All dispositive motions must be heard no later than October 12, 2016. |
| Deadline to Exchange Trial Exhibits and Deposition Designations | The deadline for the exchange of all trial exhibits (except for demonstrative exhibits and PowerPoint presentations for use at trial) and deposition designations the parties intend to use at trial shall be October 27, 2016. |
| Deadline for Pre-trial Motions, Trial Briefs and Deposition Designations and for Exchange of Counter-Designations | The deadline for filing pre-trial motions, trial briefs as well as exchanging all objections to deposition designations and counter-designations of depositions shall be November 2, 2016. |
| Trial | The case shall be set for trial commencing on November 7, 2016. |

So ordered this **NOV 2 3 2015** day of November, 2015.

THE HONORABLE MIKE D. MILLER

2

1/12/2016 11:51:59 PM
Chris Daniel - District Clerk Harris County
Envelope No. 8584225
By: Marcella Hill
Filed: 1/12/2016 11:51:59 PM

CAUSE NO 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY and RUSK CAPITAL MANAGEMENT, L.L.C., | § § § | IN THE DISTRICT COURT |
| *Plaintiffs*, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| MAROPCO, INC., E. PIERCE MARSHALL, JR., EDWIN K. HUNTER, HUNTER, HUNTER & SONNIER, LLC | § § § § | |
| *Defendants*. | § | 11ᵗʰ JUDICIAL DISTRICT |

**PLAINTIFFS' THIRD AMENDED VERIFIED PETITION AND
REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION**

TO THE HONORABLE JUDGE MIKE D. MILLER:

Plaintiffs Preston Marshall, Individually, ("Preston") and Rusk Capital Management, L.L.C. ("Rusk Capital") (collectively, "Plaintiffs") file this Third Amended Verified Petition and Request for Temporary and Permanent Injunction complaining of MarOpCo, Inc. ("MarOpCo"), E. Pierce Marshall, Jr. ("Pierce"), Edwin Kidd Hunter, and Hunter, Hunter & Sonnier, LLC ("HHS") (Hunter and HHS are, collectively, the "Hunter Parties") and would show:

**I.    SUMMARY**

After being asked to move to Houston by his father, Plaintiff Preston Marshall served MarOpCo and its parents for nineteen years in many capacities. After nineteen years of service, the President of MarOpCo attempted to force Preston to send her money that rightfully belonged to a company she did not own. The President also attempted to force Preston to sign a false affidavit regarding who controlled the money at issue. Preston, by letter, explained why both requests were improper. MarOpCo, with the aid of the Hunter Parties, immediately terminated Preston from MarOpCo, refused to pay his contractually guaranteed severance, confiscated Preston's private equipment and privileged information, and are now using it against him.

1

## II.    DISCOVERY CONTROL PLAN

1.    Discovery in the above-captioned matter should be conducted in accordance with Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure and affirmatively plead that this suit is not governed by the expedited-actions process of Texas Rule of Civil Procedure 169. Plaintiffs are seeking monetary relief of over $1,000,000 plus other non-monetary relief.

## III.    PARTIES

2.    Preston Marshall is an individual and a citizen of Texas who resides in Harris County, Texas.

3.    Rusk Capital is a foreign limited liability corporation with its principal place of business in Harris County, Texas.

4.    MarOpCo, Inc. has appeared and answered.

5.    Pierce is an individual residing in Dallas, Texas and may be served with process at his home address, 6425 Belmead Drive, Dallas, Texas 75230. Pierce may also be served at MarOpCo's Dallas address, 7001 Preston Road, Suite 400, Dallas, Texas 75205-5102. Pierce, personally and as general counsel of MarOpCo, conspired to convert, and in fact took possession of, in Harris County, Texas the images from Plaintiffs' computers, and participated in transfer of that information, including privileged attorney client emails, onto an external hard drive for Pierce's personal use, and used the privileged emails in litigation in which Pierce was personally a party in Louisiana.  Pierce's actions in this regard also constitute an invasion of Preston's right to privacy.

6.    Edwin Kidd Hunter is an individual residing in Lake Charles, Louisiana. Hunter may be served with service of process by serving him at his law firm, Hunter, Hunter & Sonnier, 1807 Lake Street, Lake Charles, Louisiana 70601. Hunter routinely engages in business in the

2

State of Texas.  The Court has general jurisdiction over Edwin Hunter based on his extensive dealings in Texas and extensive business conducted in Texas.

7.    Additionally, the Court has specific jurisdiction over Edwin Hunter. Hunter's firm played a material role in MarOpCo's termination of Preston and the conversion of Plaintiffs' computer that was copied from Preston's computer onto a hard drive. Preston's confidential information and the hard drive were converted by Hunter, Hunter's law firm, and Pierce.

8.    The conversion of Preston's data and the hard drive onto which it was copied occurred in Houston, Texas.  In open Court, MarOpCo's counsel stated, in answer to the Court's question, that Edwin Hunter personally had taken the image of Preston Marshall's server:

> THE COURT: From what I have heard apparently MarOpCo agrees that at some point after the, I am going to call it the seizure of the server in question, that it is agreed that there was a mirror image of that entire server that was made by this lawyer in Louisiana, Edwin Hunter.  He is now in possession of that; is that correct?  I am not saying who did it or how it happened:
> MR. AKIN: That is what we have been told.  Yes.[1]

9.    The Court therefore has specific jurisdiction over Edwin Hunter and his law firm in Texas, and venue for those claims is proper in Harris County because the acts occurred in Harris County.  Hunter's and Pierce's actions further constituted invasion of Preston's right of privacy committed in Harris County Texas.

10.    The law firm Hunter, Hunter & Sonnier ("HHS") is a limited liability company and law firm. Its primary address is 1807 Lake Street, Lake Charles, Louisiana 70601. The Court has jurisdiction over HHS for the same reasons enumerated above for Edwin Hunter. Additionally, HHS maintains a fulltime employee based in Texas.  Edwin Hunter is an attorney licensed to practice law in Texas, and Edwin Hunter committed all acts complained of herein as an agent of HHS and in furtherance of HHS business.

---

[1] Reporter's Record from January 8, 2016 Hearing at page 6, lines 16-26, attached as Exhibit 1.

## IV.   VENUE

11.     Venue of this case is proper in Harris County, Texas, pursuant to Section 15.002(a) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events giving rise to the claims occurred in Harris County and Plaintiffs are residents of Harris County. Venue is also proper in Harris County under Section 15.005 of the Texas Civil Practice and Remedies Code.

12.     Venue is mandatory in Harris County pursuant to Section 15.017 of the Texas Civil Practice and Remedies Code. Venue in Harris County is proper with respect to Pierce Marshall, Jr., Edwin Hunter and HHS for the specific reasons stated in Paragraphs 5 through 10 above and incorporated here by reference.

## V.   FACTS

**A.     Marshall's Employment with MarOpCo.**

13.     MarOpCo is primarily an administrative services provider for a group of businesses owned, operated, and/or managed by the Marshall family.[2] Elaine Marshall serves as the President and Chief Executive Officer of MarOpCo.[3]

14.     MarOpCo's principal office is located at 7001 Preston Road, Suite 400, Dallas, Texas 75205-5102.[4] However, MarOpCo previously maintained a Houston office located at 7600 Tidwell, Suite 800, Houston, Texas 77040-6718, and has moved that Houston office to an undisclosed location in Houston.[5]

15.     On or about December 5, 2014, Preston received a written Employment Agreement from MarOpCo's President. The Employment Agreement was for a position as Vice

---

[2] Ex. 2, ¶ 3.
[3] *Id.*
[4] *Id.* at ¶ 4.
[5] *Id.*

4

President of MarOpCo. MarOpCo represented to Preston that the other Vice President of MarOpCo, Pierce, received an identical Employment Agreement and would be subject to identical treatment.

16.     Preston was employed as a Vice President of MarOpCo pursuant to an employment agreement (the "Agreement") effective December 12, 2014 through December 31, 2015.[6]  Pursuant to the express terms of paragraph 5(a) of the Agreement, MarOpCo reserved the right to terminate Preston's employment at any time without cause, preserving Marshall's status as an "at will" employee.[7]  However, Marshall was to be paid all accrued salary, benefits and personal time off in the event of his termination.[8]

17.     As a Vice President of MarOpCo, Preston performed his duties and responsibilities for MarOpCo at the Houston office located on Tidwell.[9]  For example, Preston was designated with the Texas Secretary of State as MarOpCo's registered agent for service of process at the Tidwell office location in Houston.[10]

**B.     The Affected Entities.**

18.     In addition to his work for MarOpCo, Preston maintained oversight of his personal affairs and other business entities (collectively referred to as the "Affected Entities") at the Tidwell office location.[11] These included:

    a.     Preston Marshall, individually;

    b.     Marshall Heritage Foundation (f/k/a Marshall Museum and Library);

    c.     Marshall Legacy Foundation;

---

[6] A true and correct copy of the Agreement is attached hereto as <u>Exhibit 3</u>.
[7] *Id.*
[8] *Id.*
[9] Ex. 2, ¶ 5.
[10] *Id.* at ¶ 3.
[11] *Id.* at ¶ 5.

5

d.      Eleanor Pierce Stevens Foundation;

e.      EPS/EPM Charitable Reminder Unitrust;

f.      Eleanor Pierce (Marshall) Stevens Living Trust;

g.      Eleanor Stevens Revocable Gift Trust;

h.      Bettye Morgan Charitable Remainder Unitrust;

i.      Bettye Morgan Supplemental Charitable Remainder Unitrust;

j.      Ada Estes Charitable Reminder Unitrust;

k.      Ada Estes Supplemental Charitable Remainder Unitrust;

l.      Peroxisome Charitable Lead Trust;

m.      Citrine Commence L.L.C.;

n.      Lysosome L.L.C.;

o.      Chondriosome Stiftung;

p.      Khozraschyot Capital Management L.L.C.;

q.      Lednik Capital Management L.L.C.;

r.      Glacier Holdings L.L.C.;

s.      Rusk Capital Management LLC and

t.      CarTech Systems LLC

Preston's actions overseeing Rusk Capital and the Affected Entities at the Tidwell office was known and ratified by MarOpCo.[12]

19.    Importantly, Preston's responsibilities relative to the various entities created ongoing fiduciary obligations from Preston to each of the entities identified above.[13] In performing his duties and responsibilities on behalf of these entities, Preston used and relied

---

[12] Ex. 2. at ¶ 7.
[13] *Id.* at ¶ 6.

App. 0287

upon files, correspondence, records, reports, documents and other data maintained at the Tidwell office location.[14]

## C. Preston Creates Rusk Capital

20.     Rusk Capital is an equity investment firm focusing on the purchase of oil and gas producing properties including from Idzig LLC. Preston is the sole owner and manager of Rusk Capital.[15] Rusk Capital was initially created with express knowledge of MarOpCo and its agents.

21.     The business of Rusk Capital includes gathering and analyzing information related to potential investors and investment opportunities concerning oil and gas producing properties.[16] As such, Rusk Capital maintains trade secrets, proprietary and confidential information at the Tidwell office location which includes, but is not limited to, all information related to actual and potential investors, data pertaining to investment opportunities, business strategies, investment strategies, business analysis, all communications with actual and potential investors, data evidencing due diligence with respect to investment opportunities, and employee records.[17]

22.     Rusk Capital has taken reasonable efforts to keep its trade secrets, confidential and proprietary information secret because it has actual or potential independent economic value to third parties and because it is not generally known to the public and not readily ascertainable from other means.

23.     The principal office of Rusk Capital is located at 7600 Tidwell Road, Suite 800, Houston, Texas 77040.[18] Preston purchased, used and/or relied upon computers, computer servers, and other equipment for purposes of conducting business as Rusk Capital at the Tidwell

---

[14] *Id.*
[15] *Id.* at ¶ 2.
[16] *Id.*
[17] *Id.* at ¶ 13.
[18] Ex. 2 at ¶ 5.

office.[19] For example, Preston spent over fourteen thousand dollars ($14,000.00) on behalf of Rusk Capital on computer equipment for Rusk Capital. Preston purchased a computer server (the "Rusk Server") on behalf of Rusk Capital in order to store data related to Rusk Capital and the Affected Entities.[20] Because MarOpCo's server had reached maximum capacity, was affected by frequent age-related hardware failures, out of date, and was unable to meet the demands of MarOpCo's business, Rusk Capital allowed MarOpCo to transfer files from the MarOpCo server to the Rusk Server.[21] Rusk Capital also permitted MarOpCo to continue to store data and information on the Rusk Server.[22] Additionally, Preston and/or Rusk Capital is the sole licensee of several software applications purchased for the use of Rusk Capital and the Affected Entities.[23] While Plaintiffs allowed MarOpCo use of some of these programs while Preston was a MarOpCo employee, MarOpCo has no right to utilize these programs anymore.[24] MarOpCo's old server was still in place at the Tidwell office on June 11, 2015.[25]

### D.    MarOpCo Was Aware of Rusk Capital and Allowed Other Officers to Operate Businesses from MarOpCo's Office.

24.    MarOpCo was aware of Rusk Capital, but never objected to Marshall's participation. In fact, in November and early December 2014, before offering the Employment Agreement, MarOpCo hired a consulting group to aid in setting Preston's salary in the Employment Agreement. One of the specific issues the consulting company noted and considered was Preston's participation in Rusk Capital.

---

[19] *Id.* at ¶ 8.
[20] *Id.*
[21] *Id.* at ¶ 10.
[22] *Id.*
[23] *Id.* at ¶ 9.
[24] *Id.*
[25] Ex. 2 at ¶ 10.

8

25.    MarOpCo represented that Preston and Pierce had identical Employment Agreements and would therefore be governed by the same set of rules and receive similar treatment.

26.    Pierce operated, and to this day operates, multiple businesses out of the MarOpCo Dallas office. For instance, Pierce operates Élevage Capital out of MarOpCo's offices. MarOpCo is well aware of Élevage Capital's presence in the MarOpCo office and Pierce's ownership of it. MarOpCo is also aware that Preston owns Rusk Capital. However, Pierce is still allowed to operate Élevage Capital, but MarOpCo is accusing Preston of breaching his duties by operating Rusk Capital.

27.    Additionally, MarOpCo's behavior is exacerbated by the fact that Pierce operated Élevage Capital for *years* before Preston created Rusk Capital. Preston, being aware that he was allegedly governed by the exact same rules and standards as Pierce, understood that his ownership of Rusk Capital was not a problem. After all, Edwin Hunter, as an agent of MarOpCo and/or MarOpCo's President, was an impetus behind Rusk Capital's creation.

**E.    MarOpCo Wrongfully Terminated Preston and Confiscated His Data and Belongings.**

28.    By correspondence dated May 22, 2015, the President of MarOpCo instructed Preston to consent to the transfer of funds related to various entities from one bank to another.[26] Preston would have no signatory authority on any newly established accounts and would no longer receive monthly statements on such accounts.[27]

29.    Preston complied with MarOpCo's instructions as to all entities with the exception of Ribosome LP ("Ribosome").[28]  Preston refused to consent to his removal from the

---

[26] Ex. 2  at ¶ 11.
[27] *Id.*
[28] *Id.*

9

Ribosome account as substantially all of the funds contained in the account belonged to Chondriosome Stiftung ("Chondriosome").[29]

30.    Preston is a member of the Foundation Council, the governing body of Chondriosome and, thus, acts as a fiduciary with respect to Chondriosome.[30]  As such, Preston has a fiduciary duty to monitor and manage the funds belonging to Chondriosome.[31]

31.    Agreeing to relinquish oversight of the funds belonging to Chondriosome would leave the Foundation Council without access to its funds and constitute an intentional breach of Preston's fiduciary duties owed to Chondriosome.[32]

32.    Preston was also instructed by the President of MarOpCo, in the same correspondence of May 22, 2015, to execute a prepared affidavit provided by MarOpCo for his signature.[33]  Preston refused to sign the affidavit as it contained false statements concerning Preston's relationship to various entities.[34]

33.    On June 11, 2015, Preston was notified in writing that his employment with MarOpCo was terminated effective immediately because he failed to execute documents as instructed.[35]  Preston was also informed that he no longer had access to the Tidwell office location.[36] The termination letter stated that Preston could have his job back if would agree to transfer the money that belonged to Chondriosome to MarOpCo's President.

34.    Additionally, MarOpCo directed the management company of the Tidwell office to deactivate all access entry cards in Preston's possession and to change the locks on the secured

---

[29] *Id.* A Stiftung is a fund endowed for a specific purpose under foreign law which is generally treated as a trust by the Internal Revenue Service.
[30] Ex. 2 at ¶ 12.
[31] *Id.*
[32] *Id.*
[33] *Id.* at ¶ 11.
[34] *Id.*
[35] Ex. 2 at ¶ 13.
[36] *Id.*

App. 0291

doors to Suite 800. Further, Rusk Capital's computer system and server were disconnected.

35.    Consequently, the computers, the Rusk Server, files (both physical and electronic), office equipment and furniture, as well as all confidential and proprietary information belonging to Rusk Capital were then in the possession of, and wrongfully controlled by, MarOpCo.[37]

36.    Similarly, all records, files, and data used and relied upon by Preston to carry out his personal affairs and to meet his fiduciary obligations with respect to the Affected Entities were removed from the Tidwell office and were then in the possession of, and wrongfully controlled by, MarOpCo.[38] This includes privileged documents and communications between Preston and his attorneys in Louisiana and other jurisdictions.

37.    Additionally, Pierce, an officer with MarOpCo, is an adverse party in two cases involving Preston in Texas and Louisiana.[39] Specifically, the case pending in Louisiana is Cause No. 2007-6723, In re Eleanor Pierce (Marshall) Stevens Living Trust, in the 14th Judicial District, Calcasieu Parish, Louisiana.[40] The case pending in Texas is Cause No. PR-15-00746-1, In re the Estate of Eleanor Pierce (Marshall) Stevens, in Probate Court No. 2, Dallas, County, Texas.[41] Electronic files related to these cases are stored on the Preston's computers and tangible documents were kept at the Tidwell office.[42] The files contain confidential attorney-client communications and documents protected by the work-product privilege.[43] Because of MarOpCo's wrongful possession and control, Pierce has availed himself of privileged

---

[37] Id. at ¶ 14.
[38] Id.
[39] Ex. 2 at ¶ 17.
[40] Id.
[41] Id.
[42] Id.
[43] Id.

11

information and impermissible, unwarranted, and improper discovery.[44] Pierce gained access to privileged communications between Preston and his attorneys. Pierce then published those communications in a public forum.

38.    Edwin Hunter and HHS aided Pierce in obtaining copies of Preston and Rusk Capital's private information by making copies of the servers and computers containing the private information.  As MarOpCo's attorneys responded to the Court in a hearing conducted on January 8, 2016, Edwin Hunter personally had taken an image of the Rusk Server and used data from the server:

> [MarOpCo's Counsel] To the extent that the Court has concerns about what is being done with the image, I understand that.   If you would like to order that the image be returned together with anything that was a product of it to our offices and held without being reviewed, I understand that.[45]

39.    Additionally, Defendants were on notice of the privileged information they misused. On June 30, 2015, counsel for Plaintiffs contacted counsel for MarOpCo and informed them that Pierce and Preston were adverse to one another in multiple lawsuits, including one in Calcasieu Parish. Counsel for Plaintiffs noted that Pierce should not use MarOpCo's access to the data and equipment as an opportunity to engage in improper discovery of Preston's information.[46] Counsel for MarOpCo responded by stating that Pierce is an attorney and would not engage in any inappropriate discovery.[47] Specifically, MarOpCo represented to Plaintiffs that:

> Please be advised that as a licensed attorney, MarOpCo VP Pierce Marshall needs no reminder concerning attorney/client privilege and has no intention of using for any improper purposes any files or documents relating to companies that Preston Marshall improperly operated out of MarOpCo's offices contrary to MarOpCo's CEO's express

---

[44] *Id.*
[45] Ex. 1, Reporter's Record from January 8, 2016, hearing at page 11, lines 3-8.
[46] Ex. 4, June 30, 2015, email from Fred Johnson to Susan Bickley.
[47] Ex. 5, July 1, 2015, letter from Susan Bickley to Fred Johnson.

instructions.  Our only desire is to return such items to your clients where MarOpCo and its representatives have no interest in them.[48]

40.     However, MarOpCo, Pierce, and their agents did not honor their obligations and representations. Instead, they worked to allow and ensure discovery of Plaintiffs' private and privileged information.  Additionally, Pierce's, the Hunter Parties', and MarOpCo's misuse of Preston's personal communications with his attorneys constitutes an invasion of Preston's right to privacy

41.     Additionally, as a result of MarOpCo's wrongful exercise of dominion and control over the personal and business property of Preston and the Affected Entities, including Rusk Capital, Defendants have or will cause harm to Preston, individually and in his fiduciary capacity to the Affected Entities.

42.     Marshall and Rusk Capital demanded in writing the immediate return of all property and assets belonging or pertaining to Marshall and Rusk Capital which were stored or located at 7600 W. Tidwell Road, Suite 800, Houston, Texas 77040 by 5:00 p.m. on Monday, June 22, 2015.[49]

43.     MarOpCo failed to return the property or allow Marshall to recover the tangible and electronic data, documents, and files pertaining to Rusk Capital and the Affected Entities. As such, this suit and application for immediate equitable relief followed.[50]

## VI.     <u>CAUSES OF ACTION</u>

### A.  Conversion.

44.     Plaintiffs here incorporate all preceding factual allegations in support of this cause of action.

---

[48] *Id.*
[49] Ex. 2 at ¶ 16.
[50] *Id.*

45.     Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the property of another, in a manner inconsistent with the owners' rights. Applied here, Plaintiffs owned or had possession of physical property located at the Tidwell office location, including a server, two computers, flash drives, and other electronic equipment and images. Defendants unlawfully and without authorization removed Plaintiffs' property from the Tidwell office, and assumed and exercised control over Plaintiffs' property in a manner that was inconsistent with Plaintiffs' rights as owners. Plaintiffs demanded the return of the property and Defendants failed to do so.

46.     Defendants have also, without right or permission, taken one or more electronic images of Plaintiffs' privileged email communications and transferred that image onto an external hard drive. Preston has either sole or joint right of possession of the image and the hard drive. Defendants have taken and used Preston's privileged email communications and the hard drive containing that information in a manner that is inconsistent with Preston's ownership rights and/or right to possession of the hard drive and all images of that data merged onto any external hard drive.

47.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed and damaged for which they now sue. Plaintiffs are entitled to injunctive relief, actual and exemplary damages, and reasonable attorneys' fees and costs.

**B.      Violation of the Texas Harmful Access by Computer Act Tex. Civ. Prac. & Rem. Code Ann. §§ 143.001-143.002.**

48.     Plaintiffs incorporate by reference all preceding factual allegations in support of this cause of action.

49.     Plaintiffs owned and/or operated a secure computer system (computers, servers, networks), which stores information that is only accessible by certain authorized individuals,

App. 0295

including Preston. Plaintiffs' computer system contains and stores, in part, records and documents containing confidential information concerning investment opportunities, potential investors, investment strategies, employees, and confidential attorney client information between Preston and his attorneys. Plaintiffs limited access to the computer system to certain executive and administrative employees of Rusk Capital. Defendants' access to any privileged information has been prevented by express agreement of the parties and Plaintiffs' prohibitions.

50.     Additionally, the secure computer system contains other privileged and confidential information regarding Preston, including documents protected by his right to privacy like attorney client privileged and work product documents as well as other privileged and confidential information ("Privileged Information").

51.     Nevertheless, Defendants knowingly accessed, disassembled, imaged and physically moved Plaintiffs' secure computer system and databases. This access and control was intentional, willful, and without Plaintiffs' consent. Moreover, Defendants wrongfully accessed Preston Marshall's Privileged Information and made an image of that information and copied the image onto an external hard drive.   Defendants have continued to use the Privileged Information and hard drive to Defendants' advantage and Preston Marshall's detriment, including by filing selections of the Privileged Information in open Court in Louisiana.

52.     Rusk Capital owns the server, computers, data and electronic equipment and systems at issue. Plaintiffs had repeatedly emphasized their objection and prohibition against Defendants accessing their private data. Defendants also agreed expressly not to access attorney client privilege information and to return all Privileged Information.   Despite these warnings prohibitions and agreements, Defendants knowingly accessed the server, computers, data and

15

electronic equipment and systems with an intent to harm Plaintiffs. Defendants' actions caused Plaintiffs harm.

53.     The foregoing conduct violates Chapter 33 of the Texas Penal Code, "Computer Crimes." The Harmful Access by Computer Act contained within section 143.001, et seq. of the Texas Civil Practice & Remedies Code provides a private civil cause of action for violation of Chapter 33 of the Texas Penal Code and entitles the Plaintiffs to actual damages, punitive damages, and reasonable attorneys' fees and costs. Plaintiffs therefore seek these damages against all Defendants.

**C.     Misappropriation of Trade Secrets Under the Texas Uniform Trade Secrets Act.**

54.     Plaintiffs' own all right, title and interest in their trade secrets and confidential and proprietary information. MarOpCo misappropriated the Plaintiffs' trade secrets through improper means in violation of sections 124A.001, et seq. of the Texas Civil Practice & Remedies Code. Specifically, MarOpCo knowingly obtained Plaintiffs' trade secrets and confidential and proprietary information by improper means when MarOpCo unlawfully exercised dominion and control over Plaintiffs' computer systems and secure databases, without authority or right. MarOpCo's conduct was done willfully and maliciously and has resulted in damage to Plaintiffs. As such, Plaintiffs are entitled to injunctive relief, actual and exemplary damages, pre and post-judgment interest, and court costs pursuant to Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.003.

**D.     Wrongful Discharge for Refusing to Commit an Illegal Act.**

55.     Preston was an at will employee who was terminated solely because he refused to commit an illegal act.  Specifically, it is a felony under section 32.45 of the Texas Penal Code for a person to intentionally or knowingly misapply property they hold as a fiduciary in a manner that

16

involves substantial risk of loss to the owner of the property.   Tex. Penal Code § 32.45.

56.     As such, MarOpCo's demand that Preston authorize the transfer of the Chondriosome's funds into a new account inaccessible by any member of the Chondriosome Foundation Council constituted a demand that Preston commit a misapplication of fiduciary property in violation of the Texas Penal Code that would subject Preston to criminal penalties, including imprisonment.

57.     Similarly, it is a violation of section 37.03 of the Texas Penal Code to make a false statement under oath in connection with an official proceeding.  Tex. Penal Code § 37.03.  The affidavit that Preston refused to sign was expressly related to the litigation described above.  A violation of section 37.03 of the Texas Penal Code is a felony that would subject Preston to criminal penalties, including imprisonment.

58.     Simply put, both instructions from MarOpCo to Preston on May 22, 2015, directed Preston to commit illegal acts.  Consequently, MarOpCo's termination of Preston's employment for his failure to execute the documents as directed violates the public policy exception to the employment at will doctrine established in *Sabine Pilot v. Hauck*, 687 S.W.2d 733 (Tex. 1987).

59.     Accordingly, Preston is entitled to reinstatement, actual damages, including back wages, benefits, and front pay, as well as compensatory damages and exemplary damages far in excess of the jurisdictional minimums of this Court.

**E.     Breach of Contract**

60.     Paragraph 5(a) of the Agreement required that MarOpCo pay Preston all of his accrued salary, benefits and personal time off if he was terminated without cause.[51]  Because MarOpCo failed to pay Preston in accordance with the terms of the Agreement following his termination, MarOpCo has breached the Agreement, which has resulted in damages to Preston.

---

[51] Ex. 3.

**F.      Tortious Interference with Existing Contracts**

61.      Additionally, Preston had existing contracts with certain Affected Entities that gave him authority to act on their behalf.  MarOpCo willfully and intentionally interfered with Preston's performance of such contracts by locking him out of the Tidwell office location and wrongfully denying him access to the computers, the Rusk Server, records, files and other data necessary to preform his required tasks on behalf of the Affected Entities.

62.      MarOpCo's intentional interference with Preston's performance of the contracts with the Affected Entities directly and proximately caused damages to Preston for which he now sues.

**G.      Tortious Interference with Business Relations**

63.      Preston had a continuing business relationship with Rusk Capital, Chondriosome and the Affected Entities.  MarOpCo intentionally interfered with Preston's continuing business relationships with these entities by locking him out of the Tidwell office and denying him access to the computers, the Rusk Server, records, documents and other data pertaining to those entities.

64.      MarOpCo's actions as described above were unlawful and constitute conversion, a violation of the Texas Harmful Access by Computer Act, and a misappropriation of trade secrets. Further, MarOpCo's unlawful conduct and interference proximately caused Preston to suffer actual damages or loss for which he now sues.

**H.      Business Disparagement**

65.      As noted above, MarOpCo informed the management company of the Tidwell office location that Preston had no basis to enter the Tidwell office and that he was to be denied access to the office.  MarOpCo clearly intended its communication to cast doubt on Preston's business interests and ownership of property at the Tidwell office.

App. 0299

66.     MarOpCo knew that its statements to the management company were false and were made with the intent to interfere with Preston's economic or business interests. MarOpCo's disparagement caused a direct economic loss to Preston, including out of pocket damages and a loss of goodwill.

**I.     Violation of Privacy Rights**

67.     Defendants violated Plaintiffs' privacy rights by knowingly taking possession of Plaintiffs' private data, including the Privileged Information, reviewing it, and using it to Preston's detriment. In the case of Preston, Defendants strategically searched Preston's privileged emails and then published those emails in a public forum. Preston has a right to seclusion and confidence regarding his communications with his attorneys. Additionally, Preston has a right to not have his private information publicly disclosed. Preston has been damaged by the invasion of privacy and seeks all available damages.

**J.     Trespass to Chattel**

68.     As outlined above, Defendants wrongfully interfered with Plaintiffs' use and possession of Plaintiffs' property. Defendants trespass has deprived Plaintiffs of use of the property for a substantial period of time. Defendants are currently depriving Plaintiffs of access to Plaintiffs' property. Defendants trespass damaged Plaintiffs.

69.     Plaintiffs seek recovery of their damages and injunctive relief.

**K.     Conspiracy**

70.     Defendants engaged in a conspiracy to gain wrongful access to Plaintiffs' computer equipment, to convert Preston's Privileged Information, and to violate Plaintiffs' privacy.

71.     Defendants had a meeting of the minds, took one or more overt acts towards

19

accomplishing their goal of gaining wrongful access to Plaintiffs' computer equipment, converting Preston's Privileged Information, and violating Plaintiffs' privacy. Plaintiffs were damaged as a result of this conspiracy.

## VII.   REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION

72.    Plaintiffs incorporate by reference all prior factual allegations in support of this verified petition for temporary and permanent injunctive relief.  Pursuant to Texas Civil Practice and Remedies Code sections 65.001 and 65.021 through 65.023, Plaintiffs seek a temporary and permanent injunction. Injunctive relief is sought for the purpose of maintaining the status quo and preventing additional interference with Plaintiffs' privacy, business relationships, computer equipment, and fiduciary duties.

73.    There is a substantial likelihood that the Plaintiffs will prevail on the merits of their claims against Defendants.  Unless Defendants are immediately restrained from accessing, using, disclosing, or destroying Plaintiffs' business and personal property and Preston's Privileged Information, Plaintiffs will suffer immediate and irreparable losses of their trade secrets and confidential and proprietary information and Privileged Information. Indeed, MarOpCo, Pierce, and MarOpCo's agents have been admittedly searching for and publishing Preston's privileged communications as they have stated in Pierce Marshall's Louisiana pleading. Plaintiffs are already suffering irreparable loss.

74.    Plaintiffs have no adequate remedy at law for the irreparable harm the Plaintiffs will suffer, which includes without limitation, loss of business opportunities, loss of goodwill and business reputation, loss of confidential and proprietary information, loss of privacy, and liability for breach of fiduciary duties. Money damages cannot adequately compensate Plaintiffs.

App. 0301

75.     The threat to Plaintiffs and the Affected Entities substantially outweighs the threat

of harm, if any, that MarOpCo would suffer by the granting of injunctive relief.

76.     Specifically, Plaintiffs request that the Court:

a.      Return and restore all of the Plaintiffs' property removed by MarOpCo
        from the Tidwell office location, including computers, the Rusk Server,
        documents, files, records, checks; checkbooks, and all information or
        documents pertaining to Preston and/or used and relied upon by Preston in
        connection with the following entities (the "Affected Companies") to the
        Tidwell office location:

        1.      Preston Marshall, individually;

        2.      Marshall Heritage Foundation (f/n/a Marshall Museum and
                Library);

        3.      Marshall Legacy Foundation;

        4.      Eleanor Pierce Stevens Foundation;

        5.      EPS/EPM Charitable Remainder Unitrust;

        6.      Eleanor Pierce (Marshall) Stevens Living Trust;

        7.      Eleanor Stevens Revocable Gift Trust;

        8.      Bettye Morgan Charitable Remainder Unitrust;

        9.      Bettye Morgan Supplemental Charitable Remainder
                Unitrust;

        10.     Ada Estes Charitable Remainder Unitrust;

        11.     Ada Estes Supplemental Charitable Remainder Unitrust;

        12.     Peroxisome Charitable Lead Trust;

        13.     Citrine Commerce L.L.C.;

        14.     Lysosome L.L.C.;

        15.     Chondriosome Stiftung;

        16.     Khozraschyot Capital Management L.L.C.;

        17.     Lednik Capital Management L.L.C.;

        18.     Glacier Holdings L.L.C.;

        19.     Rusk Capital Management LLC; and

        20.     CarTech Systems L.L.C.

b.      Order MarOpCo to allow the Plaintiffs access to the Plaintiffs' property,
        including but not limited to computers, the Rusk Server, documents, files,

21

records, checks, checkbooks, and all information or documents pertaining to Preston and/or used and relied upon by Preston in connection with the Affected Entities;

c.   Mandate that Defendants disclose by listing the date of copying and identification of the information, with reasonable specificity, all copies, files, documents and computer data that they have made from the property formerly located at the Tidwell office;

d.   Order MarOpCo to allow the Plaintiffs access to the property removed by MarOpCo from the Tidwell office location, including but not limited to computers, the Rusk Server, documents, files, records, checks, checkbooks, and all information or documents pertaining to Rusk Capital;

e.   Order MarOpCo to return the Rusk Server, two HP computers, and electronic flash drives to Plaintiffs;

f.   Order MarOpCo to return all originals and copies of the Rusk Server, two HP computers, electronic flash drives, and any other electronic storage devices to Susan Bickley or Chris Akin;

g.   Enjoin Defendants, and anyone acting by, through, or in concert with MarOpCo, from accessing, reviewing, publishing, referencing the contents of, or otherwise viewing or using any of Plaintiffs' privileged or potentially privileged documents contained on the Rusk Server or other computers and electronic equipment, and any electronic data images of any of their computer equipment, that MarOpCo and its agents took from Houston's MarOpCo address on Tidwell;

h.   Enjoin Defendants, and anyone acting by, through, or in concert with MarOpCo, from altering, destroying, concealing, or hiding any records, documents, papers, files, checks, or other property belonging or pertaining to Preston, Rusk Capital or the Affected Entities;

i.   Enjoin Defendants, and anyone acting by, through, or in concert with MarOpCo, from deleting, removing, or writing over in any respect any documents, computer files or data (including, emails, hard drives, flash drives, disc drives, and zip drives), or other electronic information relating in any way to Preston, Rusk Capital, or the Affected Entities;

j.   Enjoin Defendants, and anyone acting by, through, or in concert with Defendants, from disclosing, transmitting or otherwise using or disclosing for any purpose whatsoever any trade secrets, confidential and proprietary information, or other business information pertaining to or owned by Preston, Rusk Capital or the Affected Entities removed from the Tidwell office location;

k.     Enjoin Defendants, and anyone acting by, through, or in concert with Defendants, from disclosing, transmitting or otherwise using or disclosing for any purpose whatsoever any personal information, including all Privileged Information, used by or pertaining to Preston or relied upon by Preston in connection with the Affected Entities;

l.     Enjoin Defendants from using any of Preston's Privileged Information that Defendants removed from the Rusk Server or any work station at the Tidwell office, or any electronic or data images that any person made of the Rusk Server;

m.     Enjoin Defendants from using any of Preston Marshall's Privileged Information for any purpose, including any legal proceeding;

n.     Enjoin Defendants, and anyone acting by, through, or in concert with Defendants, from destroying, deleting, erasing, modifying or otherwise failing to preserve intact all information that originally came from the Tidwell office location used by or pertaining to Preston, Rusk Capital or the Affected Entities, and

o.     Mandate that Defendants return all of Preston Marshall's Privileged Information and copies of Privileged Information to Preston Marshall.

## VIII.   REQUEST FOR RELIEF AND FINAL JUDGMENT

The Plaintiffs respectfully request that this Court:

a.     set a temporary injunction hearing, and after the hearing, enter a temporary injunction as set forth above;

b.     after a trial on the merits, issue a permanent injunction as set forth above;

c.     award Preston all equitable relief to which he may be entitled, including reinstatement to his former position as Vice President of MarOpCo;

d.     award the Plaintiffs all actual, compensatory, consequential, and exemplary damages to which they are entitled;

e.     award the Plaintiffs attorneys' fees, court costs, and expenses incurred in this action;

e.     award prejudgment and post-judgment interest on the amounts awarded above at the highest rate allowed by law; and

f.     grant the Plaintiffs all other relief, in law or in equity, general or special, as this  Court deems proper and to which they may be justly entitled.

Respectfully submitted,

**DOBROWSKI, LARKIN & JOHNSON LLP**

By:     */s/ Paul J. Dobrowski*
        Paul J. Dobrowski
        SBN 05927100
        C. Davis Bradford
        SBN 24064939
        Akilah F. Craig
        SBN 24076194
        4601 Washington Ave., Suite 300
        Houston, TX 77007
        Telephone: (713) 659-2900
        Facsimile: (713) 659-2908
        pjd@doblaw.com
        dbradford@doblaw.com
        acraig@doblaw.com

**WARREN & SIUREK, L.L.P.**

By:     */s/ Mark Siurek*
        Mark Siurek
        TBA# 18447900
        msiurek@warrensiurek.com
        Patricia Haylon
        TBA# 09281925
        thaylon@warrensiurek.com
        3334 Richmond Avenue, Suite 100
        Houston, Texas 77098
        Telephone: (713) 522-0066
        Facsimile: (713) 522-9977

**CHAMBERS LAW GROUP**

By:     /s/ Jeffrey Chambers
        Jeffrey W. Chambers
        Bar No. 0475000
        jeffchambers@chambers-law-group.com
        2929 Allen Parkway, Suite 200
        Houston, Texas 77091
        Telephone: (713) 522-4529
        Facsimile: (713) 583-9684

**ATTORNEYS FOR PRESTON MARSHALL AND RUSK CAPITAL MANAGEMENT, LLC**

24

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record on this the 12th day of January, 2016, by mail, facsimile and/or electronic mail.

Barry Abrams
Susan Bickley
Blank Rome LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002

*/s/ Davis Bradford*
C. Davis Bradford

Motion for Protection
*January 8, 2016*

```
 1                    REPORTER'S RECORD
                    VOLUME 1 OF 1 VOLUMES
 2              TRIAL COURT CAUSE NO. 2015-35950

 3

 4  Preston Marshall,        ) IN THE DISTRICT COURT
    INDIVIDUALLY, ET AL      )
 5                           )
    vs.                      ) HARRIS COUNTY, TEXAS
 6                           )
    MAROPCO, INC.            ) 11th JUDICIAL DISTRICT
 7

 8

 9

10

11    _____

12                    MOTION FOR PROTECTION

13    _____

14

15

16

17

18

19      On the 8TH day of January, 2016, the following

20  proceedings came on to be held in the above-titled and

21  numbered cause before the Honorable Mike Miller, Judge

22  Presiding, held in Houston, Harris County, Texas.

23      Proceedings reported by computerized stenotype

24  machine.

25
```

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

Motion for Protection
*January 8, 2016*

2

```
 1                    APPEARANCES

 2
     Mr. Davis Bradford
 3   Ms. Akilah F. Craig
     Mr. Paul Dobrowski
 4   DOBROWSKI, LARKIN & JOHNSON
     4601 Washington Ave., 300
 5   Houston, Texas  77007
     Telephone:  713-659-2900
 6   Counsel for PLAINTIFFS

 7
     Mr. Jeff Chambers
 8   CHAMBERS LAW GROUP
     2929 Allen Parkway, #200
 9   Houston, Texas  77019
     Counsel for PLAINTIFFS
10

11
     Ms. Susan L. Bickley
12   BLANK ROME, LLP
     717 Texas Ave., #1400
13   Houston, Texas  770002
     Telephone:  713-228-6620
14   Counsel for DEFENDANT

15
     Mr. Christopher Akin
16   LYNN TILLOTSON PINKER & COX, LLP
     2100 Ross Avenue, #2700
17   Dallas, Texas  75201
     Counsel for DEFENDANT
18

19

20

21

22

23

24

25
```

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS  77002

EXHIBIT 1

App. 0308

3

Motion for Protection
*January 8, 2016*

```
 1                    P R O C E E D I N G S

 2

 3              THE COURT:  Tell me why this indicates

 4   that there was a disclosure.

 5              MS. CRAIG:  Yes, Your Honor.  What this

 6   motion actually is -- just to give you some background

 7   on it.  The attached e-mails between Preston Marshall

 8   and his attorney --

 9              THE COURT:  Let's do this.  We are on the

10   record now.  We have had a couple hour conversation

11   background about the case.  This was a status conference

12   I called to kind of follow-up on some motions that I

13   heard back in December, one of which in particular dealt

14   with Preston Marshall's desire to obtain a copy of the

15   server that was maintained here in the MarOpCo Houston

16   office.  It was taken, I guess, at the point in time

17   when he was -- when was it actually seized?

18              MS. CRAIG:  Preston Marshall was

19   terminated on June 11 and the locks were changed on

20   June 18.

21              THE COURT:  Anyway there is a server that

22   has been in great dispute since the beginning of the

23   case that involves information with probably 50 or more

24   entities and individuals.

25              MR. DOBROWSKI:  Yes, Your Honor.
```

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

App. 0309

4

Motion for Protection
*January 8, 2016*

1              THE COURT:  Just a tremendous compilation

2    of information e-mails, personal financial records,

3    attorney/client communications, just a huge amount of

4    information regarding the members of the Marshall family

5    and all -- multiple entities they're involved with.

6    From a practical standpoint the issue has been how do

7    you separate it out now that MarOpCo has terminated Mr.

8    Marshall.  I have been getting background regarding the

9    case to try to figure out what to do about all of this.

10   Information that the -- the history of the server.

11             I will say, frankly, based upon the

12   history of the company and how the offices have been set

13   up and who did what, I have kind of ended up coming

14   around to the notion it is probably impossible to

15   effectively separate it all out in a fashion that

16   everyone would agree to.  Given the circumstances and

17   the history of Preston Marshall with MarOpCo and the

18   type of company MarOpCo was, just the details factually

19   of what everybody did and the companies did and how the

20   money was distributed, I am not seeing any real harm to

21   basically giving Preston Marshall a complete copy of the

22   server.  Each side to get a complete copy of the server

23   I think is what is reasonable under these circumstances.

24             Meanwhile it has come to my attention

25   today, it had been pointed out earlier by the MarOpCo

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS  77002

EXHIBIT 1

5

Motion for Protection
*January 8, 2016*

1   attorneys there is attorney/client privileged

2   information on there from prior litigation that MarOpCo

3   has been involved with.  I think you specifically

4   mentioned an Edwin Hunter.  I guess perhaps there was

5   attorney/client communications with him concerning prior

6   and maybe even ongoing MarOpCo litigation.  It would be

7   privileged to MarOpCo.

8          Then there was also an issue that was

9   raised in the December Motion to Compel.  Preston

10  Marshall has sought the communications e-mails between

11  Pierce Marshall, Junior and Elaine or others regarding

12  Preston regarding the basic termination issues involved

13  in the case.  There was an assertion of privilege by

14  MarOpCo because Pierce Marshall, Junior is an attorney,

15  general counsel, I guess, for MarOpCo.  The notion was

16  that some of those communications from him or to him

17  could be privileged, attorney/client privilege and

18  therefore those had been withheld.  I didn't rule on

19  that one way or the other back in December.  I think

20  there has been a privilege log created and there was

21  some argument about the adequacy of the privilege log,

22  and I didn't really ever deal with that.

23          Those issues existed previously and then

24  it was brought to my attention today that apparently

25  Preston Marshall believes -- I guess there is not a

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

6

Motion for Protection
*January 8, 2016*

1   dispute about it at this point.  Apparently there is

2   ongoing litigation between Preston and Pierce, Junior in

3   Louisiana currently; is that correct?

4               MR. CHAMBERS:  Yes, Your Honor, it is.

5               THE COURT:  Does Edwin Hunter represent

6   Pierce, Junior in that litigation?

7               MR. CHAMBERS:  Edwin Hunter is involved in

8   the litigation.  He has shown up to hearings in the

9   litigation.  He is not counsel of record in the case as

10  far as I know.  Mr. Michael Wright who the Court can see

11  in the communications before you between Preston and

12  Mr. Wright was Preston's attorney in the litigation in

13  Louisiana.  The very specific communications between

14  attorney and client are what has been revealed in

15  Louisiana.

16              THE COURT:  From what I have heard

17  apparently MarOpCo agrees that at some point after the,

18  I am going to call it the seizure of the server in

19  question, that it is agreed that there was a mirror

20  image of that entire server that was made by this lawyer

21  in Louisiana, Edwin Hunter.  He is now in possession of

22  that; is that correct?  I am not saying who did it or

23  how it happened.

24              MR. AKIN:  That is what we have been told.

25  Yes.

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

Motion for Protection
*January 8, 2016*

```
 1              THE COURT:  It is undisputed that
 2   apparently Mr. Hunter, who is involved in some capacity
 3   in this litigation in Louisiana against Preston, got a
 4   complete copy in essence from MarOpCo.  I don't know who
 5   did it or how it happened, but somehow, some way he did
 6   get a copy.  Preston Marshall's communications by e-mail
 7   with his attorney in the Louisiana litigation were on
 8   that server.  The lawyer's name is Michael Wright?
 9              MR. CHAMBERS:  Kenneth Michael Wright, I
10   believe, Your Honor.
11              THE COURT:  Apparently yesterday a motion
12   was filed or something happened in this litigation in
13   Louisiana where the attorney/client privileged
14   communications between Preston and his Louisiana lawyer
15   were used in that litigation in some form or fashion.
16   We not only have a disclosure of privileged
17   communications between Preston and his lawyer through
18   Edwin Hunter receiving a copy of the server, those
19   communications in some form or fashion have actually
20   been used and disclosed in pleadings in the Louisiana
21   case.
22              Preston Marshall obviously is very
23   concerned about that and so there has been a request --
24   I want you to articulate the request.  What do you want
25   me to do about it today?
```

EXHIBIT 1

Motion for Protection
*January 8, 2016*

1          MR. CHAMBERS:  Your Honor, we would like

2     you to order them to not further disseminate any

3     attorney/client information of Preston Marshall and to

4     not review it.  I will leave to the Court's discretion

5     whether Mr. Hunter's firm should be allowed to even

6     review the information at all at that point because

7     they're clearly looking for things to use in litigation

8     against Mr. Marshall.  To determine what is privileged

9     and what is not, they're going to have to get it in

10    their head it is -- how do you get the genie back in the

11    bottle problem.

12          We have no problem with these lawyers, Ms.

13    Bickley having full access to the server.  But we would

14    like to ask in addition that Mr. Hunter not be able to

15    review any more and be ordered to give back his copy of

16    this.  He is an attorney licensed to practice law at

17    least I am told that he is in Texas as well as

18    Louisiana.  The Court can order him in that capacity.

19    They have also been here.  The testimony of Carla Coble

20    is it was his office, Hunter Sonnier, that prepared her

21    affidavit.  They have been very involved in this.

22          THE COURT:  Mr. Hunter, as I understand

23    it, is a long time lawyer that has represented MarOpCo,

24    I guess, in the past?

25          MS. BICKLEY:  The Marshall family is more

EXHIBIT 1

Motion for Protection
*January 8, 2016*

1   accurate.

2          MR. DOBROWSKI:  Judge, in addition to that

3   we would like to have them return any information that

4   has been disseminated to others forthwith.  In other

5   words, any of the attorney/client communications between

6   Mr. Preston Marshall and his attorneys be returned

7   forthwith to Miss Bickley's office and not to be further

8   disseminated.

9          THE COURT:  You also asked for a complete

10  copy of the server.

11          MR. DOBROWSKI:  We did, Your Honor.  I

12  thought he mentioned that at the beginning of your

13  statement.  I didn't hear it correctly.  We are asking

14  for a complete copy of the server that they have in

15  their possession and have had since his termination.

16          THE COURT:  What do we do about the fact

17  -- I guess -- let's articulate this on the record.  As

18  you said, you don't have a problem with Miss Bickley

19  having the server even understanding that there is --

20  you, Miss Bickley, you represent Pierce in this case

21  individually?

22          MS. BICKLEY:  No.  We represent MarOpCo.

23  Pierce is not a party in this litigation.

24          THE COURT:  Understanding that --

25  obviously no matter who on their side has a copy of the

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS  77002

EXHIBIT 1

Motion for Protection
*January 8, 2016*

1   server, those e-mails are on there.  What you end up

2   having to do is acknowledge that somebody will be

3   trusted to have possession of the server, even though

4   there is privileged e-mails on there regarding this

5   other litigation.

6            The notion is that as an officer of the

7   court, there is a responsibility not to look at those

8   communications, not to use them, not to read them.  At

9   some point, I guess, we end up having to trust people to

10  do that.  My point is you are also asking for a complete

11  copy of everything on that server including whatever

12  attorney/client communications have occurred between

13  Pierce and MarOpCo, between Edwin Hunter and MarOpCo

14  previously that you likewise would be obligated not to

15  read or use.

16            MR. DOBROWSKI:  Correct.  Yes, Your Honor.

17  We fully understand our obligations under the Texas

18  disciplinary and --

19            THE COURT:  Somebody is going to have

20  possession of the server which makes it theoretically

21  possible that they can access these privileged

22  communications.  What do we do?

23            MS. BICKLEY:  May I weigh in on this, Your

24  Honor?  I know Mr. Akin would like to as well.  First of

25  all, I see two separate issues, one of which we have

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS  77002

EXHIBIT 1

1   tremendous legal problems with and another that we

2   don't.

3           To the extent that the Court has concerns

4   about what is being done with the image, I understand

5   that.  If you would like to order that the image be

6   returned together with anything that was a product of it

7   to our office and held without being reviewed, I

8   understand that.  The party, MarOpCo, Inc., is being

9   ordered not to use, access --

10          THE COURT:  You don't want to give them a

11  copy.  I am not suggesting that is wrong, but that is

12  what you are getting to.

13          MS. BICKLEY:  Yes, exactly.  Under the In

14  Re Weekley Homes case and its progeny, whenever direct

15  access to electronic documents and files is to be

16  ordered or a copy of an image of a server or any work

17  station or computer is to be made, there is a tremendous

18  amount of procedural safeguards that have to be done and

19  threshold things that have to have happened.  None of

20  those things have occurred.  We haven't had a hearing,

21  been noticed, given an opportunity to raise our

22  objections to those issues.  We are not even --

23          There is sort of a two step process under

24  the In Re Weekley Homes framework.  Threshold has to be

25  met to even allow electronic discovery.  Then how the

EXHIBIT 1

Motion for Protection
*January 8, 2016*

1    Court orders the electronic discovery to be produced has

2    to be under In Re Weekley Homes either severe, certain

3    restrictions including privilege, opportunity for

4    privilege objections and confidential information, trade

5    secrets and other things to be protected.  If we both

6    have a copy of a server that has both of our

7    confidential information, trade secrets, attorney/client

8    communications on it that doesn't protect it in that

9    way.

10             That said, we are willing to provide it to

11   CyperEvidence.  Perhaps that is the way to do it.

12             THE COURT:  That gets back to why -- to

13   me, either nobody should have it or you should both have

14   it, one of the two.  This isn't an In Re Weekley

15   situation where somebody is making a general discovery

16   request.  It is kind of unique given the facts of this

17   case.

18             This was teed up in December.  There was a

19   Motion to Compel.  You filed a response with all the

20   exhibits and so forth.  I think it is ripe to be

21   determined.

22             I am just trying to -- the CyperEvidence

23   thing hasn't been working.  It is never going to get

24   separated out effectively.  I can look at it --

25             First of all, yes, and I have made it

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

13

Motion for Protection
*January 8, 2016*

```
1   clear Mr. Hunter, the Louisiana lawyers, the whole world
2   is ordered not to use, disclose, read in any form or
3   fashion anything -- frankly, at this point anything on
4   that server because obviously they have been very
5   irresponsible in what they have done with it so far.  I
6   have zero reason to trust them.  Mr. Hunter is ordered
7   or whoever has that server, that mirror image has to
8   return it, not keep a copy, it has been abused.  I have
9   no reason to allow him access to the server or any
10  portion of the server.  They can't look at it any
11  longer, read it, use it.  It has to be returned.  They
12  can't keep a copy.  If it ever surfaces again, there is
13  going to be hell to pay.  It needs to be returned to
14  Miss Bickley.  We kind of agreed on that.
15              MR. AKIN:  I actually wanted to weigh in
16  on that.  My only question is why can't we just have a
17  simple privilege screen done first.
18              MS. BICKLEY:  He is just talking about
19  returning it to me first.  I don't know that there has
20  been a subsequent order --
21              THE COURT:  We are going to get it back.
22  You can get a copy of this.  You send it to every lawyer
23  immediately.  It is like a cease and desist order.  It
24  is a very firm order to the extent I have it.  If he has
25  a Texas license then I have control over what he does.
```

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS  77002

EXHIBIT 1

Motion for Protection
*January 8, 2016*

1    But be that as it may, it is as clear as I can make it

2    in terms of any further use of anything on there.

3              MR. DOBROWSKI:  With respect to that, if

4    it is returned to Miss Bickley it is with the full and

5    distinct understanding that neither she nor anyone in

6    her office or Mr. Akin's office will review any of the

7    privileged communications between Mr. Preston Marshall

8    and his attorneys.

9              THE COURT:  Right, Miss Bickley?

10             MS. BICKLEY:  Absolutely.  If we are going

11   to hold it, we would hold it without reviewing it.

12             THE COURT:  We have done that part.

13             MR. CHAMBERS:  May I add one thing, Your

14   Honor?  The cat is kind of out of the bag at this point

15   in Louisiana.  The Court can order them to use their

16   best efforts to retrieve the things and the Court had

17   mentioned that as one of the things before we went on

18   the record.

19             THE COURT:  I am happy to order -- what in

20   essence I am ordering is a claw back.  Under Texas rules

21   if you inadvertently, and I understand you-all's

22   position is it wasn't inadvertent.  The point is we have

23   a mechanism under our Rules certainly if it is for

24   inadvertent disclosure it would apply to intentional

25   disclosure.  So I will order -- based upon the Texas

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

Motion for Protection
*January 8, 2016*

1   claw back provisions for privileged material, in essence

2   that is exactly what I am ordering.  That it be clawed

3   back, not used, withdrawn, not relied upon in any form

4   or fashion in any litigation anywhere.  To the fullest

5   extent of the authority granted by those claw back

6   provisions, I order that.

7           MR. CHAMBERS:  Your Honor, one additional

8   fact.  Pierce Marshall, Junior is a party in the

9   Louisiana litigation or a person with interest in the

10  Louisiana litigation.  He has also represented to the

11  Court through his attorneys that he is the general

12  counsel of MarOpCo.  He is before the Court also.  As a

13  party, if there is some wrinkle somebody is going to use

14  and say, Oh, well, Edwin is not the counsel, Edwin

15  Hunter is not the counsel here.

16          THE COURT:  I said not only Mr. Hunter,

17  anybody on the planet.  That include Pierce, Junior.

18  That includes any other lawyers representing Pierce,

19  Junior in Louisiana.  There is no exception in terms of

20  everything we have ordered.  No ifs, ands or buts with

21  regard to looking at any of that information.

22          MR. CHAMBERS:  And retrieving it?

23          THE COURT:  And retrieving it.  That is on

24  the record.

25          MR. CHAMBERS:  From the court?

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

16

Motion for Protection
*January 8, 2016*

```
 1            THE COURT:  Yes.
 2            Now let's talk about going forward.  Kind
 3  of my knee jerk reaction is, as I said before, everybody
 4  ought to get a copy of it.  That may create more
 5  problems than what it solves.  Then you are going to be
 6  back up to the Court of Appeals again.  Maybe the thing
 7  to do is get it back to Miss Bickley, screen it for all
 8  the attorney/client privilege.  After that has been
 9  screened and removed, then you get a mirror copy of what
10  is left.
11            We will do things one step at a time.  We
12  will do the filter first.  As I said my kind of
13  inclination is once that is done, that both sides ought
14  to have a complete copy.  I don't know you are ever
15  going to separate it out.  Meanwhile they don't have
16  access to this stuff.
17            Let's do one step at a time.  We are going
18  to filter it.  We need to do this stuff quickly.  I
19  don't know how long it takes to do something like that.
20  They need -- all this needs to happen within the next
21  couple of weeks.  I don't know how fast these guys work.
22  I want to create timelines for this stuff.
23            MS. BICKLEY:  Exactly.
24            THE COURT:  I will let you think about it.
25  Like I said, my default position is going to be to give
```

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

Motion for Protection
*January 8, 2016*

1  them a copy of everything else.  If there is something

2  on there that can be carved out easily.  If there is

3  some -- I can't imagine what it is he doesn't already

4  know by virtue of the family business of Elaine's

5  private stuff or whatever.  If there is something simple

6  you can carve out that you don't think they ought to

7  have access to it anymore, I will hear it.  Beyond that,

8  I think it is too difficult to do.

9           That is going to be kind of my default

10 position.  In a subsequent hearing after this filtering

11 has been done articulate something else that you believe

12 can be carved out in short order, within a week or two

13 before it is returned, I will listen to you.  That order

14 isn't being issued today.  I am not making that ultimate

15 decision that they get a copy of everything else today.

16 I am very much inclined to do that.  The timeline will

17 be -- I am just -- this is very arbitrary.  I don't know

18 how long this filtering takes.  A week?  Two weeks?  A

19 month?

20           MR. DOBROWSKI:  They already know --

21           THE COURT:  How long?

22           MR. DOBROWSKI:  I would say, Your Honor,

23 it would take them a week but give them two.

24           MS. BICKLEY:  There is something else that

25 we need to weigh in on with respect to the filtering.

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS  77002

EXHIBIT 1

18

Motion for Protection
*January 8, 2016*

1  We have been meeting with the CyperEvidence people.

2  What the Court is considering doing we have already

3  obtained advice about collectively.  CyberEvidence has

4  told us what they need to do a privilege filter is a

5  list from each of us of all of the e-mail domains for

6  the law firms that are representing each side in a

7  variety of different capacities and e-mail addresses.

8           We have been waiting on that to run the

9  filter on the CyperEvidence thing.  We don't have a

10  problem with once we are in the position that both sides

11  have provided the e-mail addresses of their counsel and

12  e-mail --

13           THE COURT:  How long will it take?

14           MS. BICKLEY:  I think that is a push

15  button thing pretty much.  I think they need a little

16  more.  It is just that CyberEvidence does it.  We don't

17  do it.  So I don't know.

18           THE COURT:  Who is your guru for that?

19           MS. CRAIG:  Kind of.  Basically the

20  conversation we have had with CyperEvidence as Miss

21  Bickley represented everybody gives them the name of

22  their counsel and they can pretty easily filter out the

23  attorney/client privilege.

24           THE COURT:  By when would we have

25  accomplished that part?

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

Motion for Protection
*January 8, 2016*

```
 1              MS. BICKLEY:  Two weeks.
 2              THE COURT:  No.  No.  No.  I am breaking
 3   this down.  How soon do you get them the domain names
 4   and e-mails?
 5              MR. DOBROWSKI:  Wednesday of next week,
 6   Judge.
 7              THE COURT:  Is that doable for both sides?
 8   Wednesday of next week you exchange that information.
 9   Then we will give them two weeks to complete that
10   process.  Two weeks from today they have to complete
11   that process.
12              MR. DOBROWSKI:  Once that is filtered out,
13   Your Honor, then we should be given a copy of what is
14   left absent -- copy of what is left.  If there is
15   something that Miss Bickley wants to carve out, as you
16   say, all we ask is she notify us so we can bring it to
17   the Court.
18              THE COURT:  You will have to have a
19   conversation before it is carved out.  If you can reach
20   an agreement on what she thinks should be carved out and
21   how that is going to be done, that is fine.  Notify
22   them.
23              I guess what we ought to do is within that
24   same two weeks period you need to determine whether or
25   not there is something that you want to and can carve
```

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

Motion for Protection
*January 8, 2016*

1  out within that same short time -- not within that two

2  weeks.  I don't know.  You have been at this quite a

3  while.

4            MS. BICKLEY:  I will be happy to give you

5  the insight that I have got from this.  What we were

6  talking about with CyperEvidence was that for purposes

7  and what we were doing is for purposes of segregating

8  the information, once the privilege screen is run using

9  the information that we both contribute, then what we

10  were talking about doing is giving each side a

11  searchable database of the remaining non-screened out

12  data for an attorney eye's only review.  Meaning that if

13  it was attorneys eyes' only at that point, it would

14  prevent any sort of privileged and confidential

15  information from being disseminated at that point or

16  used in litigation.

17            Then moving forward, if it was something

18  now that we are talking about it using more as a

19  discovery device not as a separation of the data device,

20  perhaps we can reach an agreement for a protocol for

21  what goes forward after that.

22            MR. DOBROWSKI:  Judge, we are six weeks

23  down the road.  Eight weeks down the road.

24            THE COURT:  I would have thought we would

25  have already finished all that by now.

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS  77002

EXHIBIT 1

21

Motion for Protection
*January 8, 2016*

1        MS. BICKLEY:  I agree, Your Honor.

2        MR. DOBROWSKI:  So do we.

3        THE COURT:  Like I said, my inclination

4    given all the back and take and the history of the

5    company is just to let everybody -- if I can't easily

6    figure out a way of doing this and we haven't made any

7    progress so far, then what I am inclined to do is say

8    you know what, each side gets a complete copy of

9    everything left after the filter.  If it is a In Re

10   Weekley problem, then it becomes your problem to defend.

11   If you think you can defend it, I will give you the

12   opportunity to do so.  If you don't think you can defend

13   it or they tell you it is not defensible, then we go

14   back to the drawing board and try to figure out how to

15   carve it out.

16        Given the length of time that has gone by

17   and the incredible web of entities and everything else,

18   I am not seeing a doable separation.  I will give you

19   the opportunity if you can reach an agreement to carve

20   out something quickly.  If you can't reach an agreement

21   or whatever, then I will go ahead and give it to you.

22   You are the one that has to uphold it.

23        MR. DOBROWSKI:  We understand, Your Honor.

24   Thank you.

25        THE COURT:  That is where I am at at this

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

App. 0327

Motion for Protection
*January 8, 2016*

1   point.  It seems to me we ought to be able to do all

2   that in two weeks.  Let's get that done in two weeks.

3              Let's plan on another -- I am --

4   tentatively plan on being back here at 9:30 two weeks

5   from today.

6              MR. DOBROWSKI:  The 22nd?

7              THE COURT:  Yes.

8              MS. BICKLEY:  I have an out of town

9   conflict on the 22nd.

10              THE COURT:  Let's plan -- I am pretty sure

11   I have got a couple of week long case starting the 19th,

12   which would be a problem for any date within those two

13   weeks.  That is why I said tentative.  Let's schedule it

14   for -- Monday will be the 25th.  Let's schedule it for

15   Tuesday morning the 26th at 9:00 o'clock.  If I am in

16   trial, I may have to cancel.  We will do it then.  That

17   gives you the full two weeks plus a weekend to see what

18   you can come up with.

19              MR. DOBROWSKI:  That is the 26th, Judge.

20   That is a Tuesday.

21              THE COURT:  At 9:00 o'clock.  I may have

22   to cancel it if I am in trial.  But we will cross our

23   fingers.  What we are accomplishing by then is the

24   filter and hopefully an agreement on producing what is

25   left and then we will see where we are at.  With the

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

Motion for Protection
*January 8, 2016*

1  understanding I am inclined to give them everything else

2  that is left if you can't reach an agreement on carving

3  out something that is easy and obvious.  If MarOpCo

4  can't live with it, we will let the Court of Appeals

5  deal with it.

6          MS. BICKLEY:  As far as providing the

7  filtering information, we will provide that by next

8  Wednesday.

9          MR. DOBROWSKI:  Yes.

10          MR. BRADFORD:  Your Honor, maybe one week

11  before the 26th get the information they would like to

12  carve out before we get to the hearing?  Just so we have

13  time to respond to it before we get to the hearing.  I

14  would like to be able to resolve it.

15          THE COURT:  The carve out stuff -- if

16  there is something you want to carve out, give it to

17  them by -- the 20th would be Wednesday of the following

18  week?  If there is something you want to carve out or

19  some proposal you want to make, give it to him by the

20  20th.

21          MS. BICKLEY:  This is to carve out

22  something other than the privilege stuff?

23          THE COURT:  Right.  All the remaining

24  issues -- once we put the privilege material back in the

25  jar, we will need some detailed privilege logs and we

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

24

Motion for Protection
*January 8, 2016*

1  can talk about what we need to do to go through those

2  and determine which I can agree are privileged or not.

3  We will leave that for then.

4        I know you had asked me to deal with the

5  privilege assertions they have made with regard to

6  Pierce.  Once we have everything back in the bottle then

7  we will include that in there.

8        MR. DOBROWSKI:  We understand, Your Honor,

9  and I think that makes the most sense.

10        THE COURT:  Good luck.

11        MR. CHAMBERS:  Your Honor, I think it is

12  undisputed between the parties from the argument I heard

13  earlier that the physical server that is at

14  CyperEvidence belongs to Preston, it is his.

15        MS. BICKLEY:  No.  That is not undisputed.

16        MR. CHAMBERS:  Preston would like his

17  server back.  He paid for it.

18        THE COURT:  Can't afford another one?

19        MR. DOBROWSKI:  We will bring that back to

20  your attention.

21        THE COURT:  If there is a dispute I guess

22  we will have to wait.  You may have to go out there and

23  buy him a new server.

24        (HEARING CONCLUDED)

25

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

25

Motion for Protection
*January 8, 2016*

1   STATE   OF   TEXAS:

2   COUNTY OF HARRIS:

3

4       I, Terri W. Anderson, Official Court Reporter in

5   and for the 11th District Court of Harris, State of

6   Texas, do hereby certify that the above and foregoing

7   contains a true and correct transcription of all

8   portions of evidence and other proceedings requested in

9   writing by counsel for the parties to be included in

10  this volume of the Reporter's Record in the above-styled

11  and numbered cause, all of which occurred in open court

12  or in chambers and were reported by me.

13      I further certify that this Reporter's Record of the

14  proceedings truly and correctly reflects the exhibits,

15  if any, offered by the respective parties.

16      I further certify that the total cost for the

17  preparation of this Reporter's Record is $_____ and

18  was paid/will be paid by _____.

19

20                              _____

21                              Terri W. Anderson, CSR
                                Texas CSR 877
22                              Official Court Reporter
                                11th District Court
23                              Harris County, Texas
                                201 Caroline, #945
24                              Houston, Texas 77002
                                Telephone:  713-368-6030
25                              Expiration:  12/31/16


TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002


EXHIBIT 1

App. 0331

Word Index - Motion for Protection - p. 1

**1**

11 [1]  3/19
11th [3]  1/6 25/5 25/22
12/31/16 [1]  25/24
1400 [1]  2/12
16 [1]  25/24
18 [1]  3/20
19th [1]  22/11

**2**

200 [1]  2/8
201 [1]  25/23
2015-35950 [1]  1/2
2016 [1]  1/19
20th [2]  23/17 23/20
2100 [1]  2/16
22nd [2]  22/6 22/9
25th [1]  22/14
26th [3]  22/15 22/19 23/11
2700 [1]  2/16
2900 [1]  2/5
2929 [1]  2/8

**3**

300 [1]  2/4
35950 [1]  1/2

**4**

4601 [1]  2/4

**5**

50 [1]  3/23

**6**

6030 [1]  25/24
6620 [1]  2/13

**7**

713-228-6620 [1]  2/13
713-368-6030 [1]  25/24
713-659-2900 [1]  2/5
717 [1]  2/12
75201 [1]  2/17
770002 [1]  2/13
77002 [1]  25/23
77007 [1]  2/5
77019 [1]  2/9

**8**

877 [1]  25/21
8TH [1]  1/19

**9**

945 [1]  25/23
9:00 o'clock [2]  22/15 22/21
9:30 [1]  22/4

**A**

able [3]  8/14 22/1 23/14
about [16]  3/11 4/9 5/21 6/1 7/23 7/25
 9/16 11/4 13/18 16/2 16/24 18/3 20/6
 20/10 20/18 24/1
above [3]  1/20 25/6 25/10
above-styled [1]  25/10
above-titled [1]  1/20
absent [1]  19/14
Absolutely [1]  14/10

abused [1]  13/8
access [7]  8/13 10/21 11/9 11/15 13/9
 16/16 17/7
accomplished [1]  18/25
accomplishing [1]  22/23
accurate [1]  9/1
acknowledge [1]  10/2
actually [4]  3/6 3/17 7/19 13/15
add [1]  14/13
addition [2]  8/14 9/2
additional [1]  15/7
addresses [2]  18/7 18/11
adequacy [1]  5/21
advice [1]  18/3
affidavit [1]  8/21
afford [1]  24/18
after [5]  6/17 16/8 17/10 20/21 21/9
again [2]  13/12 16/6
against [2]  7/3 8/8
agree [3]  4/16 21/1 24/2
agreed [2]  6/19 13/14
agreement [6]  19/20 20/20 21/19
 21/20 22/24 24/2
agrees [1]  6/17
ahead [1]  21/21
Akilah [1]  2/3
Akin [2]  2/15 10/24
Akin's [1]  14/6
AL [1]  1/4
all [17]  4/5 4/9 4/15 8/6 10/25 12/19
 12/25 16/7 16/20 18/5 19/16 20/25
 21/4 22/1 23/23 25/7 25/11
all's [1]  14/21
Allen [1]  2/8
allow [2]  11/25 13/9
allowed [1]  8/5
already [4]  17/3 17/20 18/2 20/25
also [6]  5/8 8/19 9/9 10/10 15/10 15/12
am [21]  4/20 6/18 6/22 8/17 11/11
 12/22 14/19 14/20 15/2 17/14 17/16
 17/17 19/2 21/7 21/18 21/25 22/3
 22/10 22/15 22/22 23/1
amount [2]  4/3 11/18
Anderson [2]  25/4 25/20
ands [1]  15/20
another [3]  11/1 22/3 24/18
any [19]  4/20 8/2 8/15 9/3 9/5 11/16
 13/2 13/9 13/10 14/2 14/6 15/3 15/4
 15/18 15/21 20/14 21/6 22/12 25/15
anybody [1]  15/17
anymore [1]  17/7
anyone [1]  14/5
anything [4]  11/6 13/3 13/3 14/2
Anyway [1]  3/21
anywhere [1]  15/4
apparently [5]  5/24 6/1 6/17 7/2 7/11
Appeals [2]  16/6 23/4
APPEARANCES [1]  2/1
apply [1]  14/24
arbitrary [1]  17/17
are [21]  3/9 6/14 9/13 10/1 10/10 11/12
 11/22 12/10 13/21 14/10 16/5 16/14
 16/17 18/6 18/10 20/18 20/22 21/22
 22/23 22/25 24/2
argument [2]  5/21 24/12
around [1]  4/14
articulate [3]  7/24 9/17 17/11

as [21]  6/9 6/10 8/17 8/17 8/22 9/17
 10/6 10/24 14/1 14/1 14/1 14/17 15/12
 16/3 16/12 18/20 19/15 20/18 20/19
 23/6 23/6
ask [2]  8/14 19/16
asked [2]  9/9 24/4
asking [2]  9/13 10/10
assertion [1]  5/13
assertions [1]  24/5
attached [1]  3/7
attention [3]  4/24 5/24 24/20
attorney [18]  3/8 4/3 5/1 5/5 5/14 5/17
 6/12 6/14 7/7 7/13 8/3 8/16 9/5 10/12
 12/7 16/8 18/23 20/12
attorney/client [11]  4/3 5/1 5/5 5/17
 7/13 8/3 9/5 10/12 12/7 16/8 18/23
attorneys [5]  5/1 9/6 14/8 15/11 20/13
authority [1]  15/5
Ave [2]  2/4 2/12
Avenue [1]  2/16

**B**

back [19]  3/13 5/19 8/10 8/15 12/12
 13/21 14/20 15/1 15/3 15/5 16/6 16/7
 21/4 21/14 22/4 23/24 24/6 24/17
 24/19
background [3]  3/6 3/11 4/8
bag [1]  14/14
based [2]  4/11 14/25
basic [1]  5/12
basically [2]  4/21 18/19
be [41]
because [3]  5/14 8/6 13/4
becomes [1]  21/10
been [25]  3/22 4/6 4/8 4/12 4/25 5/3
 5/18 5/20 6/14 6/24 7/20 7/23 8/19
 8/21 9/4 11/21 12/23 13/4 13/8 13/20
 16/8 17/11 18/1 18/8 20/2
before [10]  1/21 6/11 14/17 15/12 16/3
 17/13 19/19 23/11 23/12 23/13
beginning [2]  3/22 9/12
being [6]  11/4 11/7 11/8 17/14 20/15
 22/4
believe [2]  7/10 17/11
believes [1]  5/25
belongs [1]  24/14
best [1]  14/16
between [12]  3/7 5/10 6/2 6/11 6/13
 7/14 7/17 9/5 10/12 10/13 14/7 24/12
Beyond [1]  17/7
Bickley's [26]
Bickley's [1]  9/7
BLANK [1]  2/12
board [1]  21/14
both [7]  12/5 12/6 12/13 16/13 18/10
 19/7 20/9
bottle [2]  8/11 24/6
Bradford [2]  2/2 23/10
breaking [1]  19/2
bring [2]  19/16 24/19
brought [1]  5/24
business [1]  17/4
buts [1]  15/20
button [1]  18/15
buy [1]  24/23

**C**

call [1]  6/18

EXHIBIT 1

Word Index - Motion for Protection - p. 2

## C

called [1] 3/12
came [1] 1/20
can [21] 6/10 8/18 10/21 12/24 13/22
14/1 14/15 17/2 17/6 17/12 18/22
19/16 19/19 19/25 20/20 21/11 21/12
21/19 22/18 24/1 24/2
can't [9] 13/10 13/12 13/16 17/3 21/5
21/20 23/2 23/4 24/18
cancel [2] 22/16 22/22
capacities [1] 18/7
capacity [2] 7/2 8/18
Carla [1] 8/19
Caroline [1] 25/23
carve [10] 17/6 19/15 19/25 21/15
21/19 23/12 23/15 23/16 23/18 23/21
carved [4] 17/2 17/12 19/19 19/20
carving [1] 23/2
case [10] 3/11 3/23 4/9 5/13 6/9 7/21
9/20 11/14 12/17 22/11
cat [1] 14/14
cause [1] 1/2 1/21 25/11
cease [1] 13/23
certain [1] 12/2
certainly [1] 14/23
certify [3] 25/6 25/13 25/16
chambers [3] 2/7 2/8 25/12
changed [1] 3/19
Christopher [1] 2/15
circumstances [2] 4/16 4/23
claw [3] 14/20 15/1 15/5
clawed [1] 15/2
clear [2] 13/1 14/1
clearly [1] 8/7
client [12] 4/3 5/1 5/5 5/17 6/14 7/13
8/3 9/5 10/12 12/7 16/8 18/23
Coble [1] 8/19
collectively [1] 18/3
come [2] 4/24 22/18
coming [1] 4/13
communications [16] 4/3 5/5 5/10
5/16 6/11 6/13 7/6 7/14 7/17 7/19 9/5
10/8 10/12 10/22 12/8 14/7
companies [1] 4/19
company [3] 4/12 4/18 21/5
Compel [2] 5/9 12/19
compilation [1] 4/1
complete [10] 4/21 4/22 7/4 9/9 9/14
10/10 16/14 19/9 19/10 21/8
computer [1] 11/17
computerized [1] 1/23
concerned [1] 7/23
concerning [1] 5/5
concerns [1] 11/3
CONCLUDED [1] 24/24
conference [1] 3/11
confidential [3] 12/4 12/7 20/14
conflict [1] 22/9
considering [1] 18/2
contains [1] 25/7
contribute [1] 20/9
control [1] 13/25
conversation [3] 3/10 18/20 19/19
copy [25] 3/14 4/21 4/22 7/4 7/6 7/18
8/15 9/10 9/14 9/25 10/11 11/11 11/16
12/6 13/8 13/12 13/22 16/4 16/9 16/14

17/1 17/15 19/13 19/14 21/8
correct [4] 6/3 6/22 10/16 25/7
correctly [2] 9/13 25/14
cost [1] 25/16
could [1] 5/17
counsel [12] 2/6 2/9 2/14 2/17 5/15 6/9
15/12 15/14 15/15 18/11 18/22 25/9
COUNTY [1] 1/5 1/22 25/2 25/22
couple [3] 3/10 16/21 22/11
court [21] 1/2 1/4 6/10 8/18 10/7 11/3
12/1 14/15 14/16 15/11 15/12 15/25
16/6 18/2 19/17 23/4 25/4 25/5 25/11
25/21 25/22
Court's [1] 8/4
COX [1] 2/16
Craig [1] 2/3
create [2] 16/4 16/22
created [1] 5/20
cross [1] 22/22
CSR [2] 25/20 25/21
currently [1] 6/3
CyberEvidence [2] 18/3 18/16
CyporEvidence [7] 12/11 12/22 18/1
18/9 18/20 20/6 24/14

## D

Dallas [1] 2/17
data [2] 20/12 20/19
database [1] 20/11
date [1] 22/12
Davis [1] 2/2
day [1] 1/19
deal [3] 5/22 23/5 24/4
dealt [1] 3/13
December [4] 3/13 5/9 5/19 12/18
decision [1] 17/15
default [2] 16/25 17/9
defend [3] 21/10 21/11 21/12
DEFENDANT [2] 2/14 2/17
defensible [1] 21/13
desire [1] 3/14
desist [1] 13/23
detailed [1] 23/25
details [1] 4/18
determine [2] 8/8 19/24 24/2
determined [1] 12/21
device [2] 20/19 20/19
did [7] 4/13 4/19 4/19 6/22 7/5 7/5 9/11
didn't [3] 5/18 5/22 9/13
different [1] 18/7
difficult [1] 17/8
direct [1] 11/14
disciplinary [1] 10/18
disclose [1] 13/2
disclosed [1] 7/20
disclosure [4] 3/4 7/16 14/24 14/25
discovery [4] 11/25 12/1 12/15 20/19
discretion [1] 8/4
dispute [3] 3/22 6/1 24/21
disseminate [1] 8/2
disseminated [3] 9/4 9/8 20/15
distinct [1] 14/5
distributed [1] 4/20
DISTRICT [4] 1/4 1/6 25/5 25/22
do [32]
doable [2] 19/7 21/18
Dobrowski [18] 2/3 2/4 9/2 9/11 10/16

14/3 17/20 17/22 19/5 19/12 20/22
21/2 21/23 22/6 22/19 23/9 24/8 24/19
documents [1] 11/15
does [5] 6/5 13/25 18/16
doesn't [2] 12/8 17/3
doing [4] 18/2 20/7 20/10 21/6
domain [1] 19/3
domains [1] 18/5
don't [16] 7/4 9/18 11/2 11/10 13/19
16/14 16/15 16/19 16/21 17/6 17/17
18/9 18/16 18/17 20/2 21/12
done [9] 11/4 11/18 13/5 13/17 14/12
16/13 17/11 19/21 22/2
down [3] 19/3 20/23 20/23
drawing [1] 21/14

## E

e-mail [5] 7/6 18/5 18/7 18/11 18/12
e-mails [6] 3/7 4/2 5/10 10/1 10/4 19/4
each [5] 4/22 18/5 18/6 20/10 21/8
earlier [2] 4/25 24/13
easily [3] 17/2 18/22 21/5
easy [1] 23/3
Edwin [8] 5/4 6/5 6/7 6/21 7/18 10/13
15/14 15/14
effectively [2] 4/15 12/24
efforts [1] 4/15
Eight [1] 20/23
either [2] 12/2 12/13
Elaine [1] 5/11
Elaine's [1] 17/4
electronic [3] 11/15 11/25 12/1
else [6] 7/1 17/11 17/15 17/24 21/17
23/1
end [2] 10/1 10/9
ended [1] 4/13
entire [1] 6/20
entities [3] 3/24 4/5 21/17
essence [3] 7/4 14/20 15/1
ET [1] 1/4
even [6] 5/6 8/5 9/19 10/3 11/22 11/25
ever [3] 5/22 13/12 16/14
every [1] 13/22
everybody [4] 4/19 16/3 18/21 21/5
everyone [1] 4/16
everything [8] 10/11 15/20 17/1 17/15
21/9 21/17 23/1 24/6
evidence [1] 25/8
exactly [3] 11/13 15/2 16/23
exception [1] 15/19
exchange [1] 19/8
exhibits [2] 12/20 25/14
existed [1] 5/23
Expiration [1] 25/24
extent [3] 11/3 13/24 15/5
eye's [1] 20/12
eyes' [1] 20/13

## F

fact [2] 9/16 15/8
facts [1] 12/16
factually [1] 4/18
family [3] 4/4 8/25 17/4
far [4] 6/10 13/5 21/7 23/6
fashion [5] 4/15 7/15 7/19 13/3 15/4
fast [1] 16/21
figure [3] 4/9 21/6 21/14

EXHIBIT 1

Word Index - Motion for Protection - p. 3

## F

filed [2] 7/12 12/19
files [1] 11/15
filter [7] 16/12 16/18 18/4 18/9 18/22 21/9 22/24
filtered [1] 19/12
filtering [4] 17/10 17/18 17/25 23/7
financial [1] 4/2
fine [1] 19/21
fingers [1] 22/23
finished [2] 8/5 13/24
firm [2] 8/5 13/24
firms [1] 18/6
first [5] 10/24 12/25 13/17 13/19 16/12
follow [1] 3/12
follow-up [1] 3/12
following [2] 1/19 23/17
foregoing [1] 25/6
form [4] 7/15 7/19 13/2 15/3
forth [1] 12/20
forthwith [2] 9/4 9/7
forward [3] 16/2 20/17 20/21
framework [1] 11/24
frankly [2] 4/11 13/3
full [3] 8/13 14/4 22/17
fullest [1] 15/4
fully [1] 10/17
further [5] 8/2 9/7 14/2 25/13 25/16

## G

general [3] 5/15 12/15 15/11
genie [1] 8/10
get [16] 4/22 7/6 8/9 8/10 12/23 13/21 13/22 16/4 16/7 16/9 17/15 19/3 22/2 23/11 23/12 23/13
gets [2] 12/12 21/8
getting [2] 4/8 11/12
give [13] 3/6 8/15 11/10 16/25 17/23 19/9 20/4 21/11 21/18 21/21 23/1 23/16 23/19
given [6] 4/16 11/21 12/16 19/13 21/4 21/16
gives [2] 18/21 22/17
giving [2] 4/21 20/10
go [4] 21/13 21/21 24/1 24/22
goes [1] 20/21
going [15] 6/18 8/9 10/19 12/23 13/13 13/21 14/10 15/13 16/2 16/5 16/15 16/17 16/25 17/9 19/21
gone [1] 21/16
Good [1] 24/10
got [3] 7/3 20/5 22/11
granted [1] 15/5
great [1] 3/22
GROUP [1] 2/8
guess [9] 3/16 5/4 5/15 5/25 8/24 9/17 10/9 19/23 24/21
guru [1] 18/18
guys [1] 16/21

## H

had [8] 3/10 4/25 5/18 9/15 11/20 14/16 18/20 24/4
happen [1] 16/20
happened [4] 6/23 7/5 7/12 11/19
happy [2] 14/19 20/4

harm [1] 4/20
HARRIS [5] 1/5 1/22 25/2 25/5 25/22
has [29]
hasn't [1] 12/23
have [64]
haven't [2] 11/20 21/6
having [4] 8/13 9/19 10/2 10/9
he [16] 3/17 6/8 6/9 6/21 7/5 8/16 8/17 9/12 13/18 13/24 13/25 15/10 15/11 15/12 17/3 24/17
head [1] 8/10
hear [2] 9/13 17/7
heard [3] 3/13 6/16 24/12
hearing [5] 11/20 17/10 23/12 23/13 24/24
hearings [1] 6/8
held [3] 1/20 1/22 11/7
hell [1] 13/13
her [2] 8/20 14/6
here [4] 3/15 8/19 15/15 22/4
hereby [1] 25/6
him [7] 5/5 5/16 5/16 8/18 13/9 23/19 24/23
his [12] 3/8 7/7 7/14 7/17 8/15 8/20 9/6 9/15 14/8 15/11 24/14 24/16
history [4] 4/10 4/12 4/17 21/4
hold [2] 14/11 14/11
Homes [3] 11/14 11/24 12/2
Honor [17] 3/5 3/25 6/4 7/10 8/1 9/11 10/16 10/24 14/14 14/15 17/22 19/13 21/1 21/23 23/10 24/8 24/11
Honorable [1] 1/21
hopefully [1] 22/24
hour [1] 3/10
Houston [6] 1/22 2/5 2/9 2/13 3/15 25/23
how [15] 4/6 4/12 4/19 6/23 7/5 8/10 11/25 16/19 16/21 17/18 17/21 18/13 19/3 19/21 21/14
huge [1] 4/3
Hunter [14] 5/4 6/5 6/7 6/21 7/2 7/18 8/14 8/20 8/22 10/13 13/1 13/6 15/15 15/16
Hunter's [1] 8/5

## I

ifs [1] 15/20
image [6] 6/20 11/4 11/5 11/16 13/7
imagine [1] 17/3
immediately [1] 13/23
impossible [1] 4/14
inadvertent [2] 14/22 14/24
inadvertently [1] 14/21
INC [2] 1/6 11/8
inclination [2] 16/13 21/3
inclined [3] 17/16 21/7 23/1
include [2] 15/17 24/7
included [1] 25/9
includes [1] 15/18
including [2] 10/11 12/3
incredible [1] 21/17
indicates [1] 3/3
individually [2] 1/4 9/21
individuals [1] 3/24
information [17] 3/23 4/2 4/4 4/10 5/2 8/3 8/6 9/3 12/4 12/7 15/21 19/8 20/8 20/9 20/15 23/7 23/11

insight [1] 20/5
intentional [1] 14/24
interest [1] 15/9
involved [6] 4/5 5/3 5/12 6/7 7/2 8/21
involves [1] 3/23
irresponsible [1] 13/5
is [130]
isn't [2] 12/14 17/14
issue [2] 4/6 5/8
issued [1] 17/14
issues [5] 5/12 5/23 10/25 11/22 23/24
it [114]
its [1] 11/14

## J

January [1] 1/19
jar [1] 23/25
Jeff [1] 2/7
jerk [1] 16/3
JOHNSON [1] 2/4
Judge [5] 1/21 9/2 19/6 20/22 22/19
JUDICIAL [1] 1/6
June [2] 3/19 3/20
June 11 [1] 3/19
June 18 [1] 3/20
Junior [7] 5/11 5/14 6/2 6/6 15/8 15/17 15/19
just [11] 3/6 4/1 4/3 4/18 12/22 13/16 13/18 17/17 18/16 21/5 23/12

## K

keep [2] 13/8 13/12
Kenneth [1] 7/9
kind [9] 3/12 4/13 12/16 13/14 14/14 16/2 16/12 17/9 18/19
knee [1] 16/3
know [14] 6/10 7/4 10/24 13/19 16/14 16/19 16/21 17/4 17/17 17/20 18/17 20/2 21/8 24/4

## L

LARKIN [1] 2/4
law [3] 2/8 8/16 18/6
lawyer [6] 6/20 7/14 7/17 8/23 13/22
lawyer's [1] 7/8
lawyers [3] 8/12 13/1 15/18
least [1] 8/17
leave [2] 8/4 24/3
left [6] 16/10 19/14 19/14 21/9 22/25 23/2
legal [1] 4/7
length [1] 21/16
let [3] 16/24 21/5 23/4
let's [9] 3/9 9/17 16/2 16/17 22/2 22/3 22/12 22/13 22/14
license [1] 13/25
licensed [1] 8/16
like [12] 8/1 8/14 9/3 10/24 11/5 13/23 16/19 16/25 21/3 23/11 23/14 24/16
likewise [1] 10/14
list [1] 18/5
listen [1] 17/13
litigation [18] 5/2 5/6 6/2 6/6 6/8 6/9 6/12 7/3 7/7 7/12 7/15 8/7 9/23 10/5 15/4 15/9 15/10 20/16
little [1] 18/15
live [1] 23/4

EXHIBIT 1

Word Index - Motion for Protection - p. 4

## L

LLP [2]  2/12 2/16
locks [1]  3/19
log [2]  5/20 5/21
logs [1]  23/25
long [6]  8/23 16/19 17/18 17/21 18/13 22/11
longer [1]  13/11
look [3]  10/7 12/24 13/10
looking [2]  8/7 15/21
Louisiana [15]  6/3 6/13 6/15 6/21 7/3 7/7 7/13 7/14 7/20 8/18 13/1 14/15 15/9 15/10 15/19
luck [1]  24/10
LYNN [1]  2/16

## M

machine [1]  1/24
made [5]  6/20 11/17 12/25 21/6 24/5
mail [5]  7/6 18/5 18/7 18/11 18/12
mails [6]  3/7 4/2 5/10 10/1 10/4 19/4
maintained [1]  3/15
make [2]  14/1 23/19
makes [2]  10/20 24/9
making [2]  12/15 17/14
MAROPCO [20]  1/6 3/15 4/7 4/17 4/18 4/25 5/2 5/6 5/7 5/14 5/15 6/17 7/4 8/23 9/22 10/13 10/13 11/8 15/12 23/3
Marshall [18]  1/4 3/7 3/18 4/4 4/8 4/17 4/21 5/10 5/11 5/14 5/25 7/22 8/3 8/8 8/25 9/6 14/7 15/8
Marshall's [2]  3/14 7/6
material [2]  15/1 23/24
matter [1]  9/25
may [7]  10/23 14/1 14/13 16/4 22/16 22/21 24/22
maybe [3]  5/6 16/6 23/10
me [7]  3/3 7/25 12/13 13/19 22/1 24/4 25/12
Meaning [1]  20/12
Meanwhile [2]  4/24 16/15
mechanism [1]  14/23
meeting [1]  18/1
members [1]  4/4
mentioned [3]  5/4 9/12 14/17
met [1]  11/25
Michael [3]  6/10 7/8 7/9
Mike [1]  1/21
Miller [1]  1/21
mirror [3]  6/19 13/7 16/9
Miss [3]  9/7 9/18 9/20 13/14 14/4 14/9 16/7 18/20 19/15
Monday [1]  22/14
money [1]  4/20
month [1]  17/19
more [6]  3/23 8/15 8/25 16/4 18/16 20/18
morning [1]  22/15
most [1]  24/9
motion [5]  1/12 3/6 5/9 7/11 12/19
motions [1]  3/12
moving [1]  20/17
Mr [22]  2/2 2/3 2/7 2/15 4/7 9/2 9/11 10/16 14/3 17/20 17/22 19/5 19/12 20/22 21/2 21/23 22/6 22/19 23/9 23/10 24/8 24/19

Mr. [14]  6/10 6/12 7/2 8/5 8/8 8/14 8/22 9/6 10/24 13/1 13/6 14/6 14/7 15/16
Mr. Akin [1]  10/24
Mr. Akin's [1]  14/6
Mr. Hunter [6]  7/2 8/14 8/22 13/1 13/6 15/16
Mr. Hunter's [1]  8/5
Mr. Marshall [1]  8/8
Mr. Michael [1]  6/10
Mr. Preston [2]  9/6 14/7
Mr. Wright [1]  6/12
Ms [19]  2/3 2/11 8/12 8/25 9/22 10/23 11/13 13/18 14/10 16/23 17/24 18/14 19/1 20/4 21/1 22/8 23/6 23/21 24/15
much [2]  17/16 18/15
multiple [1]  4/5
my [9]  4/24 5/24 10/10 13/16 16/3 16/12 16/25 17/9 21/3

## N

name [2]  7/8 18/21
names [1]  19/3
need [8]  16/18 16/20 17/25 18/4 18/15 19/24 23/25 24/1
needs [2]  13/13 16/20
neither [1]  14/5
never [1]  12/23
new [1]  24/23
next [4]  16/20 19/5 19/8 23/7
no [11]  1/2 8/12 9/22 9/25 13/9 15/19 15/20 19/2 19/2 19/2 24/15
nobody [1]  12/13
non [1]  20/11
non-screened [1]  20/11
None [1]  11/19
not [33]
noticed [1]  11/21
notify [2]  19/16 19/21
notion [3]  4/14 5/15 10/6
now [6]  3/10 4/7 6/21 16/2 20/18 20/25
numbered [2]  1/21 25/11

## O

o'clock [2]  22/15 22/21
objections [2]  11/22 12/4
obligated [1]  10/14
obligations [1]  10/17
obtain [1]  3/14
obtained [1]  18/3
obvious [1]  23/3
obviously [3]  7/22 9/25 13/4
occurred [3]  10/12 11/20 25/11
offered [1]  25/15
office [6]  3/16 8/20 9/7 11/7 14/6 14/6
officer [1]  10/6
offices [1]  4/12
Official [2]  25/4 25/21
Oh [1]  15/14
once [6]  16/13 18/10 19/12 20/8 23/24 24/6
one [12]  3/13 5/19 10/25 12/14 14/13 14/17 15/7 16/11 16/17 21/22 23/10 24/18
ongoing [2]  5/6 6/2
only [5]  7/16 13/16 15/16 20/12 20/13
open [1]  25/11
opportunity [4]  11/21 12/3 21/12 21/19

order [12]  8/2 8/18 11/5 13/20 13/23 13/24 14/15 14/19 14/25 15/6 17/12 17/13
ordered [6]  8/15 11/9 11/16 13/2 13/6 15/20
ordering [2]  14/20 15/2
orders [1]  12/1
other [7]  5/19 9/4 10/5 12/5 15/18 23/22 25/8
ought [5]  16/4 16/13 17/6 19/23 22/1
our [9]  10/17 11/7 11/21 12/6 14/23 22/22
out [29]
over [1]  13/25

## P

paid [3]  24/17 25/18 25/18
paid/will [1]  25/18
Parkway [1]  2/8
part [2]  14/12 18/25
particular [1]  3/13
parties [3]  24/12 25/9 25/15
party [4]  9/23 11/8 15/8 15/13
past [1]  8/24
Paul [1]  2/3
pay [1]  13/13
people [2]  10/9 18/1
perhaps [3]  5/4 12/11 20/20
period [1]  19/24
person [1]  15/9
personal [1]  4/2
physical [1]  24/13
Pierce [11]  5/11 5/14 6/2 6/6 9/20 9/23 10/13 15/8 15/17 15/18 24/6
PINKER [1]  2/16
PLAINTIFFS [2]  2/6 2/9
plan [3]  22/3 22/4 22/10
planet [1]  15/17
pleadings [1]  7/20
plus [1]  22/17
point [12]  3/16 6/1 6/17 8/6 10/9 10/10 13/3 14/14 14/22 20/13 20/15 22/1
pointed [1]  4/25
portion [1]  13/10
portions [1]  25/8
position [4]  14/22 16/25 17/10 18/10
possession [4]  6/21 9/15 10/3 10/20
possible [1]  10/21
practical [1]  4/6
practice [1]  8/16
preparation [1]  25/17
prepared [1]  8/20
Presiding [1]  1/22
Preston [21]  1/4 3/7 3/14 3/18 4/17 4/21 5/9 5/12 5/25 6/2 6/11 7/3 7/6 7/14 7/17 7/22 8/3 9/6 14/7 24/14 24/16
Preston's [1]  6/12
pretty [3]  18/15 18/22 22/10
prevent [1]  20/14
previously [2]  5/23 10/14
prior [2]  5/2 5/5
private [1]  7/1
privilege [15]  5/13 5/17 5/20 5/21 12/3 12/4 13/17 16/8 18/4 18/23 20/8 23/22 23/24 23/25 24/5
privileged [12]  5/1 5/7 5/17 7/13 7/16

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

Word Index - Motion for Protection - p. 5

## P

privileged... [7] 8/8 10/4 10/21 14/7 15/1 20/14 24/2
probably [2] 3/23 4/14
problem [7] 8/11 8/12 9/18 18/10 21/10 21/10 22/12
problems [2] 11/1 16/5
procedural [1] 11/18
proceedings [4] 1/20 1/23 25/8 25/14
process [3] 11/23 19/10 19/11
produced [1] 12/1
producing [1] 22/24
product [1] 11/6
progeny [1] 11/14
progress [1] 21/7
proposal [1] 23/19
protect [1] 12/8
protected [1] 12/5
PROTECTION [1] 1/12
protocol [1] 20/20
provide [2] 12/10 23/7
provided [1] 18/11
providing [1] 23/6
provisions [2] 15/1 15/6
purposes [2] 20/6 20/7
push [1] 18/14
put [1] 23/24

## Q

question [2] 6/19 13/16
quickly [2] 16/18 21/20
quite [1] 20/2

## R

raise [1] 11/21
raised [1] 5/9
Re [5] 11/14 11/24 12/2 12/14 21/9
reach [5] 19/19 20/20 21/19 21/20 23/2
reaction [1] 16/3
read [4] 10/8 10/15 13/2 13/11
real [1] 4/20
really [1] 5/22
reason [2] 13/6 13/9
reasonable [1] 4/23
receiving [1] 7/18
record [9] 1/1 3/10 6/9 9/17 14/18 15/24 25/10 25/13 25/17
records [1] 4/2
reflects [1] 25/14
regard [2] 15/21 24/5
regarding [5] 4/4 4/8 5/11 5/12 10/4
relied [1] 15/3
remaining [2] 20/11 23/23
removed [1] 16/9
reported [2] 1/23 25/12
Reporter [2] 25/4 25/21
REPORTER'S [4] 1/1 25/10 25/13 25/17
represent [3] 6/5 9/20 9/22
represented [3] 8/23 15/10 18/21
representing [2] 15/18 18/6
request [3] 7/23 7/24 12/16
requested [1] 25/8
resolve [1] 23/14
respect [2] 14/3 17/25
respective [1] 25/15

respond [1] 23/13
response [1] 12/19
responsibility [1] 10/7
restrictions [1] 12/3
retrieve [1] 14/16
retrieving [2] 15/22 15/23
return [2] 9/3 13/8
returned [6] 9/6 11/6 13/11 13/13 14/4 17/13
returning [1] 13/19
revealed [1] 6/14
review [5] 8/4 8/6 8/15 14/6 20/12
reviewed [1] 11/7
reviewing [1] 14/11
Right [2] 14/9 23/23
ripe [1] 12/20
road [2] 20/23 20/23
ROME [1] 2/12
Ross [1] 2/16
rule [1] 5/18
rules [2] 14/20 14/23
run [2] 18/8 20/8

## S

safeguards [1] 11/18
said [8] 9/18 12/10 15/16 16/3 16/12 16/25 21/3 22/13
same [2] 19/24 20/1
say [5] 4/11 15/14 17/22 19/16 21/7
saying [1] 6/22
schedule [2] 22/13 22/14
screen [3] 13/17 16/7 20/8
screened [2] 16/9 20/11
searchable [1] 20/11
secrets [2] 12/5 12/7
see [4] 6/10 10/25 22/17 22/25
seeing [2] 4/20 21/18
seems [1] 22/1
segregating [1] 20/7
seized [1] 3/17
seizure [1] 6/18
send [1] 13/22
sense [1] 24/9
separate [4] 4/7 4/15 10/25 16/15
separated [1] 12/24
separation [2] 20/19 21/18
server [26]
set [1] 4/12
severe [1] 12/2
she [3] 14/5 19/16 19/20
short [2] 17/12 20/1
should [6] 8/5 12/13 12/13 19/13 19/20
shown [1] 6/8
side [5] 4/22 9/25 18/6 20/10 21/8
sides [3] 16/13 18/10 19/7
simple [2] 13/17 17/5
since [2] 3/22 9/15
situation [1] 12/15
six [1] 20/22
so [10] 7/23 12/20 13/5 14/25 18/17 19/16 21/2 21/7 21/12 23/12
solves [1] 16/5
some [14] 3/6 3/12 5/16 5/21 6/17 7/2 7/5 7/15 7/19 10/9 15/13 17/3 23/19 23/25
somebody [4] 10/2 10/19 12/15 15/13
somehow [1] 7/5

something [14] 7/12 16/19 17/1 17/5 17/11 17/24 19/15 19/25 20/17 21/20 23/3 23/16 23/18 23/22
Sonnier [1] 8/20
soon [1] 19/3
sort [2] 11/23 20/14
sought [1] 5/10
specific [1] 6/13
specifically [1] 5/3
standpoint [1] 4/6
starting [1] 22/11
STATE [2] 25/1 25/5
statement [1] 9/13
station [1] 11/17
status [1] 3/11
stenotype [1] 1/23
step [3] 11/23 16/11 16/17
stuff [6] 16/16 16/18 16/22 17/5 23/15 23/22
styled [1] 25/10
subsequent [2] 13/20 17/10
suggesting [1] 11/11
sure [1] 22/10
surfaces [1] 13/12
Susan [1] 2/11

## T

take [3] 17/23 18/13 21/4
taken [1] 3/16
takes [2] 18/19 17/18
talk [1] 16/2 24/1
talking [4] 13/18 20/6 20/10 20/18
teed [1] 12/18
Telephone [2] 5/2 13/25 24/4
tell [2] 3/3 21/13
tentative [1] 12/20
tentatively [1] 22/4
terminated [2] 3/19 4/7
termination [2] 5/12 9/15
terms [2] 14/2 15/19
Terri [2] 25/4 25/20
testimony [1] 8/19
TEXAS [17] 1/5 1/22 2/5 2/9 2/12 2/13 2/17 8/7 10/17 13/25 14/20 14/25 25/1 25/6 25/21 25/22 25/23
than [2] 16/5 23/22
Thank [1] 21/24
that [146]
their [5] 8/10 9/15 9/25 14/15 18/11 18/22
then [16] 8/2 9/3 10/8 10/8 11/10 13/6 14/15 17/1 17/23 17/23 18/21 19/3 19/9 19/22 23/1 23/17
then [19] 5/8 5/23 11/25 13/25 16/5 16/9 19/9 19/13 20/9 20/17 21/7 21/10 21/13 21/21 22/16 22/23 22/25 24/3 24/6
theoretically [1] 10/20
there [38]
therefore [1] 5/18
these [4] 4/23 8/2 12/10 16/21
they [20] 8/19 8/21 9/14 10/21 13/4 13/5 13/10 13/11 16/9 16/16 17/6 17/15 17/20 18/4 18/15 18/22 19/10 21/13 23/11 24/5
they're [5] 4/5 8/7 8/9
thing [5] 12/23 14/13 16/6 18/9 18/15

TERRI W. ANDERSON, CSR
201 CAROLINE, #945   HOUSTON, TEXAS   77002

EXHIBIT 1

Word Index - Motion for Protection - p. 6

## T

**things [7]** 8/7 11/19 11/20 12/5 14/16 14/17 16/11
**think [13]** 4/23 5/3 5/19 12/20 16/24 17/6 17/8 18/14 18/15 21/11 21/12 24/9 24/11
**thinks [1]** 19/20
**this [38]**
**those [11]** 5/16 5/18 5/23 7/18 10/1 10/7 11/20 11/22 15/5 22/12 24/1
**though [1]** 10/3
**thought [2]** 9/12 20/24
**threshold [2]** 11/19 11/24
**through [3]** 7/17 15/11 24/1
**TILLOTSON [1]** 2/16
**time [7]** 3/16 8/23 16/11 16/17 20/1 21/16 23/13
**timeline [1]** 17/16
**timelines [1]** 16/22
**titled [1]** 1/20
**today [7]** 4/25 5/24 7/25 17/14 17/15 19/10 22/5
**together [1]** 11/6
**told [3]** 6/24 8/17 18/4
**too [1]** 17/8
**total [1]** 25/16
**town [1]** 22/8
**trade [2]** 12/4 12/7
**transcription [1]** 25/7
**tremendous [3]** 4/1 11/1 11/17
**trial [3]** 1/2 22/16 22/22
**true [1]** 25/7
**truly [1]** 25/14
**trust [2]** 10/9 13/6
**trusted [1]** 10/3
**try [2]** 4/9 21/14
**trying [1]** 12/22
**Tuesday [2]** 22/15 22/20
**two [16]** 10/25 11/23 12/14 17/12 17/18 17/23 19/1 19/9 19/10 19/24 20/1 22/2 22/2 22/4 22/12 22/17
**type [1]** 4/18

## U

**ultimate [1]** 17/14
**under [7]** 4/23 10/17 11/13 11/23 12/2 14/20 14/23
**understand [7]** 8/22 10/17 11/4 11/8 14/21 21/23 24/8
**understanding [4]** 9/19 9/24 14/5 23/1
**undisputed [3]** 7/1 24/12 24/15
**unique [1]** 12/16
**up [9]** 3/12 4/13 4/13 6/8 10/1 10/9 12/18 16/6 22/18
**uphold [1]** 21/22
**upon [3]** 4/11 14/25 15/3
**us [3]** 18/4 18/5 19/16
**use [9]** 8/7 10/8 10/15 11/9 13/2 13/11 14/2 14/15 15/13
**used [4]** 7/15 7/20 15/3 20/16
**using [2]** 20/8 20/18

## V

**variety [1]** 18/7
**very [7]** 6/13 7/22 8/21 13/4 13/24 17/16 17/17

**virtue [1]** 17/4
**volume [2]** 1/1 25/10
**VOLUMES [1]** 1/1

## W

**wait [1]** 24/22
**waiting [1]** 18/8
**want [8]** 7/24 7/24 11/10 16/22 19/25 23/16 23/18 23/19
**wanted [1]** 13/15
**wants [1]** 19/15
**was [28]**
**Washington [1]** 2/4
**wasn't [1]** 14/22
**way [5]** 5/19 7/5 12/9 12/11 21/6
**we [81]**
**web [1]** 21/17
**Wednesday [4]** 19/5 19/8 23/8 23/17
**week [8]** 17/12 17/18 17/23 19/5 19/8 22/11 23/10 23/18
**weekend [1]** 22/17
**Weekley [5]** 11/14 11/24 12/2 12/14 21/10
**weeks [14]** 16/21 17/18 19/1 19/9 19/10 19/24 20/2 20/22 20/23 22/2 22/2 22/4 22/13 22/17
**weigh [3]** 10/23 13/15 17/25
**well [3]** 8/17 10/24 15/14
**went [1]** 14/17
**were [7]** 3/19 7/7 7/15 20/5 20/7 20/10 25/12
**what [39]**
**whatever [3]** 10/11 17/5 21/21
**when [3]** 3/17 3/17 18/24
**whenever [1]** 11/14
**where [4]** 7/13 12/15 21/25 22/25
**whether [2]** 8/5 19/24
**which [6]** 3/13 10/20 10/25 22/12 24/2 25/11
**while [1]** 20/3
**who [7]** 4/13 6/10 6/22 7/2 7/4 9/25 18/18
**whoever [1]** 13/7
**whole [1]** 13/1
**why [4]** 3/3 12/12 13/16 22/13
**will [30]**
**willing [1]** 12/10
**withdrawn [1]** 15/3
**withheld [1]** 5/18
**within [6]** 16/20 17/12 19/23 20/1 20/1 22/12
**without [2]** 11/7 14/11
**words [1]** 9/5
**work [2]** 11/16 16/21
**working [1]** 12/23
**world [1]** 13/1
**would [21]** 4/16 5/6 8/1 8/13 9/3 10/14 10/24 11/5 14/11 14/24 17/22 17/23 18/24 20/13 20/24 20/24 22/12 23/11 23/14 23/17 24/16
**Wright [4]** 6/10 6/12 7/8 7/9
**wrinkle [1]** 15/13
**writing [1]** 25/9
**wrong [1]** 11/11

## Y

**yes [10]** 3/5 3/25 6/4 6/25 10/16 11/13

12/25 16/1 22/7 23/9
**yesterday [1]** 7/11
**you [63]**
**you-all's [1]** 14/21
**your [21]** 3/5 3/25 6/4 7/10 8/1 9/11 9/12 10/16 10/23 14/13 15/7 17/22 18/18 19/13 21/1 21/10 21/23 23/10 24/8 24/11 24/20

## Z

**zero [1]** 13/6

EXHIBIT 1

App. 0337

CAUSE NO 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY and RUSK CAPITAL MANAGEMENT, L.L.C., | § § § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| MAROPCO, INC., E. PIERCE MARSHALL, JR., EDWIN K. HUNTER, AND HUNTER, HUNTER & SONNIER, LLC | § § § | |
| *Defendants.* | § | 11ᵗʰ JUDICIAL DISTRICT |

**AFFIDAVIT OF PRESTON MARSHALL AND VERIFICATION OF PLAINTIFFS'
THIRD AMENDED VERIFIED PETITION AND REQUEST FOR TEMPORARY AND
PERMANENT INJUNCTION**

| | |
|---|---|
| STATE OF TEXAS | § § |
| COUNTY OF HARRIS | § |

Before me, the undersigned notary, on this day personally appeared Preston Marshall, the affiant, a person whose identity is known to me. After I administered the oath to the affiant, the affiant testified:

1.  "My name is Preston Marshall. I am a resident of Harris County, Texas. I am over the age of 18 and I am qualified in all respects to give this affidavit. The facts set forth in this affidavit are within my personal knowledge and are true and correct.

2.  I am the sole owner and manager of Rusk Capital Management, L.L.C. ("Rusk Capital"). Rusk Capital is an equity investment firm focusing on the purchasing of oil and gas producing properties from Idzig, LLC and others. Rusk Capital gathers and analyzes information related to potential investors and investment opportunities concerning oil and gas producing properties.

3.  As of June 11, 2015, I was also Vice President of MarOpCo, Inc. ("MarOpCo"), which is primarily an administrative services provider for a group of businesses owned, operated, and/or managed by the Marshall Family. Elaine Marshall serves as the President and Chief Executive Officer of MarOpCo. Until my termination from MarOpCo, I also served as MarOpCo's registered agent for service of process.

4.  MarOpCo's principal office is located at 7001 Preston Road, Suite 400, Dallas, Texas 75205-5105. However, MarOpCo previously maintained an office in Houston, located at 7600 Tidwell, Suite 800, Houston, Texas 77040-6718.

1

EXHIBIT 2

5.     For the entirety of my employment with MarOpCo, I have maintained and occupied an office at MarOpCo's Tidwell office. Further, at all times relevant to this litigation, the primary office of Rusk Capital is located at the Tidwell office. I also operated the Affected Entities out of the Tidwell office, including:[1]

    a.   Marshall Heritage Foundation (f/k/a/ Marshall Museum and Library);
    b.   Marshall Legacy Foundation;
    c.   Eleanor Pierce Stevens Foundation;
    d.   EPS/EPM Charitable Remainder Unitrust;
    e.   Eleanor Pierce (Marshall) Stevens Living Trust;
    f.   Eleanor Stevens Revocable Gift Trust;
    g.   Bettye Morgan Charitable Remainder Unitrust;
    h.   Bettye Morgan Supplemental Charitable Remainder Unitrust;
    i.   Ada Estes Charitable Remainder Unitrust;
    j.   Ada Estes Supplemental Charitable Remainder Unitrust;
    k.   Peroxisome Charitable Lead Trust;
    l.   Citrine Commerce L.L.C.;
    m.   Lysome L.L.C.;
    n.   Chondrisome Stiftung;
    o.   Khozraschyot Capital Management L.L.C.;
    p.   Lednik Capital Management L.L.C.;
    q.   Glacier Holdings L.L.C.;
    r.   CarTech Systems, LLC

6.     My responsibilities relative to the Affected Entities create ongoing fiduciary obligations from me to each of the Affected Entities. In performing my duties and responsibilities on behalf of these entities, I used and relied upon files, correspondence, records, reports, documents and other data maintained at the Tidwell office location.

7.     My actions in operating Rusk Capital and the Affected Entities was known by MarOpCo and Elaine Marshall, including the fact that my controller for Rusk Capital worked in the Tidwell office as well. True and correct copies of correspondence demonstrating MarOpCo's knowledge are attached hereto as *Exhibit 2A*.

8.     Between May 2013 and October 2014, I spent over fourteen thousand dollars ($14,000) on behalf of Rusk Capital on computer equipment (hardware and software) for Rusk Capital. A true and correct copy of the invoices for the purchases are attached hereto as *Exhibit 2B*. I purchased (1) Microsoft Office Home and Business; and (2) Lacerte Fast Path tax preparation software. See Ex. 2. In addition, on behalf of Rusk Capital, I purchased a Hewlett-Packard Gen8 v2 Server and accompanying software (the "Rusk Server"), as well as a keyboard, mouse, LED monitor, and two Hewlett-Packard workstations. See Ex. 2. Each of these purchases were billed to me personally or to Rusk Capital and I used my

---

[1] These entities are referred to herein as the "Affected Entities."

2

EXHIBIT 2

personal credit card to make the purchases. MarOpCo has not reimbursed me for these expenses.

9.  Additionally, the Rusk Server contains software and programs that are subject to licenses for which Rusk Capital is the sole licensee. For example, Rusk Capital is the sole licensee of Microsoft Window Server 2012 R2 and Microsoft SQL Server 2012. Because the licenses are specific to the individually named user and cannot be shared, MarOpCo has no right to utilize these programs.

10. Because MarOpCo's old server had reached maximum capacity, was affected by frequent age-related hardware failures, outdated and unable to meet the demands of MarOpCo's own business, I allowed MarOpCo to transfer files and save data and information on the Rusk Server, which was housed at the Rusk office. I also saved data and information from the Affected Entities listed above on the Rusk Server. MarOpCo's old server was still in place at the Tidwell office on June 11, 2015.

11. By correspondence dated May 22, 2015, Elaine Marshall instructed me to consent to the transfer of funds related to various entities from one bank to another. I would have no signatory authority on any newly established accounts and would no longer receive monthly statements on such accounts. I informed her that I previously complied with MarOpCo's instructions as to all entities with the exception of Ribosome LP ("Ribosome"). I refused to consent to my removal from the Ribosome account as substantially all of the funds contained in the account belonged to Chondrisome Siftung ("Chondrisome"). I was also instructed in the May 22, 2015 correspondence to execute a prepared affidavit provided by MarOpCo. I refused to sign the affidavit as it contained false statements concerning my relationship with various entities.

12. I am a member of the Foundation Council, the governing body of Chondriosome and, thus, acts as a fiduciary with respect to Chondriosome. As such, I have a fiduciary duty to monitor and manage the funds belonging to Chondriosome. Agreeing to relinquish oversight of the funds belonging to Chondriosome would leave the Foundation Council without access to its funds and constitute an intentional breach of my fiduciary duties owed to Chondriosome.

13. On June 11, 2015, I received a letter from Elaine Marshall terminating my employment with MarOpCo because of my alleged failure to execute documents as instructed. A true and correct copy of the letter is attached hereto as *Exhibit 2C*. While the letter purported to terminate my right of access to the Tidwell office, the letter also acknowledged my use of the office for the Affected Entities as well as MarOpCo, and represented that I could go to the Tidwell office to identify and collect my personal effects. The document further stated as an alternative to my termination, I would be offered a new materially similar contract if I stated, improperly, that I have no authority to contest her wishes for Ribosome's Frost Bank account.

3

EXHIBIT 2

14.   However, on June 15, 2015, the locks to the Tidwell office were changed, my access card was deactivated, the Rusk Server was disconnected, and my tangible personal files and documents were removed from the Tidwell office. As such, the computers, server, files (both physical and electronic), including attorney-client privileged communications with attorneys representing me in litigation, physical original attorney-client files (including communications, legal research, advice and mental impressions), office equipment, and furniture owned by me or Rusk Capital, as well as confidential and proprietary information of Rusk Capital and the Affected Entities are in the possession and control of MarOpCo. Similarly, all records, files and data used and relied upon by me to carry out my personal affairs and to meet my fiduciary obligations with respect to the Affected Entities are now in the possession and control of MarOpCo.

15.   Prior to my termination from MarOpCo and ultimate lock-out from the Tidwell office, Rusk Capital maintained proprietary and confidential business information at the Tidwell office, including but not limited to, all information related to actual and potential investors, data pertaining to investment opportunities, business strategies, investment strategies, business analysis, all communications with actual and potential investors, data evidencing due diligence with respect to investment opportunities, and employee records, as well as physical, original attorney-client files. This information constitutes private information including trade secrets, confidential business information, and protected/protectable attorney-client communications of Rusk Capital, the Affected Entities and me.

16.   On June 19, 2015, I demanded the immediate return of all property and assets belonging or pertaining to me individually or Rusk Capital in writing. A true and correct copy of my demand letter is attached hereto as *Exhibit 2D*. However, to date, MarOpCo has failed to return the property or allow me to recover the tangible and electronic data, documents, and files pertaining to the Affected Entities or me personally.

17.   In addition, Pierce Marshall, an officer with MarOpCo, is an adverse party in two cases pending in Texas and Louisiana, in which I am currently involved. Specifically, the case pending in Louisiana is Cause No. 2007-6723, In re Eleanor Pierce (Marshall) Stevens Living Trust, in the 14th Judicial District, Calcasieu Parish, Louisiana (the "Louisiana Litigation"). The case pending in Texas is Cause No. PR-15-00746-1, In re the Estate of Eleanor Pierce (Marshall) Stevens, in Probate Court No. 2, Dallas, County, Texas. I have electronic files related to both of these matters stored on the HP Laptop at CE, Rusk Server as well as physical, tangible documents stored at the Tidwell office. To the extent my property is not returned in full, without Pierce Marshall being allowed access, he will be able to access and view confidential attorney-client privileged documents and documents protected by the work-product privilege. Pierce may also avail himself of impermissible, unwarranted and unlimited discovery.   In fact, on January 7, 2016, Pierce Marshall, Jr. and his attorneys filed a motion in the Louisiana Litigation referencing, in detail, certain communication between my attorney in the Louisiana Litigation and me.   The motion admits that Pierce

4

EXHIBIT 2

obtained the data from the images and equipment MarOpCo confiscated from Rusk and me. The motion also attached multiple privileged communications between me and my Louisiana counsel.

18.     Throughout my tenure at MarOpCo I believed and expected that my personal communications, including all emails and documents exchanged between me and attorneys representing me, were private and that no one other than me and the receiving or sending party had access or right to view those documents and communications. I also believed and expected that all documents and communications related to the Affected Entities were private.

19.     If my property is not returned, I will suffer imminent harm, including further loss of business opportunity, loss of good will and business reputation, loss of confidential and proprietary information, further breach of attorney-client communications, continuing breach of my attorney client and work product privileges, violations of my privacy, and I may be exposed to liability for breach of fiduciary duties.

20.     I have reviewed the factual allegations in Plaintiffs' Third Amended Verified Petition and Request for Temporary and Permanent Injunction and those factual allegations are true and correct and within my personal knowledge.

Further affiant sayeth not."

By: _____

Preston Marshall

SUBSCRIBED AND SWORN TO before me by Preston Marshall on this 12th day of January, 2016.

_____
Notary Public in and for
The State of Texas

ANDREA BANDA
My Notary ID # 124456533
Expires January 31, 2019

5

EXHIBIT 2

# EXHIBIT 2A



**From:** sheena.bonadona@maropco.com [mailto:sheena.bonadona@maropco.com]
**Sent:** Monday, December 22, 2014 5:40 PM
**To:** 'Eyvonne Scurlock'
**Cc:** 'Preston Marshall'
**Subject:** Peroxisome transfer letters to Foundations

Eyvonne,

Please see attached transfer request letters from Peroxisome to the Foundations.  I will fax over a copy to Keith tomorrow morning that includes Pierce's signature.  Once you have Preston's signature, please fax a copy to Keith as well.

Thanks,
Sheena
—————————————————

Sheena Adams Bonadona, CPA

1

App. 0344

Corporate Controller
MarOpCo, Inc.
7001 Preston Road, Ste. 400
Dallas, Texas 75205
Phone: (214) 447-7486
Fax: (972) 460-4326

2

App. 0345



**From:** Eyvonne Scurlock [mailto:eyvonne.scurlock@maropco.com]
**Sent:** Monday, February 23, 2015 2:21 PM
**To:** 'Preston Marshall'
**Subject:** RE: Sheldon Black

I told her that he did not work on anything but Rusk and that is who pays his salary.  She does think she is paying rent for his office.

**From:** Preston Marshall [mailto:preston.marshall@maropco.com]
**Sent:** Monday, February 23, 2015 2:14 PM
**To:** 'Eyvonne Scurlock'
**Subject:** RE: Sheldon Black


You can tell her he does not have access to all the files and that she wrote me a letter instructing me to hire an accountant and pay him myself.  She is not paying rent for his office.


**From:** Eyvonne Scurlock [mailto:eyvonne.scurlock@maropco.com]
**Sent:** Monday, February 23, 2015 10:29 AM

1

App. 0346

**To:** 'Preston Marshall'
**Subject:** Sheldon Black

Your mom called this morning.  She said Brad told there was a strange man in the office.  She wanted to know who he was, how long he had been here and who was paying him.  She did not like it that he had access to all the files.   I told her he worked only with RCM and that was who paid him.

App. 0347



**From:** sheena.bonadona@maropco.com [mailto:sheena.bonadona@maropco.com]
**Sent:** Friday, April 10, 2015 4:57 PM
**To:** 'Preston Marshall'; 'Eyvonne Scurlock'
**Subject:** Marshall tax returns

Hi all.  So we are all on the same page, please see the list of returns I'm preparing and which returns I'm under the impression that Preston is preparing. Please let me know if anything needs to be changed.

Prepared by Sheena:
- Trof, Inc.
- Ribosome, LP
- MarOpCo BBP for Dallas & Harris Counties
- EPM Testamentary Lead Trust
- Eagle Trust
- Falcon Trust
- Harrier Trust
- Estate of J. Howard Marshall II
- J. Howard Marshall II Living Trust
- EPM MIT
- Marshall Grandchildren Trust FBO Preston

App. 0348

- Marshall Grandchildren Trust FBO Pierce
- Idzig, LLC
- Elaine T. Marshall
- Rusk Oil Corporation
- Estate of EPM
- Marshall Heritage Foundation

Prepared by Preston to be reviewed by Sheena:
- Chondriosome Stiftung
- Peroxisome Trust
- Lysosome, LLC
- Marshall Legacy Foundation

Prepared by Preston:
- Morgan CRUT
- Morgan Supplemental CRUT
- EPS/EPM CRUT
- Estes CRUT
- Estes CRAT

Thanks,
Sheena

_____

Sheena Adams Bonadona, CPA
Corporate Controller
MarOpCo, Inc.
7001 Preston Road, Ste. 400
Dallas, Texas 75205
Phone: (214) 447-7486
Fax: (972) 460-4326

2

# EXHIBIT 2B

App. 0350

From: Microsoft Store Support [mailto:DO-NOT-REPLY@microsoftstore.com]
Sent: Friday, June 13, 2014 4:00 PM
To: pmarshall28@hotmail.com
Subject: Microsoft Store - Order Confirmation (Order #9653449434)

                                                    Account  |  Customer Services

# Thanks for your purchase

Dear Preston Marshall,

Thank you for shopping with Microsoft on June 13, 2014. We hope you enjoyed your shopping experience.

If your order contains products that require downloading, just sign in with your Microsoft account and click the download link right next to the product name.

If your order contains physical products, we'll send you a separate email when your products have shipped.

## Order summary

**Your order number:**
9653449434

**Order date:**
June 13, 2014

**Bill to:**
Preston Marshall
7600 W. Tidwell Rd.
Suite# 800
Houston TX 77040
United States
713690-4321
pmarshall28@hotmail.com

**Payment:**
MC
***********9387 112016

## Products on your order

1

Product Name: Office Home and Business 2013                    $439.98
Product SKU: AAA-02675
Unit Price: $219.99
Qty Ordered: 2
Product Key: MXVKN-RW4RX-8JK2D-9G9VF-TVGHR

Product Key: W3NYM-F46YP-2BHCT-V92RB-VQTHR

---

                                              Subtotal: $439.98
                                             Sales tax: $36.30
                                          Order total: $476.28

---

To look up your order, please log in using your Microsoft account.

Additional Questions?
View our help pages
Read our return policy
View your account online

Thank you for shopping with Microsoft.

Sincerely, Microsoft Store Customer Service

2

From: Microsoft Store Support [mailto:DO-NOT-REPLY@microsoftstore.com]
Sent: Tuesday, May 28, 2013 5:42 PM
To: pmarshall28@hotmail.com
Subject: Microsoft Store - Order Confirmation (Order #9683492447)



Account  |  Customer Services

# Thanks for your purchase

Dear Preston Marshall,

Thank you for shopping with Microsoft on May 28, 2013. We hope you enjoyed your shopping experience.

If your order contains products that require downloading, just log in to your Microsoft account using the information and link below. In your order summary, just click the download link right next to the product name.

If your order contains physical products, we'll send you a separate email when your products have shipped.

## Order summary

| | |
|---|---|
| **Your order number:** | **Order date:** |
| 9683492447 | May 28, 2013 |

**Bill to:**
Preston Marshall
7600 W. Tidwell Rd.
Suite# 800
Houston TX 77040
United States
713690-4321
pmarshall28@hotmail.com

**Payment:**
MC
***********9387 112013

1

**Products on your order**

| | |
|---|---|
| Name: Office Home and Business 2013 | $219.99 |

Product SKU: AAA-02675
Unit Price: $219.99
Qty Ordered: 1
Product Key: NH84J-QG3VD-MVKX4-Y732D-C34MF

Subtotal: $219.99
Sales tax: $18.15
Order total: $238.14

To look up your order, please log in using your Microsoft account.

Additional Questions?
View our help pages
Read our return policy
View your account online

Thank you for shopping with Microsoft.

Sincerely, Microsoft Store Customer Service

2

From: Lacerte Customer Service [mailto:No_Reply@notifications.intuit.com]
Sent: Friday, October 03, 2014 2:31 PM
To: preston.marshall@ruskcapital.com
Subject: Your Lacerte Tax Order Confirmation



Dear Preston Marshall,

Thank you. We have received your order and it is currently being processed.

Sign in to My Account to view your order or make changes to your billing, contacts, and other account information. Don't have a login for My Account? No problem, it's quick and easy to create one by clicking the link above and following the on-screen instructions.



**ORDER INFORMATION**

Order #:   100000728550981
Order Date: Oct 03, 2014

| Qty | Item | Type | Current Charge |
|-----|------|------|----------------|
| 1 | Lacerte Fast Path Download Tax Year 2014 | One-Time | $345.00 |
| 1 | Lacerte New Customer Fast Path Download Tax Year 2013 | One-Time | $150.00 |

| | |
|---|---|
| Subtotal: | $495.00 |
| Sales Tax: | $40.84 |
| Total for this Order: | $535.84 |

Notes:

- Sales tax calculations are estimated. The final sales tax calculation will comply with local regulations.

**Billing Information**

Bill To:      Preston Marshall
              7600 W Tidwell Rd
              STE 800

**Ask Lacerte**

Get Your Answers Fast Through "Ask Lacerte®"

**Manage Your Lacerte Account**

Sign in to My Account to:

- Update account
- Change contact info
- Track shipments
- View REP balances
- Renew online

**Lacerte Planned Releases**

View scheduled Lacerte software releases and planned release dates

1



Houston, TX 77040

E-mail Address: preston.marshall@ruskcapital.com

Payment Type:  American Express *2006

**NEED HELP?**

If you have any questions, we're here to help. Please visit the customer support site to see all of our support options.

Lacerte Training & CPE Courses

Lacerte Product Release/Ship Dates

Privacy | Legal | Contact Us | About Intuit

You have received this business communication as part of our efforts to fulfill your request or service your account. You may receive this and other business communications from us even if you have opted out of marketing messages.

If you receive an email message that appears to come from Intuit but that you suspect is a phishing email, please forward it immediately to spoof@intuit.com . Please visit http://security.intuit.com for additional security information.

Please note: This email was sent from an auto-notification system that cannot accept incoming email. Please do not reply to this message.

© 2014 Intuit Inc. or its affiliates.  All rights reserved.

From: CUSTOMERREPLIES@HP.COM [mailto:CUSTOMERREPLIES@HP.COM] On Behalf Of HP DIRECT ORDERS
Sent: Monday, June 02, 2014 4:31 PM
To: PMARSHALL28@HOTMAIL.COM
Subject: Order Confirmation. 4896759

Confirmation of your HP order



# Order confirmation

## Thank you for doing business with HP

Hewlett-Packard receipt of 034940084 ordered on 06/02/2014

Thank you for choosing Hewlett-Packard Company as your provider. Below are the details of your recent purchase. To check the status of your order online, please refer to the order status link on our website. Please note HP is committed to meet shipping dates & for that reason some of the items on your order might ship separately as available to expedite the delivery process.

** Please do not respond to this email, as emails sent to this mailbox are not monitored.
** If you have questions, please contact your Client Service or Sales Representative at 866-625-0759. A subsequent shipping confirmation email will be sent at the time your order ships.

Customer Account Number:    461463
Web Order Number:            4896759
Customer PO Number:          4896759
Order Date:                  06/02/2014
Carrier:                     F2D-FEDEX 2
                             DAY

| Item #: | Description/Mfg part #: | Quantity: | Unit price: | Extended price: |
|---------|-------------------------|-----------|-------------|-----------------|

1

| | | | | | |
|---|---|---|---|---|---|
| *534204 | 748270-999 | | 1 | 12,386.00 | 12,386.00 |
| | ML350e Gen8 v2 Server KMAT CTO | | | | |
| 1235398 | 740897-B21 | | 1 | .00 | .00 |
| | HP ML350e Gen8 v2 Hot Plug 8SFF CTO Svr | | | | |
| 9871614 | 701849-L21 | | 1 | .00 | .00 |
| | HP ML350e Gen8 v2 E5-2470v2 FIO Kit | | | | |
| *775969 | 713985-32G | | 2 | .00 | .00 |
| HP 32GB | 2x16GB | 2Rx4 PC3L-12800R-11 Kit | | | |
| 2440289 | 713985-B21 | | 4 | .00 | .00 |
| | HP 16GB 2Rx4 PC3L-12800R-11 Kit | | | | |
| 9871640 | 701849-B21 | | 1 | .00 | .00 |
| | HP ML350e Gen8 v2 E5-2470v2 Kit | | | | |
| 6100057 | 755997-B21 | | 1 | .00 | .00 |
| | MS WS12 R2 Std FIO Npi E/F/I/G/S SW | | | | |
| 2210004 | 694474-B21 | | 1 | .00 | .00 |
| | MS SQL Srv 2012 Std FIO Npi en SW | | | | |
| 7550501 | 718162-B21 | | 3 | .00 | .00 |
| | HP 1.2TB 6G SAS 10K 2.5in DP ENT SC HDD | | | | |
| 0521875 | 339779-B21 | | 1 | .00 | .00 |
| | HP RAID 5 Drive 1 FIO Setting | | | | |
| 1880060 | 624192-B21 | | 1 | .00 | .00 |
| | HP Hh SATA DVD RW Black Bzl Kit | | | | |
| *610875 | 698530-SC2 | | 1 | .00 | .00 |
| | HP SA P430/4GB FBWC 6Gb Cntrlr+Cable Kit | | | | |
| 6100081 | 698530-B21 | | 1 | .00 | .00 |
| | HP Smart Array P430/4G Controller | | | | |
| 2650145 | 725895-B21 | | 1 | .00 | .00 |
| | HP ML350e Gen8 v2 Smart Array Cable Kit | | | | |
| 2650146 | 738655-B21 | | 1 | .00 | .00 |
| | HP PCI Baffle Kit | | | | |
| *411603 | 656363-4RK | | 1 | .00 | .00 |
| | 2xHP750W CS PlatPlus PwrSply+Enblmnt KT | | | | |
| 8640116 | 656363-B21 | | 2 | .00 | .00 |
| | HP 750W CS Plat PL Ht Plg Pwr Supply Kit | | | | |
| 1830501 | 738661-B21 | | 1 | .00 | .00 |
| | HP ML350e v2 Redundant PSU Kit | | | | |
| 1551508 | 631341-B21 | | 1 | 30.00 | 30.00 |
| | HP USB BFR-PVC US | | | | |

2

App. 0358

Keyboard/Mouse Kit

| | | | | | |
|---|---|---|---|---|---|
| *284967 | U2FT7E | | 1 | 552.00 | 552.00 |
| | HP 3y Nbd ML350e FC SVC | | | | |
| 2730974 | 701606-DN1 | | 1 | 138.00 | 138.00 |
| | MS WS12 CAL 5USR en/fr/es/xc Lic | | | | |

| | |
|---|---|
| Sub Total: | 13,108.00 |
| Freight: | 71.00 |
| Estimated Tax: | 1,081.26 |
| ---------------------------------------------------------- | |
| Order Total: | 14,258.26 |

**Shipping Information**          **Billing Information**

Ship to:                         Bill to:

RUSK CAPITAL MANAGEMENT          RUSK CAPITAL MANAGEMENT
PRESTON MARSHALL                 PRESTON MARSHALL
7600 W. TIDWELL 800              7600 W. TIDWELL 800
HOUSTON, TX 77040                HOUSTON, TX 77040

For contact information, return policy or terms of sale please click here.

---

## Stay up to date

Receive updates on the latest technology, industry news, new products and solutions, promotions and events, plus driver and support alerts.

Subscribe to HP communications.

---

## We're here to help

Order Support Specialists are available to assist customers after order placement at 1-866-625-0242 Option #3. Hours of availability are Monday through Friday, 6am to 6pm MST.

---

## Special offers

View all offers

3



| Our thinnest business Ultrabook™ yet | The desktop has evolved | Save instantly on HP ProLiant Smart Buys | Fast, easy operation |

**Computing**

Laptops and tablets

Desktops

Workstations

Monitors

**Printing**

Printers and multifunction

Ink, toner and paper

Scanners and fax

**Networking**

Servers and blades

Storage

Solutions

**Connect with HP**

Facebook

Twitter

LinkedIn

367 Addison Avenue

Promotions subject to terms and conditions. HP Privacy Mailbox, 11445 Compaq Center Drive W., Mailstop 040307, Houston, TX 77070.

HP is committed to respecting your privacy. For specific guidelines, visit the HP Online Privacy Statement.

© 2014 Hewlett-Packard Company, L.P. The only warranties for HP products and services are set forth in the express limited warranty statements accompanying such products and services. Nothing herein should be construed as constituting an additional warranty. HP shall not be liable for technical or editorial errors or omissions contained herein. THIS DOCUMENT IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY. This document may be copied provided all text is included and copies contain HP's copyright notice and any other notices provided herein. For more information on our legal policy please click here.

4

App. 0360

From: CUSTOMERREPLIES@HP.COM [mailto:CUSTOMERREPLIES@HP.COM] On Behalf Of HP DIRECT ORDERS
Sent: Saturday, June 14, 2014 4:09 PM
To: PMARSHALL28@HOTMAIL.COM
Subject: Order Confirmation. 4900510

Confirmation of your HP order



# Order confirmation

## Thank you for doing business with HP

Hewlett-Packard receipt of 034998976 ordered on 06/14/2014

Thank you for choosing Hewlett-Packard Company as your provider. Below are the details of your recent purchase. To check the status of your order online, please refer to the order status link on our website. Please note HP is committed to meet shipping dates & for that reason some of the items on your order might ship separately as available to expedite the delivery process.

** Please do not respond to this email, as emails sent to this mailbox are not monitored.
** If you have questions, please contact your Client Service or Sales Representative at 866-625-0759. A subsequent shipping confirmation email will be sent at the time your order ships.

Customer Account Number:   461463
Web Order Number:          4900510
Customer PO Number:        4900510
Order Date:                06/14/2014
Carrier:                   RPS-FEDEX
                           GROUND

| Item #: | Description/Mfg part #: | Quantity: | Unit price: | Extended price: |
|---------|------------------------|-----------|-------------|-----------------|

1

| | | | |
|---|---|---|---|
| 4034247 A5V72AA#ABA | 1 | 95.00 | 95.00 |
| nPLV1911 18.5-InchLEDLCDMonitor | | | |
| US | | | |

| | |
|---|---|
| Sub Total: | 95.00 |
| Freight: | .00 |
| Estimated Tax: | 7.84 |
| Order Total: | 102.84 |

**Shipping Information**          **Billing Information**

Ship to:                          Bill to:

RUSK CAPITAL MANAGEMENT           RUSK CAPITAL MANAGEMENT
PRESTON MARSHALL                  PRESTON MARSHALL
7600 W. TIDWELL 800               7600 W. TIDWELL 800
HOUSTON, TX 77040                 HOUSTON, TX 77040

For contact information, return policy or terms of sale please click here.

## Stay up to date

Receive updates on the latest technology, industry news, new products and solutions, promotions and events, plus driver and support alerts.

Subscribe to HP communications.

## We're here to help

Order Support Specialists are available to assist customers after order placement at 1-866-625-0242 Option #3. Hours of availability are Monday through Friday, 6am to 6pm MST.

## Special offers                    View all offers

2

Great business solutions at competitive prices

Keep pace with your multitasking

Save instantly on HP ProLiant Smart Buys

Find all of your printer supplies here

**Computing**

Laptops and tablets

Desktops

Workstations

Monitors

**Printing**

Printers and multifunction

Ink, toner and paper

Scanners and fax

**Networking**

Servers and blades

Storage

Solutions

**Connect with HP**

Facebook

Twitter

LinkedIn

367 Addison Avenue

Promotions subject to terms and conditions. HP Privacy Mailbox, 11445 Compaq Center Drive W., Mailstop 040307, Houston, TX 77070.

HP is committed to respecting your privacy. For specific guidelines, visit the HP Online Privacy Statement.

© 2014 Hewlett-Packard Company, L.P. The only warranties for HP products and services are set forth in the express limited warranty statements accompanying such products and services. Nothing herein should be construed as constituting an additional warranty. HP shall not be liable for technical or editorial errors or omissions contained herein. THIS DOCUMENT IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY. This document may be copied provided all text is included and copies contain HP's copyright notice and any other notices provided herein. For more information on our legal policy please click here.

3

# Order Status Details

To obtain more detailed information for this order, select line item detail, tracking information and config status links below.

### Order Status Detail

| | | | |
|---|---|---|---|
| Order #: | 34928984 | Order Date/Time: | 05/29/2014  4:54:31 PM |
| Customer # | 461463 | Estimated Ship Date: | 06/03/2014 |
| Customer PO #: | 4896714 | Estimated Delivery Date: | 06/03/2014 |
| Associated Order #: | 0 | Credit Approval Date: | 05/29/2014 |
| Invoice#(s) : | 54428102 | | |

| | | | |
|---|---|---|---|
| Customer Bill To: | RUSK CAPITAL MANAGEMENT 7600 W. TIDWELL 800 PRESTON MARSHALL HOUSTON  TX  77040 | Customer Ship To: | RUSK CAPITAL MANAGEMENT 7600 W. TIDWELL 800 PRESTON MARSHALL HOUSTON  TX  77040 |
| Configuration: | Yes | Ship Via: | RPS GROUND |
| Express Config: | No | Carrier Info: | RPS GRND |
| | | Ship Complete : | Yes |
| Sale Amount: | $2,343.20 | Credit Terms: | CREDIT CARD |
| Tax Amount: | $193.31 | Credit Status: | CLO |
| Total Amount: | **$2,536.51** | | |

Line Item Detail | Config Status | Tracking Information | Print Preview | Export Data

App. 0364

# Line Item Detail

Select the item# or mfg part# to view serial number and asset tag information. Select the more info button to view products that have shipped directly from other vendors.

**line item detail**

| | | | | | |
|---|---|---|---|---|---|
| Order #: | 34928984 | Order Date/Time: | 05/29/2014  4:54:31 PM | | |
| Customer PO #: | 4896714 | Requested Ship Date: | 05/29/2014 | | |
| Configuration #: | Yes | Credit Approval Date: | 05/29/2014 | | |
| Ship Complete: | Yes | | | | |

| Item# | MFG Part# | Line | Qty Order | Qty Alloc. | Qty B/O | Qty Invcd | CTO Ship | Unit$ | Ext$ | Whse# | ESD EDD |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5581075 | F4K98UT#ABA | 001 | 2 | 0 | 0 | 2 | 0 | $1,144.00 | $2,288.00 | CA | >> |
| | PROMO600PONAi74770S500hmq4X46k US | | | | | | | | | | |
| *SHPHDL | *SHPHDLI | 002 | 1 | 0 | 0 | 1 | 0 | $55.20 | $55.20 | CA | >> |
| | SHIPPING AND HANDLING | | | | | | | | | | |

Order Header  |  Config Status  |  Tracking Information |

# EXHIBIT 2C

App. 0366

**ELAINE T. MARSHALL**
**5917 Club Oaks Drive**
**Dallas, TX 75248**

June 11, 2015

*Via Facsimile (713) 690-3054*
*Certified Mail - Return Receipt Requested*
*Tracking No. 7014 1820 0002 1348 5385*

Mr. Preston Marshall
7600 W. Tidwell Rd., Suite 800
Houston, TX 77040

RE: Termination and Frost Bank

Dear Preston:

As President, Chief Executive Officer, and Sole Director of MarOpCo, Inc. I notify you that your employment by that company is hereby terminated. This termination extends to all offices, services, and responsibilities for Trof, Inc. and its affiliates. If you communicate a willingness and ability to work under my direction with me in these enterprises and take the steps set forth below before the end of this business day tomorrow (June 12, 2015), I will have my lawyers submit a new employment contract on materially similar terms for your consideration. I have directed the corporate controller to compute your final paycheck on the basis of days worked in the current pay period. She will mail your final paycheck within five (5) days of this letter.

Sadly, you have consistently dismissed my instructions. This has impeded operations and created unnecessary financial burdens. Among the most recent impediments, you ignored my instructions to execute a document correctly stating that I either own or control several entities and that you have no authority to contest my wishes for the accounts Frost Bank has seized and that are now subject to interpleader. Tomorrow I am formally engaging a specialist attorney to correct many of the now public and potentially harmful misrepresentations Frost Bank has made in the interpleader action.

You no longer have access to the MarOpCo office in Houston absent my written approval. I understand that you have an employee using the MarOpCo office for your personal business. This person also has no authority to be on the MarOpCo premises. Do not remove property from the MarOpCo offices. I will make arrangements for a designated company representative to meet with you for the purposes of identifying

Mr. Preston L. Marshall
June 11, 2015
Page 2 of 2

personal effects you may wish to remove.  You have property in your possession in other locations.  Please identify this property so that an authorized employee may recover it from you.

I am attaching a document regarding Frost Bank that I expect to be executed by you.  Fax the executed document to the Dallas headquarters at 972-460-4326 by 5pm CST Friday June 12, 2015.  Have the original sent to me for Monday delivery at the Dallas headquarters located at 7001 Preston Road, Suite 400 Dallas, TX 75205.  I hope your judgment will improve and you will do as I instruct.

Sincerely yours,

*Elaine T. Marshall*

Elaine T. Marshall

Mr. Rupert Barron
Hirsch & Westheimer
1415 Louisiana, 36th Floor
Houston, Texas 77002

      RE:   Elaine T. Marshall

Mr. Barron,

      This letter is formal notice that I do not wish to contest my mother's directions and wishes with regards to any Frost Bank account associated with the entities described below, nor do I have the authority to do so.  These entities include:

      Telomere, LLC
      Ribosome, LP
      MarOpCo, Inc.
      Trof, Inc.
      Idzig, LLC

      These entities are either owned or controlled by my mother, Elaine T. Marshall. Any authority I had to sign or access these accounts was unequivocally and unconditionally revoked by her, and she had the sole and exclusive authority to do so.  I do not contest her authority to remove me as a signatory, I do not contest her authority to transfer funds from Frost Bank to any other bank, and I do not contest her authority to close all accounts with Frost Bank. My mother, Elaine T. Marshall, has the sole authority to decide who these entities choose to bank with and who shall have signature authority for each and every one of them.

      Sincerely,

      Preston L. Marshall



MarOpCo, Inc.
7001 Preston Rd, Ste 400
Dallas, TX 75205

**CERTIFIED MAIL**

7014 1820 0002 1348 5385

U.S. POSTAGE
PAID
ADDISON, TX
75001
JUN 15 15
AMOUNT
**$6.74**
R2303S101408-01

MarOpCo, Inc.
Attn: Preston L. Marshall
7600 West Tidwell, Ste. 800
Houston, TX 77040

RECEIVED
JUN 15 2015

App. 0370

# EXHIBIT 2D

App. 0371

# WARREN & SIUREK, L.L.P.

MARK SIUREK

3334 RICHMOND AVE, SUITE 100
HOUSTON, TEXAS 77098
TELEPHONE (713) 522-0066  TELECOPIER (713) 522-9977
msiurek@warrensiurek.com
www.warrensiurek.com

FOR SETTLEMENT PURPOSES ONLY

June 19, 2015

BY FAX NO. 713-690-3054

Elaine T. Marshall, President
MarOpCo, Inc.
7600 W. Tidwell Rd., Suite 800
Houston, Texas 77040

BY FAX NO. 972-460-4326

Elaine T. Marshall, President
MarOpCo, Inc.
7001 Preston Road, Suite 400
Dallas, Texas 75205

Re:  Issues relating to the conversion of property
and assets pertaining to Rusk Capital
Management, L.L.C. ("Rusk Capital") and
Preston Marshall, individually, by MarOpCo,
Inc.

Dear Ms. Marshall:

This law firm has been retained by Preston Marshall ("Mr.
Marshall") both individually and in his official capacity as
Manager of Rusk Capital in connection with the termination of his
employment with MarOpCo, Inc. ("MarOpCo") and MarOpCo's wrongful
exercise of dominion and control over the assets and property of
Rusk Capital and Mr. Marshall.

In that regard, the following is a brief summary of the
pertinent facts based on my investigation:

1.  On June 11, 2015, Mr. Marshall was notified that
his employment as vice-president of MarOpCo was
terminated;

2.  Although Rusk Capital and MarOpCo are unrelated
entities, Rusk Capital and MarOpCo shared office
space located at 7600 W. Tidwell Road, Suite 800,
Houston, Texas 77040;

3.  Mr. Marshall remains the manager and sole member of
Rusk Capital;

**App. 0372**

4. Mr. Marshall was informed by MarOpCo that he no longer had access to the Tidwell office location;

5. MarOpCo directed the management company at the Tidwell office location to deactivate all access entry cards in the possession of Mr. Marshall and change the lock on the doors to Suite 800;

6. Rusk Capital's computer system and server have been disconnected; and

7. As a result, the office furniture, computers, computer server, files (both physical and electronic), and all confidential and proprietary information belonging to Rusk Capital are now in the possession of, and are controlled by, MarOpCo.

Simply put, MarOpCo's wrongful exercise of dominion and control over the property and assets of Rusk Capital and Mr. Marshall constitutes conversion for which Mr. Marshall intends to pursue all available legal and equitable remedies, including actual and punitive damages. Therefore, demand is hereby made for the immediate return of all property and assets of Rusk Capital as well as any personal property belonging to Mr. Marshall in the possession of MarOpCo or any of its affiliates and agents or representatives, including all confidential and proprietary information pertaining to Rusk Capital,[1] all physical files, work papers, computers, computer servers, electronic devices, electronically stored data, books, records, office equipment, checkbooks or boxes of checks, and office chairs, decorations and supplies.

Additionally, you are advised to preserve all property and assets of Rusk Capital as well as any personal property belonging to Mr. Marshall in the condition in which they were found on June 11, 2015. Specifically, MarOpCo, or anyone acting on its behalf, shall not:

a. Attempt to access any server, computer or other electronically stored data owned or used by Mr. Marshall or Rusk Capital or for which Mr. Marshall or Rusk Capital has any form of password or security protection;

---

[1] Proprietary and confidential information includes, but is not limited to, all information related to actual and potential investors, data pertaining to investment opportunities, business strategies, investment strategies, business analysis, all communications with actual and potential investors, all data pertaining to or evidencing due diligence with respect to investment opportunities, and employee records.

-2-

b.   Use, disclose or transfer any information, knowledge or data belonging to Mr. Marshall or Rusk Capital that you received, developed or had access to, including any proprietary and confidential information or other compilation of information owned by Mr. Marshall or Rusk Capital, and which are regularly used in the operation of their business(es);

c.   Alter, destroy, conceal, or hide any records, documents, papers, files, checks, or other property belonging or pertaining to Mr. Marshall, Rusk Capital or any actual or potential investors of Rusk Capital;

d.   Alter, delete, remove, or write over in any respect any documents, computer files or data (including, emails, hard drives, flash drives, disc drives, and zip drives), or other electronic information relating in any way to Mr. Marshall, Rusk Capital, or any actual or potential investors of Rusk Capital or business information of any kind;

e.   Alter, delete, remove, or write over the internet cache on any computer system, hard drive, server, flash drive or mobile device which was utilized by Mr. Marshall or Rusk Capital, or its employees;

f.   Alter, delete, remove, destroy, repurpose, or reimage any computer, computer drive, server, portable device, or associated metadata which was utilized by Mr. Marshall or Rusk Capital, or its employees.

Please contact me to discuss the return of all property and assets belonging or pertaining to Mr. Marshall and Rusk Capital which were stored or located at 7600 W. Tidwell Road, Suite 800, Houston, Texas 77040.

If I do not hear from you by 5:00 p.m. on Monday, June 22, 2015, I will seek expedited legal recourse, including injunctive or other equitable relief.

-3-

I hope to hear from you soon.

Very truly yours,

WARREN & SIUREK, L.L.P.

Mark Siurek

cc:  BY FAX 337-439-2505 AND EMAIL
     Brad Trevino (btrevino@hunterlaw.com)
     Hunter, Hunter & Sonnier
     1807 Lake Street
     Lake Charles, Louisiana 70601

     BY EMAIL sheena.bonadona@maropco.com
     Sheena Bonadona, Treasurer
     MarOpCo, Inc.
     7001 Preston Road, Suite 400
     Dallas, Texas 75205

-4-

# Warren & Siurek, L.L.P.

www.warrensiurek.com
Mark Siurek
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
phone (713) 522-0066    facsimile (713) 522-9977

## TELECOMMUNICATION TRANSMITTAL

| Please Deliver To The Following: | Telephone Number | Facsimile Number |
|---|---|---|
| Elaine T. Marshall | | 713-690-3054 |
| Elaine T. Marshall | | 972-460-4326 |
| Brad Trevino | | 337-439-2505 |
| | | |
| | | |

From: Mark Siurek

The information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.

Date: June 19, 2015          Time: _____

Number of Pages Including Cover Sheet: ____

Please call (713) 522-0066 as soon as possible if you do not receive the total number of pages or if the transmission is not legible.

CLIENT/MATTER: Rusk Capital Management, LLC, and Preston Marshall

ADDITIONAL MESSAGE:

App. 0376

**Sue Diedrich**

| | |
|---|---|
| **From:** | Sue Diedrich |
| **Sent:** | Friday, June 19, 2015 4:20 PM |
| **To:** | 'btrevino@hunterlaw.com'; 'sheena.bonadona@maropco.com' |
| **Subject:** | Rusk Capital Management, LLC, and Preston Marshall |
| **Attachments:** | maropco ltr.pdf |

Mr. Trevino and Ms. Bonadona: Mr. Siurek asked that I forward the attached to you, a copy of which is also being faxed to Mr. Trevino's office.

Susan Diedrich, CLA
Warren & Siurek, L.L.P.
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
713-522-0066 x 104 (telephone)
713-522-9977 (general fax)
713-400-9195 (direct fax)

1

Sue Diedrich

| | |
|---|---|
| **From:** | MAILER-DAEMON@server506.appriver.com |
| **To:** | sheena.bonadona@maropco.com; btrevino@hunterlaw.com |
| **Sent:** | Friday, June 19, 2015 4:21 PM |
| **Subject:** | Delivered: Rusk Capital Management, LLC, and Preston Marshall |

**Your message has been delivered to the following recipients:**

sheena.bonadona@maropco.com

btrevino@hunterlaw.com

Subject: Rusk Capital Management, LLC, and Preston Marshall

1

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME : 06/19/2015 15:04
                              NAME : WARREN SIUREK
                              FAX  : 7135229977
                              TEL  : 7135220066
                              SER.# : BROH5J317364


    DATE,TIME          06/19  15:02
    FAX NO./NAME       7136903054
    DURATION           00:01:20
    PAGE(S)            05
    RESULT             OK
    MODE               STANDARD
                       ECM
```

# Warren & Siurek, L.L.P.

www.warrensiurek.com
Mark Siurek
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
phone (713) 522-0066      facsimile (713) 522-9977

## TELECOMMUNICATION TRANSMITTAL

| Please Deliver To The Following: | Telephone Number | Facsimile Number |
|---|---|---|
| Elaine T. Marshall | | 713-690-3054 |
| Elaine T. Marshall | | 972-460-4326 |
| Brad Trevino | | 337-439-2505 |
| | | |
| | | |

From: Mark Siurek

The information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.

Date: June 19, 2015          Time: _____

Number of Pages Including Cover Sheet:____

```
┌─────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT    │
└─────────────────────────────────────┘

                              TIME  : 06/19/2015 15:07
                              NAME  : WARREN SIUREK
                              FAX   : 7135229977
                              TEL   : 7135220066
                              SER.# : BROH5J317364

     DATE,TIME          06/19  15:06
     FAX NO./NAME       13374392505
     DURATION           00:01:22
     PAGE(S)            05
     RESULT             OK
     MODE               STANDARD
                        ECM
```

# Warren & Siurek, L.L.P.

www.warrensiurek.com
Mark Siurek
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
phone (713) 522-0066    facsimile (713) 522-9977

## TELECOMMUNICATION TRANSMITTAL

| Please Deliver To The Following: | Telephone Number | Facsimile Number |
|---|---|---|
| Elaine T. Marshall | | 713-690-3054 |
| Elaine T. Marshall | | 972-460-4326 |
| Brad Trevino | | 337-439-2505 |
| | | |
| | | |

From: Mark Siurek

    The information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.

Date: June 19, 2015          Time: _____

Number of Pages Including Cover Sheet: ____

App. 0380

```
┌─────────────────────────────────────────┐
│    TRANSMISSION VERIFICATION REPORT      │
└─────────────────────────────────────────┘
                          TIME : 06/19/2015 15:25
                          NAME : WARREN SIUREK
                          FAX  : 7135229977
                          TEL  : 7135220066
                          SER.# : BROH5J317364
```

```
┌─────────────────────────────────────────────────────────────┐
│                                                               │
│   DATE,TIME              06/19  15:23                          │
│   FAX NO./NAME           19724604326                           │
│   DURATION               00:01:35                             │
│   PAGE(S)                05                                    │
│   RESULT                 OK                                    │
│   MODE                   STANDARD                             │
│                          ECM                                  │
│                                                               │
└─────────────────────────────────────────────────────────────┘
```

# Warren & Siurek, L.L.P.

www.warrensiurek.com
Mark Siurek
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
phone (713) 522-0066     facsimile (713) 522-9977

## TELECOMMUNICATION TRANSMITTAL

| Please Deliver To The Following: | Telephone Number | Facsimile Number |
|---|---|---|
| Elaine T. Marshall | | 713-690-3054 |
| Elaine T. Marshall | | 972-460-4326 |
| Brad Trevino | | 337-439-2505 |
| | | |
| | | |

From: Mark Siurek

The information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone, and return the original message to us at the above address via U.S. Postal Service.

Date: June 19, 2015          Time: _____

Number of Pages Including Cover Sheet: ____

App. 0381

**ELAINE T. MARSHALL**
**5917 Club Oaks Drive**
**Dallas, TX 75248**

December 5, 2014

Mr. Preston L. Marshall
11100 Meadowick
Houston, TX   77024

Dear Preston:

Attached is the Employment Agreement and its exhibit for your engagement as Vice President of MarOpCo, Inc. for 2015. This needs to be executed with the original signature being returned to our corporate archivist, Amy Carter in the Dallas office, no later than December 15, 2014. Please provide your actual signature to the document and not a stamp or electronic signature.

This contract offer supersedes the existing employment contract, which will now terminate on January 1, 2015. If I do not receive the executed employment agreement as described in this letter, compensation from MarOpCo, Inc. will cease on January 1, 2015. This is not an offer to negotiate. No revisions will be considered or accepted. An identical letter and agreement as it relates to the Employment Agreement is being submitted to the other Vice President of MarOpCo, Inc.

Please be aware that while I have decided to pay Long Consultants, Inc. for their outstanding invoices, the attached Employment Agreement specifically prohibits you from contracting on behalf of any entity I control moving forward. I do not view payment of Long Consultants as a ratification of your actions in hiring them, rather an unfortunate decision by you that I do not condone nor will I pay for in the future.

Finally, please be aware that I do not authorize the use of the Tidwell business address for any entity that I do not control. Please be sure no entities, other than those I own or control have the Tidwell address listed on any document.

Thank you for your prompt attention. I look forward to a productive 2015.

Sincerely,

*Elaine T. Marshall*

Elaine T. Marshall

Enclosure

EXHIBIT 3

## EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT (this "Agreement") is made and entered into on December _12_ 2014 (the "Effective Date") and effective as of the date of execution through December 31, 2015 by and MarOpCo, Inc. (the "Company"), and Preston L. Marshall, an individual residing at 11100 Meadowick, Houston, Texas 77024 (the "Executive"). Terms used herein and not otherwise defined shall have the meanings set forth in Section 23.

### RECITALS:

**WHEREAS,** the Company desires to employ the Executive in the capacity hereinafter stated, and the Executive desires to be employed by the Company in such capacity for the period and on the terms and conditions set forth herein.

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements set forth herein and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto covenant and agree as follows:

1.  **Employment Term.** The Company hereby agrees to employ the Executive as a Vice President, and the Executive, in such capacity, agrees to provide services to the Company for the period beginning on the Effective Date and ending on December 31, 2015, which period shall automatically be renewed on the terms and conditions set forth herein for additional twelve (12) month periods (the "Employment Term"), unless (a) terminated earlier pursuant to the terms and conditions of this Agreement, or (b) either party gives the other party written notice not less than thirty (30) days prior to the expiration of the Employment Period (a "Non-Renewal Notice") that this Agreement will terminate at the end of such Employment Period.

2.  **Performance of Duties.** The Executive agrees that during the Employment Term, the Executive shall (a) devote the Executive's full time, energies and talents exclusively to serving in the capacity of Vice President of the Company, (b) act at all times in the best interests of the Company, and (c) perform the duties assigned to the Executive by the President of the Company faithfully, efficiently and in a professional manner.

3.  **Compensation.** Subject to the terms and conditions of this Agreement, during the Employment Term, the Executive shall be compensated by the Company for the Executive's services as follows:

    (a)    The Executive shall receive a salary of $525,000 for each twelve (12) month period beginning on the Effective Date (the "Base Salary") payable in substantially equal monthly or more frequent installments in accordance with the Company's general payroll practices and subject to applicable tax withholding.   During the Employment Term, the Executive's Base Salary shall not be reduced unless agreed by the Executive in writing and shall be reviewed annually by the President of the Company to determine whether an increase in the Executive's Base Salary is appropriate.   The Base Salary shall not be reduced during the Employment Term, other than across the board reduction of similarly situated employees of the Company, unless the Executive with the written consent of the President is not devoting his full

EXHIBIT 3

MAR000002

App. 0383

time, energies, and talents exclusively to serving in the capacity of Vice President of the Company.

(b)     The Executive shall be a participant in the following executive benefit plans maintained by the Company on substantially the same terms and conditions as other senior executives of the Company:  group medical (which is, as of the date hereof, supplied through BlueCross BlueShield of Texas), long-term disability, any retirement plans that may be implemented in the future (none currently), vacation, and sick days.

(c)     The Executive shall be provided with one hundred seventy five (175) hours of paid time off per calendar year.  For each calendar year, any unused paid time off shall be carried over to the following calendar year; provided, that the maximum number of hours of paid time off to be carried over at any time shall not exceed one hundred seventy five (175) hours in the aggregate.  Executive shall be compensated for any accrued but unused paid time off at the termination of Executive's employment regardless of whether said termination was for cause, not for cause, or through the natural expiration of this Agreement.  The President, in her untrammeled discretion, may authorize more vacation time in writing but any such additional authorization beyond the one hundred seventy five (175) hours shall not accrue or be paid out on termination under any circumstance (if it is not actually used it is lost).

(d)     The Executive shall be reimbursed by the Company for all reasonable business, promotional, travel and entertainment expenses incurred or paid by the Executive and approved in writing by the President during the Employment Term in the performance of the Executive's services under this Employment Agreement.  In order that the Company reimburse the Executive for such allowable expenses, the Executive shall furnish to the Company, in a timely fashion, the appropriate documentation required by the Code (as defined below) in connection with such expenses and shall furnish such other documentation and accounting as the Company may from time to time reasonably request.  To be timely the expense must be turned in within thirty (30) days of the date the expense is incurred.

4.     Restrictive Covenants.  The Executive acknowledges and agrees that (i) the Executive has substantial responsibility for the operation, development and growth of the Company's Business; (ii) the Executive's work for the Company has brought him and will continue to bring him, into close contact with confidential information of the Company, their applicable employees, consultants, representatives, service providers, closely related parties and vendors; and (iii) the agreements and covenants contained in this Section 4 are essential to protect the business interests of the Company, and the Company would not enter into this Agreement but for such agreements and covenants.  Accordingly, the Executive covenants and agrees to the following:

(a)     Confidential Information.  Except as may be required under applicable law, including by the lawful order of a court or agency of competent jurisdiction, the Executive agrees to keep secret and confidential, both during the Employment Term and indefinitely after the Executive's employment with the Company terminates, all non-public information concerning the Company, and/or their respective Affiliates that was acquired by, or disclosed to, the Executive during the course of the Executive's employment hereunder, including all trade

MAR000003

EXHIBIT 3

secrets, know-how, research and development, software, databases, inventions, processes, technology, information relating to Shareholders, costs, operations, sales, pricing, suppliers, vendors, customers, compensation, marketing, advertising, promotions, financial data, plans, and government and regulatory activities, whether past, current or planned and not to disclose the same, either directly or indirectly, to any other Person (as defined below), or to use it in any way; provided, however, that the provisions of this Section 4(a) shall not apply to information that (i) was, is now, or becomes generally available to the public (but not as a result of a breach of any duty of confidentiality by which the Executive is bound); (ii) was disclosed to the Executive by a third party not subject to any duty of confidentiality to the Company; or (iii) is disclosed by the Executive in the ordinary course of the Company's business as a proper part of the Executive's employment in connection with communications with proper parties; provided, that such disclosure is for a proper purpose solely for the benefit of the Company and approved in writing by the President. If the Executive is required by law to disclose any such information, to the extent not legally prohibited, the Executive will notify the President of the Company so that the President may seek any appropriate protective order, seek to obtain confidential treatment of such information and/or take any other action related to the protection of such information, and the Executive shall, at the expense of the Company, use commercially reasonable efforts to assist the President in her efforts. In no way does this Agreement replace or limit any prior obligations or understandings regarding obligations on behalf of the Executive, including in his personal capacity, to maintain private or confidential materials. The Executive is not authorized to voluntarily disclose private or confidential materials to any person without the express written consent of the President.

> (b)     Non-Disparagement.  The Executive agrees not to make any statement or disclosure that (i) would be prohibited by applicable federal or state laws, or (ii) is intended or reasonably likely to be detrimental to the Company and/or any of their respective subsidiaries or Affiliates.

> (c)     Non-Competition.  The Executive agrees that for the period commencing on the Effective Date and ending upon the termination of this Agreement, regardless of what brings about the termination, the Executive shall not compete with the Company in the business of the Company.

> (d)     Non-Solicitation.  The Executive agrees that for the period commencing on the Effective Date and ending on the second (2nd) anniversary of the date on which the Executive's employment with the Corporation is terminated (the "Non-Solicitation Period"), the Executive shall not, directly or indirectly, alone or as a partner, officer, director, employee, consultant, agent, independent contractor, or equity holder of any Person:

>> (i)     Employ, seek to employ or solicit for employment or endeavor to entice away from employment with anyone employed by or the Company or an Affiliate; or

>> (ii)     Solicit or induce any supplier, proprietor, equity holder, lender, director, officer, professional, employee, joint venturer, investor, lessor, customer, agent, service provider, consultant or other Person that has a business relationship with the Company and/or

MAR000004

EXHIBIT 3

any of their respective Affiliates to discontinue, reduce or modify such relationship with the Company and/or any of their respective Affiliates; or

(e) Notwithstanding the restrictions set forth in Section 4(c) or Section 4(d), nothing contained in Section 4(c) or Section 4(d) shall be deemed to prohibit the Executive from acquiring or holding or owning, solely as a passive investment, publicly traded securities of any entity, provided, that (A) the Executive is not a controlling person of, or a member of a group which controls, such entity, (B) the Executive is not an employee, officer, director, or consultant of such entity, (C) such entity is not competitive to the Business, (D) the Executive does not, directly or indirectly, own, in the aggregate, more than five percent (5%) of any class or series of outstanding securities of such entity, and (E) such ownership interest would not adversely impact in any material respect the ability of the Executive to perform the Executive's duties hereunder.

(f) Remedies. The Executive agrees that money damages would be an inadequate remedy for any breach of any of the provisions contained in Section 4(a), Section 4(b), Section 4(c), or Section 4(d) (collectively, the "Restrictive Covenants"). Therefore, in the event of a breach or threatened breach of any of the Restrictive Covenant, the Company, in addition to other rights and remedies existing in its favor, shall be entitled to seek specific performance and/or injunctive or other equitable relief from a court of competent jurisdiction in order to enforce, or prevent any violations of, the provisions of this Agreement (without posting a bond or other security). The provisions of this Section 4 are intended to be for the benefit of the Company, which may enforce such provisions. The Executive acknowledges and agrees that in the event of a violation or threatened violation of any of the Restrictive Covenants, the Company shall have no adequate remedy at law and shall therefore be entitled to enforce each such provision by temporary or permanent injunction or mandatory relief obtained in any court of competent jurisdiction without the necessity of proving damages, posting any bond or other security, and without prejudice to any other rights and remedies that may be available at law or in equity, and the Company shall also be entitled to recover its attorneys' fees and costs incurred to enforce any of the Restrictive Covenants from the Executive.

(g) Inventions and Intellectual Property. The Executive acknowledges and agrees that all developments, including, without limitation, inventions, patentable or otherwise, discoveries, improvements, patents, trade secrets, designs, reports, computer software, flow charts and diagrams, procedures, data, documentation, ideas and writings and applications thereof relating to the present or planned Business of the Company that, alone or jointly with others, the Executive has already or may in the future conceive, create, make, develop, reduce to practice or acquire during the Employment Term (collectively, the "Developments") are works made for hire and shall remain the sole and exclusive property of the Company and the Executive hereby assigns to the Company all of the Executive's right, title and interest in and to all such Developments, and such Development shall not be used by the Executive in any way adverse to the Company's interests. All related items, including, but not limited to, memoranda, notes, lists, charts, drawings, records, files, computer software, programs, source and programming narratives and other documentation (and all copies thereof) made or compiled by the Executive, or made available to the Executive, concerning the business or planned business of the Company shall be the property of the Company and shall be delivered to the Company promptly upon the termination of this Agreement. The Executive shall not deliver, reproduce or

MAR000005

EXHIBIT 3

in any way allow such documents or things to be delivered or used by any third party without the written approval of the President. The provisions of this <u>Section 4</u> shall survive the termination of this Agreement.

(h) <u>Severability; Enforceability</u>. If any of the Restrictive Covenants, or any part thereof, are held to be invalid or unenforceable, the same shall not affect the remainder of the covenant or covenants, which shall be given full effect, without regard to the invalid or unenforceable portions.

5. <u>Termination and Compensation Due Upon Termination</u>. The Employment Term may be terminated, and the Executive's right to compensation for periods after the date the Executive's employment with the Company terminates shall be determined in accordance with this <u>Section 5</u>:

(a) <u>Termination Without Cause</u>. The Company shall have the right to terminate the Executive's employment at any time during the Employment Term without Cause (including termination following delivery by the Company to the Executive of a Non-Renewal Notice). In the event the Company terminates the Executive's employment without Cause (including termination following delivery by the Company to the Executive of a Non-Renewal Notice), the Company shall pay the Executive (i) any Base Salary in accordance with the provisions of <u>Section 3(a)</u> through the termination date, (ii) any benefits pursuant to <u>Section 3(b)</u>, (iv) any unused paid time off pursuant to <u>Section 3(c)</u>, and (v) any expense reimbursement that the Company owes to the Executive pursuant to <u>Sections 3(d)</u>, in each case through the effective date of termination (collectively, the "<u>Accrued Obligations</u>"). Additionally, and conditioned upon the Executive's voluntary execution of the Release of Claims Agreement substantially in the form of <u>Exhibit A</u> attached hereto (the "<u>Release</u>"), which includes, but is not limited to, a non-disparagement provision and a release of any claims for lost wages or benefits; compensatory damages; punitive damages; attorneys' fees; equitable relief; or any other form of damages or relief the Executive may assert against the Company or any of their respective subsidiaries (<u>provided</u>, that the terms of such Release shall be subject to modification to the extent necessary to comply with changes in applicable law, if any, occurring after the Effective Date and prior to date such Release is executed).

(b) <u>Resignation With Good Reason</u>. The Executive shall have the right to terminate the Executive's employment with the Company during the Employment Term for Good Reason (excluding termination following delivery by the Executive to the Company of a Non-Renewal Notice). In the event the Executive terminates the Executive's employment with the Company for Good Reason during the Employment Term, the Executive will be entitled to all payments and benefits as if the Executive had been terminated without Cause pursuant to <u>Section 5(a)</u>. Notwithstanding anything to the contrary, Good Reason shall cease to exist after forty-five (45) days following the occurrence of an event otherwise constituting Good Reason hereunder unless the Executive has given the Company written notice thereof prior to such date.

(c) <u>Voluntary Resignation</u>. The Executive may terminate the Executive's employment with the Company for any reason (other than for Good Reason) at any time by giving the Company forty-five (45) days prior written notice of the Executive's voluntary

MAR000006

EXHIBIT 3

resignation; provided, however, that the Company may elect that the Executive's voluntary resignation be effective immediately upon notice of such resignation, in which case the Company shall pay to the Executive the Accrued Obligations and shall thereafter have no further obligation to make any other payments to the Executive in accordance with the provisions of Section 3 or otherwise for periods after the date on which the Executive's employment with the Company terminates due to the Executive's voluntary resignation.

(d)     Termination for Cause.  The Company shall have the right to terminate the Executive's employment at any time during the Employment Term for Cause.  In the event the Executive's employment with the Company is terminated for Cause, the Company shall pay to the Executive any Accrued Obligations as of the date of termination and shall thereafter have no further obligation to make any other payments to the Executive in accordance with the provisions of Section 3 or otherwise for periods after the Executive's employment with the Company is terminated on account of the Executive's discharge for Cause.

(e)     Disability.  The Company shall have no obligation to make payments to the Executive in accordance with the provisions of Section 3 or otherwise for periods after the date the Executive's employment with the Company terminates on account of disability, except for the Accrued Obligations.  For purposes of this Section 5(e), determination of whether the Executive is disabled shall be determined in accordance with the Company's long term disability plan (if any) and applicable law.

(f)     Death.  The Company shall have no obligation to make payments to the Executive in accordance with the provisions of Section 3 for periods after the date of the Executive's death, except the Accrued Obligations.

6.     Successors.  This Agreement shall be binding on, and inure to the benefit of the Company and its respective successors and assigns and any Person acquiring, whether by merger, consolidation, purchase of all or substantially all the Company's assets and business, or otherwise without further action or consent by the Executive; provided, however, that the Executive hereby agrees to execute an acknowledgement of assignment if requested to do so by the successor, assign or acquiring person.

7.     Nonalienation.  The interests of the Executive under this Agreement are not subject to the claims of the Executive's creditors, other than the Company, and may not otherwise be voluntarily or involuntarily assigned, alienated or encumbered except to the Executive's estate upon the Executive's death.

8.     Waiver of Breach.  The waiver by either the Company or the Executive of a breach of any provision of this Agreement shall not operate as, or be deemed a waiver of, any subsequent breach by either the Company or the Executive.

9.     Severability.  If any term or other provision of this Agreement is determined by a court of competent jurisdiction to be invalid, illegal or incapable of being enforced by any rule of law or public policy, all other terms, provisions and conditions of this Agreement shall nevertheless remain in full force and effect. Upon such determination that any term or other

MAR000007

EXHIBIT 3

App. 0388

provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible to the fullest extent permitted by applicable law in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the extent possible.

      10.   Notice. Any notice to be given hereunder by a party hereto shall be in writing and shall be deemed to have been given when received, rejected or refused or, when deposited in the U.S. mail, certified or registered mail, postage prepaid to the parties at the following addresses:

      (a)   to the Executive addressed as follows:

> Preston L. Marshall
> 11100 Meadowick
> Houston, TX  77024

      (b)   to the Company addressed as follows:

> MarOpCo, Inc.
> 5917 Club Oaks Drive
> Dallas, TX  75248

> with a copy to (which shall not constitute notice hereunder):

> Hunter, Hunter & Sonnier, L.L.C.
> Attention: Edwin Kidd Hunter
> 1807 Lake Street
> Lake Charles, LA  70601

      11.   Amendment. This Agreement may be amended or canceled by mutual agreement of the parties hereto in writing without the consent of any other person. The parties hereby agree that no oral conversations shall be deemed to be a modification of this Agreement and neither party shall assert the same.

      12.   Counterparts. This Agreement may he executed in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute and be one and the same instrument. Counterpart signatures need not be on the same page and shall be deemed effective upon receipt.

      13.   Governing Law and Venue. Texas law shall govern the rights and obligations under this Agreement, without giving effect to any conflict of laws principles that would require application of the laws of any other jurisdiction. In the event litigation is necessary, such legal

MAR000008

EXHIBIT 3

App. 0389

action shall be commenced only in a federal court located in Dallas, Texas or if federal court shall not have jurisdiction for whatever reason then in a state district court located in Dallas, Texas. Any litigation commenced other than in a federal court located in Dallas, Texas shall be subject to being dismissed, stayed or having venue transferred to a federal court located in Dallas, Texas at the option of the party not commencing said litigation. The parties further waive all objections and defenses to litigation being conducted in a federal court located in Dallas, Texas based upon venue or under the doctrine of *forum non conveniens*.

14. <u>Assignments</u>. The Executive shall not be permitted to assign this Agreement or any of the Executive's rights or obligations hereunder without the prior written consent of the Company. The Company may assign this Agreement and its rights or obligations hereunder to any of its Affiliates, successors or assigns, or in connection with the Sale of the Company.

15. <u>Effect of Termination</u>. Following the Employment Term, all of the provisions of this Agreement shall terminate, except that <u>Sections 4</u>, the Company's payment obligations under <u>Section 5</u> (if any), and <u>Sections 6</u> through <u>Section 26</u> shall survive indefinitely after the expiration of the Employment Term. Any termination of the Executive's employment with the Company shall automatically be deemed to be simultaneous resignation of all other positions and titles the Executive holds with any Affiliate of the Company.

16. <u>Entire Agreement</u>. This Agreement and the schedules an exhibits attached hereto sets forth the entire agreement and understanding between the Company, on the one hand, and the Executive, on the other hand, relating to the subject matter herein and merges all prior discussions between the parties, including, but not limited to, any and all statements made by any officer, employee or representative of the Company. The Executive understands and acknowledges that, except as set forth in this Agreement, (a) no other representation or inducement has been made to the Executive, (b) the Executive has relied on the Executive's own judgment and investigation in executing this Agreement, and (c) the Executive has not relied on any representation or inducement made by any officer, employee or representative of the Company. Any prior agreement similar to the subject matter of this Agreement is revoked.

17. <u>Separation from Service</u>. Notwithstanding any provision of this Agreement to the contrary, the Executive's employment will be deemed to have terminated on the date of the Executives "separation from service" (within the meaning of Treas. Reg. Section 1.409A-1(h)) with the Company, as reasonably determined by its President.

18. <u>Limitation on Authority and Duties</u>. Executive shall have no authority to bind the Company except as expressly outlined in a written and executed instrument by the President. The Executive shall not have the authority to incur obligations on behalf of the Company or settle or pay obligations on behalf of the Company except as expressly outlined in a written and executed instrument by the President. As of the Execution Date, the President has not issued any authorization to the Executive to take any action. Executive shall report regularly to the President and shall undertake such acts as the President instructs in writing that is consistent with the past actions taken by Executive.

MAR000009

EXHIBIT 3

App. 0390

19.     Confidentiality.  The parties acknowledge and agree that this Agreement and each of its provisions are and shall be treated strictly confidential.  During the Employment Term and thereafter, the Executive shall not disclose any terms of this Agreement to any person or entity without the prior written consent of the Company (as evidenced by a written instrument from the President), with the exception of the Executive's tax, legal or accounting advisors or for legitimate business purposes of the Executive, or as otherwise required by law.

20.     Enforcement Costs.  If any legal action or other proceeding is brought, for the enforcement or interpretation of any of the terms or conditions of this Agreement, or because of an alleged dispute, breach, or default, in connection with any of the provisions of this Agreement the prevailing party in such action shall be entitled to recover from the non-prevailing party the reasonably incurred costs it incurred in such action including, but not limited to, reasonable attorneys' fees (including costs and fees incurred on appeal) subject to the limit imposed in the following sentence, in addition to any other relief to which such party may be entitled. Notwithstanding this provision, the Executive may not recover costs or legal fees in excess of $100,000 under any circumstances.

21.     Compliance with other Agreements.  The Executive represents, warrants, agrees and covenants to the Company that (a) the execution and delivery of this Agreement by the Executive and the Executive's performance of the Executive's obligations hereunder shall not constitute (with or without notice or lapse of time or both) a default, breach or violation of any contract, written or oral, express or implied, to which the Executive is a party or to which the Executive is or may be bound, including, without limitation, any contract with any present or former employer and (b) this Agreement constitutes a valid and legally binding obligation of the Executive, enforceable against the Executive in accordance with its terms.  The Executive hereby agrees to indemnify and hold the Company and their respective Affiliates harmless from and against any and all claims, losses, damages, liabilities, costs and expenses (including, without limitation, attorneys' fees and expenses) incurred by the Company and/or their respective Affiliates in connection with any default, breach or violation by the Executive of any such contract.  All representations and warranties contained herein will survive the execution and delivery of this Agreement.

22.     No Rule of Construction.  This Agreement shall be construed to be neither against nor in favor of any party hereto based upon any party's role in drafting this Agreement, but rather in accordance with the fair meaning hereof.

23.     Definitions.  As used in this Agreement, the following terms have the respective meanings set forth below:

(a)     "Affiliate" shall mean any person or entity which controls, is controlled by, or is under common control with the Company or any shareholder.

(b)     "Business" means the actual businesses of the Company and/or any of their respective Affiliates during the Employment Term and as of the date that the Executive's employment with the Company is terminated.

MAR000010

EXHIBIT 3

App. 0391

(c)   "Cause" means the occurrence of one or more of the following events: (i) the Executive becomes habitually addicted to drugs or alcohol; (ii) the Executive breaches any of the Restrictive Covenants; (iii) the Company is directed by regulatory or governmental authorities to terminate the employment of the Executive or the Executive engages in activities that cause actions to be taken by regulatory or governmental authorities that have a material adverse effect on the Company; (iv) the Executive is convicted of a felony crime (other than a felony resulting from a minor traffic violation); (v) the Executive flagrantly disregards the Executive's duties after (A) written notice has been given to the Executive by the Board regarding the same and (B) the Executive has been given a period of ten (10) days after such notice to cure such misconduct; provided, however, that no notice or cure period shall be required if the Executive's disregard of the Executive's duties has materially and adversely affected the Company); (vi) any event of egregious misconduct by the Executive involving serious moral turpitude to the extent that, in the reasonable judgment of the Board, the Executive's credibility and reputation no longer conform to the standard of the Company's employees; or (vii) the Executive commits an act of fraud against the Company, violates a fiduciary duty to the Company, violates the Executive's duties, or tells a material lie to the President.

(d)   "Good Reason" means the occurrence of one of the following events:  (i) the Executive's duties are materially reduced; (ii) the relocation of the Executive's office outside the State of Texas; or (iii) a material breach by the Company of its obligations to make mandatory payments or provide required benefits under Section 3.

(e)   "Non-Performance" means the Executive does not materially perform the duties assigned to the Executive by the President and such determination is made by the President in good faith using its reasonable business judgment and the Executive has been given a period of ten (10) days after written notice thereof to cure such performance (however, no notice or cure period shall be required if the Executive's disregard of the Executive's duties has materially and adversely affected the Company).

(f)   "Sale of the Company" shall mean the sale the Company to an independent third party or group of independent third parties pursuant to which such party or parties acquire (i) equity interests (whether by merger, consolidation or sale or transfer of such equity interests), or (ii) all or substantially all of the Company's assets determined on a consolidated basis.

24.   Insurance.  The Executive acknowledges that the Company shall have the right, but not the obligation, to obtain life and/or disability insurance on the Executive, which insurance policies shall be paid for by and shall be for the benefit of the Company.

25.   WAIVER OF JURY TRIAL.   THE EXECUTIVE AND THE COMPANY EXPRESSLY WAIVE ANY RIGHT EITHER MAY HAVE TO A JURY TRIAL CONCERNING ANY CIVIL ACTION THAT MAY ARISE FROM THIS AGREEMENT.

MAR000011

EXHIBIT 3

App. 0392

IN WITNESS WHEREOF, the Executive and the Company have executed this Employment Agreement as of the day and year first above written.

**EXECUTIVE:**

Preston L. Marshall

**COMPANY:**

MarOpCo, Inc.

By: Elaine T. Marshall
Elaine T. Marshall, President

Page 11 of 11

EXHIBIT 3

MAR000012

App. 0393

**Akilah Craig**

| | |
|---|---|
| **From:** | Fred Johnson |
| **Sent:** | Tuesday, June 30, 2015 12:18 PM |
| **To:** | 'Bickley, Susan' |
| **Cc:** | Paul Dobrowski; msiurek@warrensiurek.com; Akilah Craig; Fred Johnson |
| **Subject:** | RE: Marshall et al v. MarOpCo, Inc. |

Susan,

I appreciate the call earlier today. I spoke to Preston Marshall to convey the information you provided.

On a separate note, I understand that Preston Marshall and his brother Pierce are adverse parties in at least two lawsuits, one pending in Dallas probate court and the other in state district court in Calcasieu Parish, Louisiana. I trust that you will ensure that Pierce Marshall does not use the present dispute and lockout as an opportunity at free discovery of Preston Marshall's documents and information. I assume you are aware of the litigation and have taken steps to prevent such mischief, but I want to make sure.

I look forward to an update on the progress being made to inventory and return our clients' property. We would appreciate an inventory as soon as one is available (even if it is a draft) so we can begin to assess and plan for the return of the property. Finally, as promised, Preston Marshall has authorized the property for our clients to be delivered to his personal residence located at 11100 Meadowick, Houston, Texas 77024.

Please call me at my office or my cell (713.858.7866) to discuss any questions or for an update. Thanks.

**Fred Johnson**



4601 Washington Avenue, Suite 300 | Houston, TX 77007
main: 713.659.2900 | fax: 713.659.2908 | **dobrowski.com**

**NOTICE BY DOBROWSKI, LARKIN & JOHNSON L.L.P.**  This message, and any attached document, is a PRIVILEGED AND CONFIDENTIAL communication from a law firm. If you are not the intended recipient, any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender in the event of a delivery error by replying to this message, and then delete it from your system. Unintended transmission shall not constitute waiver of any privilege. Unless expressly stated otherwise, nothing in the message shall be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

**From:** Bickley, Susan [mailto:sbickley@blankrome.com]
**Sent:** Tuesday, June 30, 2015 10:03 AM
**To:** Fred Johnson
**Cc:** Paul Dobrowski; msiurek@warrensiurek.com; Akilah Craig
**Subject:** Re: Marshall et al v. MarOpCo, Inc.

Fred,

I will give you a call this morning to provide you with additional information and was glad we were able to talk yesterday evening although, as you know, I had tried to reach you earlier in the day as well.

Barry Abrams will be attending the hearing in my absence, if needed, but I believe we are making good progress towards an agreement pending my return next week.

EXHIBIT 4

I will look forward to visiting further concerning these issues.

Very Truly Yours,

Susan Bickley

Susan L. Bickley
Partner
Blank Rome LLP
sbickley@blankrome.com


On Jun 30, 2015, at 8:48 AM, Fred Johnson <fjohnson@doblaw.com> wrote:

Susan,

I appreciate your call last night regarding this matter and the TRO. I understand from our conversation that MarOpCo will not permit our clients even limited / supervised access to the property MarOpCo has retained for purposes of identifying the property they claim. However, you advised that as of last week, your client is inventorying and boxing Preston Marshall's and Rusk Capital's property and will return the property to them. Please advise when your client will accomplish these items. Obviously, we expect to receive the property soon and preferably today or tomorrow. We also request that you provide us with an inventory list of all property retained so that we may see what has been returned and what remains in MarOpCo's possession. Absent access to the property, our clients cannot provide a complete list and description of property they claim is theirs. In the event that we cannot reach some accommodation, please send me the name of your partner who will attend the TRO proceeding should that be required.

I look forward to your prompt response on these matters.

**Fred Johnson**



4601 Washington Avenue, Suite 300 | Houston, TX 77007
main: 713.659.2900 | fax: 713.659.2908 | **dobrowski.com**

NOTICE BY DOBROWSKI, LARKIN & JOHNSON L.L.P.  This message, and any attached document, is a PRIVILEGED AND CONFIDENTIAL communication from a law firm. If you are not the intended recipient, any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender in the event of a delivery error by replying to this message, and then delete it from your system. Unintended transmission shall not constitute waiver of any privilege. Unless expressly stated otherwise, nothing in the message shall be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.


***********************************************************************************************
**************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

*********************************************************************************************
**************

**Akilah Craig**

| | |
|---|---|
| **From:** | Bickley, Susan <sbickley@blankrome.com> |
| **Sent:** | Wednesday, July 01, 2015 1:17 PM |
| **To:** | Fred Johnson |
| **Cc:** | Paul Dobrowski; msiurek@warrensiurek.com; Akilah Craig; Bickley, Susan; Abrams, Barry |
| **Subject:** | Re: Marshall et al v. MarOpCo, Inc. |

Fred:

As we have discussed several times, I have been advised that MarOpCo is actively engaged in boxing or preparing for delivery, all of Preston Marshall's personal property within the MarOpCo offices, and creating a list of such property at the same time.  The first assemblage of such property we understand will be delivered to Mr. Marshall today.

Thank you for confirming that Mr. Marshall would like this sent to his home address.  When it is delivered, he will be asked to sign a delivery receipt relating to the property, so I would appreciate your letting him know that this will be required in order to release the property into his possession.

While we will forward as much as possible today, I have not received a list yet of what items will be included, but when I do, I will give you more details.  Again, after these items of delivered, we will continue to deliver anything found that our representatives identify has belonging to Mr. Marshall or Rusk, but would welcome your letting us know whether there are any items of particular interest, and as we set out in our proposed letter agreement, we invite you to send us a list of items that your clients believe belong to them so we can determine whether they are in the office, and return them if there is no dispute concerning ownership.

As we also discussed, the various companies/foundations/charities' files also actively are being segregated and inventoried so we can both review a list to see if we can reach an agreement pertaining to their disposition.  This is going to take some time given the volume of materials involved.  I do want to address directly an alleged concern set out in your letter sent last night, however.  Please be advised that as a licensed attorney, MarOpCo VP Pierce Marshall needs no reminder concerning attorney/client privilege and has no intention of using for any improper purposes any files or documents relating to companies that Preston Marshall improperly operated out of MarOpCo's offices contrary to MarOpCo's CEO's express instructions.  Our only desire is to return such items to your clients where MarOpCo and its representatives have no interest in them.

Please let me know whether we can avoid or at least reset the hearing on the TRO currently scheduled for tomorrow.

Very Truly Yours,

Susan Bickley

Partner
Blank Rome LLP

1

EXHIBIT 5

**From:** Fred Johnson <fjohnson@doblaw.com>
**Sent:** Wednesday, July 1, 2015 12:07 PM
**To:** Bickley, Susan
**Cc:** Paul Dobrowski; msiurek@warrensiurek.com; Akilah Craig; Fred Johnson
**Subject:** RE: Marshall et al v. MarOpCo, Inc.

Susan,

Pursuant to our conversations, please update us on the progress of your client's inventory and the status of providing our client with their property. We look forward to hearing from you shortly.

Thanks.

**Fred Johnson**



4601 Washington Avenue, Suite 300 | Houston, TX 77007

main: 713.659.2900 [×] | fax: 713.659.2908 [×] | **dobrowski.com**

NOTICE BY DOBROWSKI, LARKIN & JOHNSON L.L.P.  This message, and any attached document, is a PRIVILEGED AND CONFIDENTIAL communication from a law firm. If you are not the intended recipient, any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender in the event of a delivery error by replying to this message, and then delete it from your system. Unintended transmission shall not constitute waiver of any privilege. Unless expressly stated otherwise, nothing in the message shall be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

**From:** Fred Johnson
**Sent:** Tuesday, June 30, 2015 12:18 PM
**To:** 'Bickley, Susan'
**Cc:** Paul Dobrowski; msiurek@warrensiurek.com; Akilah Craig; Fred Johnson
**Subject:** RE: Marshall et al v. MarOpCo, Inc.

Susan,

I appreciate the call earlier today. I spoke to Preston Marshall to convey the information you provided.

On a separate note, I understand that Preston Marshall and his brother Pierce are adverse parties in at least two lawsuits, one pending in Dallas probate court and the other in state district court in Calcasieu Parish, Louisiana. I trust that you will ensure that Pierce Marshall does not use the present dispute and lockout as an opportunity at free discovery of Preston Marshall's documents and information. I assume you are aware of the litigation and have taken steps to prevent such mischief, but I want to make sure.

I look forward to an update on the progress being made to inventory and return our clients' property. We would appreciate an inventory as soon as one is available (even if it is a draft) so we can begin to assess and plan for the return of the property. Finally, as promised, Preston Marshall has authorized the property for our clients to be delivered to his personal residence located at 11100 Meadowick, Houston, Texas 77024.

Please call me at my office or my cell (713.858.7866 [×]) to discuss any questions or for an update. Thanks.

2

EXHIBIT 5

App. 0398

**Fred Johnson**



4601 Washington Avenue, Suite 300 | Houston, TX 77007

main: 713.659.2900 [×] | fax: 713.659.2908 [×] | **dobrowski.com**

**NOTICE BY DOBROWSKI, LARKIN & JOHNSON L.L.P.**   This message, and any attached document, is a PRIVILEGED AND CONFIDENTIAL communication from a law firm. If you are not the intended recipient, any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender in the event of a delivery error by replying to this message, and then delete it from your system. Unintended transmission shall not constitute waiver of any privilege. Unless expressly stated otherwise, nothing in the message shall be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

---

**From:** Bickley, Susan [mailto:sbickley@blankrome.com]
**Sent:** Tuesday, June 30, 2015 10:03 AM
**To:** Fred Johnson
**Cc:** Paul Dobrowski; msiurek@warrensiurek.com; Akilah Craig
**Subject:** Re: Marshall et al v. MarOpCo, Inc.

Fred,

I will give you a call this morning to provide you with additional information and was glad we were able to talk yesterday evening although, as you know, I had tried to reach you earlier in the day as well.

Barry Abrams will be attending the hearing in my absence, if needed, but I believe we are making good progress towards an agreement pending my return next week.

I will look forward to visiting further concerning these issues.

Very Truly Yours,

Susan Bickley

Susan L. Bickley
Partner
Blank Rome LLP
sbickley@blankrome.com


On Jun 30, 2015, at 8:48 AM, Fred Johnson <fjohnson@doblaw.com> wrote:

> Susan,
>
> I appreciate your call last night regarding this matter and the TRO. I understand from our conversation that MarOpCo will not permit our clients even limited / supervised access to the property MarOpCo has retained for purposes of identifying the property they claim. However, you advised that as of last week, your client is inventorying and boxing Preston Marshall's and Rusk Capital's property and will return the property to them. Please advise when your client will accomplish these items. Obviously, we expect to receive the property soon and preferably today or tomorrow. We also request that you provide us with an inventory list of all property retained so that we may see what has been returned and what remains in MarOpCo's possession. Absent access to the property, our clients cannot provide a complete list and description of property they claim is theirs. In the event that we cannot reach some accommodation, please send me the name of your partner who will attend the TRO proceeding should that be required.

3

## EXHIBIT 5

I look forward to your prompt response on these matters.

**Fred Johnson**



4601 Washington Avenue, Suite 300 | Houston, TX 77007

main: 713.659.2900 | fax: 713.659.2908 | **dobrowski.com**

**NOTICE BY DOBROWSKI, LARKIN & JOHNSON L.L.P.**   This message, and any attached document, is a PRIVILEGED AND CONFIDENTIAL communication from a law firm. If you are not the intended recipient, any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender in the event of a delivery error by replying to this message, and then delete it from your system. Unintended transmission shall not constitute waiver of any privilege. Unless expressly stated otherwise, nothing in the message shall be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

*****************************************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

*****************************************************************************************************

CAUSE NO 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY and RUSK CAPITAL MANAGEMENT, L.L.C., | § § § | IN THE DISTRICT COURT |
| *Plaintiffs*, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| MAROPCO, INC., E. PIERCE MARSHALL, JR., EDWIN K. HUNTER, HUNTER, HUNTER & SONNIER, LLC | § § § § | |
| *Defendants*. | § | 11th JUDICIAL DISTRICT |

## ORDER TO SHOW CAUSE

On this day, Plaintiffs, Preston Marshall and Rusk Capital Management, LLC ("Plaintiffs") presented a Third Amended Verified Petition and Request for Temporary and Permanent Injunction in due form and manner.

Accordingly, it is ORDERED that the hearing on Plaintiff's Application for Temporary Injunction is set for **the _____ day of _____, 2016 at _____ o'clock a.m./p.m. in the courtroom of the 11th Judicial District, Harris County, Texas**.

It is further ORDERED that the Clerk of this Court shall issue notice for service on Defendants, MarOpCo, Inc., E. Pierce Marshall, Jr., Edwin Kidd Hunter, and Hunter, Hunter & Sonnier, LLP ("Defendants"), notifying them of the time and place of the hearing and commanding Defendants to appear and show cause why the temporary injunction prayed for in Plaintiff's Petition should not be granted.

SIGNED this _____ day of _____, 2016.

_____
JUDGE PRESIDING

## CIVIL PROCESS REQUEST FORM

FOR EACH PARTY SERVED YOU MUST FURNISH ONE (1) COPY OF THE PLEADING
FOR WRITS FURNISH TWO (2) COPIES OF THE PLEADING PER PARTY TO BE SERVED

**CASE NUMBER:** 2015-35950 _____     **CURRENT COURT:** 11th JDC _____

**TYPE OF INSTRUMENT TO BE SERVED** (See Reverse For Types): Third Amended Petition

**FILE DATE OF MOTION:** 01/12/16 _____
                                           Month/        Day/        Year

**SERVICE TO BE ISSUED ON** (Please List Exactly As The Name Appears In The Pleading To Be Served):

1.   NAME: E. Pierce Marshall, Jr. _____

     ADDRESS: 6425 Belmead Drive, Dallas, Texas 75230 or c/o MarOpCo 7001 Preston Road, Suite 400, Dallas, Texas 75205____

     AGENT, (if applicable): _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (see reverse for specific type): citation

    **SERVICE BY** (check one):
    ☒ **ATTORNEY PICK-UP**          ☐ **CONSTABLE**
    ☐ **CIVIL PROCESS SERVER** - Authorized Person to Pick-up: _____     Phone: _____
    ☐ **MAIL**          ☐ **CERTIFIED MAIL**
    ☐ **PUBLICATION:**
        Type of Publication:   ☐ **COURTHOUSE DOOR, or**
                        ☐ **NEWSPAPER OF YOUR CHOICE:** _____
    ☐ **OTHER,** explain _____

### ATTENTION: Effective June1, 2010

**For all Services Provided by the DISTRCT CLERKS OFFICE requiring our office to MAIL something back to the Requesting Party, we require that the Requesting Party provide a Self-Addressed Stamped Envelope with sufficient postage for mail back. Thanks you,**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

2.   NAME: Edwin Kidd Hunter _____

     ADDRESS: c/o Hunter, Hunter & Sonnier at 1807 Lake Street, Lake Charles, Louisiana 70601 _____

     AGENT, (if applicable): _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (see reverse for specific type): _____

    **SERVICE BY** (check one):
    ☒ **ATTORNEY PICK-UP**          ☐ **CONSTABLE**
    ☐ **CIVIL PROCESS SERVER** -  Authorized Person to Pick-up: _____     Phone: _____
    ☐ **MAIL**          ☐ **CERTIFIED MAIL**
    ☐ **PUBLICATION:**
        Type of Publication:   ☐ **COURTHOUSE DOOR, or**
                        ☐ **NEWSPAPER OF YOUR CHOICE:** _____
    ☐ **OTHER,** explain _____

**ATTORNEY (OR ATTORNEY'S AGENT) REQUESTING SERVICE:**

NAME: _____Davis Bradford_____     TEXAS BAR NO./ID NO. 24064939

MAILING ADDRESS:4601 Washington Ave., Suite 300, Houston, Texas 77007 _____

PHONE NUMBER: 713_____   659-2900_____ FAX NUMBER:   713_____   659-2908_____
           area code      phone number                area code     fax number

EMAIL ADDRESS: acraig@doblaw.com _____

## CIVIL PROCESS REQUEST FORM

| FOR EACH PARTY SERVED YOU MUST FURNISH ONE (1) COPY OF THE PLEADING |
| --- |
| FOR WRITS FURNISH TWO (2) COPIES OF THE PLEADING PER PARTY TO BE SERVED |

**CASE NUMBER:** 2015-35950 _____         **CURRENT COURT:** 11ᵗʰ JDC _____

**TYPE OF INSTRUMENT TO BE SERVED** (See Reverse For Types): Third Amended Petition

**FILE DATE OF MOTION:** 01/12/16 _____

  Month/      Day/      Year

**SERVICE TO BE ISSUED ON** (Please List Exactly As The Name Appears In The Pleading To Be Served):

**3.**  NAME:  Hunter, Hunter & Sonnier _____

   ADDRESS:  1807 Lake Street, Lake Charles, Louisiana 70601 _____

   AGENT, (*if applicable*): _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*):  citation

  **SERVICE BY** (*check one*):
  ☒ **ATTORNEY PICK-UP**              ☐ **CONSTABLE**
  ☐ **CIVIL PROCESS SERVER** - Authorized Person to Pick-up: _____   Phone: _____
  ☐ **MAIL**                       ☐ **CERTIFIED MAIL**
  ☐ **PUBLICATION:**
    Type of Publication:   ☐ **COURTHOUSE DOOR,  or**
                 ☐ **NEWSPAPER OF YOUR CHOICE:** _____
  ☐ **OTHER,** *explain* _____

### ATTENTION:  Effective June1, 2010

**For all Services Provided by the DISTRCT CLERKS OFFICE requiring our office to MAIL something back to the Requesting Party, we require that the Requesting Party provide a Self-Addressed Stamped Envelope with sufficient postage for mail back.  Thanks you,**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**2.**  NAME:  _____

   ADDRESS:  _____

   AGENT, (*if applicable*): _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*): _____

  **SERVICE BY** (*check one*):
  ☒ **ATTORNEY PICK-UP**              ☐ **CONSTABLE**

  ☐ **CIVIL PROCESS SERVER** -  Authorized Person to Pick-up: _____   Phone: _____

  ☐ **MAIL**                       ☐ **CERTIFIED MAIL**

  ☐ **PUBLICATION:**
    Type of Publication:   ☐ **COURTHOUSE DOOR,  or**
                 ☐ **NEWSPAPER OF YOUR CHOICE:** _____
  ☐ **OTHER,** *explain* _____

**ATTORNEY (OR ATTORNEY'S AGENT) REQUESTING SERVICE:**

NAME: _____ Davis Bradford_____     TEXAS BAR NO./ID NO.  24064939

MAILING ADDRESS:4601 Washington Ave., Suite 300, Houston, Texas 77007 _____

PHONE NUMBER: 713_____   659-2900_____ FAX NUMBER:   713_____   659-2908 _____

    area code    phone number           area code    fax number

EMAIL ADDRESS:  acraig@doblaw.com _____

**App. 0403**

SERVICE REQUESTS WHICH CANNOT BE PROCESSED BY THIS OFFICE WILL BE HELD FOR 30 DAYS PRIOR TO CANCELLATION.  FEES WILL BE REFUNDED ONLY UPON REQUEST, OR AT THE DISPOSITION OF THE CASE.  SERVICE REQUESTS MAY BE REINSTATED UPON APPROPRIATE ACTION BY THE PARTIES.

INSTRUMENTS TO BE SERVED:
(Fill In Instrument Sequence Number, i.e. 1st, 2nd, etc.)

ORIGINAL PETITION
_____ AMENDED PETITION
_____ SUPPLEMENTAL PETITION

COUNTERCLAIM
_____ AMENDED COUNTERCLAIM
_____ SUPPLEMENTAL COUNTERCLAIM

CROSS-ACTION:
_____ AMENDED CROSS-ACTION
_____ SUPPLEMENTAL CROSS-ACTION

THIRD-PARTY PETITION:
_____ AMENDED THIRD-PARTY PETITION
_____ SUPPLEMENTAL THIRD-PARTY PETITION

INTERVENTION:
_____ AMENDED INTERVENTION
_____ SUPPLEMENTAL INTERVENTION

INTERPLEADER
_____ AMENDED INTERPLEADER
_____ SUPPLEMENTAL INTERPLEADER

INJUNCTION

MOTION TO MODIFY

SHOW CAUSE ORDER

TEMPORARY RESTRAINING ORDER

BILL OF DISCOVERY:
ORDER TO: _____
                                    (specify)
MOTION TO: _____
                                    (specify)

PROCESS TYPES:

NON WRIT:
CITATION
ALIAS CITATION
PLURIES CITATION
SECRETARY OF STATE CITATION
COMMISSIONER OF INSURANCE
HIGHWAY COMMISSIONER
CITATION BY PUBLICATION
NOTICE
SHORT FORM NOTICE

PRECEPT (SHOW CAUSE)
RULE 106 SERVICE

SUBPOENA

WRITS:
ATTACHMENT (PROPERTY)
ATACHMENT (WITNESS)
ATTACHMENT (PERSON)

CERTIORARI

EXECUTION
EXECUTION AND ORDER OF SALE

GARNISHMENT BEFORE JUDGMENT
GARNISHMENT AFTER JUDGMENT

HABEAS CORPUS
INJUNCTION
TEMPORARY RESTRAINING ORDER

PROTECTIVE ORDER (FAMILY CODE)
PROTECTIVE ORDER (CIVIL CODE)

POSSESSION (PERSON)
POSSESSION (PROPERTY)

SCIRE FACIAS
SEQUESTRATION
SUPERSEDEAS

S:\FormsLib\Civil Bureau\Civ Fam Intake & Customer Svc\Civintake\Civil Process Request Form                                    Rev. 5/7/10

App. 0404

1/19/2016 9:18:29 AM
Chris Daniel - District Clerk
Harris County
Envelope No: 8665940
By: DE LA ROSA, GABRIELA
Filed: 1/19/2016 9:18:29 AM

CAUSE NO 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY and RUSK CAPITAL MANAGEMENT, L.L.C., *Plaintiffs*, | § § § § § | IN THE DISTRICT COURT |
| v. | § § | HARRIS COUNTY, TEXAS |
| MAROPCO, INC., E. PIERCE MARSHALL, JR., EDWIN K. HUNTER, AND HUNTER, HUNTER & SONNIER, LLC *Defendants*. | § § § § § | 11ᵗʰ JUDICIAL DISTRICT |

P-2
muDiX.
CiPRO.

**AMENDED PROTECTIVE ORDER**

On this day came to be considered Defendant MarOpCo's Emergency Motion to Alter

Injunctive Relief ("Defendant's Motion") and Plaintiffs' Response Motion to Extend Protective

Order ("Plaintiffs' Motion"). Having considered the Motions, the responses thereto, and the

argument of counsel, the Court is of the opinion that Defendant's Motion should be DENIED

and Plaintiffs' Motion should be GRANTED. It is ORDERED that

a. By Wednesday January 20, 2016, MarOpCo, its agents, officers, directors, attorneys, including Edwin Hunter, Bradley Trevino, E. Pierce Marshall, Jr., and all members of Hunter, Hunter & Sonnier, LLC, employees, affiliates and persons or entities controlled by MarOpCo ("MarOpCo Parties"), must return all originals and copies of the servers, two HP Workstations, Elite Book Workstation, flash drives, and any other electronic storage devices, including images and hard drives containing the contents of any Computer Device (collectively referred to as the "Computer Devices") not in possession of CyberEvidence, Inc. and previously present at the MarOpCo Houston office at the time of Preston Marshall's termination on June 11, 2015 to MarOpCo, Inc.'s counsel, Susan Bickley or Chris Akin for safekeeping;

b. By Wednesday, January 20, 2016, the MarOpCo Parties must return all documents and communications between Preston Marshall and any attorney, whether in hard or digital copy derived from any Computer Device, including hard drives containing the contents of any Computer Device or images of any Computer Device to MarOpCo's counsel Ms. Bickley or Mr. Akin for safekeeping;

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

c. By Wednesday, January 20, 2016, the MarOpCo Parties shall return all of Plaintiffs' privileged, or potentially privileged, documents from the Computer Devices to Susan Bickley or Chris Akin for safekeeping;

d. No MarOpCo Party may access, review, publish, reference the contents of, or otherwise view or use any of Plaintiffs' privileged or potentially privileged materials until further order of this Court;

e. Other than Ms. Bickley or Mr. Akin, all MarOpCo Parties that have accessed, reviewed, made or received a copy of any of Plaintiffs' privileged or potentially privileged material must destroy and permanently delete **all** copies physical, electronic, or otherwise, of the material in their possession, custody, or control;

f. To the extent any of the MarOpCo Parties has already published, reviewed or used Plaintiffs' privileged or potentially privileged documents, they shall use their best efforts to withdraw, return and remove from the public domain and ensure that all persons who have viewed or had access to the documents and/or Computer Devices do the same;

g. This Order shall not be used or construed to predetermine the merits of any claims regarding privilege, or lack thereof, as to the Computer Devices or documents contained thereon; and

h. All of Defendant's and Plaintiffs' argument regarding the privileged nature, or lack thereof, of the documents contained on the Computer Devices will be heard and determined at a future date before the Court.

SIGNED this 19 day of January, 2016.

JUDGE PRESIDING

2

1/15/2016 4:40:18 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 8650226
By: DE LA ROSA, GABRIELA
Filed: 1/15/2016 4:40:18 PM

P.2

CAUSE NO 2015-35950

X D 15Y

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY | § | IN THE DISTRICT COURT |
| and RUSK CAPITAL MANAGEMENT, | § | |
| L.L.C., | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| MAROPCO, INC., E. PIERCE MARSHALL, | § | |
| JR., EDWIN K. HUNTER, AND HUNTER, | § | |
| HUNTER & SONNIER, LLC | § | |
|     *Defendants*. | § | 11th JUDICIAL DISTRICT |

## ORDER DENYING PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

On this day came to be considered Plaintiffs, Preston Marshall's and Rusk Capital

Management, LLC's Emergency Motion for Expedited Discovery ("Plaintiffs' Motion") Having

considered the Motions, the responses thereto, and the argument of counsel, if any, the Court is

of the opinion that Plaintiffs' Motion should be DENIED It is so ORDERED.

It is further ORDERED that

    a.    In lieu of providing depositions on and expedited basis, Defendant's counsel Edwin Hunter, Bradley Trevino and E. Pierce Marshall, Jr. ("Affiants") shall submit affidavits with the Court and provide copies of same to Plaintiffs' counsel by Wednesday, January 19, 2016. The affidavits should include the following affirmations:

        i.    Affiants have received this Order and the Protective Order entered the same date (the "Orders"), have reviewed the Orders, and will comply with the terms of the Orders;

        ii.    All images, hard drives, or images of hard drives of any Computer Devices, as defined in the Protective Order of even date, have been returned to Defendant's counsel, Susan Bickley or Chris Akin;

        iii.    All documents and communications between Preston Marshall and any attorney, whether hard or digital copy, derived from any Computer Device have either been destroyed or returned to Susan Bickley or Chris Akin.

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

**App. 0407**

b.     Affiants shall identify all other persons or entities that have reviewed the Computer Devices and/or their contents;

c.     If Affiants, or any one of them, declines to submit an affidavit as set forth in this Order, Plaintiffs shall be permitted to re-urge Plaintiffs' Motion.

SIGNED this ___19___ . day of January, 2016.

JUDGE PRESIDING

2

App. 0408

NO. 2015-35950

| PRESTON MARSHALL | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | |
| | § | HARRIS COUNTY, TEXAS |
| MAROPCO, INC. | § | |
| | § | 11th JUDICIAL DISTRICT |

**F I L E D**
Chris Daniel
District Clerk

JAN 2 1 2016

Time:

Harris County, Texas

By

**ORDER APPOINTING SPECIAL MASTER**

1. Craig Ball of Austin, Texas, is hereby appointed as Special Master pursuant to Rule 171 of the Texas Rules of Civil Procedure.

2. The primary duties of the Special Master are as follows: a) assist the Court in expeditiously determining who is entitled to the computer equipment [servers, work stations, laptops, and storage devices] and all information stored on that equipment in the Tidwell office space Plaintiff occupied until his termination by Defendant in June, 2015; and b) assist the court in resolving issues regarding the use of the computer equipment after Plaintiff's termination, while it was in the possession of Maropco, Inc., by E. Pierce Marshall, Jr. and his attorneys for the purpose of obtaining communications between Preston Marshall and his attorney(s) in unrelated litigation in Louisiana.

3. Although this is putatively a wrongful termination case, in the seven months it has been on file the majority of the parties' considerable legal efforts have been devoted to ownership rights to the equipment and information stored on the equipment. Although an agreement was reached to put some or all of the equipment in question in the possession of a forensic examiner while this issue was determined, resolution does not appear to be forthcoming. On December 21, 2015 the Court heard Plaintiff's Motion to Compel production of an entire copy of the server in use when Plaintiff was terminated in June, 2015. Defendant contends Plaintiff should no longer be permitted access to Defendant's records, software, and email domain since he has been terminated. The Court believes a Special Master is necessary to assist in resolving this given the extensive commingling of data, software, and

communications on the equipment in question. The parties do not dispute that Plaintiff used the same equipment for several entities for which he had varying degrees of responsibility as well as those he had as an officer and employee of Defendant. In addition, Plaintiff used Defendant's email domain to send and receive emails for himself and multiple entities unrelated to his employment duties with Defendant. Most notably, Plaintiff used Defendant's email domain to send and receive communications with his attorney(s) concerning matters unrelated to Defendant's operations, and these communications are thus stored on the computer equipment in question. Further, the Court has learned that an unauthorized [by the Court and the attorneys of record in this case] examination of the equipment in question occurred for the purpose of obtaining access to Plaintiff's communications with his attorney(s) for use in unrelated litigation. The Court believes this unauthorized access violated an explicit agreement of the parties and potentially the ethical obligations of the lawyers who performed and used the results of this examination, and that sanctions therefore may be appropriate. The Court believes that a Special Master with Mr. Ball's unique skills as both a lawyer and forensic examiner is necessary to examine the equipment and copies made of that equipment to determine the circumstances---when, what, and by whom—surrounding the unauthorized examination, and to insure that all copies of the information stored on the equipment are returned and isolated until resolution of rights to access the equipment and the data on it, including attorney-client communications involving potentially multiple individuals and entities.

4. It is important to note that this is not primarily a discovery issue, but rather a matter of separating commingled hardware, software, databases, and communications so that each party has appropriate access to that to whom it belongs. For these reasons, the Court has determined that this matter is an exceptional case within the meaning of TEX. R. CIV. P. 171 and good cause exists for this appointment. Moreover, the matters within the purview of the Special Master cannot be effectively and timely addressed by this Court.

5. The Court contemplates that such investigation may entail, *inter alia*, inquiry concerning, and examination of, information systems, review of databases and e-mail stores, forensic acquisition and examination of electronic storage media, consultation with the parties' current and former employees, counsel and contractors and travel to

the parties' data centers and places of business.

6. A further duty of this Special Master is to *assist* and, when necessary, *direct* the parties in completing required identification, preservation, recovery and discovery of electronically stored information with reasonable dispatch and efficiency.

7. The Special Master may be asked by the Court to assist with discovery requests to determine where such information is stored and how it can most effectively be identified, accessed, preserved, sampled, searched, reviewed, redacted and produced. To the extent requested by the Court the Special Master may initiate or participate in the parties' efforts to resolve same. If asked by the Court, he may be authorized to resolve issues as to the scope and necessity of electronic discovery, as well as search methods, terms and protocols, means, methods and forms of preservation, restoration, production and redaction, formatting and other technical matters.

8. The Special Master is granted the full rights, powers and duties afforded by TEX.R. CIV. P. Rule 171 and may adopt such procedures as are not inconsistent with that Rule or with this or other Orders of the Court. The Special Master shall be empowered to communicate on an *ex parte* basis with a party or the Court for purposes of seeking to maintain the confidentiality of privileged, trade secret or proprietary information or for routine scheduling and other matters which do not concern the merits of the parties' claims. The Special Master may communicate with the Court *ex parte* on all matters as to which the Special Master has been empowered to act.

9. The Special Master shall regularly file a written report, in such format he deems most helpful, identifying his activities and the status of matters within his purview. The report should identify outstanding issues, with particular reference to matters requiring Court action.

10. Each side is ordered to designate a lead attorney and a lead technical individual as contacts for the Special Master. These designees shall have sufficient authority and knowledge to make commitments and carry them out to allow the Special Master to

accomplish his duties. The parties are directed to promptly provide the Special Master access to any and all documents, media, systems and personnel (including technical staff and vendors) which the Special Master deems necessary to complete his duties.

11. Disclosure of privileged or protected information connected with the litigation to the Special Master shall not be a waiver of privilege or a right of protection in this cause and is also not a waiver in any other Federal or State proceeding; accordingly, a claim of privilege or protection may not be raised as a basis to resist such disclosure.

12. The Court will decide *de novo* all objections to findings of fact or conclusions of law made by the Special Master. Any order, report, or recommendation of the Special Master, unless it involves a finding of fact or conclusion of law, will be deemed a ruling on a procedural matter. The Court will set aside a ruling on a procedural matter only where it is clearly erroneous or contrary to law.

13. The Special Master's compensation, as well as any costs and expenses, will be paid by plaintiff and defendant Maropco, Inc. Mr. Ball shall be compensated at his usual and customary rate of $550 per hour, including time spent in transit or otherwise in connection with this appointment, provided however that travel time will be paid at one-half (50%) of the usual and customary rate unless substantive work, research or discussions in support of the engagement are performed while traveling, in which case such activities will be paid at the usual and customary rate. The Special Master shall submit to both parties invoices for services performed according to his normal billing cycle and Plaintiffs and Defendant Maropco shall each pay 50% of such invoices within thirty (30) days of receipt.

SO ORDERED AND ADJUDGED this the 21ST day of January, 2016.

PRESIDING JUDGE

1/21/2016 2:36:56 PM
Chris Daniel - District Clerk Harris County
Envelope No. 8726242
By: Tammy Tolman
Filed: 1/21/2016 2:36:56 PM

<div align="center">

**CAUSE NO. 2015-35950**

</div>

| | | |
|---|---|---|
| MARSHALL, PRESTON (INDIVIDUALLY), | § | |
| ET AL, | § | |
| **PLAINTIFF** | § | IN THE 11TH JUDICIAL DISTRICT COURT |
| | § | |
| VS. | § | HARRIS COUNTY, TX |
| | § | |
| MAROPCO INC, ET AL, | § | |
| **DEFENDANT** | § | |

<div align="center">

**RETURN OF SERVICE**

</div>

**ON Friday, January 15, 2016 AT 04:47 PM** - CITATION, PLAINTIFFS' THIRD AMENDED VERIFIED PETITION AND REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION, EXHIBITS 1, 2, 2A, 2B, 2C, 2D **CAME TO HAND.**

 **ON Wednesday, January 20, 2016 AT 10:40 AM, I, JASON RENFROE, PERSONALLY DELIVERED THE ABOVE-NAMED DOCUMENTS TO:** HUNTER HUNTER & SONNIER (A LIMITED LIABILITY COMPANY AND LAW FIRM), BY DELIVERING TO TERESA WILLIAMS, RECEPTIONIST, 1807 LAKE ST, LAKE CHARLES, CALCASIEU COUNTY, LA 70601.


My name is JASON RENFROE. My address is P.O. BOX 91055, LAFAYETTE, LA 70509, USA. My date of birth is July 19, 1962. I am over the age of 18, and have no interest in this case. I am authorized to serve process within the state of LA. I am in all ways competent to make this statement, and this statement is based on personal knowledge. I am not a party to this case, and have no interest in its outcome. I declare under penalty of perjury that the foregoing is true and correct.

Executed in LAFAYETTE County, LA, on Wednesday, January 20, 2016.


/S/ JASON RENFROE


DocID: P234177_2

1455-03

**Filed 16 February 01 A9:27**
**Chris Daniel - District Clerk**
**Harris County**

NO. 2015-35950

| | | |
|---|---|---|
| MARSHALL, PRESTON (INDIVIDUALLY) | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff(s),* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| MAROPCO INC | § | |
| | § | |
| *Defendant(s).* | § | 011th JUDICIAL DISTRICT |

**ORDER GRANTING MOTION FOR SUBSTITUTED SERVICE OF PROCESS**

Pending before the Court is Plaintiff's Motion for Substituted Service Pursuant to Rule 106(b). It appears that Plaintiff has attempted but failed to personally serve <u>E. Pierce Marshall, Jr.</u> ("**DEFENDANT**") at the last known usual place of abode or business. It further appears to the Court that the manner of service ordered herein will be reasonably effective to give said Defendant notice of the lawsuit.

Therefore, the Motion for Substitute Service is ***GRANTED.***

It is ***ORDERED*** that service of process may be made upon **DEFENDANT** either by: (1) leaving a true copy of the citation, with a copy of the Petition and this Order authorizing substituted service attached, with anyone over sixteen (16) years of age at <u>6425 Belmead Drive, Dallas, Texas 75230</u>; or (2) firmly affixing a true copy of the citation, with a copy of the Petition and this Order authorizing substitute service attached, to the front door of said Defendant's last known usual place of abode or business at the above address.

It is further ***ORDERED*** that the service made by the above methods shall not be deemed perfected unless it also complies with the following provisions, which shall be carried out by the same process server on the same day that delivery is made pursuant to (1) or (2) above:

a)  A copy of the citation, Petition, and this Order shall be mailed by **BOTH** certified mail, return-receipt requested, **AND** by regular, first-class mail to the defendant at the same address at which service is authorized above;

b)     The return of service shall not be made until thirty (30) days after mailing or until the process server receives back the green card from the post office, whichever date is earlier;

c)     The return of service shall include a statement setting out the date of mailing and the result of the mailing by certified mail, and the date of mailing and result of same by regular, first-class mail (*i.e.,* whether the envelope was returned by the post office, the green card came back signed, etc.); and

d)     A copy of any envelope or green card returned by the post office shall be attached to the return of service.

It is further **ORDERED** that the return of service of the person executing service pursuant to this Order shall otherwise be made in accordance with TEX. R. CIV. P. 107.

It is further **ORDERED** that service of process will be deemed complete upon compliance with this Order, regardless of whether defendant signs the certified mail receipt.

**SIGNED** at Houston, Texas on <u>January 29, 2016</u>.


HON. MICHAEL D. MILLER
Judge, 011th District Court

2

P3
MODIX.

**CAUSE NO. 2015-35950**

| | | |
|---|---|---|
| PRESTON MARSHALL, | § | IN THE DISTRICT COURT OF |
| INDIVIDUALLY AND RUSK CAPITAL | § | |
| MANAGEMENT, L.L.C., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| MAROPCO, INC., E. PIERCE | § | |
| MARSHALL, JR., EDWIN K. HUNTER, | § | |
| AND HUNTER, HUNTER & SONNIER, | § | |
| LLC, | § | |
| | § | |
| **Defendants.** | § | 11TH JUDICIAL DISTRICT |



FILED
Chris Daniel
District Clerk
FEB - 8 2016
Time:_____
Harris County, Texas
By_____
Deputy

---

## AMENDED ORDER APPOINTING SPECIAL MASTER

---

1.    This Amended Order Appointing Special Master amends and replaces the Court's January 21, 2016 Order Appointing Special Master.

2.    The duties of the Special Master are as follows:   (1)  to assist the Court in expeditiously determining to whom to allocate the data and information on the following devices currently in the possession of CyberEvidence [the HP Pro Liant ML350e Gen8V2 (Serial Number USE423OV3W; the HP ProOne 600 (Serial Number MXL4230RPW); HP ProOne 600 with a/c cord (Serial Number MXL4230RPW; the HP Elite Book Workstation with adaptor (Serial Number CNU319B2GC; the UBS Flash Drive Generic 4GB Black; and 2 power cords, 2 mice, 1 USB, 1Ps2, and 1 USB keyboard], as well as the following devices and equipment currently in the possession of Susan Bickley:  1 Seagate External Hard Drive (Model Number SRD0052, Serial Number NA7EDD9R; and the HP Proliant ML370 (Serial Number D328LOH71H116) (collectively, the "Computer Equipment") as well as any device, flashdrive, equipment or image taken of or from the Computer Equipment, including any equipment subsequently delivered to counsel pursuant to the January 19, 2016 Protective Order.  The Special Master shall have no responsibility or authority for making any rulings or determinations relating to the ownership of any Computer Equipment; and (2) to run computer forensic tests on the Computer Equipment as specified in paragraph 3.  The parties agree that the Special Master's inability to rule with respect to ownership of the Computer Equipment shall not be a basis for any parties' objection to the Special Master's ruling on allocation of data between or among the parties;

3.    Although this is putatively a wrongful termination case, in the seven months it has been on file the majority of the parties' considerable legal efforts have been devoted to ownership rights to the Computer Equipment and disputes relating to the information and data stored on the Computer Equipment.  Although an agreement was reached to put the equipment identified in

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

paragraph 2 in the possession of CyberEvidence while the parties attempted to reach agreement on these issues, resolution does not appear to be forthcoming. On December 21, 2015, the Court heard Plaintiffs' Motion to Compel production of a forensic image of the HP Pro Liant ML350e Gen8V2 (Serial Number USE423OV3W), which was in use at MarOpCo's Houston office when Plaintiff Preston Marshall was terminated in June 2015. MarOpCo contends Plaintiffs should no longer be permitted access to Defendant's records, software, data, information, and emails sent or received on a MarOpCo.com email domain since he has been terminated. The Court believes a Special Master is necessary to assist in resolving this given the potential for extensive commingling of data, software, and communications on the Computer Equipment. The parties do not dispute that Plaintiffs used certain of the Computer Equipment for several entities for which Plaintiff Preston Marshall had varying degrees of responsibility, and that Plaintiff Preston Marshall also used certain of the Computer Equipment. In addition, Plaintiff Preston Marshall used the MarOpCo.com email domain to send and receive communications with attorney Kenneth Michael Wright ("Wright"). The Special Master is instructed to determine through forensic examination of the Computer Equipment on which device or devices the MarOpCo.com emails between Plaintiff Preston Marshall and Wright resided and to determine when such emails were reviewed and by whom.

4. It is important to note that in the Court's view this is not primarily a discovery dispute, but rather a matter of separating commingled hardware, software, databases, and communications on the Computer Equipment so that each party has appropriate access to that to whom it belongs. For these reasons, the Court has determined that this matter is an exceptional case within the meaning of TEX. R. CIV. P. 171 and good cause exists for this appointment. Moreover, the matters within the purview of the Special Master cannot be effectively and timely addressed by this Court.

5. The Court contemplates that such investigation may entail inquiry concerning, and examination of the Computer Equipment, such as review and examination of information systems, databases, email files, forensic acquisition and examination of electronic storage media on such Computer Equipment. The Court further contemplates that the Special Master may consult with the parties' current and former employees (so long as counsel for such party is allowed to participate) relating to the Computer Equipment.

6. A further duty of this Special Master is to assist and, when necessary, direct the parties in completing required identification, preservation, recovery and discovery of electronically stored information residing on the Computer Equipment with reasonable dispatch and efficiency.

7. The Special Master is granted the full rights, powers, and duties afforded by TEX. R. CIV P. 171 and may adopt such procedures as are not inconsistent with that Rule or with this or other Orders of the Court. The Special Master shall be empowered to communicate on an *ex parte* basis with a party or the Court for purposes of seeking to maintain the confidentiality of privileged, trade secret or proprietary information residing on the Computer Equipment or for routine scheduling and other matters that do not concern the merits of the parties' claims. The Special Master may communicate with the Court *ex parte* on all matters as to which the Special Master has been empowered to act.

**AMENDED ORDER APPOINTING SPECIAL MASTER** PAGE 2

8.      The Special Master shall regularly file a written report, in such format he deems most helpful, identifying his activities and the status of matters within his purview. The report should identify outstanding issues, with particular reference to matters requiring Court action.

9.      Each side is ordered to designate a lead attorney and a lead technical individual as contacts for the Special Master. These designees shall have sufficient authority and knowledge to make commitments and carry them out to allow the Special Master to accomplish his duties, but the designees nonetheless shall be provided a reasonable opportunity to confer with their respective clients. The parties are directed to promptly provide the Special Master with access to the Computer Equipment and to instruct CyberEvidence to provide the Special Master with access to the Computer Equipment.

10.     Solely for data residing on the Computer Equipment, disclosure of privileged or protected information in connection with the litigation to the Special Master shall not be a waiver of privilege or a right of protection in this cause and is also not a waiver in any other Federal or State proceeding; accordingly, a claim of privilege or protection may not be raised as a basis to resist such disclosure to the Special Master of data or information residing on the Computer Equipment.

11.     The Court will decide *de novo* all objections to findings of fact or conclusions of law made by the Special Master. Any order, report or recommendation of the Special Master, unless it involves a finding of fact or conclusion of law, will be deemed a ruling on a procedural matter. The Court will set aside a ruling on a procedural matter only where it is clearly erroneous or contrary to law.

12.     The Special Master's compensation, as well as any costs and expenses, will be paid by Plaintiffs and MarOpCo. Mr. Ball shall be compensated at his usual and customary rate of $550 per hour, including time spent in transit or otherwise in connection with this appointment, provided however that travel time will be paid at one-half (50%) of the usual and customary rate unless substantive work, research or discussions in support of the engagement are performed while travelling, in which case such activities will be paid at the usual and customary rate. The Special Master shall submit to both parties invoices for services performed according to his normal billing cycle and Plaintiffs and MarOpCo shall each pay 50% of such invoices within thirty (30) days of receipt.

SIGNED February ___8___, 2016.

_____
PRESIDING JUDGE

4817-7695-0829, v. 1

**AMENDED ORDER APPOINTING SPECIAL MASTER**                                    **PAGE 3**

2/15/2016 9:46:59 AM
Chris Daniel - District Clerk Harris County
Envelope No. 9111253
By: GABRIELA COX
Filed: 2/15/2016 9:46:59 AM

CAUSE NO. 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY and RUSK CAPITAL MANAGEMENT, L.L.C., | § § § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiffs*, | § § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § § | |
| MAROPCO, INC., E. PIERCE MARSHALL, JR., EDWIN K. HUNTER, HUNTER, HUNTER & SONNIER, LLC, | § § § | |
| | § | |
| *Defendants*. | § | 11th JUDICIAL DISTRICT |

## DEFENDANT HUNTER, HUNTER & SONNIER, LLC'S SPECIAL APPEARANCE; MOTION TO TRANSFER VENUE; MOTION TO QUASH

Defendant Hunter, Hunter & Sonnier, LLC, ("Hunter, Hunter & Sonnier"), files its Special Appearance, Motion to Transfer Venue, Motion to Quash, in order to challenge personal jurisdiction, venue, and service of citation in accordance with the due order of pleadings.

This lawsuit against Hunter, Hunter & Sonnier is nothing more than an attempt to interfere with the attorney/client relationship that exists between Hunter, Hunter & Sonnier and Ms. Elaine Marshall, who is the President of MarOpCo, the mother of Plaintiff Preston Marshall, and a longtime client of Hunter, Hunter & Sonnier. Plaintiffs' efforts to force Hunter, Hunter & Sonnier into Texas to defend this suit are wholly improper and done solely to harass Hunter, Hunter & Sonnier, an entity that does not have sufficient contacts with Texas to fall within the limits of its personal jurisdiction. Additionally, Plaintiffs have selected an improper venue and failed to properly serve process upon Hunter, Hunter & Sonnier. While engaging in litigation for an improper purpose is in violation of both Section 10.001 of the Texas Civil Practices

**App. 0419**

and Remedies Code and an attorney's ethical responsibilities, Plaintiffs' counsel pursues this frivolous case at his clients' behest, knowing their clients are using this litigation as an attempt to gain leverage over MarOpCo, Ms. Elaine Marshall, and Hunter, Hunter & Sonnier.

Hunter, Hunter & Sonnier asks the Court to sustain its Special Appearance based on the lack of personal jurisdiction and to dismiss Plaintiffs' suit. In the alternative, Hunter, Hunter & Sonnier asks the Court to grant its Motion to Transfer Venue and to transfer this action to a state district court located in Dallas at Plaintiffs' cost. Finally, Hunter, Hunter & Sonnier asks the Court to quash the citation at Plaintiffs' cost.

# I.
# SPECIAL APPEARANCE

1.      Plaintiffs seek to force Hunter, Hunter & Sonnier to defend this suit in Harris County, Texas, which is wholly improper and done solely to harass Hunter, Hunter & Sonnier, an entity that does not have sufficient contacts with Texas to fall within the reach of its personal jurisdiction.

2.      Hunter, Hunter & Sonnier objects to the assertion of personal jurisdiction over it, based on its insufficient contacts with the state of Texas.

3.      This Special Appearance is verified by the Affidavit of Edwin F. Hunter, attached as **Exhibit 1**.

4.      Hunter, Hunter & Sonnier's Special Appearance will be supplemented and briefed prior to any hearing set on the matter.

# II.
# MOTION TO TRANSFER VENUE

5.      This case is presently pending in Harris County, Texas; however, Hunter, Hunter & Sonnier objects to venue as being improper.

6.      Hunter, Hunter & Sonnier's Motion to Transfer Venue will be supplemented following a ruling on its Special Appearance and prior to any hearing set on the matter.

## III.
## MOTION TO QUASH

7.     Plaintiffs attempted to serve process upon Hunter, Hunter & Sonnier by way of hand delivery to a receptionist at Hunter, Hunter & Sonnier. This does not comport with the Texas rules regulating service of process. Based on Plaintiffs failure to properly serve process, Hunter, Hunter & Sonnier moves to quash the citation.

8.     Hunter, Hunter & Sonnier's Motion to Quash will be supplemented following a ruling on its Special Appearance and Motion to Transfer Venue and prior to any hearing set on the matter.

## IV.
## PRAYER

WHEREFORE, Defendant, Hunter, Hunter & Sonnier, prays for the following relief:

1.     Hunter, Hunter & Sonnier respectfully asks the Court, following a hearing, to sustain the Special Appearance, enter a final judgment dismissing Plaintiffs' causes of action, and award Hunter, Hunter & Sonnier its reasonable attorneys' fees and costs.

2.     Subject to and without waiver of its Special Appearance, Hunter, Hunter & Sonnier respectfully asks the Court to grant its Motion to Transfer Venue and transfer this action to a state district court located in Dallas at Plaintiffs' cost.

3.     Subject to and without waiver of its Special Appearance and Motion Transfer, Hunter, Hunter & Sonnier respectfully asks the Court to quash the citation at Plaintiffs' cost.

App. 0421

Respectfully submitted,

By:   */s/ L. Bradley Hancock*
      L. Bradley Hancock
      brad.hancock@hklaw.com
      Texas Bar No. 00798238
      Christopher David Johnsen
      chris.johnsen@hklaw.com
      Texas Bar No. 24072169

**HOLLAND & KNIGHT LLP**
1100 Louisiana Street, Suite 4300
Houston, Texas 77002
Telephone:  (713) 821-7000
Facsimile:   (713) 821-7001

ATTORNEYS FOR DEFENDANT
HUNTER, HUNTER & SONNIER, LLC

4

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing were electronically served on all counsel of record through the Court's ECF system on this 15th day of February, 2016, including

Mark Siurek
Patricia Haylon
WARREN & SIUREK, LLP
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
Email:  msiurek@warrensiurek.com
Email:  thaylon@warrensiurek.com

Paul J. Dobrowski
Fredrick T. Johnson
Akilah F. Craig
DOBROWSKI, LARKIN & JOHNSON LLP
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Email:  pjd@doblaw.com
Email:  fjohnson@doblaw.com
Email:  acraig@doblaw.com

Jeffrey W. Chambers
CHAMBERS LAW FIRM
2929 Allen Parkway, Suite 200
Houston, Texas 77019
Email:  jeffchambers@chambers-law-group.com

Barry Abrams
Susan L. Bickley
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Email:  babrams@blankrome.com
Email:  sbickley@blankrome.com

/s/ L. Bradley Hancock
L. Bradley Hancock

# EXHIBIT 1

CAUSE NO. 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, INDIVIDUALLY and RUSK CAPITAL MANAGEMENT, L.L.C., | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| MAROPCO, INC., E. PIERCE MARSHALL, JR., EDWIN K. HUNTER, HUNTER, HUNTER & SONNIER, LLC, | § § § § § | |
| *Defendants.* | § | 11th JUDICIAL DISTRICT |

## AFFIDAVIT IN SUPPORT OF DEFENDANT HUNTER, HUNTER & SONNIER, LLC'S SPECIAL APPEARANCE; MOTION TO TRANSFER VENUE; MOTION TO QUASH; AND ANSWER

| | |
|---|---|
| STATE OF LOUISIANA | § § |
| PARISH OF CALCASIEU | § |

Before me, the undersigned authority, appeared Edwin F. Hunter, known to me to be the person whose name is subscribed hereto and, after being duly sworn by me, stated as follows:

1. My name is Edwin F. Hunter. I am over the age of 21, am of sound mind, and am competent to make this Affidavit. The facts stated in this Affidavit are within my personal knowledge and are true and correct.

2. I am a Partner at Defendant Hunter, Hunter & Sonnier, LLC, ("Hunter, Hunter & Sonnier"). I have personal knowledge of the facts stated in this Affidavit through my role with Hunter, Hunter & Sonnier, and each of the statements made below is based upon my personal knowledge.

3. I submit this Affidavit in support of Hunter, Hunter & Sonnier's Special Appearance, Motion to Transfer Venue, Motion to Quash, and Answer.

4.      Hunter, Hunter & Sonnier is a limited liability company and law firm formed and organized under the laws of the State of Louisiana. Hunter, Hunter & Sonnier maintains its principal and only place of business in Louisiana.

5.      Hunter, Hunter & Sonnier does not operate an office in Texas.

6.      Hunter, Hunter & Sonnier has never been licensed or otherwise authorized to do business in Texas and has never paid franchise taxes or any other taxes to Texas.

7.      Hunter, Hunter & Sonnier has never owned any real property located in Texas.

8.      Hunter, Hunter & Sonnier does not have a registered agent for service of process in Texas.

9.      Hunter, Hunter & Sonnier has never advertised in Texas.

10.     To defend this action in Texas would require Hunter, Hunter & Sonnier's personnel to travel to Texas as the action progresses, to exchange documents and other evidence with other parties and attorneys in Texas, and to attend the trial of this action in Texas.

11.     Because of the distance between Hunter, Hunter & Sonnier and Houston, Texas, it would be inconvenient, burdensome, and financially expensive for Hunter, Hunter & Sonnier to litigate this case in this Court.

FURTHER AFFIANT SAYETH NOT.

_____
Edwin F. Hunter
Hunter, Hunter & Sonnier, LLC

Subscribed and sworn to before me this ___15th___ day of February, 2016.

_____
Notary Public in and for the
State of Louisiana

ALICIA G. TYGRETT
LOUISIANA NOTARY PUBLIC NO. 34924
CALCASIEU PARISH, LOUISIANA
My Commission Expires at Death

2

**App. 0426**

2/22/2016 1:06:24 PM
Chris Daniel - District Clerk Harris County
Envelope No. 9228911
By: GABRIELA COX
Filed: 2/22/2016 1:06:24 PM

CAUSE NO. 2015-35950

| | | |
|---|---|---|
| PRESTON MARSHALL, | § | IN THE DISTRICT COURT OF |
| Individually, and RUSK CAPITAL | § | |
| MANAGEMENT, L.L.C. | § | |
| | § | |
| vs. | § | HARRIS COUNTY,   TEXAS |
| | § | |
| MAROPCO, INC., | § | |
| E. PIERCE MARSHALL, JR., | § | |
| EDWIN K. HUNTER, and | § | |
| HUNTER, HUNTER & SONNIER, LLC | § | 11th  JUDICIAL   DISTRICT |

## ORIGINAL ANSWER OF DEFENDANT E. PIERCE MARSHALL, JR.

Defendant E. Pierce Marshall, Jr. ("Defendant") files this Original Answer, and in support thereof would respectfully show the Court as follows:

### General Denial

Defendant asserts a general denial as authorized by Rule 92 of the Texas Rules of Civil Procedure, hereby denying each and every, all and singular, of the material allegations in Plaintiffs' Third Amended Verified Petition, and demands that Plaintiffs be required to prove their charges and allegations against this Defendant as required by the Constitution and laws of the State of Texas.

### Affirmative Defenses

1.  Plaintiffs' claims are barred in whole or in part by waiver and estoppel.

2.  Plaintiffs' claims are barred in whole or in part because Texas law creates immunity (known as the "litigation privilege") from liability for lawyers representing their clients in litigation.

3.  Plaintiffs' claims for conspiracy are barred as a matter of law because an agent such as Defendant cannot conspire with his principal.

**App. 0427**

4.  Plaintiffs' claims are barred in whole or in part because Plaintiffs effectively consented to the conduct that they claim constitutes conversion and/or violation of TEX. CIV. PRAC. & REM. CODE §134A.005(1) and §§143.001-143.002.

5.  Defendant is entitled to recover his attorneys' fees because Plaintiffs asserted their claims for misappropriation of trade secrets in bad faith.  TEX. CIV. PRAC. & REM. CODE §134A.005(1).

6.  Plaintiffs' claims against Defendant are barred in whole or in part based on the doctrine of unclean hands.

7.  Defendant reserves the right to supplement or amend these defenses in accordance with the Texas Rules of Civil Procedure.

WHEREFORE, PREMISES CONSIDERED, Defendant E. Pierce Marshall, Jr. prays that Plaintiffs take nothing on their claims; that he recover his costs of court; and that he be granted such other and further relief, at law or in equity, to which he may show himself justly entitled.

Respectfully submitted,

BECK REDDEN LLP
A Registered Limited Liability Partnership

By: /s/  David J. Beck
    David J. Beck
    State Bar No. 00000070
    Jeff M. Golub
    State Bar No. 00793823
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:    (713) 951-3700
Telecopier:    (713) 951-3720

**ATTORNEYS FOR DEFENDANT
E. PIERCE MARSHALL, JR.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of *Defendant's Original Answer* was served upon the following in compliance with the Rules 21 and 21a of the Texas Rules of Civil Procedure on February 22, 2016.

Paul J. Dobrowski
Frederick T. Johnson
C. Davis Bradford
Akilah F. Craig
Dobrowski, Larkin & Johnson LLP
4601 Washington Avenue, Suite 300
Houston, Texas  77007

Mark Siurek
Patricia Haylon
Warren & Siurek, L.L.P.
3334 Richmond Avenue, Suite 100
Houston, Texas  77098

Jeffrey W. Chambers
Chambers Law Group
2929 Allen Parkway, Suite 200
Houston, Texas  77091

Susan L. Bickley
Barry Abrams
Blank Rome LLP
717 Texas Avenue, Suite 1400
Houston, Texas  77002

John T. Cox, III
Christopher J. Akin
Jonathan R. Patton
Lynn Tillotson Pinker & Cox, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas  75201

Michael Reese Davis
Hymel Davis & Petersen, LLC
10602 Coursey Boulevard
Baton Rouge, Louisiana  70816

L. Bradley Hancock
Christopher David Johnsen
Holland & Knight LLP
1100 Louisiana Street, Suite 4300
Houston, Texas  77002

*/s/ Jeff M. Golub*
Jeff M. Golub

3

App. 0429